**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

Case No. 1:22-cr-109

Plaintiff,                                        (HKS)

vs.                                                December 9, 2022

**PAYTON GENDRON,**

Defendant.
_____

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE H. KENNETH SCHROEDER**
**UNITED STATES MAGISTRATE JUDGE**

<u>**APPEARANCES:**</u>          **TRINI E. ROSS, UNITED STATES ATTORNEY**
                           **BY: JOSEPH M. TRIPI, ESQ.** (Buffalo)
                              **BRETT A. HARVEY, ESQ.** (Rochester)
                           Assistant United States Attorneys
                           Federal Centre, 138 Delaware Avenue
                           Buffalo, New York 14202
                           **UNITED STATES DEPARTMENT OF JUSTICE**
                           **CIVIL RIGHTS DIVISION**
                           **BY: SHAN PATEL, ESQ.**
                           950 Pennsylvania Avenue
                           Washington D.C. 20530
                           **BY: LAURA B. GILSON, ESQ.**
                           150 M. Street NE
                           Washington, D.C. 20530
                           For the Plaintiff

                           **OFFICE OF THE FEDERAL PUBLIC DEFENDER**
                           **BY: SONYA A. ZOGHLIN, ESQ.** (Rochester)
                              **ANNE M. BURGER, ESQ.** (Rochester)
                              **MARYBETH COVERT, ESQ.** (Buffalo)
                           Assistant Federal Public Defenders
                           300 Pearl Street, Suite 200
                           Buffalo, New York 14202
                           For the Defendant

<u>**COURT DEPUTY CLERK:**</u>   **LLANE M. GUIDOTTI**

<u>**COURT REPORTER:**</u>      **ANN M. SAWYER, FCRR RPR CRR** Notary Public
                           Robert H. Jackson Courthouse
                           2 Niagara Square
                           Buffalo, New York 14202
                           Ann_Sawyer@nywd.uscourts.gov

(Proceedings commenced at 11:01 a.m.)

THE CLERK:  All rise.

THE COURT:  Be seated, please.

THE CLERK:  This is United States versus Payton Gendron, docket number 22-CR-109.  This is the date set for a status conference.

Counsel, please state your name for the record.

MR. TRIPI:  Joseph Tripi for the United States.

MR. HARVEY:  Brett Harvey for the United States.

MR. PATEL:  Shan Patel for the United States.

MS. GILSON:  Laura Gilson for the United States.

MS. ZOGHLIN:  Sonya Zoghlin for Payton Gendron.

MS. COVERT:  MaryBeth Covert for Payton Gendron.

MS. BURGER:  Anne Burger for Payton Gendron.

THE COURT:  Good morning.

MR. TRIPI:  Good morning, Your Honor.

THE COURT:  It's my understanding that the defendant has waived his right to appear?

MS. ZOGHLIN:  That's correct, Judge.

THE COURT:  All right.  We're here for a status report with particular focus on where we are with the discovery.

MS. ZOGHLIN:  Judge, I can tell you that since the last date, we have received voluminous discovery from the government in the form of multiple terabytes of data.  We have

certainly begun the process of reviewing that, processing it, so that it's capable of being reviewed.  I can tell you that it will take significant additional time to complete that review.

We've discussed this with the government, and I believe that they have no objection to a proposal that the matter be adjourned for approximately 90 days for an additional status conference.

That would be our request at this time.

MR. TRIPI:  I --

THE COURT:  I --

MR. TRIPI:  Go ahead, Judge, I apologize.

THE COURT:  I have some questions.  And I'm only discerning, based on what I know and based on what I understand the law to be, the defendant has entered a plea of guilty to similar, if not identical, charges in the State of New York proceedings, not only findings of guilt or admissions of guilt as to the homicides, but also to the hate crime allegations.  So it seems to me that the issue of guilt or innocence on the federal charges is relatively or basically moot by reason of the defendant's own admissions in the state court.

It also seems to me that there is a very real possibility that this federal prosecution could end up being legally moot for this reason.

As I understand it, the defendant is scheduled to be sentenced in the New York State Court proceedings on or about February 15th, 2023.

It is my further understanding that the defendant will be sentenced, according to a plea agreement, to life imprisonment without parole.

The federal prosecution does contain a statutory provision for the possibility of a sentence of death, but that is not a given.  One, it first has to be decided by the Attorney General of the United States as to whether such a prosecution is going to be instituted.  If it is not, the best that the government could get, in my opinion, on the charges, would then be life imprisonment without parole.  And, obviously, you can't have two consecutive sentences of life imprisonment since Mr. Gendron only has one life to live.

If the government proceeds with the prosecution seeking to have the death penalty imposed, there is no guarantee that a jury would make that finding.

The other alternate is, if the jury were to decide that imposition of the death penalty was warranted, the question then becomes what effect, if any, the imposed New York State judgment of conviction would have.

And in that regard, I ask defense counsel, are you aware of or have you been advised of all of the terms and conditions of what I presume is a plea agreement with the

State of New York and Mr. Gendron?

MS. ZOGHLIN:  We are certainly familiar with what happened in Erie County Court.

THE COURT:  Was there a quid pro quo?

MS. ZOGHLIN:  Absolutely not.  There's -- there's -- there's no -- just to clarify, there was no plea agreement. Payton Gendron entered the Court, entered a plea of guilty to the entire indictment.  There's no agreement about what sentence he will receive.  There is certainly an expectation that he will receive a sentence of life without parole.  In fact, I believe Count 1 of the indictment requires a sentence of life without parole.

THE COURT:  Mr. Tripi, on behalf of the government, is the government engaged in any discussions with the state authorities as to what position, if any, the State of New York would take in the event the federal prosecution went forward seeking the death penalty?  Because, as I view it, there is another statutory act that comes into play theoretically, and that's the Interstate Agreement on Detainers wherein and whereby, since the defendant presumably will have been sentenced in the state proceedings, he has certain rights under that agreement.

The federal government does not have super power, so to speak, to set aside the State of New York's judgment of conviction.  So the question would then become what would

happen in relationship between the federal government and the State of New York as far as any subsequent federal sentence is concerned?

MR. TRIPI: So, if the question is: Have we had conversations about how the federal case will impact their sentencing --

THE COURT: No. The question is: How the previously imposed state sentence will be effectuated, and what that will do to the government's attempt to go forward with a death penalty case.

MR. TRIPI: Yeah. There have been -- there have been no discussions with the state in that regard, Your Honor. These prosecutions are, although, much like the defense, we were also there to observe the state plea proceedings.

These are -- these prosecutions are on two different tracks.

THE COURT: Would you not agree, though, that the Interstate Agreement on Detainers would have some bearing?

MR. TRIPI: Yes, and I'll address that, Judge.

You are correct, that in February, once Mr. Gendron is sentenced, that's when the Interstate Agreement on Detainers Act would kick in.

At that point, just like any other defendant similarly situated, who is sentenced in a matter, would have that right where there's a federal prosecution pending. This

case is no different than, for example, someone who's sentenced in New York State on a gun charge and there's a pending federal narcotics prosecution.  We handle those all the time.  When they come to federal court, they have, at that time, the agreement will kick in, and he will have to elect whether to effect his right to be in federal custody or waive that right.

And we intend to address that in this courtroom before Your Honor after his state sentencing, which is when that Interstate Agreement on Detainers Act would kick in.

So I don't think it's an issue for right now, but what I would --

THE COURT:  Well, it's an issue in -- in my trying to discern really how much time is going to be needed as far as future activity in this prosecution is concerned, but as a follow up to what you have stated as being in agreement with what I have discerned so far.

MR. TRIPI:  Only with respect to the Interstate Agreement on Detainers.

THE COURT:  I understand.

MR. TRIPI:  Okay.

THE COURT:  The typical situation that you referenced, a gun conviction in state court, a drug conviction in federal court, as I understand the law, when you have a state conviction followed by a federal conviction, or if you

have a federal conviction followed by a state conviction, normally one of two things happens:

There is an agreement by way of plea bargaining or understanding that the sentences in both will be concurrent, so they will run simultaneously.  If there is no such agreement, or one of the jurisdictions decides it does not wish to have that arrangement, the second conviction then would -- and the sentence would be consecutive to the first sentence.  And if that's the principle of law involved, as I think it is, under the Interstate Agreement on Detainers, the federal sentence, even if it was execution, would be consecutive to the state sentence of life.

Now, I know there is a provision and there's caselaw, because I've researched this, that would indicate the State of New York could waive its right to continue the sentence of the defendant, and turn the defendant over to the federal authorities, and allow the federal authorities to then carry out their judgment of conviction and sentence.

My main point is, is I don't see the necessity for having a lot of time spent on going through discovery materials, the search warrants, the digital accounts, and so forth, that relate solely to the factual substantive issues and charges to which the defendant has pleaded guilty.  As I see it and discern it, the issue now for the defense, and as I understand it, is to focus on mitigation as to why there

should not be a federal death sentence.  Am I correct in that?

MS. ZOGHLIN:  That is certainly one of our focuses, yes, Judge.  We're also though required to investigate all aspects of the case, including reviewing all of the discovery.

MR. TRIPI:  And, Judge, if I can just circle back to one of the things you first said, if I heard it correctly.

First, as to your last question, I don't have an answer for you today on the legal ramifications.  So that would -- I can't answer that question as I sit here right now as to the consecutive nature of the sentencings and how it would impact.  I would have to research that, so I can't answer that question accurately today.

But as to your earlier statement regarding -- I think you said there's a potential that the state's conviction would essentially moot the federal prosecution.  I just wanted to say, and maybe that wasn't the right choice of words --

THE COURT:  No, I didn't phrase it that way.  I said it has the possibility of holding it if the government were to decide it was not going to pursue a death penalty, the best they could accomplish is a sentence of life imprisonment without parole, which is what has already been imposed.

MR. TRIPI:  Yes.

THE COURT:  Because a human being, at least up to this point, has only one life as we know it.  It would be moot.

MR. TRIPI:  To that extent under that hypothetical.

THE COURT:  That's what I was saying.

MR. TRIPI:  I was going to say they're separate sovereigns and all that, but I misunderstood your statement. So --

THE COURT:  So I'm back to my original focus, and that is why do we need to spend a lot of time on the issue of substantive questions of guilt when he's already admitted guilt to all of the charges that are in the state indictment, which mirror, to a very, very substantially large extent, those in this federal indictment?  And that the time now, I would imagine, would be one to focus on the defense preparing a mitigation defense to address the issue of the government's study and discerning whether it was going to seek the death penalty.

MR. TRIPI:  Judge, we consented to the request, so we --

THE COURT:  Well, that doesn't -- that doesn't bind me.

MR. TRIPI:  I understand.  So, I'm saying for the benefit of defense counsel we do consent, because we discussed it.  However, you are correct, in that --

THE COURT:  Thank you.

MR. TRIPI:  -- part of --

It's always a good way to start your argument,

right, Judge?

There is a focus on mitigation. And without getting into the internal deliberative process of the department on that regard, a meeting is scheduled for shortly after the holidays along those lines. I think I can say that much to Your Honor.

And, so, part of -- part of, I think, the defense request here is an additional bit of time to go through some of that information to make a presentation. And I will say, too, the -- you know, there -- there was -- I will -- this is probably the most discovery that we've ever turned over in a case that I've been involved in. And I've had some complex RICO cases with multi defendants. But to the -- so, there is a lot.

But, to Ms. Zoghlin's point, there's a lot to go through. And I think that mitigation presentation obviously is highly important for them, in addition to the underlying facts of the case.

So that's why we consented this time. Next time, I -- I told the defense, when we come back in 90 days, we'll be asking for -- we will be asking for a scheduling order.

But we agreed that given the volume of the material and the fact that that mitigation pres -- the initial mitigation presentation has not yet occurred, I thought it prudent on our part to agree to give them that extra time this

time around, if that makes sense.

THE COURT:  I'm not criticizing anybody for their carrying out their responsibilities, both the government and the defense counsel.  I'm just trying to put this thing in what I see as the perspective that it needs to be put in.

I also wanted to emphasize for the record and for enlightenment, for want of a better term at the moment, to the members of the public and members of the families of the victims.  Oftentimes, attorneys -- attorneys for the government and attorneys for the defense -- lose sight of the concept of the Speedy Trial Act by thinking that it's just something that applies to the two parties, the prosecution and the defense.  It does not.

And caselaw, especially caselaw from the 2nd Circuit Court of Appeals, which is quite expressive, clearly establishes that the Speedy Trial Act, and a provision for a speedy trial under the Constitution of the United States, also confers third-party rights on the members of the public.  The public has a right to have speedy dispositions of criminal matters that are brought.

And, so, it's in that context that I also have an obligation when doing these scheduling steps to enforce the rights of that public.

Now, I am thankful that you have made that disclosure of there being a process where there will be a mitigation

conference schedule.  And for the benefit, once again, of the public, as part of this potential death penalty prosecution, the procedures establish that the defense has a right to make a presentation to the Attorney General and representatives of the Department of Justice as to why the government should not seek a death penalty.  And that's what is commonly referred to as the mitigation part of the defense, to mitigate against a death penalty prosecution.

So, at least now, it's become apparent to me for the first time that there is that process now underway.

MR. TRIPI:  Yes, Your Honor.

THE COURT:  All right.  And, obviously, I'm not going to interfere with that process because that's going to move this matter along.

And as I've understood it, counsel, you and government counsel have now agreed to a period of 90 days for that first step?

MS. ZOGHLIN:  The period of 90 days, in my view, Judge, would be for us to continue to review the discovery and then to report to the Court about the status of that review.

I would like to -- to comment just a bit on the Court's observations earlier in terms of Mr. Tripi's statements.

In terms of the meeting, I just wanted to be clear, we're talking about a meeting with -- with the government

locally, not a meeting with --

THE COURT:  With the Department of Justice?

MS. ZOGHLIN:  Correct.

THE COURT:  Oh.

MS. ZOGHLIN:  So this would be the, as I understand it, the preliminary step.

In terms of the Court's observation about our mitigation investigation and my response that we also have an obligation to review all aspects of the case, I can say, as I said at Mr. Gendron's arraignment, that it is still our hope to resolve this matter short of a trial.  And just as Payton Gendron entered a plea of guilty to the indictment in county court, he is prepared to enter a plea of guilty in federal court in exchange for the same sentence, which is -- would be a sentence of life imprisonment without parole.

THE COURT:  Which is what I presume.

MS. ZOGHLIN:  I just wanted to clarify, Judge.

THE COURT:  All right.

MR. TRIPI:  And, Judge, that meeting is with the U.S. Attorney and the Associate Attorney General for the Civil Rights Division.  So it's a DOJ meeting, it's not Washington, DC.

After that, there might be a later opportunity for them to travel to Washington DC and meet with some other folks.  But this one is certainly with DOJ representatives,

the U.S. Attorney and the Associate Attorney General for civil rights.

THE COURT:  Well, my understanding based on prior experience, there is a formal meeting which the defendant's attorneys can attend with the Attorney General or his designated representative on the death penalty question issue as part of the mitigation process.  In other words, they make a formal presentation.

MR. TRIPI:  It's a multi-step process, Your Honor.

THE COURT:  Right.

MR. TRIPI:  The initial one happens with the U.S. Attorney, and the --

THE COURT:  Because this is for the indictment -- I'm sorry, I should not be overlapping the court reporter.  This is where the indictment originated.

MR. TRIPI:  Right.

THE COURT:  And the U.S. Attorney is the government's attorney for the Western District of New York.

MR. TRIPI:  Right, as well as the Associate Attorney General on this indictment.

THE COURT:  Right.  But ultimately, the final decision has to be made by the Attorney General of the United States or his designated representative.

MR. TRIPI:  That initial presentation is also important, because that precedes recommendations that flow

down the line.

THE COURT:  So in doing your review, then, for the next 90 days, is it your hope that you will have finished then what needs to be done, and that you'll be ready to go into that first step of mitigation?

MS. ZOGHLIN:  I don't see the two as necessarily connected, Judge.  We're certainly reviewing all of the discovery, some of which does have to do with mitigation.  But it's -- I'm not able to tell you at this point where we will be in that review in 90 days.

THE COURT:  All right.  I guess -- I guess where I'm having difficulty is understanding why it would be necessary to spend a lot of time reviewing the facts relating to the heinous acts that were committed by the defendant, when the defendant has admitted guilt to those acts, both the homicides and the hate crimes.

MS. ZOGHLIN:  I -- I understand that observation, Your Honor.  And I would say that, as I've said, he is prepared to do the same here.

But in the event that, you know, obviously the ball is in the government's court in that respect.  And as long as this case proceeds, we do have an ethical obligation to review all of discovery the government has provided, and not take anything for granted.

THE COURT:  I'm not trying to disagree with you or

disrupt your obligations. I'm trying, though, to be practical in the sense of setting schedules.

It would seem to me that if the case were to go to trial on the charges in the indictment on the federal side, it would be a very simple fast trial from the government's perspective, they would get a transcript of the plea procedures, the plea colloquy that would have been conducted in the State of New York court when the defendant through what is, what I'll call as we do in federal court, the Rule 11 colloquy, wherein and whereby he admitted guilt to each and every one of the counts of the state indictment as admissions. The government would rest.

So I guess it's in that context I am having difficulty understanding why a substantial amount of time needs to be utilized in reviewing evidence that would relate to the substantive charges. I certainly understand why a substantial period of time may be necessary for the defense to prepare a presentation and argument and defense of mitigation, that is, why the defense claims the federal government should not seek the death penalty. They're two separate things.

MS. ZOGHLIN: The government indicated in its letter to us transmitting the discovery that it intends to use or at least reserve the right to use all of the evidence that they've provided to us at trial. We so we can't possibly not review it and prepare for them to do that. I don't know how

they'll choose to proceed, but that's the information that they've provided to us at this point.

THE COURT:  Can you offer any clarification on that, Mr. Tripi?

MR. TRIPI:  It's an -- other than it's an accurate recitation of our letter, yes.  I mean, the discovery predated the state plea and all of that, but, yes, I mean, we reserve our rights to use all of the evidence that has been produced.

THE COURT:  And once again, for purposes of the record and for purposes of the public understanding what is a very complex legal situation at the moment, I'm not judging any of the issues of guilt, innocence, mitigation.  That's not my role.

But I do believe I can speak with some authority and expertise based on my own professional experience of having been the United States Attorney for the Western District of New York; having been a trial attorney in Washington, D.C. with the Department of Justice, Organized Crime and Racketeering Criminal Division; having been a defense attorney and a public defender in Washington, D.C.; and having been a trial attorney for 38 years in Buffalo; and having been a judge in this court for 22 and a half years.

So, I think I have at least some working knowledge of the system.

MR. TRIPI:  We agree with that, Judge.

THE COURT:  All right.  Realizing we have holiday season upon us, Hanukkah, the January season, I know there's holidays in January, there's holidays in December, today being December the 9th, it would take us to approximately March 10th, 2023, for another status report.

Now, if I grant that, I trust that would not interfere or cause a delay in the first step mitigation process.

MR. TRIPI:  Absolutely, it will not, Judge.  That first step, as you're calling it, is going to happen soon.

THE COURT:  All right.

MS. ZOGHLIN:  That date is acceptable to the defense, Judge.

THE COURT:  Okay.  Now, is it the position of the defendant that the time between now and March 10th, 2023, will in fact utilized in such a way so as to operate and inure to his benefit and, therefore, such time should be excluded for purposes of the time requirements set forth in the Speedy Trial Act, the Constitution of the United States, and any other statutory time requirements that might be applicable?

MS. ZOGHLIN:  It is, Judge.

THE COURT:  And, Mr. Tripi, on behalf of the government, is it the government's position that the time between now and March 10th, 2023, will operate in the interest of justice in this case and, therefore, such time should be

USA v Payton Gendron - Status Conference - 12/9/22    20

excluded for purposes of the Speedy Trial Act and the

constitutional provisions, and any other statutory time

requirements that might be applicable?

MR. TRIPI:  Yes, Your Honor.

THE COURT:  Based on the representations made by

counsel for the respective parties herein, I find that there

is a meritorious basis for adjourning this matter until

March 10th, 2023.  And further based on those representations,

I find that the time between now and that date will, in fact,

be utilized in such a way so as to operate and inure to the

benefit of the defendant, as well as operate in the interest

of justice in this case, in that such time is going to be

utilized to allow defense counsel additional time within which

to review the voluminous discovery material provided to them

by the government as part of their preparation in the

representation of the defendant so as to provide effective

assistance of counsel to the defendant, that being his

constitutional right, which right outweighs the public's right

or interest to a speedy trial or disposition in this matter.

Further, such time may be utilized by the parties for

the purpose of conducting pretrial negotiations with the

objective of reaching an agreement that will dispose of this

matter without the necessity of a trial.  And should that

objective be accomplished, the public will also benefit from

same in that it will be spared the cost and expenditure of

resources that would be necessitated in the holding of a trial and possible appeal.

For all of those reasons, then, the time is justifiably and validly excludable, and is hereby so excluded pursuant to and in accordance with the provisions contained in Title 18 of the United States Code, Sections 3161(h)(7)(A) and 3161(h)(7)(B)(iv).

And, Mr. Tripi, will you provide an order of exclusion to that effect, please?

MR. TRIPI:  I will, Your Honor.

And I'd also like to add that the provisions of Title 18, United States Code, Section 3161(h)(1)(D) also apply, because there are two defense motions pending, one with respect to the Jury Service and Selection Act, and one with respect to the defense request for a protective order relating to pretrial detention materials.  Those are before Your Honor, as well.

THE COURT:  Are they in the form of motions or just requests?

MR. TRIPI:  Those are in the form of motions that are -- those are still before you.

THE COURT:  All right.  Yes.  Those motions, having been filed on behalf of the defendant, automatically cause the provisions contained in Title 18 of the United States, Code Section 3161(h)(1)(D) to become operative, namely that filing

causes the speedy trial clock to stop and to remain stopped

until the motions have been resolved.

And the time does not count against the government.

MR. TRIPI:  Thank you, Your Honor.

THE COURT:  Anything else?

MS. ZOGHLIN:  No, thank you.

MR. TRIPI:  No, Your Honor.

THE COURT:  All right.  Thank you, everyone.

MR. TRIPI:  Thank you.  Judge, can you repeat the actual time for the appearance on March 10th?

THE COURT:  Oh, I --

THE CLERK:  10:30.

THE COURT:  10:30.

MR. TRIPI:  And I guess the last thing I'll note, there is one more thing, that date is after the anticipated state sentencing, so we will produce a writ to produce Mr. Gendron here, and on the 10th we'll have to deal with the Interstate Agreement on Detainers at that time.

THE COURT:  Right.  I'm anticipating the -- the issues will start to narrow down by reason of the fact that the state sentence will have been imposed, so we will not be hypothesizing, we will be acting on actual facts and knowledge.

MR. TRIPI:  But just -- we will plan on sending you a writ to have him produced --

THE COURT:  Right.

MR. TRIPI:  -- here to deal with those issues that day.

THE COURT:  Yeah.  There will be a writ of habeas corpus prosequendum.

MR. TRIPI:  Yes, Your Honor.  Thank you.

(Proceedings concluded at 11:35 a.m.)

                          *    *    *

**CERTIFICATE OF REPORTER**

          In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York on December 9, 2022.

                          s/ Ann M. Sawyer
                          _____
                          Ann M. Sawyer, FCRR, RPR, CRR
                          Notary Public
                          Official Court Reporter
                          U.S.D.C., W.D.N.Y.