IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                                                                22-CR-109-V

PAYTON GENDRON,

                Defendant.

---

### RESPONSE IN OPPOSITION TO DEFENSE MOTION TO MODIFY THE PROTECTIVE ORDER AND GOVERNMENT'S CROSS-MOTION TO ENFORCE AND MODIFY THE PROTECTIVE ORDER

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys, and Laura B. Gilson, Trial Attorney, Civil Rights Division, hereby submits this Response to Defendant's Motion to Modify the Protective Order, *see* Doc. No. 54, and hereby cross-moves to enforce and modify the Protective Order, and further requests the Court to conduct an in camera review of disclosures the defense has made to third parties to date.

### FACTS

As relevant to the instant motion, the government conducted a robust investigation into the racially motivated mass shooting of Black people by Payton Gendron on May 14, 2022, at the Tops supermarket on Jefferson Avenue in Buffalo ("Tops"). Since moments after that heinous crime, the government has worked diligently within the confines of the law to investigate and prosecute this case. The government is committed to continuing to

pursue justice in this criminal case by vindicating the substantial federal interest arising from this horrific mass shooting.

Prosecutors, including the Attorney General of the United States, the Associate Attorney General, the Assistant Attorney General for Civil Rights, and the United States Attorney for the Western District of New York have met with the surviving victims and their families to provide support, explain the federal criminal process, and to reassure them that this prosecution will be fair, just, and conducted with the utmost concern for the memories of the victims. Members of the prosecution trial team have had numerous follow-up meetings and conversations with the victims' families and surviving victims. In those meetings, prosecutors have explained federal court proceedings and the differences between criminal and civil proceedings.

The government has balanced its duties towards the victims' families and surviving victims with their obligations to the defendant. In striking that balance, the government has produced discovery well beyond what the law requires at this time under the terms of a *mutually agreed upon* protective order. See Doc. No. 27. In producing more discovery than the law requires at this time, including grand jury testimony, subpoena responses, and search warrant returns, the government intended to expedite this prosecution in order to ensure that there is not undue delay in the processing of this case, to demonstrate the strength of the evidence against the defendant, and to enable the defense team to have meaningful conversations with the defendant about how to defend against the charges against him.

Concomitantly with the government's production of voluminous discovery, the government and the defense negotiated a protective order that allowed the parties to share the information with the state prosecution and defense teams. *See* Doc. No. 27. The government's agreement to share the volumes of evidence it acquired with the state prosecution and defense teams undoubtedly contributed to the prompt guilty plea and sentencing in state court.

The Protective Order defines the defense team as "federal and state defense counsel of record, and any individuals working on this matter in collaboration with or under the supervision of federal and state defense counsel[,]" and prohibits disclosure of "discovery materials or their contents, directly or indirectly, to any person outside of the defense team, except as specifically set forth below." *Id.* at page 2, ¶ 5. The Protective Order further states that "[d]efense team members may review the discovery materials with potential witnesses and their counsel for purposes of defense and trial preparation, provided that the potential witnesses and their counsel may review the materials only in the presence of a defense team member and may not take notes regarding the content of any of the discovery materials." *Id.* at page 2-3, ¶7.

The Protective Order does not allow for the defense team to review the discovery materials with civil attorneys for the purpose of investigating and preparing civil lawsuits. Contrary to defense claims, the Protective Order does not permit "the victims and/or their counsel . . . to review all the discovery provided to the defense team, under the terms of the existing Protective Order[.]" *See* Doc. No. 54 at page 1. Notwithstanding the plain terms of the Protective Order limiting review of the discovery materials for purposes of defense and

3

trial preparation, the defense incorrectly asserts that the Protective Order permits civil attorneys to review criminal discovery to investigate civil lawsuits.

Notably, most of the deceased victims' family members were not present at Tops on May 14, 2022. Further, the defense has not asserted that providing access to the information contained in the defendant's phone, computer, or in the voluminous social media accounts to the deceased victims' family members would be helpful to prepare the criminal defense of their client. Accordingly, there is not an articulable proper basis to provide this discovery to the civil attorneys.

The government has met with the civil attorneys representing some of the victims in order to explain why their request for access to the protected criminal discovery, including material obtained through the federal grand jury process, cannot be produced during the pendency of the federal criminal case. In addition to meeting in person, the government also responded in writing to civil counsel on two occasions. *See* **Exhibit A** attached. As counsel for the defendant and the civil attorneys for the victims' families know, civil discovery is governed by separate discovery rules and procedures.

## **ARGUMENT**

The defense motion should be denied because: (i) the defense has failed to establish good cause to modify the Protective Order that the government relied upon; (ii) violations of the Protective Order have already occurred; (iii) the federal grand jury is not a tool for investigating civil lawsuits; and (iv) the government has complied with the Crime Victims' Rights Act pursuant to Title 18, United States Code, Section 3771.

> **A.      The Defense has Failed to Establish Good Cause to Modify the Protective Order that the Government Relied Upon.**

The government negotiated the Protective Order in good faith and relied upon it when it disclosed discovery beyond what federal law requires at this time. The defense's motion—which is both unprecedented in its requested relief and unsupported by caselaw—wholly fails to establish good cause to modify the Protective Order and therefore the motion should be denied.

In order to modify a protective order, the Court should require the defendant to establish good cause. "The Second Circuit has not directly addressed the meaning of 'good cause' in the context of modification of a protective order in a criminal case." *United States v. Evans*, No. 17 Cr. 684, 2021 WL 1535054, at *1 (S.D.N.Y. Apr. 18, 2021). However, courts within the Second Circuit "have generally applied the same standard that exists in civil cases." *Id.* (citing *United States v. Maxwell*, No. 20 Cr. 330, 2020 WL 5237334, at *1 n.2 (S.D.N.Y. Sept. 2, 2020) (collecting cases)). In civil cases, there is a "strong presumption" against modifying a protective order where, as here, the parties to the protective order reasonably relied on it. *United States v. Calderon*, No. 15 Cr. 25, 2017 WL 6453344, at *3 (D. Conn. Dec. 1, 2017) (citing *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001)). "That presumption can be overcome only if there is a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *United States v. Ngono*, No. 16 CR. 367 (PAC), 2021 WL 2850626, at *3 (S.D.N.Y. July 8, 2021) (quotation marks and citations omitted).

The government relied upon the Protective Order when it agreed to provide discovery that "far exceeds what is required under federal law." *See* Doc. No. 25 at page 3. As the government explained to this Court, the discovery "comes in various formats and incudes sensitive, graphic, and private materials," including "grand jury materials." *See id.* Those materials, whether in the form of information contained in the defendant's phone, computer, or in the numerous social media accounts subpoenaed by the government, contain personally identifiable information (PII) such as Social Security numbers, dates of birth, addresses, financial account numbers, and other personal identifiers of many people—not just the defendant and his immediate family. Neither the defendant, his attorneys, nor civil attorneys pursuing civil lawsuits have the authority to usurp the privacy interests of many people whose private information was acquired during the course of the grand jury investigation.

The defense motion does not proffer any claim that the Protective Order was improvidently granted or that it should be modified so they can prepare a defense. Indeed, given the fulsome discovery that the government provided, it is hard to imagine how the defense could credibly make such a claim, and, moreover, the defense has not even attempted to articulate any such need in its motion. Based upon the foregoing, the logical inferences indicate that this defense motion is an attempt to distract from the facts of the case, potentially influence the government's death penalty decision, and to create mitigation evidence.

As stated above, the defense motion is unsupported by caselaw and unprecedented in its requested relief. Although there are no pending civil lawsuits, the law is clear that criminal cases take priority over civil cases. It is well-settled that a court "can exercise its discretion to manage civil litigation to avoid interference with a criminal case." *See Degen v. United States*, 517 U.S. 820, 827 (1996). In *United States v. Kordel*, 397 U.S. 1 (1970), the Supreme Court noted that courts have stayed civil proceedings until related criminal cases are completed "when the interests of justice seemed to require such action." *Id.* at 12 n.27; *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket[.]"); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action.") (internal citations omitted). Courts have recognized that the risk that civil discovery will be used to circumvent criminal discovery limitations becomes much greater where, as here, the same facts are at issue. *See S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (granting a stay of discovery because the same facts underlie the criminal and civil cases); *see also S.E.C. v. Downe,* No. 92 CIV. 4092 (PKL), 1993 WL 22126, at *13 (S.D.N.Y. Jan. 26, 1993) ("Where a party or witness in a civil case is cooperating with a grand jury investigation relating to the subject matter of the civil suit, there is a compelling reason to stay discovery of the civil case pending resolution of the criminal investigation."). Courts take these steps because "[a]llowing civil discovery to proceed would likely afford defendants access to evidence to which they are not entitled under the criminal discovery rules and, thereby, prejudice the proceedings." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74–75 (W.D.N.Y Sep. 12, 2003) (stay of civil discovery pending presentation of evidence in criminal case was appropriate) (Schroeder, J.).

The defense has not even attempted to articulate good cause for why they need the protective order modified. Thus, the defense has unquestionably failed to establish good cause to modify the Protective Order because: (i) the government relied upon the Protective Order to provide early voluminous discovery; (ii) the concerns justifying the Protective Order remain while this federal criminal case in pending; (iii) there is no basis to modify the Protective Order for the defendant to prepare his defense or sentencing mitigation; (iv) the defense request to modify the Protective Order to grant civil counsel access to criminal discovery is unprecedented and unsupported by legal authority and (v) criminal cases take priority over civil cases. Accordingly, the motion to modify the Protective Order should be denied.

**B.     The Defense Motion Indicates Violations of the Protective Order Have Already Occurred.**

The defense motion, on its face, indicates that violations of the protective order have already occurred. The Protective Order has a narrow exception within it, which permits that "[d]efense team members may review the discovery materials with potential witnesses and their counsel *for purposes of defense and trial preparation*, provided that the potential witnesses and their counsel may review the materials only in the presence of a defense team member and may not take notes regarding the content of any of the discovery materials." *See* Doc. No. 27 at page 2-3, ¶7 (emphasis added). Thus, there is *no* exception under the existing order that permits the defense to make criminal discovery available to civil attorneys investigating civil lawsuits.

Notwithstanding this, the defense motion makes clear that while defense counsel may not have allowed civil counsel to copy the criminal discovery, they have failed to abide by the Protective Order's strictures and instead have allowed civil counsel access to the discovery in order to further their civil lawsuits. *See* Doc. 54 at page 4 ("Since the issuance of the Protective Order Governing Discovery, legal counsel for several victim witnesses have sought to review limited discovery materials consistent with the terms of the Protective Order Governing Discovery, i.e., in the presence of a defense team member and without taking notes."). The defense motion thus articulates that civil counsel's access to the criminal discovery material has been at the request of civil counsel, not at the request of defense counsel in preparation for any defense or trial.[1] Therefore, defense counsel in their motion patently admit they have violated the Protective Order by providing access to discovery for civil attorneys to prepare lawsuits.[2]

---

[1] Any attempt to claim otherwise appears highly suspect when the defense has repeatedly stated to this Court that they cannot discuss a scheduling order because they have not reviewed all of the discovery. Given the defense's claimed inability to review the discovery to the point where they have been unwilling to even discuss a scheduling order, coupled with their assertion that the data relating to social media accounts, etc., "cannot be practically reviewed without extensive forensic processing," *see* Doc. No. 54 at page 5, it is dubious that the defense has reviewed volumes of social media accounts with the victims' family members, survivors, or their civil attorneys "***for purposes of defense and trial preparation***," as authorized by the Protective Order. *See* Doc. No. 27 at page 2-3, ¶ 7 (emphasis added).

[2] The government had been previously informed that civil attorneys were allowed by the defense team to view the discovery index the government provided with the criminal discovery. After that occurred, the government advised both the defense and the civil attorneys that the civil attorneys were not permitted to view the discovery pursuant to the terms of the Protective Order to further their civil litigation. The government was not previously aware that civil attorneys were shown the actual discovery by the defense team. As a result, the government does not know how many times the defense has provided access to discovery to civil attorneys, or the extent of what they have disclosed.

9

Further, the civil attorneys have acknowledged that defense counsel have already permitted them to view the criminal discovery to prepare civil lawsuits. The civil attorneys have both told the government that they want criminal discovery materials to prepare civil lawsuits, and they have repeated that publicly in local media. *See Attorneys for families whose loved ones were killed May 14 want better access to evidence*, The Buffalo News, https://buffalonews.com/news/local/crime-and-courts/buffalo-mass-shooting-families-lawsuits/article_0a523b86-deb4-11ed-9fa7-33fa5d1ceaf2.html ("Buffalo attorney John V. Elmore . . . said that according to the order, he can view the evidence only while at the federal public defender's office. 'You can't take notes. We're not allowed to take notes,' . . . Those restrictions have made it difficult to prepare any lawsuits, the attorneys said. 'That protective order has impeded our progress,' Elmore said. 'We are hopeful that the government will reconsider and share the evidence with the families,' [Terrance] Connors said.") (April 20, 2023). Not a single word, publicly or privately, formally or informally, by the defendant's attorneys or the civil attorneys has been about the defense team giving civil counsel access to these materials so that the defense team can prepare a defense or for trial.

Before showing civil attorneys any of the criminal discovery produced by the government to help them prepare civil lawsuits, defense counsel should have asked the Court for permission. As set forth in the Protective Order, "Defense counsel shall not disclose any discovery materials to a third party ***unless this Court, having considered the privacy and security interests of victims and witnesses,*** determines there is good cause for the disclosure." *See* Doc. No. 27 at page 3, ¶ 9 (emphasis added). By their own admission, the defense did not seek Court permission, and did not establish good cause, prior to disclosing the discovery to civil attorneys.

10

Defense counsel's noncompliance with the Protective Order and failure to seek Court permission before disclosing discovery material to a third party for prohibited purposes casts doubt on defense counsel's assertion that if the Court granted their request to modify the Protective Order that they would abide by the modified terms. *See* Doc. 54 at page 5. Indeed, the very opposite appears true, given that defense counsel has already failed to abide by the Protective Order that they *mutually agreed* to. Should the Court agree to modify the Protective Order, the government fears that further violations of the protective order could occur.

Based upon the foregoing, the defense has violated paragraphs 7 and 9 of the Protective Order. Given their inability to comply with the existing terms of the Protective Order, their motion to modify it should be rejected.

### C. The Federal Grand Jury is not a Tool for Investigating Civil Lawsuits.

The purpose of a federal grand jury is to determine "whether there is an adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51 (1992). The grand jury has nationwide subpoena power. *United States v. R. Enters., Inc.*, 498 U.S. 292, 297-302 (1991). Rule 6(e) of the Federal Rules of Criminal Procedures imposes strict secrecy requirements and carefully proscribes how grand jury information is disclosed. In particular, Federal Rule of Criminal Procedure 6(e)(2)(B) requires grand jury secrecy and precludes certain individuals, except witnesses who testified before the grand jury, from disclosing matters occurring before a grand jury. The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979). The

11

tradition of grand jury secrecy "is 'older than our Nation itself.'" *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (quoting *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973)). And the reasons for grand jury secrecy are well-worn: among other things, the rule of grand jury secrecy "prevents the escape of those whose indictment may be contemplated"; "prevent[s] subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it"; and, "protect[s] [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 n.61 (1958) (quotation marks omitted).

Here, grand jury subpoena responses from social media companies comprise a portion of the discovery the government produced. Indeed, much of the responsive material sought under the "social media" umbrella would identify, or tend to identify, other people who played no part in the defendant's crimes. Keeping with well-established grand jury secrecy principles, it is improper to use federal grand jury materials simply to tee up civil lawsuits. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 432 (1983) ("use of grand jury proceedings to elicit evidence for use in a civil case is improper *per se*."). Because a federal grand jury may not be used as a tool to investigate civil lawsuits, defense counsel should not be permitted to act as a pass through to transmit information to civil attorneys.

Accordingly, the defense motion to modify the Protective Order should be denied.

D. **The Government has Complied with the Crime Victims' Rights Act.**

The government's obligations to the victims' families and survivors are set forth in the Crime Victims' Rights Act ("CVRA"). *See* 18 U.S.C. § 3771(a)(1)-(10). The CVRA

provides victims, among other things, the right to be reasonably protected from the accused; to be notified of court proceedings; not to be excluded from court proceedings; to confer with the attorney for the government; and to be treated with fairness and with respect for the victim's dignity and privacy. *See id.* The government takes these obligations seriously and has complied with them.

The government remains steadfast in its desire to pursue justice in order to vindicate the substantial federal interest arising from this horrific mass shooting and to honor the memory of the victims. The government is equally committed to upholding the rule of law and ensuring that nothing interferes with its ability to pursue justice. As a result, consistent with well-established precedent set forth above, this criminal case takes priority over any pending or potential civil lawsuits arising from the facts of this mass shooting. It will be impossible to keep sensitive information properly secured until trial once it is used in civil lawsuits.

Finally, the defense tactics appear unprecedented, as their motion fails to identify any case law to support their position. The Department of Justice's ordinary discovery practices, adherence to ethical rules related to pre-trial publicity, and desire to protect the integrity of this prosecution are the government's overriding concerns.

Accordingly, the motion to modify the Protective Order should be denied.

### GOVERNMENT'S MOTION TO ENFORCE COMPLIANCE WITH THE PROTECTIVE ORDER PENDING RESOLUTION OF THE DEFENDANT'S MOTION TO MODIFY THE PROTECTIVE ORDER

As set forth above, the government turned over its evidence in the criminal case to defense counsel with the understanding that defense counsel would comply with the terms of the Protective Order and not disclose any materials to any third party or entity unless specifically authorized by the Protective Order. There is no provision of the Protective Order that allows the defense team to share the government's evidence with any third party for any reason other than for the purposes of defense and trial preparation, and thus there is no provision allowing the defense to share that evidence with the victims, victims' families, or their attorneys in connection with the preparation of a civil lawsuit. Nevertheless, with the filing of defense counsel's motion to modify the Protective Order, the defense made clear that it has been allowing civil attorneys access to the protected criminal discovery. *See* Doc. 54 at page 4 ("Since the issuance of the Protective Order Governing Discovery, legal counsel for several victim witnesses have sought to review limited discovery materials consistent with the terms of the Protective Order Governing Discovery, i.e., in the presence of a defense team member and without taking notes."). Defendant's motion thus highlights his counsel's non-compliance. The Protective Order not only articulates *how* the criminal discovery can be reviewed, but also for *what purposes* it may be reviewed—for the purposes of defense and trial preparation, period.

This Court has complete authority to enforce its Protective Order. Fed. R. Crim P. 16(d) (providing that "[i]f a party fails to comply with this rule, the court may . . . enter any other order that is just under the circumstances."). As set forth above, the government contends that that the defense has violated paragraphs 7 and 9 of the Protective Order, and

14

that to continue to allow the defense to disclose and share the government's evidence with the civil attorneys in furtherance of civil lawsuits could cause irreparable injury to the integrity of the pending criminal case.

The balance of equities heavily favors the government. *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also* Fed. R. Crim. P. 16(d).  The government has a duty to ensure that the defendant receives a fair trial, and the government is entitled to conduct its criminal investigations without worrying that the evidence it gathers will be made public before it is appropriate to do so.  By contrast, the defendant's attorneys can show no tangible harm from the Court granting temporary relief maintaining the previously agreed upon status quo.  A criminal defendant has no statutory or constitutional right to share evidence with his victims' families' civil attorneys, and defense counsel has not identified any way in which sharing evidence is necessary to their effective representation of the defendant.  Similarly, the civil attorneys can follow the normal procedures to obtain civil discovery: file a lawsuit and obtain civil discovery from the parties they sue.  The public interest is served only by enforcing the protective order as written.  The defense team's disclosures and sharing of the government's evidence must cease immediately until the Court has the opportunity to decide motions pertaining to this Protective Order.

Accordingly, the government requests that this Court enter an order without permitting the defendant to respond which maintains the previously agreed upon status quo, that is, that the Court should enter a Text Order pursuant to Rule 16(d) prohibiting the defense from providing further access of the criminal discovery to civil attorneys, or any other third

parties until the defendant's motion and the government's motions set forth herein are decided.

**GOVERNMENT'S CROSS-MOTION TO MODIFY THE PROTECTIVE ORDER**

Because the defense has violated paragraphs 7 and 9 of the Protective Order, as set forth above, there is good cause for the Court to modify the Protective Order. In particular, the Court should add the following additional restriction:

1. The discovery provided pursuant to this Order shall not be disclosed to anyone for use in any civil proceedings.

Additionally, the government respectfully requests that the Court require the defense team to provide written certifications to the Court for its in-camera review with respect to all third parties who have already been provided access to discovery and further to require the defense team to describe to the Court what specific discovery materials have been disclosed to third parties.

**CONCLUSION**

The Court should deny the defendant's motion to modify the Protective Order; grant the government's motion to enforce the Protective Order pending determination of the motions; grant the government's cross-motion to modify the Protective Order; require the defense team to provide written certifications to the Court for its in-camera review with respect to all third parties who have already been provided access to discovery; and require

the defense team to describe to the Court what specific discovery materials have already been disclosed to third parties.

DATED: May 4, 2023
Buffalo, New York

| | |
|---|---|
| KRISTEN M. CLARKE<br>Assistant Attorney General | TRINI E. ROSS<br>United States Attorney |
| BY: s/ LAURA BLAKEMORE GILSON<br>Trial Attorney<br>Civil Rights Division<br>United States Department of Justice<br>950 Washington D.C  20530<br>(202) 598-1141<br>Laura.Gilson2@usdoj.gov | BY:   s/JOSEPH M. TRIPI<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, NY  14202<br>(716) 843-5839<br>Joseph.Tripi@usdoj.gov |
| | BY:   s/BRETT A. HARVEY<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>100 State Street<br>Rochester, NY  14614<br>(585) 399-3949<br>Brett.Harvey@usdoj.gov |