IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                                      22-CR-109-LJV-HKS

PAYTON GENDRON,

                Defendant.

## SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY THE PROTECTIVE ORDER AND REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S CROSS-MOTION TO ENFORCE AND MODIFY THE PROTECTIVE ORDER

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys, and Laura B. Gilson, Trial Attorney, Civil Rights Division, hereby submits this Sur-Reply to Defendant's Reply to Government's Response in Opposition to Defendant's Motion to Modify the Protective Order and Reply to Defendant's Response in Opposition to Government's Cross-Motion to Enforce and Modify the Protective Order.

In Defendant's reply brief, defense counsel pivot from their original stated purpose for seeking a modification of the Protective Order and now argue that they should be able to provide the civil attorneys representing the Defendant's victims' family members access to the federal criminal discovery in order to garner purported mitigation evidence or otherwise avert a death sentence for the Defendant. *See* Doc. 61 at 3. While the government agrees, in principle, that defense counsel have a responsibility to prepare a defense for their client for

each stage of any future capital trial, that duty does not extend to defense counsel giving civil attorneys copies of the criminal discovery for use in civil litigation, which—however assuredly worthy—is separate and apart from the criminal case. Moreover, in an attempt to defend against the assertion that they have not complied with the Protective Order, defense counsel conflate the Department of Justice's Death Penalty Protocol with the penalty phase of a capital case and misstate the process through which they are entitled to garner and present mitigation evidence on behalf of their client.

I. **DEFENSE COUNSEL STILL HAVE NOT MET THEIR BURDEN OF ESTABLISHING GOOD CAUSE TO MODIFY THE PROTECTIVE ORDER.**

In both Defendant's motion to modify the Protective Order and reply brief, defense counsel fail to provide any case law, or specify any valid reason, establishing good cause for the Court to modify the Protective Order. In their motion, defense counsel originally stated that the purpose behind their modification request was to enable the civil attorneys representing the victims' family members to obtain copies of portions of the criminal discovery in order to affirmatively advance their civil litigation. *See* Doc. 54 at 1 ("The purpose of this modest modification is to permit the victims, through their counsel, to retain certain limited, non-sensitive discovery material described herein, which counsel have indicated is potentially critical to civil litigation they are contemplating on behalf of the victims."). In response to the government pointing out that this stated purpose fails to establish good cause to modify the Protective Order,[1] defense counsel, in their reply brief, pivot and now argue that they are entitled to review the criminal discovery with civil attorneys who represent

---

[1] Further, to the extent that defense counsel has been showing the civil attorneys the criminal discovery for this purpose, such conduct violates the protective order. *See* doc. 57 at 5-11.

2

potential witnesses to prepare a defense for their client. Neither argument establishes good cause to modify the Protective Order.

It is well-established that defense counsel have a responsibility to review the criminal discovery with potential witnesses in preparation of their client's defense at any stage of any potential capital case. Indeed, the Protective Order expressly contemplates that defense counsel will do so. *See* Doc. 27 at ¶ 7 (stating that "[d]efense team members may review the discovery materials with potential witnesses and their counsel for purposes of defense and trial preparation . . ."). However, *reviewing* the criminal discovery with potential witnesses in the federal criminal case does not require *providing* those witnesses and their civil attorneys with copies of that discovery. If such action was required in a potential capital case, then defense counsel's request to modify the protective order would be supported by legal authority, which is noticeably absent from the defense motion and reply. The fact remains that the Protective Order, in its mutually agreed upon form, in no way hinders defense counsel's efforts to prepare a defense for their client at any stage of a potential capital case, and therefore the defense has failed to meet its burden of establishing good cause to modify the Protective Order.

II. **DEFENSE COUNSEL MISCHARACTERIZE THEIR ROLE IN BOTH THE JUSTICE DEPARTMENT'S DEATH PENALTY PROTOCOL PROCESS AND GARNERING MITIGATION EVIDENCE FOR ANY FUTURE CAPITAL TRIAL.**

In an attempt to defend against the assertion that they violated the Protective Order and to add legal legitimacy to their filing of a motion to modify the Protective Order on unprecedented grounds, defense counsel both conflate the Department of Justice's internal

executive process of determining whether to seek the death penalty against a defendant with the penalty phase of a capital case, and misstate the process through which they are entitled to garner and present mitigation evidence on behalf of their client.

      A.    *The Justice Department's Death Penalty Protocol process is an internal executive process that confers no right on a criminal defendant.*

In Defendant's reply brief, defense counsel argue that they have a right to facilitate victims' family members' civil attorneys' access to the criminal discovery so that those family members may "make an informed decision" when the government consults with them regarding the Attorney General's decision of whether to seek the death penalty. *See* Doc. 61 at 5. This argument is misplaced. The defendant has no cognizable right to participate in the government's death penalty review process, which is strictly within the province of the executive branch. In addition, though the government may—and here fully intends to—consider the victims' family members' views on seeking the death penalty during this internal process, these opinions are one of many factors the Department of Justice takes into consideration and are ultimately not admissible in capital sentencing hearings. *See Booth v. Maryland*, 482 U.S. 496, 508 (1987) (explaining that such testimony could "inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant"), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808 (1991).

As this Court is aware, in deciding whether to seek the death penalty in potential capital cases, the Department of Justice is guided by its "Death Penalty Protocol" ("the Protocol"). *See* U.S. Dep't of Justice, Justice Manual §§ 9-10.000 *et seq*. The Protocol is "part of DOJ internal policy that directs the exercise of prosecutorial discretion in capital cases."

*See United States v. Crusius*, EP-20-CR-00389-DCG, 2020 WL 4340550, at *4 (W.D. Tex. July 28, 2020). Though the Protocol contemplates input from defense counsel at multiple stages of the review process, it confers no cognizable rights upon a criminal defendant. *See United States v. Wilson*, 518 F. Supp. 3d 678, 683 (W.D.N.Y. 2021) (stating that the Department's Death Penalty Protocol "does not create substantive or procedural rights for a defendant") (collecting cases). Here, the government welcomes defense counsel's presentation of any mitigation evidence they have obtained for its consideration in the Protocol process, but defense counsel do not have a right to tell the government how to adhere to its own internal processes, and those internal processes certainly do not provide defense counsel with justification for violating the Protective Order.

> B. *Defense counsel have a responsibility to build a defense for the Defendant at the penalty phase, but that does not include utilizing civil attorneys to do so on their behalf.*

Defense counsel have a duty to conduct a reasonable mitigation investigation, which is "measured against an 'objective standard of reasonableness' 'under prevailing professional norms.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Here, defense counsel suggest that, to provide constitutionally adequate representation, they should be permitted not only to review discovery with witnesses in preparation for trial, but also to disseminate copies of the criminal discovery to the victims' families' civil attorneys who may then, in some way, act as a proxy for defense counsel and assist in developing mitigation information. Defense counsel cite no authority to support this unique claim, and the government is not aware of any such authority. It cannot stand, therefore, that prevailing professional norms require defense counsel to be allowed, despite

5

the terms of the mutually agreed upon Protective Order, to disseminate copies of criminal discovery to the civil attorneys.

## CONCLUSION

Based on the foregoing, the Court should deny Defendant's motion to modify the Protective Order; grant the government's motion to enforce the Protective Order pending the determination of Defendant's motion and the government's cross-motion; grant the government's cross-motion to modify the Protective Order; require defense counsel to provide written certifications to the Court for its *in camera* review with respect to all third parties who have already been provided access to discovery provided pursuant to the Protective Order; and require defense counsel to describe to the Court what specific discovery materials have been disclosed to third parties.

DATED: May 22, 2023, Buffalo, New York

| | |
|---|---|
| TRINI E. ROSS<br>United States Attorney<br>Western District of New York | KRISTEN M. CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| BY: s/JOSEPH M. TRIPI<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>(716) 843-5839<br>Joseph.Tripi@usdoj.gov | BY: s/LAURA B. GILSON<br>Trial Attorney<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street NE<br>Washington, DC 20530<br>202-598-1141<br>Laura.gilson2@usdoj.gov |
| BY: s/BRETT A. HARVEY<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>100 State Street<br>Rochester, New York 14614<br>(585) 399-3949<br>Brett.Harvey@usdoj.gov | |