UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Docket Number: |
| | | 22-CR-00109-LJV-HKS-1 |
| | * | |
| | * | Buffalo, New York |
| v. | * | February 16, 2023 |
| | * | 10:58 a.m. |
| | * | |
| PAYTON GENDRON, | * | STATUS CONFERENCE |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * *


CORRECTED TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:         TRINI E. ROSS,
                           UNITED STATES ATTORNEY,
                           By JOSEPH M. TRIPI, ESQ.,
                               BRETT A. HARVEY, ESQ.
                               LAURA BLAKEMORE GILSON, ESQ.,
                           Assistant United States Attorney,
                           Federal Centre,
                           138 Delaware Avenue,
                           Buffalo, New York  14202,
                           Appearing for the United States.


For the Defendant:         FEDERAL PUBLIC DEFENDER'S OFFICE
                           By ANNE M. BURGER, ESQ.,
                               SONYA A. ZOGHLIN, ESQ.,
                           Assistant Federal Public Defender,
                           28 East Main Street,
                           Suite 400,
                           Rochester, New York   14614
                           And
                           By MARYBETH COVERT, ESQ.,
                           Assistant Federal Public Defender,
                           300 Pearl Street,
                           Suite 200,
                           Buffalo, New York   14202.

The Courtroom Deputy:          SANDRA D. WILSON

The Court Reporter:          BONNIE S. WEBER, RPR,
                             Notary Public,
                             Robert H. Jackson Courthouse,
                             2 Niagara Square,
                             Buffalo, New York  14202,
                             Bonnie_Weber@nywd.uscourts.gov.


         Proceedings recorded by mechanical stenography,
                transcript produced by computer.


               (Proceedings commenced at 10:58 a.m.)


         THE CLERK:  All rise.

         The United States District Court for the Western District of New York is now in session.  The Honorable H. Kenneth Schroeder, Jr. Presiding.

         We're on the record, United States versus Payton Gendron.  Case Number 22-CR-109.  We're here for a status conference.

         Counsel, please state your name and who you represent.

         MR. TRIPI:  Joseph Tripi for the United States.  Good morning, Your Honor.

         THE COURT:  Good morning.

         MR. HARVEY:  Brett Harvey for the United States.  Good morning, Judge.

         THE COURT:  Good morning.

         MS. GILSON:  Good morning, Laura Gilson for the United

States.

**THE COURT:**  Good morning.

**MS. ZOGHLIN:**  Sonya Zoghlin for Payton Gendron.  Good morning, Judge.

**THE COURT:**  Good morning.

**MS. BURGER:**  Anne Burger for Payton Gendron, good morning.

**THE COURT:**  Good morning.  We're here for a status conference.

**MR. TRIPI:**  Yes, Your Honor.  I think I'll turn it over to the defense team to update the Court.  I -- I think they requested this status conference initially.

**MS. ZOGHLIN:**  That's correct, Judge.

**THE COURT:**  All right.

**MS. ZOGHLIN:**  As I'm sure the Court is aware, Payton Gendron was sentenced yesterday in Erie County to life in prison without parole.

He will serve that sentence in State prison.  He is in primary State custody.  However, because these -- this Federal matter is still pending, we are asking, pursuant to the Interstate Agreement on Detainers, that he remain temporarily in the custody of the United States Marshals while the Federal charges are pending.

**THE COURT:**  All right.  One, I do know that sentence was imposed in the State of New York proceedings against the

defendant.

The first question I have is has there been a formal written notice by the defendant requesting a final disposition of the indictment in this case --

**MS. ZOGHLIN:**  We have.

**THE COURT:**  -- pursuant to Article Three, Section 2A of the Interstate Agreement on Detainers.

**MS. ZOGHLIN:**  We have advised all the relevant parties, Your Honor, I think probably by e-mail, but we're having to put that in writing today.

**THE COURT:**  Well, as I understand the agreement -- the detainer agreement, formally, such a written request must be made to the prosecution and to the Court.

**MS. ZOGHLIN:**  We'll be sure to do that, Judge.

**THE COURT:**  And then I want to put everybody on notice, so the record is clear, that once that written notice is received, the clock starts running under the act or agreement.

Namely, the defendant is to be tried with 180 days of the delivery of his notice unless -- and I emphasize the following, good cause is shown in open court with the defendant or his attorney present, the Court may grant -- and I emphasize may, any necessary or reasonable continuance.

So if no notice has been served at this time, it would appear to me that the defendant has to be returned to State custody.

MS. ZOGHLIN: We'll serve it right now.

THE COURT: All right. And then we will need a certificate from the appropriate State official, who right at this moment technically has custody of the defendant under the State sentence.

That certificate being issued in accordance with the provisions of Article Three, Section 2A of the detainer agreement.

Then I would point out, so there is no doubt for the record, that under article four or subdivision C of the detainer agreement, the trial is to commence within 120 days after arrival of the defendant into Federal custody, unless -- emphasizing, once again, good cause is shown in open court with the defendant or his attorney present, the Court may grant any necessary or reasonable continuance.

Now, I emphasize this because I also want to set up some type of schedule that we can make sure this case continues to move and doesn't remain stagnant.

I'm assuming, unless I'm told otherwise, that the main thrust of the defense at this stage will be on the issue of a possible death penalty which needs to be decided by the Attorney General of the United States.

And based on prior representations made by defense counsel, it's my understanding that if the Government decides not to pursue the death penalty, the defendant is going to plead

to this indictment.

And that, of course, would then basically make these time provisions under the interstate agreement act moot.

If the Government is going to pursue the death penalty, based on my analysis and my experience, it would seem to me then the main focus is going to be on a trial with mitigation being the main and only issue to be resolved by a jury.

And if that's the case, a scheduling order with respect to time would seem to be somewhat shorter than the normal time period necessitated for review of thousands of pages or gigabytes or terabytes of electronic discovery materials, on the issue of guilt, since guilt is already established to similar charges in the State court proceedings.

Now, I know that the defense has been given materials from the time of the initial appearance in this court, going back to July 18, 2022.

And I know we have established a March date for the so-called completion of review of discovery materials, but what I would like to do -- and I'm not attempting to rush anybody, but as I've indicated, there is a third party beneficiary involved in this and that's the public.

The public has a right to a speedy trial and disposition in this matter is to keep this case on a reasonable track, where it will move expeditiously.

Now, is there any substantiative disagreement with what I have stated as far as what I see the situation to be legally?

**MR. TRIPI:** Judge, I don't -- I don't know if I would characterize it as a disagreement, but I refer the Court to perhaps look at -- maybe I'm wrong, but United States versus Mauro, it's 436 U.S. 340, 1978.

**THE COURT:** Hold on a moment, Mr. Tripi.

436 --

**MR. TRIPI:** 436 U.S. 340, 1978.  It is my understanding of that case that as a detainer has been filed, and we brought him here on a writ of habeas corpus ad prosequendum, that that qualifies as a written request, coupled with the verbal and oral request here to remain in Federal custody.

If you look at that, that might satisfy that prong, Judge.

And it's further been my experience and understanding that when defendants in other cases come to this courthouse in a similar fashion, and make the requests similarly to as it was made today, that has traditionally been sufficient to place them into Federal custody.

The overall agreement and Interstate Agreement on Detainers is to prevent the shuttling back and forth, right?

So he's here in Federal Court asking to remain in

Federal Court, in Federal custody, while his case is pending.

So I want to make sure that we honor that provision of the act and his request.

As to --

**THE COURT:**  Well, let me stop you --

**MR. TRIPI:**  I'm sorry.

**THE COURT:**  -- at least on that point.  If I'm correct in my recollection, that Mauro case that you're referring to, I think that issue that was raised in that case was whether there was timely action taken.

And that's when the Court ruled, well, the issuance of the writ was in essence a request to have this matter brought into Federal Court.

**MR. TRIPI:**  You're recollection may be correct, Judge. I just had the take away of holding it in my head and I don't have the facts handy.

**THE COURT:**  Okay.  Because -- and I hate to sound overly technical, but because of the serious nature of this case, I want to make sure the record is correct.

When a defendant is brought over on a writ or habeas corpus or a writ of habeas corpus, or a writ of prosecution, the normal language is that upon completion of the proceedings for which he has been brought, he will be returned to the appropriate authorities from which he has been brought.

And, normally, at least as you well know, Mr. Tripi,

in the number of cases that come in my court, to me that means he would go back to the State of New York.

MR. TRIPI:  I agree with you, Your Honor.  Most writs do say that.

This one, the last -- that sentence was modified. This one says he would return to State custody, unless he exercises his rights under the Interstate Agreement on Detainers to remain in Federal custody.

THE COURT:  Which brings me then back to the initial statement of have we received a written request from the defendant?

MS. ZOGHLIN:  Judge --

MR. TRIPI:  I do know the defense has office space in the Courthouse.  If you want the written request, we could do it in the next couple of minutes.

THE COURT:  Right.  And I'm not going to hold things up.  I just want to make sure that the T's are crossed and the I's are dotted.

MR. TRIPI:  I understand.  Perhaps if you could afford the defense a little bit of time to --

THE COURT:  I will, obviously.

MR. TRIPI:  And then, in terms of the timing, Judge, we have been proceeding in the manner that we laid out to you on December 9th, 2022, when you agreed to exclude time to March 10th, 2023, when we come back for status conference at 10:30.

And without getting into the weeds of the deliberative process involved, things have been progressing in that regard.

At least the meeting that we talked to you about happening has happened and we're moving forward.

**THE COURT:**  That's meeting with defense counsel and representatives of the Department of Justice?

**MR. TRIPI:**  That is correct.  It was a local meeting with the Assistant Attorney General's representatives.  The Assistant Attorney General and the U.S. Attorney has happened.

**THE COURT:**  Does it appear -- and I'm not trying to intrude or ask for disclosures, but that that has now set a second step, where there would be a meeting in Washington?

**MR. TRIPI:**  We're in the in-between phase of that.  So the meeting has happened; the -- there has been no next meeting scheduled.  I just don't know how much further I can go given the oversight.

**THE COURT:**  No.  I understand.  I understand.

And to the defense counsel, I'm not trying to pressure you in to having to make decisions here today in the sense of what it is actually being planned is, but am I correct in assuming that the main focus from this point on is mitigation?

**MS. ZOGHLIN:**  Judge, as I mentioned at the last Court appearance, the -- the ABA guidelines require us to do a thorough job regarding all of the discovery that's been provided and that's what we intend -- we intend to continue to do.

**THE COURT:**  Right.  And that's why we're going to have the March status report as to where you are in that discovery review.

**MS. ZOGHLIN:**  Correct.

**THE COURT:**  But as I indicated in one of the last appearances -- and I am only putting this out so I can at least create a scenario that we can all think in terms of legal objectives and legal requirements, the issue of guilt is now established.

The charges in the State of New York case mirror, as I understand it, pretty much the charges in the present indictment.

And that since the defendant went through the appropriate colloquy in the State Court proceedings, as we would do under Rule 11 of the Federal Rules of Criminal Procedure, if a defendant is entering a plea of guilty, that transcript of the record of that colloquy of that plea would seem to me would be, one, admissions by the defendant -- not seem to be, but legally constitute admissions as to the crimes themselves.

And that, two, the Government would undoubtedly just be able to read the transcript into evidence, if there were a trial on the issue of guilt.

And so I don't see the need for a great deal of time and effort being expended in that context, both by the prosecution and the defense, if the main objective is mitigation

as to the death penalty.

**MS. ZOGHLIN:**  As we discussed at the last court date, Judge, that the Government has filed notice indicating that they intend to use all of the discovery -- potentially all of the discovery that they have provided to us against our client, if there is a trial.

So -- so we do have to review all of it.  And where legal challenges lie, we will have to pursue them if the case moves in that direction.

**THE COURT:**  I understand.

Mr. Tripi, am I analyzing the Government's burden erroneously and -- and I say this, having been a former United States Attorney.

**MR. TRIPI:**  No.  Both things are accurate, Your Honor. Your observation of likely evidence is accurate, in terms of the transcript of State Court proceedings.

As well as the defense observation that there has been voluminous discovery provided to them, so both things are true.

And I don't want to say anything on the record here that would preclude us from utilizing anything.

**THE COURT:**  No.  That's not my intention.

**MR. TRIPI:**  So, yes.  I think both observations are accurate, both the Court's and the defense's.

**THE COURT:**  What I'm trying to do it in anticipation is to see if I can arrive at neutrally agreeable time periods

for an actual scheduling order, as far as motions or hearings might be concerned in this case.

**MR. TRIPI:**  It would be the Government's position that when we come back on March 10th, we'll be asking for that.

You know, we let the defense know, but we agreed, I guess, that the last appearance that we would report back -- both parties would report the respective positions.

If we have a disagreement at that time as to whether if the Government feels we're prepared to move forward with the scheduling order, which is going to be our position, and the defense disagrees, at that point it will be up to the Court.

But I also do think that that time -- at least until March 10th, was afforded to the defense and maybe we could table discussion of the scheduling order until March 10th, because that was initially the agreed upon course that we took back in December -- December 9th, if that makes sense.

**THE COURT:**  I agree.  And I want to once again make sure the record is clear.

When I set the March 10th date, 2023, for the purposes of a status conference as to where the defense is in reviewing the discovery materials, I excluded time for the purposes of the time requirements set forth in the Speedy Trial Act, as well as any other statutory time requirements that might be applicable, did I not?

**MR. TRIPI:**  You did.

**MS. ZOGHLIN:** Yes.

**THE COURT:** And the defendant agrees and continues to agree to that exclusion of time, at least up until March 10th, 2023.

**MS. ZOGHLIN:** That's correct.

**THE COURT:** But I want emphasize once again, we now have another rule by way of the Interstate Detainer Agreement or the agreement on detainers involving time.

And that is that under article four, subdivision C. The trial is to commence within 120 days after the arrival of the defendant in Federal custody, unless good cause is shown for reasons of necessity or reasonable reasons a continuance is granted.

So we're dealing with the time requirements in the Speedy Trial Act; the time requirements on the Interstate Agreement on Detainers, as well as the Sixth Amendment of the Constitution of the United States.

And I want to make sure everybody is keeping that in the forefront, so that we know that things have to be kept moving.

**MR. TRIPI:** Yes, Your Honor. And it's my understanding that your prior exclusion of time would cover the exclusion that you're talking about.

**THE COURT:** But it's going to be raised again on March 10th.

**MR. TRIPI:**  Right.

**THE COURT:**  That's when I emphasize the words additional time that is necessary, based on good faith.

**MR. TRIPI:**  Understood, Your Honor.

**THE COURT:**  Otherwise, the clock runs 120 days for a trial to commence.

I would anticipate the defense would be the one making the request for the continuance, so I guess my message today is be prepared on March 10th to start discussing a scheduling order and deadlines within that scheduling order.

**MR. TRIPI:**  We will, Your Honor.

**THE COURT:**  And anything else at this time?

**MR. TRIPI:**  No.  Just that if the Court was going to give a brief pause in the proceedings for the defense to craft their letter --

**THE COURT:**  Right.  I have you to give some guidance to the United States Marshals on that writ.

And what has the State of New York indicated as far as its willingness to turn the defendant over into Federal custody?

**MR. TRIPI:**  Well --

**THE COURT:**  I'm assuming there is no objection to it, but I'm not going to speak for the State of New York.

**MR. TRIPI:**  No.  That transfer of custody is prepared to happen today.

The Marshal service is ready to receive him and to

place him in Federal custody, so that's where we're at in terms of that.

THE COURT:  All right.  Once the United States Marshals Service takes the defendant into Federal custody, the Marshal service will then have to place him in a facility that will accept him.

And I know efforts are being made by the United States Marshal Service to complete that task.

MR. TRIPI:  As --

THE COURT:  I -- it may turn out that facility is not located in close proximity to this Courthouse.

MR. TRIPI:  I understand that from the Marshals, without saying the name of the facility, those arrangements are -- have been made.  That's my understanding.

THE COURT:  Has the defense been made aware of that?

MS. ZOGHLIN:  We have been in touch with the Marshal service, yes.  And, obviously, we're leaving that to their discretion and expertise.

I would like to just clarify a little bit more about the Interstate Agreement on Detainers.  First, we have just filed written notice with the Court and with the Government regarding our position on the interstate agreement.

THE COURT:  All right.  Let me stop you at that point. Let the record reflect that I have had handed up to me a handwritten page dated 2/16/2023, U.S. versus Payton Gendron.

Which states as follows:  Please be advised that Payton Gendron hereby exercises his right to be held in the custody of the United States Marshal Service until his Federal charges are resolved pursuant to the Interstate Agreement on Detainers.

And it appears to contain the signature of defense counsel for the defendant.  I'm going to mark this as a Court Exhibit, Court Exhibit 1.

But I'm also asking defense counsel if they have any objection to my questioning Mr. Gendron as to whether he agrees that this is what he wants, and I will limit my questions to that.

**MS. ZOGHLIN:**  He's prepared to respond to that question.

**THE COURT:**  Mr. Gendron, you've heard what I just indicated has been handed up to me, basically, on your behalf by your defense counsel, that you wish to now remain in Federal custody until the indictment in this case is disposed of; is that correct?

**THE DEFENDANT:**  Yes.

**THE COURT:**  All right.

**MS. ZOGHLIN:**  Judge, if I may just add some clarification regarding what's happening here today, and maybe more importantly is what's not; for the purposes -- not for the Court, because I know obviously the parties understand, but for

the purposes of perhaps outside the Courtroom what the understanding is:  What's happening here today is that our client is being placed in the temporary custody of the United States Marshal Service, pending the resolution of the Federal charges.

He remains in primary State custody.  That is not changing.  We fully anticipate that once these matters are resolved, he will serve the sentence that was imposed yesterday in New York State prison.

**THE COURT:**  I have no inside knowledge as to that and quite frankly it's a question I have muddled over in my mind, because as I read the terms in the Interstate Agreement on Detainers, New York State, since it has obtained the first judgment of conviction, would have priority as to the return of the defendant for serving his sentence.

But under the terms of the Interstate Agreement on Detainers, New York State could agree and the Federal Government could agree that they would take the defendant, if there is a conviction and disposition.

The other question that, obviously, cannot be answered at this time, but we can at least hypothesize and that is if the Attorney General of the United States determines that he wants to go forward with a death penalty prosecution, and there is a trial, and the jury determines that the penalty of death is the appropriate penalty, the question becomes what needs to be done

as far as the State of New York agreeing to turn over the defendant to the Federal Government, so as to allow the Federal Government to effectuate that sentence, because it's an agreement between two separate governing bodies, the State of New York and the Federal Government.

And both governing bodies have rights. I don't profess to know what either one is going to do, but those are matters that do have to be addressed somewhere down the road, depending once again on what the Attorney General decides.

It appears to me that if the Attorney General says they are not going to pursue the death penalty, this thing is all moot.

And as has previously been indicated, the defendant is prepared to enter a plea of guilty to the charges in the Federal indictment.

And that would bring the matter to an end with concurrent life sentences, presumably.

**MR. TRIPI:** I understand, Your Honor.

**MS. ZOGHLIN:** Judge, just to -- I'm sure the Government will confirm that there has been no discussion and certainly no agreement about any transfer of our client's custody.

He's in the primary custody of New York State and as far as we're concerned, that's where he will remain. We are not making any other request.

**THE COURT:** No. And I obviously don't have any jurisdiction over the State of New York, to tell them what they should be doing or not be doing.

**MR. TRIPI:** Today's just to deal with the initial --

**THE COURT:** Today is to deal with, one, determining, as we now have, that defense counsel on behalf of the defendant and the defendant has acknowledged in open court that he wishes to invoke his rights under the Interstate Agreement on Detainers by coming over into Federal custody for the purposes of addressing the Federal indictment presently pending against him.

**MR. TRIPI:** That's correct.

**THE COURT:** That request now brings into play the time periods set forth in the agreement.

As I've indicated, the 180 day period is now set aside and the 120 day period is now going to come into play, because I'm going to remand him to the custody of the United States Marshal Service upon completion of these proceedings and that means he's in this Government or Federal Government custody.

And as I've indicated under article four, paragraph C, trial is to commence within 120 days after arrival of the defendant in Federal custody, unless good cause is shown in open court with the defendant or his attorney present, then the Court may grant any necessary or reasonable continuance.

**MR. TRIPI:** Judge, I guess my -- the Government's last and final request would be, once you, as anticipated, remand him

into Federal custody, as you've indicated, that you find that the prior exclusion that you authorized under the Speedy Trial Act at docket 38, under that speedy trial order, that you make the finding that it also applies to the time frames that you have set forth here, as to the Interstate Agreement on Detainers in the 120 days.

So in other words, the time is excluded under all the statutory provisions until March 10th, 2023.

**THE COURT:**  Okay.  So that the 120 clock would not begin?

**MR. TRIPI:**  Correct.

**THE COURT:**  Does defense counsel have any objection to that?

**MS. ZOGHLIN:**  No.

**THE COURT:**  All right.  For the record then, the defendant having requested, as is his right, under the Interstate Agreement on Detainers to now be placed in Federal custody to answer the charges set forth in the Federal indictment, and this Court previously having excluded time with respect to the Federal indictment as to the Speedy Trial Act provisions, and any other statutory time requirements that might be applicable, until March 10th, 2023, I will now also state for the record, that my order excluding time includes the exclusion of the 120 day time period set forth in article four, paragraph C of the Interstate Agreement on Detainers.

But I'm putting everybody on notice that on March 10th, 2023, we are going to revisit all of these time requirements in the context of keeping this case moving and in the context of trying to put in place a scheduling order.

**MR. TRIPI:**  Yes, Your Honor.

**THE COURT:**  Because, obviously, if there is a scheduling order that's going to be put in place, there is going to be an exclusion of time.

**MR. TRIPI:**  Thank you, Judge.

**THE COURT:**  Anything else?

**MR. TRIPI:**  No, Your Honor.

**MS. ZOGHLIN:**  No.  No, thank you.

**THE COURT:**  All right.

Thank you, everyone.

(Proceedings concluded at 11:32 a.m.)

\*    \*    \*

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York before the Honorable H. Kenneth Schroeder, Jr.

_s/ Bonnie S. Weber_          June 9, 2023
       Signature                    Date

BONNIE S. WEBER, RPR

Official Court Reporter
United States District Court
Western District of New York