UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Docket Number: |
| | | 22-CR-00109-LJV-HKS-1 |
| | * | |
| | * | Buffalo, New York |
| v. | * | June 15, 2023 |
| | * | 10:35 a.m. |
| | * | |
| PAYTON GENDRON, | * | STATUS CONFERENCE |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * *


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:        TRINI E. ROSS,
                          UNITED STATES ATTORNEY,
                          By JOSEPH M. TRIPI, ESQ.,
                             BRETT A. HARVEY, ESQ.
                             LAURA BLAKEMORE GILSON, ESQ.,
                          Assistant United States Attorney,
                          Federal Centre,
                          138 Delaware Avenue,
                          Buffalo, New York  14202,
                          Appearing for the United States.


For the Defendant:        FEDERAL PUBLIC DEFENDER'S OFFICE
                          By ANNE M. BURGER, ESQ.,
                             SONYA ZOGHLIN, ESQ.,
                          Assistant Federal Public Defender,
                          28 East Main Street,
                          Suite 400,
                          Rochester, New York   14614
                          And
                          By MARYBETH COVERT, ESQ.,
                          Assistant Federal Public Defender,
                          300 Pearl Street,
                          Suite 200,
                          Buffalo, New York   14202.

The Courtroom Deputy:          JANE KELLOGG

The Court Reporter:            BONNIE S. WEBER, RPR,
                               Notary Public,
                               Robert H. Jackson Courthouse,
                               2 Niagara Square,
                               Buffalo, New York  14202,
                               Bonnie_Weber@nywd.uscourts.gov.


         Proceedings recorded by mechanical stenography,
                transcript produced by computer.



                (Proceedings commenced at 10:35 a.m.)


         **THE CLERK:**  All rise.

         The United States District Court for the Western District of New York is now in session.  The Honorable H. Kenneth Schroeder, Jr. presiding.

         **THE COURT:**  Be seated, please.

         **THE CLERK:**  This is United States versus Payton Gendron.  Docket Number 22-CR-109.  This is the date for a status conference.

         Assistant United States Attorneys Joseph Tripi, Brett Harvey and Laura Blakemore Gilson, appearing on behalf of the Government.

         Assistant Federal Public Defenders Anne Burger, Sonya Zoghlin and MaryBeth Covert, appearing on the defendant and the defendant's appearance is waived.

         **THE COURT:**  Good morning.

**MS. ZOGHLIN:**  Good morning.

**MR. TRIPI:**  Good morning, Your Honor.

**THE COURT:**  We're here for a status conference and also, as I previously indicated, the purpose is to put in place a scheduling order.

Anything we need to discuss before we undertake that task?

**MS. ZOGHLIN:**  Yes, Judge.  I was hoping to give the Court some sense of what we've done over the last 90 days and where we are now in terms of a status.

And what I can tell the Court is that we have continued to review the discovery.  As we've discussed many times, it's voluminous, particularly the digital discovery, which is about 2.8 terabytes.

We have continued to do that intensively.  It is not possible for us to have completed that by now, but certainly we have continued to review.

Obviously, we are doing an extensive investigation, which we have people working on all the time, including ourselves.

We have made some additional discovery requests in the last few weeks.  Some are still outstanding.  I believe we did get some additional discovery just today.

And in addition, as the Court knows, there are several motions that remain pending with the Court, so that's what we've

done up to this point.

In terms of a scheduling order, Judge, I just wanted to express this from our perspective.  The Court also indicated on the last court date, which was March 10th, specifically, that everything is going to hinge on what the Attorney General decides and we agree with that.

As you know, this case is quite unique.  Not only the nature of the crime, but the fact that our client pleaded guilty in State Court and has been sentenced to life without parole.

Truly everything in terms of the path of this case depends on what the Attorney General decides.  The Court urged the Government to make good use of the last 90 days.

I don't know what they have done.  There has been nothing new revealed to us.  We had our meetings with the local people here on January 5th.

As I've said, I don't know where they are.  I'm not rushing them.  It is an extremely important decision, but I just wanted to let the Court know that that's where we are.  We don't know quite where they are.

I can tell you, though, that any motions that we make are completely dependent upon their decision about whether or not to seek the death penalty.

There is no motion that we would file that doesn't incorporate that consideration.  If they are not going to seek the death penalty, as the Court observed on the last court date,

this case resolves.

If they do, certainly there will be voluminous motion practice.  I am just asking the Court to keep that in mind in terms of setting a motion schedule, before we know what the decision of the Attorney General is going to make in this case about the death penalty.

MR. TRIPI:  Response, Judge, briefly?

THE COURT:  Yes.  Then I'll ask my questions.

MR. TRIPI:  Sure.  In virtually every case that is death penalty eligible, that I'm aware of, certainly that I've been involved in and that I am aware of around the country, a motion schedule is put in place regardless of the time frames of the death penalty deliberative process, within DOJ.

In other words, both things can be happening on dual tracks.

THE COURT:  Is your mic working?

MR. TRIPI:  I'm sorry.  I'll speak up.

THE COURT:  Okay.

MR. TRIPI:  I'll start over.

THE COURT:  That's all right.  I heard you, but --

MR. TRIPI:  Okay.  So that being said, Judge, on the first prong of things, we are here to ask you to set a scheduling order.

We do need to get this case moving.  The Government is willing to be reasonable in regards to the time frames that are

applicable.

We're also open to -- because we've provided the defense previously with a proposed schedule that is more robust than this Court's typical scheduling order, which usually involves defense motion deadline, responses, replies, oral arguments.

We anticipate a different type of schedule in this case that has more filing deadlines for specific things.

We can submit different proposals, if we can't agree to you.  And, obviously, you decide what that scheduling order then looks like.

But we think it's appropriate at this juncture to at least get a schedule in place and work towards that.

Now, as the death penalty process, obviously, that's an internal DOJ deliberative process.  There has been recent conversations regarding this case.

I anticipate that it will make it to the next step in that process in relatively short order.  It is at high levels of the department, both locally, as well as main DOJ, with the civil rights division and that's all I can really say about that.

That's where we are, but we are moving along, but we should definitely set a schedule.

If the defense has discovery-type motions or anything else along those lines to file, we've been in this posture for

over a year now and they have had a lot of discovery, even at the complaint stage.

Enough to know the framework of what their motion practice should look like by now, in my view, anyway.

So we are here to ask you to at least solicit proposals from the parties to what a schedule should look like.

If not, set a schedule and then take input as to how that schedule should be broken down.

We're open to whatever time frames the defense thinks are reasonable, within reasonable limits, I suppose.  So that's where we're at, Judge.

**MS. ZOGHLIN:**  Judge, can I just respond briefly to some of the -- factually, to what Mr. Tripi just said?

**THE COURT:**  Yes.

**MS. ZOGHLIN:**  Thank you.  I'll start off by saying that in virtually every other capital case, including the ones he's been involved in, there hasn't been a connection between the date of the decision and a motion schedule.

I just respectfully disagree with him in terms of what the most analogous cases to this one.

For example, the case that was recently tried as a death penalty case in the Southern District of New York --

**THE COURT:**  That's the bike path case.

**MS. ZOGHLIN:**  Yes.  That's correct, Judge.  That's the Saipov case.  That crime occurred in October of 2017.  The trial

finished just a few months ago.

No motion schedule was set.  In fact, there is an order from that court that explicitly ties the death penalty decision to a motion schedule being set.

No motion schedule was set until that decision was made.

In the Crusius case, that's the El Paso Walmart case, that crime occurred in August of 2019.  In January of 2023, the Attorney General announced his decision not to seek the death penalty in that case.

No motion schedule was set in those -- in that three year period.

So -- and in another perhaps analogous case, would be the Bauers case, which is being tried in Pittsburgh right now.

My understanding is that no motion schedule was set there before the decision was announced.  Although, I believe a decision was announced fairly soon after the incident.

But in terms of other similar cases, I don't think it's accurate to say that motion schedules were set in advance of a decision on the death penalty.

THE COURT:  All right.  I continue to find this issue to be perplexing from this point of view.

The Government says it wants to get the case moving, but yet it's the Attorney General and the Department of Justice that quite frankly are holding up the basic question of can this

case be resolved quickly, by the decision of not seeking the death penalty.

Where the defense has already indicated if that happens, there will be a plea and this case will be over with.

If the Attorney General and the Department of Justice decide to go forward with the death penalty, then we know where we are headed.

We can address the things that need to be addressed and a trial date set.

Unfortunately, there is no statute of limitations or time requirement, such as in the Speedy Trial Act, where the Attorney General has to act.  And so the Court is totally without power in regard, as far as setting a deadline is concerned.

I hate to keep harping on my experience, but I only do so because I want the public to understand that I do have a good working knowledge of this whole process, having been a United States Attorney, here in the Western District of New York, having actually worked in the Department of Justice criminal division in Washington, DC.

My understanding that, at present, the U.S. Attorney has made her recommendation to the Department of Justice, as to what her office position is on the question.

**MR. TRIPI:**  Judge, let me -- I need to stop you right there.  I've never said that.  I said --

**THE COURT:**  I didn't say you did.

**MR. TRIPI:**  I said the local presentation was made to the U.S. Attorney and the Assistant Attorney General and that deliberative process is still underway.

So just to the extent that --

**THE COURT:**  You're jumping ahead of me.  All I said is it's my understanding that your boss, the U.S. Attorney, has made her position known to the Department of Justice.

The committee that will now do its evaluation --

**MR. TRIPI:**  No.  We are not at the committee yet, Your Honor.

**THE COURT:**  You are not at the committee stage?

**MR. TRIPI:**  We are not at the committee yet.

**THE COURT:**  All right.  Then I've been misinformed. My question now then is, why are you not at the committee stage?

This case is over a year old.  There is no question, as far as I can see, as to the factual situation by reason of the fact that the defendant has pleaded to basically all of the same factual charges that are in this indictment in the State proceeding.

So I don't know what it is that needs to be contemplated by the Department of Justice.

You have a heinous crime, admitted to by a defendant, involving hate --

**MR. TRIPI:**  Yep.

THE COURT:  -- racism and all of the other terrible attributes.

That why it should take over a year is beyond me, based on my experience, both as a practicing attorney, as a practicing prosecutor, and as a judge of 23 years.  And that's what I find perplexing.

MR. TRIPI:  Judge, I'll say this -- and I can't speak to the internal deliberative process much more than I have already.  I hope you understand that.  I am not --

THE COURT:  I understand your position, Mr. Tripi.

MR. TRIPI:  But I'll say --

THE COURT:  But I'm not sure the public understands the position of the Government --

MR. TRIPI:  We meet with the --

THE COURT:  -- and the Department of Justice.

MR. TRIPI:  We meet with the victim families --

THE COURT:  I'm not talking about the victims themselves.  They obviously are members of the public, but the public at large, also has a right to have this matter disposed of in a reasonable speedy period of time.

MR. TRIPI:  I would say this, Judge, the time -- first of all, this case, as you know, is unlike any we've had in this district ever.

So neither the Court nor myself as a prosecutor, nor this defense team, has handled a case involving this much

tragedy.

Every loss of life is tragic and every loss of life that's a Federal homicide is death penalty eligible.  We understand that.

**THE COURT:**  Let me interrupt you right there.  I'm not sure I understand what you are saying in this --

**MR. TRIPI:**  This type of --

**THE COURT:**  In this context, yes.  It's an unusual facts of situations.

**MR. TRIPI:**  Correct.

**THE COURT:**  But the law involved and the legal principles involved aren't.

**MR. TRIPI:**  I understand that.  I understand that, but if you look at the time frames of the death penalty analysis and the Government and the Department's internal deliberative process, and the time frame that it took, this is far short of Crusius, which took three plus years, I believe.

It is within the range of other -- you need to look at other mass shooting casualty cases.

**THE COURT:**  But --

**MR. TRIPI:**  It is well within that range of cases.

**THE COURT:**  But in that other case, you didn't have a defendant that had already plead guilty to the same factual situation and at a State proceeding, did you?

**MR. TRIPI:**  I'm not sure that -- from the deliberative

process of whether the death penalty -- that that's you charge a case -- you charge a case as a Federal prosecutor, believing that the individual is guilty beyond a reasonable doubt or you don't bring the case.

The fact that he plead guilty in State Court, while a factor in terms of the -- of his potential Constitutional speedy trial in Federal Court, it's eliminated that, is not a factor -- not a key factor in the analysis when it comes to making the decision on the death penalty.

So I can understand the Court's frustration and the public, if there is public frustration, but the I's need to be dotted, the T's need to be crossed when an ultimate decision is being made in a case.

It has to be fair to the defendant, and the arguments that they are making in mitigation; and it has to be fair to the victims, in their memory, and the victim families.

And it's going to take longer than the single defendant cases or the murders of one victim or two than we're used to in this district.

I've handled multi -- multi homicide cases, where we have more than one victim, but nothing like this.

And -- and this is still, from my experience, on a faster track than some of those in this very district.

And I know you've seen and been frustrated, by some of those cases in the past.  I can tell you we're pushing this as

hard as we can, from where we sit.

We will continue to do so. We are not the ultimate decision makers, as you know. We are trying our best in that regard.

But as Ms. Zoghlin indicated, it's a big decision for everybody and we don't want to rush it. But that doesn't mean that after a year, they can't file motions on discovery; we can't get the ball rolling to some extent.

There are some things we can be doing and do in other cases that you've had in this district.

And while that process is playing out, while we're doing our diligent work, I'm sure the decision will come down.

And I've got to say, nothing stops the defendant from pleading guilty now and then just taking this case up on a penalty phase.

So let's stop that narrative that it's only the Government here. If he's so hell bent on accepting responsibility in Federal Court, and it's all about the death penalty, then he could plead guilty next week before the District Court and we can have a penalty phases, if that's what it comes to.

**THE COURT:** Well, let me start off by saying I disagree with one or the two of the initial statements that you made when you said that the Speedy Trial Act doesn't apply, because the defendant pleaded guilty in a State proceeding --

**MR. TRIPI:**  I said Constitutional speedy trial, not the Speedy Trial Act.

**THE COURT:**  Well, even Constitutionally, in this context, the defendant presently has hanging over his head a Damocles sword and that is whether the Government is going to seek to put him to death or not.

As you well know, the case law on Constitutional speedy trial says that you should not subject a defendant to that kind of emotional distress.

And that there is a requirement on the part of the prosecution to mitigate, as much as reasonably possible, the elimination of that stress, of a defendant sitting in a jail waiting to find out whether he is going to be put to death or not; whether that's going to be the prosecution of the case or not.

So there is a Constitutional application of his right to a speedy trial in that context.

He chooses not, at the time, as I understand it, to enter a plea, as the Government says he can, because he has a right to have the Government do what it's supposed to do.  Make a decision.

Now, my question to the Department of Justice and to the Attorney General is what is there to contemplate in this case as to the decision whether the death penalty should be sought or not?

It's not a question of whether you can prove the facts.  Those have already been admitted.

It's a question of whether this is the type of crime that the death penalty was meant to address.  We have had a number of innocent people slaughtered by an individual acting out of hatred and racist ideas.

If that's not a case that falls within the purview of the statute, I don't know what does, but that's the decision for the Attorney General to make.

What is it they have to contemplate that's taking more than a year to decide?

It's not whether you can prove the case.  It's not whether you have to discover more information about the facts.

It's a question of whether the facts in this case, as admitted, fit the intent for seeking the death penalty under the statute.

That's what has to be contemplated, isn't it?

**MR. TRIPI:**  Yes.

**THE COURT:**  Is there anything else that I'm missing that has to be contemplated?

**MS. ZOGHLIN:**  Yes, Judge.

**MR. TRIPI:**  I can't -- I can't get into the mitigation that the defense has put forward.

**THE COURT:**  I understand mitigation.  I'm talking about the Attorney General's decision.

Should we seek the death penalty or not?

**MR. TRIPI:**  Ultimately --

**THE COURT:**  Do the facts warrant seeking the death penalty?

To me, that's the question.  That's the framing of the issue:  Do the facts of this case, which are already established, and have been admitted to by the defendant, warrant seeking the death penalty.

**MR. TRIPI:**  It's a whole --

**THE COURT:**  Yes or no.

**MR. TRIPI:**  I understand the question.  I can't answer it, but it's a wholesome view of the facts.

It's not just the public facts that are known, based upon the facts of what happened at Tops and the lead up to that.  It's the facts that have been presented in mitigation as well.

**THE COURT:**  You are just wordsmithing with me now.  We have an established homicide of multiple individuals.  Those are the facts.

We have established that these homicides were committed out of hatred and racism.  That's been admitted.

We've had videotapes taken by the defendant himself shooting these poor victims.

**MR. TRIPI:**  Judge --

**THE COURT:**  What else does the Government -- what else does the Attorney General need, knowing those facts are now

established and admitted to, to decide whether this warrants seeking the death penalty?

**MR. TRIPI:**  I won't speak to what the Attorney General needs, but in general, Your Honor, there are more than -- what you are speaking to is the strength of the Government's proof.

What also --

**THE COURT:**  The Government has no proof -- doesn't have to prove anything, as far as guilt or the acts.

**MR. TRIPI:**  We do.

**THE COURT:**  They have been admitted.

**MR. TRIPI:**  We do.

**THE COURT:**  What do you have to prove that hasn't been admitted --

**MR. TRIPI:**  Again --

**THE COURT:**  -- as far as the homicides?

**MR. TRIPI:**  Exactly.  You are speaking to the strength of the case.  I agree with you wholeheartedly, Your Honor.

**THE COURT:**  Strength --

**MR. TRIPI:**  The case is very strong, but you also have victim families, victim family opinions, that go into the calculus.

You have mitigation that the defense has put forward. There is a lot more than what happened.  Like I said, there is a lot more than just what happened --

**THE COURT:**  Are you telling me that the Attorney

General is really considering what the defense is thinking about?

          MR. TRIPI:  Yes.

          THE COURT:  Why?  Why?

          MR. TRIPI:  That's part of the process.

          THE COURT:  Why?  I mean, that's not part of the decision-making process, as I understand it.

          The decision-making process, as I understand it, is for the Attorney General and his committee to take the facts that are known and can be proven and determine whether those facts, if proven, warrant applying for the death penalty.

          That's what I understand the process is.  Do the facts justify asking for the death penalty, yes or no.  Plain and simple.

          The facts are now established.  The facts are now admitted.  The heinousness of the crime has been established.

          MR. TRIPI:  The other --

          THE COURT:  What's -- what's left to be done?

          MR. TRIPI:  Judge, the other part of this that you're not speaking to is the defense mitigation.  The --

          THE COURT:  The defense mitigation is on the defendant.  Not the Attorney General.

          MR. TRIPI:  That's all part of the process, Your Honor.

          THE COURT:  Mr. Tripi -- Mr. Tripi, don't lecture me.

**MR. TRIPI:**  I'm just telling you.

**THE COURT:**  That's what I'm saying.  Don't lecture me.

**MR. TRIPI:**  Well --

**THE COURT:**  The mitigation aspect of the case is the responsibility of the defense, not you, not the Government.

The defense has to go forward with mitigation, but that step doesn't come into play until the Attorney General makes a decision.

**MR. TRIPI:**  That's not accurate.  It's just not accurate.

**THE COURT:**  What do you mean, that's not accurate?

**MR. TRIPI:**  The defense mitigation -- if that were accurate --

**THE COURT:**  If the --

**MR. TRIPI:**  -- then that --

**THE COURT:**  Wait a minute.  If the Attorney General --

**MR. TRIPI:**  Judge, if that --

**THE COURT:**  Wait a minute.  If the Attorney General says I'm not seeking the death penalty, the case is over with.

**MR. TRIPI:**  Yeah.  But, Judge, so there --

**THE COURT:**  So -- so wait a minute.  How does mitigation come into play, if the Attorney General hasn't made a decision?

**MR. TRIPI:**  Judge, the whole reason that the defense meets with the U.S. Attorney and the Assistant Attorney General

for civil rights, back in January, it's to have input into the process.

Meaningful input that is considered.  And I'm not going to get into what they present, but in general, they present their view of the facts that relate to the offender and why the death penalty should not be sought.

They are entitled to that.  That's part of the process.  That doesn't end.  They can come up with something next week they want us to consider and it would be considered, okay?

So that's all I'm trying to say is that that's part of the process.

**THE COURT:**  Let me interrupt you right there.  I thought at the last sedation in March, I asked if there was a meeting scheduled with the defense to meet with the committee in Washington.

And I thought you advised me that it was going to occur very shortly, after that session.

**MR. TRIPI:**  I didn't say that any committee meeting was scheduled.  That would be the next step in the process, after the initial meeting.

We are still in that interim step of the deliberation -- the deliberative process.

**THE COURT:**  Wait.  All right.  Now I'm totally confused.

Are you telling me you are still meeting in the U.S. Attorneys Office for the Western District of New York, that a recommendation hasn't even been forwarded to the committee in the Department of Justice?

**MR. TRIPI:** No. There have been conversations between the U.S. Attorney and the Assistant Attorney General as to what the recommendation up will be. That process continues.

**THE COURT:** Has the defense met with the committee in Washington?

**MR. TRIPI:** The committee, no. They met with the U.S. Attorney and her team and the Assistant Attorney General and her team.

That was the meeting that occurred in January. So the civil rights division and the U.S. Attorneys Office, the head of those two components met with the defense team in January.

**THE COURT:** All right. This is now June the 15th, six months later.

**MR. TRIPI:** Yes. From there -- I understand. From there, there was some additional mitigation that got brought to our attention that entered the calculus and that's where we are.

That is where the level of conversations are occurring, which is high level. That is high level. That's not just Ms. Zoghlin speaking to Mr. Tripi.

That is the head of the U.S. Attorneys Office and the component at DOJ that's responsible for civil rights cases.

And so that's -- I can't get into much more than that in terms of the process, but that's where the process is.

There have been recent conversations that I expect it to go to the next step of the process, which is a submission to the capital case section, where that then committee gets involved.

But we're in the stage right before -- look it, I didn't have a crystal ball in March, so I would have assumed we would have been there by now as well, but I think we'll be there soon.

THE COURT:  All I know is that this horrible event occurred more than a year ago.

These poor families have been carrying that burden, not knowing what the end result is going to be.

The defendant has been incarcerated, awaiting a decision as to whether he's going to face a death penalty or not.

The public awaits a decision, as we know from every time we have a session, they turn out.  The media does its discerning and dissemination of where things stand.

You know it is the old adage, justice delayed is justice denied.  Not only to a defendant, but to the public.

And I'm still having a very difficult time understanding why in this case, in which there has been an admission of all of the factual aspects by the defendant, it's

taking the Attorney General and the Department of Justice so long to make a decision.

That's all I'm saying.

MR. TRIPI:  I understand, Your Honor.

MS. ZOGHLIN:  Judge, may I comment briefly on the colloquy that you had with Mr. Tripi?

I agree with much of what Mr. Tripi just said.  I certainly -- going back a bit, I certainly agree that the timing here has so far, it is far short of the time that the Attorney General took in the Crusius case.  That was over three years.

I agree, that this case is unlike any other this District has seen and that this will take far longer.

That is -- everything that Mr. Tripi just said, we agree with that.

I also agree that the Attorney General has an obligation to consider mitigation before he makes a decision about what penalty to seek and that there are there are multiple components.

Certainly one is the very serious nature of the crime and the other is the background and characteristics of the defendant and any other mitigation there might be.

The Attorney General has to consider all of those things.  We are not rushing them.

At the same time what I'm saying is they, as far as we're concerned, should take the time they need.

What I disagree with is the conclusion that Mr. Tripi then makes, which is that there are some things we can be doing during this time.

Certainly, there are some things we can be doing and we are doing them.  And I'm sure the Government is doing them.

What I disagree with is that the way you move things along is we don't know when they are going to make the decision. In the meantime, we should be required to make motions, not knowing whether the death penalty will be sought.  That's the area we disagree about.

**THE COURT:**  Well, which brings me to my point, where I disagree with both of you, in that I'm trying to get this case to move along for all of the reasons I've previously stated.

If I adopt your position, it would be that until the Attorney General makes a decision, we shouldn't have a scheduling order for motions.

If that were to occur, it could be another five years before we know what's going to happen.

Because as I previously stated, there is no legal requirement by statute, regulation or otherwise that sets a deadline for the Attorney General to make a decision.

And if the Attorney General takes whatever amount of time he takes, and then if -- if hypothetically he says death penalty, the defendant says, according to what you just said, now we have to decide how much time we need to make motions,

which will delay it even further.

In my perspective, we are at a stage in this case where the legal issues -- and I emphasize legal issues, as compared to mitigation issues, are the same in this case, even though it's an unusual, unique, horrendous case, than any other Federal criminal case in the context of motion practice for search warrant, Fourth Amendment violation claims or Bill of Particular claims or Rule 16 production of evidence or disclosure of Jencks, Giglio, Brady materials -- those are all the same.

And there is no reason now why we cannot at least get that part of this case underway -- the legal aspects of it, in the context of pretrial motions.

So that once a decision is made by the Attorney General, if it appears it's going to be necessary to go to trial, that pretrial work will have been accomplished.

**MS. ZOGHLIN:**  Judge, respectfully, I disagree with the notion that you can separate what you are calling the legal issues from mitigation.

If this is a capital case, those things are of one piece.  There are no legal --

**THE COURT:**  Let me interrupt you.  There are multiple search warrants.

If the defendant is going to attack the search warrants and what was seized, that has nothing to do with

mitigation.

That has to do with the Fourth Amendment.  That can be done regardless of mitigation.

**MS. ZOGHLIN:**  Judge, I would be happy to address that specific example.  It does have to do with mitigation, because we have to make decisions about what to move to suppress.

So for example, in -- under the law, as applied to capital cases, the Government, if they are going to seek the death penalty, have to file a notice pursuant to Section 3593, in which they state that position and they name both the statutory aggravators and the nonstatutory aggravators.

Before we know what the nonstatutory aggravators they are pursuing are, we wouldn't know what evidence are we moving to suppress, because the evidence is evidence not just that would be relevant to a so-called guilt phase, but it would also be relevant to a penalty phase.

So for example, if something they seized pursuant to a warrant is relevant to the penalty phase, is relevant to one of the nonstatutory aggravators, then we would want to move to suppress that.

If it's not, we might not want to move to suppress that, so the evidence can't be separated that way.

**THE COURT:**  But you know what evidence has been seized.  You know what evidence has been seized.

**MS. ZOGHLIN:**  Right, but we don't know --

**THE COURT:**  You know what search warrants have been issued.

And so if you are going to attack the validity of the search warrants, you know which warrants they are.

For example, there were search warrants issued and signed by me, authorizing the search of the defendant's residence back in his parents' home.

And apparently there was also seizure of accounts, such as social media accounts.

If the defense says those were illegally obtained because the search warrants lacked probable cause or whatever other reason, in violation of the Fourth Amendment, to me, that's a legal issue going to the validity of the seizure of the evidence, whether that evidence is going to be available to the Government for its use in prosecuting the case.

I don't see how the legal issue of whether the search warrants were valid under the Fourth Amendment or not in any way impact on you're going forward in any way or endeavor on the mitigation issue.

**MS. ZOGHLIN:**  Because, Judge, the decision about what evidence to move to suppress --

**THE COURT:**  But you know what the evidence is that was seized.

**MS. ZOGHLIN:**  We do know what the evidence is.  We don't know what evidence the Government would want to use until

we know whether they are seeking the death penalty and on what basis, in terms of both the statutory aggravating factors and more significantly the nonstatutory aggravating factors, which the statute requires them to explicitly innumerate, if they are going to seek the death penalty.

THE COURT:  For example -- and don't hold me to this number, but my recollection is there has to be at least 15 search warrants.

You can move to have all 15 search warrants ruled invalid, as violating the Fourth Amendment rights of the defendant.

The legal issue will be whether there was probable cause for the issuance of each and every one of those warrants; whether there was misrepresentation in the affidavits in support of the warrants necessitating a Franks Hearing, whatever, but they are all legal issues that are identifiable to particular things, search warrants.

You know that.  You've known that since probably 60 days after the defendant was charged.

MS. ZOGHLIN:  Well, Judge, I'd just be reiterating what I said about knowing -- needing to know what evidence to suppress.

But the other -- based on what the Government is going to introduce in a potential penalty face.

But the other issue, of course, is whether it's a wise

use of judicial resources, let alone any other resources, for us to go through that process in a case that would be resolved if they decided not to seek the death penalty.

And if they do decide to seek the death penalty, would have to be, frankly, probably relitigated with that in mind.

I'm suggesting that that might not be the best use of resources.

In addition, Judge, I would be happy to put in writing some more basis to perhaps more clearly explain our position here.

**THE COURT:** I understand -- I understand your position clearly. And I can call upon my own a professional experience, both as a practicing attorney, as a defense counsel when I was in private practice, as a prosecutor when I was working for the Government and as a sitting judge.

Mitigation, I understand. I can understand when, as I indicated previously, you want to gather as much formative information about the defendant that existed from the time he was born to decide what, perhaps, environmental, as well as what natural, biological, internal factors played a role in his development to bring him to a point where his thought process was adversely affected or negatively affected or whatever, in the context of mitigation as to why he should be considered and looked at in a different light from what the natural tendency would be for such a horrible act having been committed.

That involves emotional workups.  It involves psychiatric workups, psychological workups, history of not only the defendant, but family, et cetera, et cetera, et cetera.

I understand all of that.  In other words, you want to put together a full fledged profile on this defendant's life; the impact of other factors that could have played a role in his development, et cetera, so that you can present a picture of why this defendant should not be put to death, if there is to be a death penalty case.

I realize that takes a lot of work.  It takes a lot of effort; that you have been working on that.

But on the legal issues of whether the warrants were valid or not or whether there should be suppression of evidence for other reasons or not, we can start addressing those now, while you are still doing whatever you are going to be doing on mitigation.

That's all I'm saying.

**MS. ZOGHLIN:**  Judge, what I would purpose is this, perhaps a status conference at which point perhaps the Government can also update the Court where they are in the process.

And in the meantime, I'd like to file some -- perhaps a memo on this issue, because I do think it's important to explain, at least from our perspective, why you can't separate legal issues from whether it's a death penalty case.

**THE COURT:**  Well, I thought I advised everybody on March 10th, 2023, that I was planning on putting a scheduling order in place today and I intend to.

**MS. ZOGHLIN:**  Then, Judge, could I make this proposal then?

The Government's initial proposal of a scheduling order at the time they proposed it, they suggested approximately 30 days for them to complete their disclosure of discovery material.  As I said, we have several outstanding requests right now.

They then proposed another 30 days for us to make a discovery motion.  What I would suggest, we need more than 30 days.

But if they want to set a 30 day deadline for whatever discovery they are able -- whatever further discovery they are able to produce at this time, although I know it will be an ongoing process, we can then --

**THE COURT:**  Why do you need all that time?  Because let's treat this now as just a criminal indictment under the Federal Rules of Criminal Procedure.

Rule 16 requires the Government to provide certain information and discovery, period.

Why would you need 30 days to decide what you would be moving for, as far as discovery is concerned?

**MS. ZOGHLIN:**  Well, the Government's proposal was that

the first 30 days would be their time to finish their discovery process.

I'm just telling you what Mr. Tripi's proposal was back on March 10th.  But again, Judge, I have to emphasize we can't separate what the legal discovery issues from whether or not it as a death penalty case, because --

**THE COURT:**  I'm not asking you to separate anything. I'm asking you to work within the rules of Federal Rules of Criminal Procedure.

What the Government is obligated to do for the purposes of discovery.  Rule 16 clearly spells out what the Government has to turn over and when it has to turn it over.

**MS. ZOGHLIN:**  Right.  And in this case, they have turned over more than four terabytes of discovery.  We couldn't --

**THE COURT:**  Right.  It's at electronic digital evidence, the social media accounts, the video recordings, the text messaging, the manifestos that were published.

I know all of that.  And I know it's voluminous, but to say that you need 30 days to decide how to file a motion to require the Government to comply with Rule 16 doesn't make sense to me, because that's all you can require the Government to do, to comply with Rule 16.

**MS. ZOGHLIN:**  Well, the first thing one would need to do is know what discovery they had already provided.

**THE COURT:**  Well, I assume you know what that is, because you've been reviewing it.

**MS. ZOGHLIN:**  The issue though is, Judge, the discovery that was provided is so voluminous that no one could have by this point gone through that much evidence.

So we know -- I can tell you how many hard drives.  I can tell you how many terabytes and certainly we have been endeavoring to review it as efficiently as we can, but no one could have done that by now.

**THE COURT:**  But you did have a description in the search warrant applications.

I mean, I know what has been provided by reason of what I read in the search warrant applications and what was seized.

The accounts, the social media accounts, the videotape recordings, the physical seizure of evidence both at his parents' home and what was seized from him; the weapons and the scopes and the actual recording device apparently that was on the weapon; the security cameras at the Tops store, all of that is known.

**MS. ZOGHLIN:**  Judge, those are the categories of discovery that have been provided.

**THE COURT:**  Right.

**MS. ZOGHLIN:**  And we need to know what's in each category.

**THE COURT:**  And that's what you were telling me way back when, why you needed the time and that's why I gave you the time.

**MS. ZOGHLIN:**  And it is still true.

**THE COURT:**  But now I'm saying I want to have motions that are going to start telling me why you think something has been done illegally or improperly to warrant suppression of evidence, for example.

The search warrants are invalid or whatever else was done.  Motions to dismiss the indictment; motions to require the Government to provide Brady materials sooner, whatever, but it's all within the confines of the Federal Rules of Criminal Procedure, which are all legal issues.

**MS. ZOGHLIN:**  Well, perhaps we can separate discovery from what you were just talking about, which I believe is suppression motions.

Even the Government's -- the Government's proposal that they put on the record on March 10th, that they provided us with before March 10th, they don't suggest suppression motions until many months down the line.

**THE COURT:**  I'm not going to go along with that.  I'll tell you that right now.  I'll tell both of you that right now. I'm not going to let this case drag on.

**MS. ZOGHLIN:**  It's the nature of the case that it will take a long time.

THE COURT:  Every case, by nature, according to counsel is unique, which will take a long time.

MS. ZOGHLIN:  This one is quite different from every case.

THE COURT:  It's not different in the sense that we had a homicide, where a number of people were killed.  That's the criminal charge.

What is causing the problem is the failure to have a decision from the Attorney General as to whether he's going to seek the death penalty or not.

Because as you, yourself, have stated, if the Attorney General says no, I'm not seeking the death penalty, your client is going to plead.

Everything will be done in one day.

MS. ZOGHLIN:  That's why I'm suggesting --

THE COURT:  Now -- now, there is a way to move this on, including the Attorney General having to make a decision.

We get through the scheduling order process.  We get through the pretrial motion process and the trial judge schedules a trial date.

And the Attorney General is going to have to sooner or later decide whether that trial is going to involve asking for the death penalty or not.

MS. ZOGHLIN:  Of course, our position, Judge, is that that decision affects everything we do and everything we would

file.

So we can't file these motions in a vacuum. Again, I'm not rushing them, but I'm suggesting that they can't on one hand say we need to take all this time, because it's a unique case, appropriately.

But in the meantime, the other side, without knowing what our decision is, should just move forward and file whatever the normal motions are in a case that's not like this one. That's what I object to, Judge.

THE COURT: I have to confess to you in all honesty, I don't understand what motions would be filed in a vacuum.

MS. ZOGHLIN: That's what I'm asking then, Judge, is that you give us an opportunity --

THE COURT: I just can't comprehend that.

MS. ZOGHLIN: That's why I would ask you to give us an opportunity to put it in writing.

THE COURT: I mean, the motions are going to be attacking the validity of the warrants, attacking the validity of the indictment; the Government hasn't complied with Rule 16.

What vacuum is there?

MS. ZOGHLIN: Well, as an example, Judge, one of the things that the Government proposes is the date -- and this is well before they proposed suppression motions -- a date for defense Constitutional motions regarding capital punishment, motions to dismiss, strike and defense to provide reciprocal

discovery.

So the Constitutional motions regarding capital punishment, for example, those obviously are completely dependent on whether or not that's the sentence they are seeking.

The motions to --

**THE COURT:** Wait a minute, you could make a motion saying the death penalty statute is un-Constitutional because, and the Government gives its response.

And then we research it and we find case law where the Supreme Court of the United States has ruled on the question.

**MS. ZOGHLIN:** What the Government includes in there, for example, motions to strike, which would be, I assume, motions to strike the death notice.

There would not have been a death notice at that point. It would make no sense to file a motion without knowing what penalty they are seeking.

**THE COURT:** No. But the defense -- they do this all the time. They can say in the event the Government decides, the defendant hereby moves -- so in the event the Government decides to seek the death penalty, the defendant moves to strike that application because it's un-Constitutional for the following reasons.

We can at least get that process going.

**MS. ZOGHLIN:** Well, we would need again -- Judge, they

need to provide specific information.

The law requires them to file specific information, along with a notice to seek the death penalty, if that's what they are going to do.

We would then need to respond to that specific information in our pleadings.

THE COURT:  What specific information do you think the Government has that you don't already know?

MS. ZOGHLIN:  What they are legally required to provide in notice to the Court and to the defense under 3593 is the specific aggravating factors and the nonstatutory aggravating factors that they --

THE COURT:  Don't you think the aggravating factors have been well vetted on television, in the news media, on the Internet --

MS. ZOGHLIN:  I'm not going to guess --

THE COURT:  -- and the admissions by the defendant.

MS. ZOGHLIN:  I'm not going to guess what they intend to do.  We need to be able to know what they intend to do and respond to it in writing.

For us to do that before anybody knows is setting up a situation where we will have to do it again.  And the Court will have to make those decisions again when we do.

I hardly think that that's an efficient expenditure of resources, let alone our position is we will not have the

information to make those motions.

If the Court wants to set a status for discovery or for us to make some limited motions after they have finished their disclosure of discovery, we can do that.

Knowing, though, that, of course, the discovery demands from our perspective will probably change, once we have their decision.

**THE COURT:**  All right.  So the record is clear, the defendant was arraigned on this indictment on July 18, 2022.

On that date, I issued a production deadline schedule wherein I required that discovery would be completed by September 2nd, 2022.  And I also scheduled a status report for December 9, 2022.

On December 9, 2022, we had the status report and the defense was still asking for time to review all of the voluminous material that had been provided and needed more time.

I agreed and scheduled a status conference for March 10th, 2023.

And at that time, the Government had proposed a scheduling order when it thought that there should be a motion deadline for discovery of May 3rd, 2023, by the defense.

A Government response by May 31, 2023.  Substantiative motions to be filed by July 14th, 2023.  Government response by August 11, 2023.  And defense reply August 25, 2023.

Suppression issues August 6, 2023 by the defense.

Government response November 6, 2023.

Defense claimed that that was an unreasonable order. That there was still much to be done, especially in reviewing all of the discovery material that had already been provided.

And so I agreed and I said we'll hold off until June 15th, 2023, which was giving you, in my opinion at that time, and I thought everybody else agreed, a substantial period of time within which to complete the review process.

And I also indicated on March 10th, 2023, to be prepared for the placing of a scheduling order in place and that's where we are now.

And I emphasize once again, this case -- this event is one that occurred more than a year ago. We celebrated the unfortunate anniversary this past May.

And here are, we are still talking about a scheduling order. And I can't let it delay any further.

So defense counsel has made representations that there are still some outstanding discovery that Government owes, Mr. Tripi?

MR. TRIPI: Judge, they have asked for some additional items. We are producing -- there is some chain of custody documents that they want.

THE COURT: I'm sorry.

MR. TRIPI: There is some chain of custody type documents that they want. Usually those get turned over as

Jencks.

We're tracking them down what they want.  We'll turn them over.  In our view, it's a very -- we're well beyond the scope of what Rule 16 requires.

We have produced virtually everything that we had when we had it.  They have asked for a couple more items, we will get them that information.

**THE COURT:**  How much more time do you think that is going to take?

**MS. ZOGHLIN:**  Judge, just so I could -- that's not all of what we've asked for.

We have asked for that, but we've also asked three weeks ago for very specific digital evidence.  So I don't think it's quite as simple as Mr. Tripi has --

**THE COURT:**  Specific digital evidence that has not been provided?

**MS. ZOGHLIN:**  Yes.

**THE COURT:**  Is this digital evidence that was not covered by search warrants?

**MR. TRIPI:**  They are -- they are asking for some very technical items that -- our view is they have their discovery.

They have sent us an e-mail about something further they would like.  We will evaluate their request, but that might be something that they put in the motion and you have to decide.

Our position is we've turned over what we are required

to turn over.

But in the spirit of cooperation, we'll try to get them -- at least seriously look at their additional requests to see if we can accommodate it, if we agree.

But our position, just so we're clear, is we're dealing beyond the scope of Rule 16 and trying to bend over backwards to assuage their concerns.

So we have a difference of opinion. I acknowledge that, but we are getting them the additional chain of custody documents that they have requested, which in my view is that's also beyond the scope of Rule 16, but we're getting that for them.

THE COURT: When do you think that can be done?

MR. TRIPI: As to the chain of custody documents, probably within a week, but let's play it safe and say two weeks.

THE COURT: All right. I'm going to give the Government until June 30th to complete all Rule 16 and additional voluntary discovery that has been indicated the Government is willing to do.

How much time are you going to need for the filing of all pretrial motions, both dispositive and non-dispositive?

MS. ZOGHLIN: We are not in a position, without knowing whether the Government is going to seek the death penalty, to give the Court a time frame where we can file all

motions.

What I can tell you is that we are willing to respond to discovery.

THE COURT:  Let me -- let me modify it.  All motions, with the exception of motions going to the validity of the Government's application, should it make such application for a death penalty.

MS. ZOGHLIN:  And our position, again, Judge, is that the motions cannot be separated in that way --

THE COURT:  I understand.

MS. ZOGHLIN:  -- but in responding to the Court's inquiry about discovery, I would ask for 60 days after the Government completes their discovery for us to file whatever limited discovery motions we can file, based on the information we have.

Of course, that may need to be expanded based on what the Government's decision is, but I'm asking for 60 days to file a response to the discovery that they have provided in whatever way we're able to do at that point.

THE COURT:  I'm going to require the defense to file all pretrial motions, both dispositive and non-dispositive that do not relate to the issue of the death penalty.

In the sense -- because now I know the claim will be made or could be made that everything relates to the death penalty.

All pretrial motions, both dispositive and non-dispositive regarding all legal issues, other than the Government seeking the death penalty, should that decision be made, so that it's clear that we're talking about Fourth Amendment violations and discovery compliance violations or requirements, other forms of pretrial motions such as 404(b) 608, 609 of the Federal Rules of Evidence, Bills of Particular, Brady, Giglio, Jencks -- the standard pretrial discovery motions, and I'm going to require that those be made no later than August 31st, 2023.

**MS. ZOGHLIN:**  Judge, I would respectfully object to the Court setting that schedule for some of the reasons that I've already stated.

I don't believe that the motions can be separated that way and that would be far too short of time, even if they could be.  I just note my objection to the Court setting that.

**THE COURT:**  Your objection is noted and you have a remedy.

How much time is the Government going to need to respond to any motions filed?

**MR. TRIPI:**  Judge, we'd ask for the same time frame that you gave the defense for filing their motions, which I believe was two months.

We'll ask for the same, assuming that the motions are going to be robust.

THE COURT:  I'm going to give the Government 30 days.

MR. TRIPI:  Okay.

THE COURT:  Government responses to any defense motions filed to be filed no later than September 30th, 2023.

MR. TRIPI:  Judge, based upon what we anticipate receiving, we do think 30 days is a little tight from our perspective as well, so --

THE COURT:  I think the executive branch of the Government, including the entire Department of Justice, has more than sufficient resources within which to handle the matter.

MR. TRIPI:  Judge, I'll be on trial all summer.  There are three of us sitting here.  We're the --

THE COURT:  What did you do?  What did you do?

MR. TRIPI:  I'll be in trial all summer.  I understand I'm probably careening towards being on trial if I keep interrupting you, but I'll be in trial from August through October myself.

I understand you're -- what you are saying, but we are the three with case knowledge on it, so September basically means I can't help my colleagues at all, so --

THE COURT:  They might consider that a blessing.

MR. TRIPI:  They might.  They may very well think you are doing them a favor, but that was one of the reasons that I said that that was a little tight.

THE COURT:  Well, I'm anticipating there are going to

be the relatively usually form of defense motions that aren't going to require a large amount of human input from the Government.

If it turns out that way, then you can apply for additional time.

MR. TRIPI:  Okay.

THE COURT:  I now have the problem of trying to figure out how I can get into my computer, since somebody else had used it.

October 10 at 10:30.  October 10th.

MS. ZOGHLIN:  We are available, too, Your Honor, October 10th.

MR. TRIPI:  Judge, my co-counsel begins a trial October 10th, about a week and a half long.

Can we push -- if you ever -- I thought you said that date wouldn't work for you.

MS. ZOGHLIN:  No.  I said we are available.

MR. TRIPI:  Could we get a little bit further, Judge?

THE CLERK:  October 24th.

MR. TRIPI:  That will work.  Thank you.

THE COURT:  October 24th for oral argument.

Now, I want to admonish the Government once again as follows:  As required by the Due Process Protections Act and Public Law 116-182, 134 statute 894 and Federal Rule of Criminal Procedure 5F1, the Court confirms the United States obligation

to produce all exculpatory evidence to the defendant pursuant to Brady versus Maryland, 373 U.S. 83 and its progeny and orders it to do so.

The Government must make these disclosures in sufficient time, so that the defendant will have reasonable opportunity to act upon the information efficaciously.  Citing United States versus Rodriguez, 496 F.3d 221 at 226, a Second Circuit Court of Appeals decision in 2007.

Leka versus Portuondo, 257 F.3d 89 at 98 and United States versus Coppa, 267 F.3d 132, also a Second Circuit Court of Appeals decisions in 2001.

Failure to do so may result in consequences including, but not limited to exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings or sanctions by the Court.

Now, is it the position of the defendant that the time between now and August 31st, 2023, will, in fact, be utilized in such a way so as to operate and enure to his benefit and, therefore, such time should be excluded for purposes of the Speedy Trial Act requirements and any other statutory time requirements that might be applicable?

**MS. ZOGHLIN:**  Yes.

**THE COURT:**  Mr. Tripi, on behalf of the Government, is it the Government's position that the time between now and August 31st, 2023, will operate in the interest of justice in

this case and, therefore, such time should be excluded for the purposes of the Speedy Trial Act?

**MR. TRIPI:** Yes, Your Honor.

**THE COURT:** Based on the representations made by counsel for the respective parties herein, I find that the time between now and August 31, 2023, will, in fact, be utilized in such a way so as to operate and enure to the benefit of the defendant, as well as operate in the interest of justice in this case, in that such time is going to be utilized to allow the Government sufficient time within which to complete the production of voluntary discovery material to the defendant.

And, thereafter, give defense counsel sufficient time within which to review the material provided, as well as time to prepare in the representation of the defendant, so as to provide the defendant with effective assistance of counsel.

That being his Constitutional right, which right outweighs the public right or interest to a speedy trial and/or disposition in this case.

And for those reasons then, the time is justifiably and undoubtedly excludable and is hereby so excluded pursuant to and in accordance with the provisions contained in Title 18, United States Code Sections 3161(h)(7)(A) and Section 3161(h)(7)(B)(iv).

If no motions are filed on or before August 31st, 2023, and if no decision has been made by the Attorney General

of the United States on the issue of whether there is to be a death penalty case or not, we will hold another scheduling conference at a time determined and directed by the Court.

**MR. TRIPI:**  Would you like us to prepare a written order to that effect?

**THE COURT:**  Yes, please.

**MR. TRIPI:**  Okay.

**THE COURT:**  Anything else at this time?

**MR. TRIPI:**  No, Your Honor.

**MS. ZOGHLIN:**  No.

**THE COURT:**  Thank you, everyone.

**MR. TRIPI:**  Thank you, Your Honor.

(Proceedings concluded at 10:47 a.m.)

*    *    *

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York before the Honorable H. Kenneth Schroeder, Jr.

*s/ Bonnie S. Weber*              June 16, 2023
Signature                          Date

BONNIE S. WEBER, RPR

Official Court Reporter
United States District Court
Western District of New York