IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                     22-CR-109 (LJV)

PAYTON GENDRON,

                Defendant.

---

**RESPONSE IN OPPOSITION TO DEFENSE MEMORANDUM IN SUPPORT OF APPEAL FROM DECISION AND ORDER (DOC. 82) DENYING THE DEFENSE MOTION
TO MODIFY THE PROTECTIVE ORDER**

      The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General for the Civil Rights Division, and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys, and Laura B. Gilson, Trial Attorney, Civil Rights Division, hereby submits this Response in Opposition to Defendant's Memorandum in Support of Appeal from Decision and Order [Doc. 82] Denying the Defense Motion to Modify The Protective Order, *see* Doc. 94.

      **I.**      **PROCEDURAL BACKGROUND**

      On May 14, 2022, Defendant Payton Gendron ("Defendant") committed a racially motivated mass shooting of Black people at the Tops Friendly Market ("Tops") on Jefferson Avenue in Buffalo, New York. In the wake of his gunfire, the Defendant left ten Black victims dead, and three more victims injured with gunshot wounds. A federal investigation ensued.

      On July 14, 2022, a federal grand jury in the Western District of New York returned a 27-count Indictment charging Defendant with ten counts of the Hate Crime Act Resulting

in Death, ten counts of Discharge of a Firearm to Commit Murder, four counts of the Hate Crime Act Involving an Attempt to Kill, and three counts of the Use and Discharge of a Firearm During and in Relation to a Crime of Violence. *See* Doc. 6. That same day, this Court referred the case to United States Magistrate Judge H. Kenneth Schroeder, Jr. ("Magistrate Judge Schroeder") for resolution of all pretrial matters. *See* Doc. 8.

Following Defendant's Indictment, the parties negotiated the terms of a mutually agreed upon protective order. *See* Doc. 27. Indeed, as defense counsel acknowledge in their memorandum appealing from the underlying Decision and Order, "the parties negotiated the terms of the proposed order in advance of the government's motion and the defense did not oppose this request." *See* Doc. 94 at 3. In the Protective Order, the parties agreed to define the "defense team" as "federal and state defense counsel of record, and any individuals working on this matter in collaboration with or under the supervision of federal and state defense counsel[,]" and to prohibit the disclosure of "discovery materials or their contents, directly or indirectly, to any person outside of the defense team, except as specifically set forth below." *See* Doc. 27 at 2, ¶ 5. The parties further agreed that "[d]efense team members may review the discovery materials with potential witnesses and their counsel *for purposes of defense and trial preparation*, provided that the potential witnesses and their counsel may review the materials only in the presence of a defense team member and may not take notes regarding the content of any of the discovery materials." *Id.* at 2-3, ¶7 (emphasis added).

Magistrate Judge Schroeder granted the mutually agreed upon Protective Order. *See* Doc. 26. Relying on the parties' agreement and the issued Protective Order, the Government produced liberal, unredacted discovery. *See* Doc. 94 at 3 (defense counsel stating that the Government produced "voluminous discovery," and that following the Defendant's mass

shooting, law enforcement agencies worked together to investigate the crime and "generated massive amounts of investigative materials" which the Government then "included in the discovery thus far provided to the defense team").

On April 28, 2023, the Defendant filed a Motion to Modify the Protective Order. *See* Doc. 54. The Government filed a Response in Opposition and, due to representations that defense counsel made in their motion—evidencing that they had violated the terms of the Protective Order—filed a Cross-Motion to Enforce and Modify the Protective Order. *See* Doc. 57. Defendant filed a Reply. *See* Doc. 61. After receiving leave from Magistrate Judge Schroeder, *see* doc. 62, the Government filed a Sur-Reply, *see* doc. 65.

Following the matter being fully briefed, Magistrate Judge Schroeder issued a Decision and Order, denying Defendant's Motion to Modify the Protective Order and granting, in part, Government's Cross-Motion to Enforce and Modify the Protective Order. *See* Doc. 82. Specifically, after analyzing caselaw in this Circuit regarding whether a court should modify a protective order, *see id.* at 14-16, Magistrate Judge Schroeder found that defense counsel had failed to meet their burden of showing that the Protective Order should be modified and thus denied the modification request, *see id.* at 16-17, 20. In addition, Magistrate Judge Schroeder found that "the protective order does not permit defense counsel to allow review of information subject to the protective order for the purposes of pursuing civil litigation" and prohibited the defense from disclosing the discovery materials subject to the Protective Order for this purpose. *See id.* at 18. Magistrate Judge Schroeder further found that defense counsel had moved to modify the Protective Order for this prohibited purpose and that civil counsel had already sought access to the discovery materials through defense counsel for this prohibited purpose. *See id.* As a remedy for this violation, Magistrate Judge Schroeder prohibited civil counsel from utilizing the information obtained during their

3

improper review of the discovery materials and ordered defense counsel to provide the government with a declaration, setting forth certain basic information of *who* defense counsel had allowed to access the protected discovery materials, *when* such access was given, and *what* protected discovery materials were disclosed. *Id.* at 19.

On August 8, 2023, the defense filed an appeal from Magistrate Schroeder's Decision and Order. *See* Doc. 94. This response ensues.

II.  **RESPONSE TO THE DEFENDANT'S APPEAL OF MAGISTATE JUDGE SCHROEDER'S DECISION AND ORDER (DOC. 82)**

As stated above, on July 14, 2022, this Court designated Magistrate Judge Schroeder to hear and determine all pretrial matters. *See* Doc. 8.[1] Pursuant to this Court's referral order, 28 U.S.C. § 636(b)(1)(A), and Federal Rule of Criminal Procedure 59, Magistrate Judge Schroeder was vested with the authority and discretion to grant the parties' mutually agreed upon Protective Order, deny the Defendant's Motion to Modify the Protective Order, doc. 54, and grant, in part, the Government's Cross-Motion to Enforce and Modify the Protective Order. Doc. 57. A review of relevant caselaw, the procedural history of this case, and the factual record, demonstrate that Magistrate Judge Schroeder did not abuse his discretion and that his Decision and Order was neither clearly erroneous nor contrary to law.

In arguing that Magistrate Judge Schroeder abused his discretion and that his Decision and Order was clearly erroneous and contrary to the law, the defense ignores that a district court's review of a magistrate judge's non-dispositive orders, such as the granting and subsequent refusal to modify a protective order, is "highly deferential." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.,* 301 F.R.D. 47, 50 (S.D.N.Y. 2014) (holding that

---

[1] On August 2, 2023, this Court rescinded its referral order, *see* doc. 93, but, on April 28, 2023, when the Defendant filed his Motion to Modify the Protective Order, the matter was properly before Magistrate Judge Schroeder.

4

the "standard of review is highly deferential" as "magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused.") (quotations omitted). Indeed, a magistrate judge's non-dispositive order is only "clearly erroneous" "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006) (internal quotations omitted) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Further, a magistrate judge's non-dispositive order is only "deemed 'contrary to law if it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *United States v. Turnquist*, No. 21-CR-15, 2022 WL 1913593, at *2 (W.D.N.Y. June 3, 2022) (quoting *United States v. Torres*, No. 18-CR-6094-FPG, 2020 WL 4199075, at *1 (W.D.N.Y. July 22, 2020)).

### A. Magistrate Judge Schroeder Did Not Abuse his Discretion in Denying the Defense Motion to Modify the Protective Order

Magistrate Judge Schroeder did not abuse his discretion in denying the Defendant's motion to modify the Protective Order, nor was his decision clearly erroneous or contrary to law, because he properly found that the Defendant did not establish an "extraordinary circumstance," "compelling need," or even "good cause," to disseminate copies of the discovery materials to the victims' family members and their civil attorneys.

As stated above, approximately two months after Indictment in this case, the government provided comprehensive, unredacted discovery materials to the defense, pursuant to a mutually agreed upon Protective Order. Doc. 27. The Protective Order permits defense counsel to review the discovery materials with potential witnesses and their counsel *for the purposes of defense and trial preparation* but does not permit them to keep copies of the

5

materials. *See id.* at 2-3, ¶ 7. Defense counsel moved to modify the Protective Order to permit them to provide copies of certain portions of the discovery materials – specifically, copies of the Defendant's three digital devices (a cell phone, a laptop computer, and a desktop computer) and the Defendant's "social media data," consisting of the Defendant's "computer files, text messages, emails, and social media accounts, and discovery relating to his activities on various social media platforms" (hereinafter collectively referred to as "the discovery materials") – to the families of the victims and their civil attorneys. *See* Doc. 54 at 2.

In his Decision and Order, Magistrate Judge Schroeder denied the Defendant's motion to modify the Protective Order, finding that the Defendant did not establish an "extraordinary circumstance" or "compelling need" for providing copies of the discovery materials to the victims' families and their civil attorneys. Doc. 82 at 16. In considering the Defendant's motion, Magistrate Judge Schroeder, like other courts in this Circuit, applied the same standard used in civil cases. Doc. 82 at 14 (citing *United States v. Ngono*, 2021 WL 2850626, at *2 (S.D.N.Y. July 8, 2021), and *United States v. Calderon*, 2017 WL 6453344, at *3 (D. Conn. Dec. 1, 2017)). The caselaw relied upon by Magistrate Judge Schroeder provided that, "where there has been reasonable reliance upon [a] protective order, a district court should not modify the protective order absent a showing of improvidence in the grant of the protective order or some extraordinary circumstance or compelling need." *Id.* at 14 (citing *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001)). In determining whether the "protective order reasonably invited reliance," Magistrate Judge Schroeder considered "(1) the scope of the protective order; (2) the express language of the protective order; (3) the level of inquiry by the court prior to granting the protective order; (4) the nature of the reliance; and (5) the type of materials that the party seeking modification is attempting to access." *Id.* at 12 (citing *Ngono*, 2021 WL 2850626, at *2).

After analyzing the five factors, Magistrate Judge Schroeder concluded that the government reasonably relied on the Protective Order in disclosing the voluminous discovery materials to the defense and then applied the "extraordinary circumstance" and "compelling need" standard. *Id.* at 16. Specifically, Magistrate Judge Schroeder found that defense counsel had failed to demonstrate an "extraordinary circumstance" or "compelling need" to modify the Protective Order because "the defendant has complete access to all of the information obtained by the government in this criminal case for his use in preparing his defense to these charges and to a potential death sentence." *Id.* Defense counsel argue that Magistrate Judge Schroeder applied the wrong standard by requiring the defense to demonstrate an "extraordinary circumstance" or "compelling need" for the modification, rather than requiring a showing of "good cause," which is provided for under the terms of the Protective Order. Doc. 94 at 11, 15.

The government submits that, under either the "compelling need" or "good cause" standard, Magistrate Judge Schroeder did not abuse his discretion when he properly denied the motion to modify. The government acknowledges that defense counsel have a responsibility to review criminal discovery with potential witnesses in preparation of their client's defense at any stage of a potential capital case. *See* Doc. 65 at 3. Indeed, the Protective Order recognizes this fact and expressly permits defense counsel to do so. *See* Doc. 27 at 2-3, ¶ 7. The fact remains, however, that *reviewing* discovery with potential witnesses in the federal criminal case does not require *providing* those witnesses and their civil attorneys with copies of that discovery for them to retain. As Magistrate Judge Schroeder found, the Protective Order, in its current form, does not hinder, in any way, defense counsel's ability to defend this case at trial or at a sentencing hearing. At bottom, defense counsel have failed to articulate

7

why the Protective Order must be modified to permit to the victims' family members and/or their counsel to *obtain and retain* the discovery materials.

The reasons proffered by the defense for the proposed modification fall well short of good cause. Defense counsel argue that the victims' family members and their counsel lack "meaningful access" to the discovery materials, and that the proposed modification is justified by "the defense interest in addressing the victims' concerns [about what led the Defendant to commit the mass shooting] and informing their views about the proper penalty to seek in this case" and by the need of the civil attorneys to review the "voluminous" discovery materials ostensibly to advance their civil lawsuit. Doc. 94 at 16. To date, defense counsel have submitted three filings in support of their motion (including their memorandum on this appeal), but they have yet to cite any legal authority to support the proposition that their interests in "informing" the death penalty views of the victims' family members and in helping the civil attorneys advance their civil lawsuit are within the scope of their representation of the Defendant. In fact, a victim or family member's views on the appropriate punishment for the defendant would not be relevant or admissible in a capital sentencing hearing. *See Booth v. Maryland*, 482 U.S. 496, 508 (1987) (explaining that such testimony could "inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant"), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808 (1991).

In any event, to the extent defense counsel need to review the discovery materials with the victims' family members (as potential witnesses) and their attorneys to assist in defense and trial preparation in the federal criminal case, they are already permitted to do so under the express terms of the Protective Order.

Moreover, the relevant legal authority shows that defense counsel's arguments for modification are misplaced. First, the Defendant has no cognizable right to participate in the

8

government's death penalty review process, which is strictly within the province of the Executive Branch. In deciding whether to seek the death penalty in potential capital cases, the Department of Justice is guided by its "Death Penalty Protocol" ("the Protocol"). *See* U.S. Dep't of Justice, Justice Manual §§ 9-10.000 *et seq*. The Protocol is "part of DOJ internal policy that directs the exercise of prosecutorial discretion in capital cases." *See United States v. Crusius*, EP-20-CR-00389-DCG, 2020 WL 4340550, at *4 (W.D. Tex. July 28, 2020). Although the Protocol contemplates input from defense counsel at multiple stages of the review process, it confers no cognizable rights on a criminal defendant. *See United States v. Wilson*, 518 F.Supp.3d 678, 683 (W.D.N.Y. 2021) (stating that the Protocol "does not create substantive or procedural rights for a defendant") (collecting cases); *Crusius*, 2020 WL 4340550, at *5 (collecting cases). Second, while the Department of Justice may – and here fully intends to – consider the views of the victims' family members on seeking the death penalty during this internal process, their opinions are one of many factors that will be taken into consideration, and those views are not dispositive.

In addition to the lack of a legal basis for the proposed modification, the government submits that providing copies of the discovery materials for use in a civil lawsuit would jeopardize the integrity of this prosecution. The government has a duty to ensure that the Defendant receives a fair trial, and the government is entitled to conduct its criminal investigations without worrying that the evidence it gathers will be made public before it is appropriate to do so. By contrast, defense counsel can show no tangible harm from the Court denying the motion to modify and maintaining the *status quo* under the current Protective Order. A criminal defendant has no statutory or constitutional right to disseminate evidence to victims' families' civil attorneys to assist in their civil lawsuits, and defense counsel has not identified any way in which disseminating evidence is necessary to their effective

representation of the Defendant. Similarly, the civil attorneys can follow the normal procedures to obtain civil discovery. Upon information and belief, the civil attorneys have filed a lawsuit. They are now in a position to seek civil discovery from the parties they are suing. The public interest is served only by enforcing the Protective Order as written.

Thus, far from being an abuse of discretion or clearly erroneous and contrary to law, Magistrate Judge Schroeder's decision, based on caselaw and this case's procedural history and factual record, to deny the defense's modification request and maintain the *status quo* under the current mutually agreed upon Protective Order was reasonable and correct.

**B. Magistrate Judge Schroeder Did Not Abuse his Discretion in Finding that Defense Counsel Violated the Protective Order**

Magistrate Judge Schroeder also did not abuse his discretion in finding that the Protective Order had been violated. Nor was that decision clearly erroneous or contrary to law. Acting within his authority, Magistrate Judge Schroeder assessed the plain terms of the mutually agreed upon Protective Order against the conduct of defense counsel and civil counsel. Comparing the two, Magistrate Judge Schroeder found that the Protective Order had been violated and that a remedy was, therefore, called for. This finding was reasonable and supported by the factual record.

In making his findings, Magistrate Judge Schroeder reviewed the terms of the Protective Order and specifically noted that Paragraph 7 provides that "[d]efense team members may review the discovery materials with potential witnesses and their counsel for purposes of defense and trial preparation . . . [.]" Doc. 82 at 3 (quoting doc. 27 at 2-3, ¶7). After reviewing that language, Magistrate Judge Schroeder reasoned, "[t]hus, the protective order does not permit defense counsel to allow review of information subject to the protective order for the purpose of pursuing civil litigation." *Id.* at 18.

Magistrate Judge Schroeder then thoroughly reviewed the pleadings and letters of all relevant parties, including reviewing the scope of the access that defense counsel had already allowed civil counsel for the victims' family members to have to protected discovery materials. *See id.* at 3-9. As indicated in the government's response opposing the Defendant's motion to modify the Protective Order, when defense counsel moved for modification, they stated in their motion that they had, *at civil counsel's request*, already provided civil counsel access to the discovery materials for purpose of furthering civil litigation. *See* Doc. 57 at 9 (quoting doc. 54 at 4 ("Since the issuance of the Protective Order Governing Discovery, legal counsel for several victim witnesses have sought to review limited discovery materials consistent with the terms of the Protective Order Governing Discovery, i.e., in the presence of a defense team member and without taking notes."); *see* Doc. 61, Exhibit A (letter from John V. Elmore to U.S. Attorney Ross, stating, "[o]n January 9, 2023, we visited the Federal Public Defender's Office and, under the supervision of counsel, accessed a dedicated computer terminal housing the defendant's social media data").

Indeed, Magistrate Judge Schroeder noted that the Defendant's motion made clear that "[d]efense counsel moved for modification of the protective order *not to advance their defense of this criminal prosecution, but to facilitate civil counsel's ability to pursue civil remedies*." Doc. 82 at 18 (emphasis added). Magistrate Judge Schroeder also noted that the government, on multiple occasions, had informed civil counsel via letter "that the information obtained during the criminal investigation could not be utilized for the purpose of advancing potential civil lawsuits." Against this backdrop, Magistrate Judge Schroeder found it "disingenuous of civil counsel to have sought access to such information through defense counsel." *See id.* at 19 (citing doc. 60 at 4, 6-7).

11

Thus, having found—based on a thorough and accurate review of the Protective Order, the procedural history, and the factual record—that defense counsel and civil counsel had not complied with the terms of the Protective Order, Magistrate Judge Schroeder acted within his discretion when he issued remedies. In an effort to "maintain the integrity of this criminal prosecution," Magistrate Judge Schroeder prohibited civil counsel from utilizing or discussing the information improperly obtained by reviewing the discovery materials with defense counsel. He also ordered defense counsel to provide the government with a declaration, setting forth certain basic data of who defense counsel had allowed to access the protected discovery materials, when such access was given, and what protected discovery materials were disclosed. *Id.* at 19-20. Such supported and reasoned findings and orders were well within Magistrate Judge Schroeder's authority and discretion, and far from being clearly erroneous or contrary to law.

Notwithstanding the reasonableness of Magistrate Judge Schroeder's remedy of ordering defense counsel to provide the government with a declaration setting forth certain basic data, so that the government could understand the extent of defense counsel's mishandling of protected discovery materials, the government requests that the Court enforce the government's initial requested remedy, that is, that the Court require the defense to submit to the Court a written certification, for in-camera review and consideration, that details all third parties (to include the names of civil attorneys) who defense counsel have allowed to access the protected discovery materials.

## **CONCLUSION**

The Court should deny the Defendant's appeal because Magistrate Judge Schroeder did not abuse his discretion, or act clearly erroneously and contrary to law, in denying the Defendant's Motion to Modify the Protective Order and granting, in part, the Government's Cross-Motion to Enforce and Modify the Protective Order.

DATED:  August 22, 2023
        Buffalo, New York

| | |
|---|---|
| TRINI E. ROSS<br>United States Attorney<br>Western District of New York | KRISTEN M. CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| BY: s/JOSEPH M. TRIPI<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>(716) 843-5839<br>Joseph.Tripi@usdoj.gov | BY: s/LAURA B. GILSON<br>Trial Attorney<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street NE<br>Washington, DC 20530<br>202-598-1141<br>Laura.gilson2@usdoj.gov |
| BY: s/BRETT A. HARVEY<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>100 State Street<br>Rochester, New York 14614<br>(585) 399-3949<br>Brett.Harvey@usdoj.gov | |