UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                                    22-CR-109 (LJV)

PAYTON GENDRON,

          Defendant.
_____

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENSE MEMORANDUM IN SUPPORT OF APPEAL FROM DECISION AND ORDER (DOC. 82) DENYING THE DEFENSE MOTION TO MODIFY THE PROTECTIVE ORDER**

      I.      **<u>Introduction</u>**

In its Response to the appeal of Magistrate Schroeder's decision denying the Motion to Modify the Protective Order, the government persists in its position that lawyers for the victims of the May 14, 2022, attack and their families should be denied meaningful access to Payton Gendron's digital online and social media history. The government contends that the civil lawyers should be deprived of such access despite its apparent inability to articulate why sharing this material would jeopardize the integrity of the criminal case. To justify its position, the government asserts that "the civil lawyers can follow the normal procedures to obtain civil discovery" by seeking "civil discovery from the parties they are suing." Doc. 100 at 10. As the government well knows, however, and has argued in this very litigation, this alternative is illusory because "[t]he law is clear that criminal cases take priority over civil cases." Doc. 57 at 7 (citing multiple decisions in which courts have stayed civil discovery pending resolution of a related criminal case). And if the government seeks and obtains the death penalty in this case, the

1

criminal litigation that is standing in the way of civil discovery could last for years, if not decades.

The Court should vacate the decision below and grant the defense's motion to modify the protective order because:

- Responding to the needs of victims and their families is a legitimate and necessary part of the defense function in a capital case;

- The Court should apply the "good cause" standard and grant the defense motion to modify the protective order; and

- There is no basis for the Magistrate Court's directive that defense counsel divulge confidential work product to the government, nor for the government's request that this information be provided to the Court.

II.     **The Government Conflates Civil Counsel's Apparent Purpose in Reviewing Payton Gendron's Online Activity with the Defense Team's Obligation to Provide Effective Assistance of Counsel at All Stages of the Prosecution.**

A.     *The defense request is fully supported by legal authority.*

The government erroneously asserts that the defense team's efforts to afford the victims' attorneys meaningful access to Payton Gendron's online activity are outside the scope of their representation of their client. In so doing, it focuses on the perspective of the civil attorneys and their reasons for seeking access to the material. The relevant consideration, however, is not how the civil attorneys intend to use the material, but whether seeking to accommodate their goals is beneficial to the defendant. Because doing so has the potential of moving the criminal case toward a pre-trial resolution and highlighting additional mitigating evidence (e.g., the role of social media platforms and weapons manufacturers), it is well within the scope of defending this potentially capital case to share this information with the victims' counsel.

The Supreme Court has recognized that the Sixth Amendment right to the effective assistance of counsel is not narrowly limited to ensuring the fairness or reliability of the trial but extends to "the fairness and regularity of the processes that proceeded it" as well. *See Lafler v. Cooper,* 566 U.S. 156, 169 (2012) (applying the constitutional guarantee of effective assistance to the plea-bargaining process); *see also Missouri v. Frye,* 566 U.S. 134, 143-144 (2012) (noting that because the vast majority of criminal convictions are resolved by guilty pleas, "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant"); John H. Blume, *Commentary on Lafler v. Cooper and Missouri v. Frye: Plea Bargaining and the Right to the Effective Assistance of Counsel: Where the Rubber Hits the Road in Capital Cases*, 25 Fed. Sent. R. 122 (December 2012) (discussing capital counsel's wide-ranging obligation to steer a capital case toward a negotiated life sentence).

Despite these basic legal principles, the government asserts that the defense has "yet to cite any legal authority" to support the proposition that seeking to provide the victims' attorneys with meaningful access to limited discovery "is within the scope of their representation of the Defendant." Doc. 100 at 8. This argument ignores the American Bar Association's Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"), cited extensively by the defense in this litigation. *See, e.g.,* Docs. 61 at 3-4; 94 at 7; *see also* ABA Guidelines, reprinted in 31 Hofstra L. Rev. 913, 1035 (2003). The United States Supreme Court has consistently relied on the ABA Guidelines to evaluate the performance of defense counsel in a criminal case. *See, e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (noting that the ABA Standards have long served as guides to determining what is reasonable); *Frye,* 566 U.S. at 145 (citing the ABA Standards for Criminal Justice, Pleas of Guilty); *Florida v. Nixon*, 543 U.S. 175, 191 (2004) (quoting ABA Guidelines' recognition that "avoiding

3

execution [may be] the best and only realistic result possible" in a capital case where "the evidence is overwhelming and the crime heinous").

Reaching out to and attempting to accommodate the needs and desires of the victims' families is not an afterthought in the defense of a capital case. Rather, "approaching the victim's family members must be part of counsel's efforts toward resolution." Russell Stetler, *Commentary on Counsel's Duty to Seek and Negotiate a Disposition in Capital Cases (ABA Guideline § 10.9.1)*, 31 Hofstra L. Rev. 1157 (2003). "Capital defense counsel have learned from hard experience that they, too, need to understand the needs of the surviving family members, rather than assume that victims' families will automatically and uniformly desire execution." *Id*. at 1159. Outreach to victims and their families can take many forms over the course of capital litigation. *See* ABA Guidelines § 10.9.1, Commentary (rev. ed. 2003), reprinted in 31 Hofstra L. Rev. at 1042 ("Counsel should be creative in proposing resolutions that may satisfy the need of the victim's family"); *see also* Mickell Branham and Richard Burr, *Understanding Defense-Initiated Victim Outreach and Why It Is Essential in Defending a Capital Client,* 36 Hofstra L. Rev. 1019 (2008).

That the government may also reach out to and consider the needs of the victims' families from its own perspective does not in any way diminish defense counsel's obligation to do the same with an eye toward reaching a disposition other than a death sentence. *See* Doc. 94 at 17-18 (explaining fallacy underlying Magistrate Judge's suggestion that disclosing information to the victims' family members "is most appropriately left to the discretion of the United States Attorney's Office"); *see also Arizona Attys. For CRIM Justice v. Ducey*, 2022 U.S. Dist. LEXIS 199781, *40 (D. Ariz. 2022) (noting that a prosecutor does not represent the victim in a criminal trial, court finds Arizona state statute prohibiting the defense from initiating contact

with the victim except through the prosecutor's office unconstitutional on First Amendment grounds).

Thus, contrary to the government's contention, defense counsel's request to modify the protective order to address the needs of the victims and their families is fully supported by legal authority, including the ABA Guidelines, Supreme Court precedent, and the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution.

> B. *The government diminishes the roles of the victims' families and defense counsel.*

In its opposition to modifying the protective order, the government minimizes the importance of the victims' family members' views about the appropriate sentence to seek in this case. *See* Doc. 100 at 9 (noting that the opinions of the victims' family members "are one of many factors that will be taken into consideration, and those views are not dispositive.") That their views "are not dispositive" is irrelevant to whether those views should be fully informed. Nor is it relevant whether the victims' views regarding the desired penalty would be admissible at a capital sentencing trial. *See* Doc. 100 at 8, citing *Booth v. Maryland*, 482 U.S. 496, 508 (1987), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808 (1991). That issue is for another day.

The instant Motion is designed to address the victims' request for information now, in advance of their involvement in the capital review process. One would hope that in soliciting the views of the victims' family members, the government would want them to be fully informed about Payton Gendron's path to radicalization and the social media platforms that fostered this attack. Some family members may decide that accelerating the opportunity to fully air and begin to address the broader historical, societal, and technological forces that combined to facilitate and encourage the horrific events of May 14, 2022, is best accomplished through the civil

litigation. While a death penalty trial and the ensuing years of appeals and postconviction review will necessarily be focused on Payton Gendron and his actions that day, a civil action against other culpable entities, such as social media companies and the firearms industry, offers the hope that a fuller picture might illuminate the path to preventing this type of tragedy from happening again. The family members should be given all of the relevant information to consider these options and the path that best suits their needs.

The government equally minimizes the significance of defense counsel's participation in its death penalty review process, asserting that "the Defendant has no cognizable right to participate" in that process. *See* Doc. 100 at 8-9. In support, the government cites the DOJ Protocol, U.S. Dept. of Justice, Justice Manual §§ 9-10.000 et seq., arguing that while the protocol contemplates "input from defense counsel at multiple stages of the review process, it confers no cognizable right on a criminal defendant." Doc. 100 at 9. As this Court is aware, however, the government has invited defense counsel to participate in the review process in accordance with the DOJ protocol. *See* DOJ Manual § 9-10.080 ("Non-Expedited Decision Submissions"). Having been invited, defense counsel fully intends, and indeed has a Sixth Amendment obligation, to take all appropriate steps to zealously advocate for their client in that forum as in any other. That the government may or may not be legally required to offer this invitation is irrelevant at this juncture.

Further, the cases cited in support of the government's argument involve wholly distinguishable factual scenarios in which the defendants asked courts to intervene in the internal DOJ authorization process. *See United States v. Crusius*, 2020 WL 4340550 at *4 (W.D. Tex. July 28, 2020) (where defense counsel sought a scheduling order directing a date for the defense meeting with DOJ); *United States v. Wilson*, 518 F. Supp. 3d 678 (W.D.N.Y. 2021) (where

defendant asked the court to set a case management schedule regulating the timing of a meeting with the DOJ Capital Review Committee and further an order requiring the government to provide pre-authorization discovery). Neither of those cases have any relevance to the issue before this Court. The defense is not asking this Court to intervene in the penalty review process or to direct that process in any manner.

The government, as part of their review process, intends to follow the DOJ protocols to (1) solicit the views of the victims regarding the death penalty; and (2) has invited defense counsel to participate. The significance the government attributes to these views is irrelevant to whether there exists good cause to modify the protective order.

### III.     **The Protective Order Should be Modified.**

   A. *The government failed to establish reasonable reliance on the protective order as required to invoke the "compelling need" or "extraordinary circumstance" standard for modification.*

There appears to be no serious dispute that, absent a showing of reasonable reliance on the protective order, the applicable standard for modifying such an order is not "extraordinary circumstance or compelling need" but simply "good cause." Doc. 100 at 6-7. The government makes no attempt in its Response to defend the Magistrate Judge's invocation of the incorrect standard to determine if a modification of the protective order was warranted. Instead, after quoting the Magistrate Judge's application of the legal framework outlined by *United States v. Ngono*, No. 16 CR 367, 2021 WL 2850626, at *2 (S.D.N.Y. July 8, 2021), the government suggests that under either a standard of "compelling need" or "good cause" there was no abuse of discretion in denying the motion to modify the protective order. Doc. 100 at 7. The government thereby appears also to concede that it cannot establish reasonable reliance on the protective order necessary to invoke the heightened standard.

As defense counsel previously briefed, the government cannot establish reasonable reliance where: (1) the protective order was very broad in scope, covering all discovery material in any format (written or electronic) that is produced by the government; (2) the language of the protective order expressly contemplates modifications; (3) the discovery materials sought to be disclosed by the modification are limited to materials that would have been required to be disclosed even if no protective order had ever been entered;[1] and (4) no privacy interests are implicated by the requested modification. *See* Doc. 94 at 11-15. The *Ngono* factors weigh heavily against a finding that the government reasonably relied on the protective order.

It is clear, then, that the Magistrate Judge's finding of reasonable reliance and application of the extraordinary circumstance/compelling need standard to deny the Motion to Modify was an abuse of discretion. Under the correct standard of good cause, this Court should grant the Motion.

### B. The defense established good cause to modify the protective order.

The defense interest in affording the victims' families and their attorneys meaningful access to Payton Gendron's online and social media activity establishes good cause for the

---

[1] "To obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality." *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020); *see also United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (stating, in appeal alleging breach of Rule 16, that "[t]o prevail ... [the defendant] must demonstrate that the [documents] are material to the preparation of his defense"). In the context of a potential capital case, it has been recognized that materiality within the meaning of Rule 16 includes evidence relevant to a potential mitigating factor. *See United States v. Tsarnaev*, 2013 WL 6196279, at *4 (D. Mass. 2013) ("in the context of a death-eligible case, discovery under Rule 16(a)(1)(e)(i) includes information material to defense preparation for the penalty phase"); *cf. United States v. Feliciano*, 998 F. Supp. 166, 170 (D. Conn. 1998) ("In order to be entitled to discovery of this information, 'defendants need only establish a "substantial basis for claiming" that a mitigating factor will apply at the penalty phase, in order to invoke the Government's obligation under *Brady* and its progeny to produce any evidence which is material to that mitigating factor'") (citation omitted)). Payton Gendron's online and social media activity, particularly as it illustrates his path to radicalization and the outside influences on his thinking and behavior, is material to a potential penalty phase in this case and, therefore, discoverable under Rule 16.

requested modification of the protective order. The government acknowledges that "defense counsel have a responsibility to review criminal discovery with potential witnesses in preparation for their client's defense *at any stage of a potential capital case*," Doc. 100 at 7 (emphasis added), and are expressly permitted to review discovery materials with "victims' family members (as potential witnesses) and their attorneys to assist in defense and trial preparation in the federal criminal case under the express terms of the Protective Order." *Id*. at 8. The government nevertheless insists that permission to review discovery does not require allowing those same witnesses to retain copies of the discovery. *Id.*

Having recognized that the victims and their legal teams are permitted to review discovery, it naturally follows that they should be able to do so in a *meaningful* way. Given its sheer volume and complexity and the form in which the raw digital information has been produced, meaningful review of the online searches and social media activity absolutely requires the ability to retain and work with copies of the digital data. As detailed in the original modification motion, the voluminous digital forensic evidence cannot practically be reviewed without extensive forensic processing. There is, therefore, good cause to modify the order as it relates to the social media data requested.

The government makes no real attempt to support its conclusory allegation that permitting witnesses' legal counsel to retain copies of this limited portion of discovery threatens the integrity of its prosecution. The sweeping claims that the government has a "duty to ensure that the Defendant receives a fair trial" and that it should not have to "worry[]" that "the evidence it gathers will be made public before it is appropriate to do so," *id.* at 9, are unfounded. The victims' attorneys have asked for meaningful access to review the discovery materials to help them assess the path of radicalization that Payton Gendron took before he committed this

9

attack and the online and social media platforms that enabled it. It is imperative for the victims and their counsel to be able to conduct this investigation before the Attorney General has decided whether to seek the death penalty or a capital trial has commenced since it may well inform their views on that critical decision and/or on the desirability of an immediate, non-capital resolution that provides finality to the criminal case.

The government fails to explain how granting a defense request to allow the victims' legal counsel to retain the limited discovery they seek, under the non-disclosure restrictions set forth in the original protective order as well as the additional requirements in the proposed Supplemental Protective Order would undermine the defendant's right to a fair trial or risk the material being publicly disclosed prematurely. Those additional protections provide that civil counsel use only "a secure review platform," and "data vendors that meet with ISO27001 and SOC2 standards concerning data privacy and security," and that any materials filed in other proceedings be placed under seal and "shall remain under seal under otherwise ordered by this Court." *See* Doc. 54, Exhibit A. Given these security and privacy protections in the supplemental order, the government's concerns about premature public disclosure of its evidence are unfounded.

Thus, there exists good cause to modify the protective order to further the "overriding goal of the review process" which is "to allow proper individualized consideration of the appropriate factors relevant to each case during the deliberative process." DOJ Manual § 9-10.030 ("Purposes of the Capital Case Review Process"). When soliciting the views of the victims' family members, the government should welcome views fully informed by the information contained in the social media data requested, information that illustrates Payton

Gendron's online activity, his path to radicalization, and the social media platforms that fostered this attack.

### IV. Compelled Disclosure of Privileged Defense Work Product is Unwarranted

The government does not attempt to persuade this Court to uphold the Magistrate Judge's order requiring defense counsel to provide *the government* with a "declaration setting forth the identity and contact information of any individual representing the victims and/or family members of victims who was permitted access to any information subject to the protective order, as well as the date(s) and length of time such access was provided and a detailed description of the materials such individual reviewed." Doc. 82 at 19. Instead, the government reiterates its initial request that defense counsel be required to provide a declaration to the Court. Doc. 100 at 12. Neither below, nor on this appeal, does the government provide any basis for such an unprecedented breach of defense counsel's work product. Even were one to assume that defense counsel violated the existing protective order by permitting counsel for the victims' families to look at limited discovery material under supervision and without taking notes – which they have not – the government fails to explain how this purported violation would be addressed or ameliorated by the remedy proposed. Nor does the government explain what purpose would be served by providing the information requested for the Court's *in camera* review.

### V. Conclusion

Based on the foregoing, the undersigned request that this Court vacate the Decision and Order of Magistrate Judge Schroeder denying the motion for a modification of the Protective Order Governing Discovery and issue the requested Supplemental Protective Order Governing Discovery Material to be Provided to the Victims' Legal Teams, and further request that this

Court vacate the order requiring defense counsel to provide a declaration to the government, and deny the government's request that a declaration be provided to the Court, identifying what witnesses and/or counsel reviewed discovery subject to the protective order, when those meetings occurred, and detailing what discovery those witnesses and/or counsel reviewed.

Dated:       August 29, 2023
               Buffalo, New York

                                       *s/MaryBeth Covert*
                                       MaryBeth Covert
                                       Senior Litigator

                                       *s/Sonya A. Zoghlin*
                                       Sonya A. Zoghlin
                                       Assistant Federal Public Defender

                                       *s/Anne M. Burger*
                                       Anne M. Burger
                                       Supervisory Assistant Federal Public Defender