09:23AM

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

Plaintiff,

Case No. 1:22-cr-109 (LJV)

vs.

October 2, 2023

**PAYTON GENDRON,**

Defendant.

**TRANSCRIPT OF ORAL ARGUMENT**
**BEFORE THE HONORABLE LAWRENCE J. VILARDO**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**TRINI E. ROSS, UNITED STATES ATTORNEY**
**BY: JOSEPH M. TRIPI, ESQ.** (Buffalo)
**BRETT A. HARVEY, ESQ.** (Rochester)
Assistant United States Attorneys
Federal Centre, 138 Delaware Avenue
Buffalo, New York 14202
**UNITED STATES DEPARTMENT OF JUSTICE**
**CIVIL RIGHTS DIVISION**
**BY: LAURA B. GILSON, ESQ.**
150 M. Street NE
Washington, D.C. 20530
For the Plaintiff

**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**BY: SONYA A. ZOGHLIN, ESQ.** (Rochester)
**ANNE M. BURGER, ESQ.** (Rochester)
**MARYBETH COVERT, ESQ.** (Buffalo)
Assistant Federal Public Defenders
300 Pearl Street, Suite 200
Buffalo, New York 14202
For the Defendant

**COURT DEPUTY CLERK:** **COLLEEN M. DEMMA**

**COURT REPORTER:** **ANN M. SAWYER, FCRR RPR CRR** Notary Public
Robert H. Jackson Courthouse
2 Niagara Square
Buffalo, New York 14202
Ann_Sawyer@nywd.uscourts.gov

11:19AM (Proceedings commenced at 9:32 a.m.)

09:32AM THE CLERK: All rise. United States District Court for the Western District of New York is now in session, the Honorable Lawrence J. Vilardo presiding.

09:32AM THE COURT: Please be seated.

09:32AM THE CLERK: 22-CR-109, United States of America versus Payton Gendron.

09:32AM Assistant United States Attorneys Joseph Tripi, Brett Harvey, and Laura Gilson, appearing on behalf of the government.

09:32AM Assistant Federal Public Defenders Sonya Zoghlin, Anne Burger, and MaryBeth Covert, appearing on behalf of the defendant. The defendant is not present.

09:32AM This is the date set for an oral argument.

09:32AM THE COURT: Good morning, everyone.

09:32AM ALL PARTIES: Good morning, Your Honor.

09:32AM THE COURT: You waive your client's appearance?

09:32AM MS. COVERT: Yes, Your Honor, we do.

09:32AM THE COURT: Okay. Before we begin, I want to just say something that everybody knows, but I just want to make it clear for the record and let the parties do what they think they need to do. My former law partner, Terry Connors, is involved in representing some of the victims in this case. And, obviously, that is implicated by this motion that's in front of me now. It has nothing to do with how I will decide

the motion. I don't think it affects my ability to be fair in any way whatsoever. You folks knew this already, I'm sure, but I just want to make it clear for the record and see if anybody has any issues with it. Mr. Tripi?

MR. TRIPI: Your Honor, I think you've had at least one other case I'm aware of where Mr. Connors represented at least a party in that case, I think it's a government witness. I don't view that as any different than this, he's not a party in this action. So not -- nothing at this time, Judge.

THE COURT: Any problems from the defense?

MS. COVERT: None, Your Honor.

THE COURT: Okay. I think whenever there's an issue like that, out of an abundance of caution, I just want to make it clear on the record that I've let the parties know and, as I say, it's not going to affect my ability to be fair in any way whatsoever, but I just raise that.

So, I've read the papers. And let me say this, I'm a little surprised by the government's position here because the government's always all about the victims. And -- and when I saw -- when I thought it was grand jury material, I understood why the government might be opposed. Why are you opposed to the defendant sharing cell phone contents and things like that with the victims' lawyers?

MR. TRIPI: Well --

THE COURT: And is there some middle ground that can

be reached that allows some of this stuff to be shared, you know, again, pursuant to a protective order of some sort that would cover not only the defendant and defense counsel, but anyone with whom evidence is shared so that it's only used in litigation, for litigation purposes. And, you know, maybe even if there's -- if there's some concerns about disclosure of some stuff, prohibit disclosure even in the other -- in the civil case for the time being.

But I just, I don't understand why the government is opposed to helping the victims when in every other case I've ever -- every other criminal case I've ever had, the government was all about helping the victims, and there's a statute that requires the government to consider the victims.

MR. TRIPI: Yes. And that statute, we are fully in compliance with --

THE COURT: Oh, I'm sure you are. I'm sure you are. And I'm sure there's a reason, I just don't know the reason, that's why I'm asking.

MR. TRIPI: Yeah. To step it back, the -- the overall arching reason is because it would be unprecedented, it would be unprecedented to -- and the defense hasn't cited a case to the contrary, to use the federal grand jury process which is where a lot of this information was generated to tee up a civil lawsuit.

THE COURT: Okay. You say the federal grand jury

09:36AM process. They're talking -- so tell me -- let's talk about the cell phone. Let's talk about his cell phone. How does --

MR. TRIPI: Sure.

THE COURT: -- how is the grand jury process affected by that?

MR. TRIPI: Well in that specific instance, if you want to just limit it to the cell phone for a moment, that was through -- that was obtained through -- the data gleaned from that was obtained through a federal search warrant, so that falls into the federal discovery realm. A lot of the other material falls into the grand jury process.

In terms of social media accounts that belong to defendant, that information we use to identify witnesses. So it's stepping it back one level to get to the same place.

In other words, the way the government conducts an investigation is they subpoena -- they subpoena or get search warrants for social media accounts, and then identify people related to those accounts, and then those people go in grand jury. It would be used in the same matter here.

So it is essentially an end run around to the witnesses, which does impact the grand jury.

So it's the long way of getting there because they know, I would presume they know, that asking this Court for federal grand jury transcripts would likely be a nonstarter, so it's an end run around to the same information.

09:37AM Much in the same way in a case you're becoming familiar with, earlier this year the 2nd Circuit in U.S. versus Gerace, enjoined -- the government made a motion to actually enjoin civil lawsuits that were targeted at the federal grand jury and civil -- sorry, the -- the -- the criminal discovery. And in that case, I'll give you the citation, it's 2023 Westlaw 3243477. In weighing the interest the 2nd Circuit in May of this year said that the district court in that case in granting the injunction weighed the government's interest in protecting witnesses from threats and intimidation, preserving grand jury secrecy, and enforcing federal criminal discovery rules. All those same issues would be at play here because those are the same interests that the government's protecting.

09:38AM Now, we have well-versed and able counsel on the other side. If there were a case anywhere in the country that said you can proceed in this fashion, use the federal grand jury material for civil lawsuits, they would have cited it. They haven't.

09:38AM And I'd like, Judge, you did civil law for a long time, you've probably forgotten more civil law than I know, but at the same time, let's change the scenario just for a moment. Let's say you have a corporation dumping pollution into a waterway. I think there would be a compelling interest in -- and let's say the government were investigating that

corporation criminally for the dumping, I think we could agree that would it be improper for the government to use its federal grand jury materials to tee up either a federal civil suit, or to give to those individual plaintiffs in support of a class action lawsuit. It would be the same thing. And I don't think the Court would have any hesitation in -- in -- in knocking the government back in any effort to do so.

Here, we have the same thing. The -- the -- the wholesome objectives are not at issue here. Personally, the attorneys at this table would love to do everything we can to aid the victims in all of the remedies that they can pursue. However, there is a standard of law, one, and, two, historical precedent within the department. Because if -- if -- if you do it in this case just because it's one of the most egregious cases in the history of our nation, then what's to stop it in every other case? There's a slippery slope there.

Just because the defense says, hey, there's some civil attorneys who have really pure motives here, it becomes standardless. So when you --

THE COURT: But why -- but why, so -- so let's take a step back from the civil perspective.

MR. TRIPI: Sure.

THE COURT: If there were no criminal case, the civil lawyers would -- would make a demand for evidence. And the cell phone might be something that they ask for and they might

get.

MR. TRIPI: Yes, I thought you would ask that.

THE COURT: Yeah. And the reason they can't get it now is because you have it.

MR. TRIPI: That's right. And that's the fundamental difference. The fundamental difference is we're not dealing with a no-criminal case situation.

So if there were a lawsuit, and the defendant was Payton Gendron in his individual capacity, and there's no criminal case, sure, he could -- he could turn over his phone if he were so inclined, or the attorneys could fight about that.

But the fundamental difference is that cell phone no longer belongs to him. The social media accounts no longer belong to him. He has a privacy interest that I'm sure they'll litigate in the context of the Fourth Amendment later on, but those things are evidence. They belong to the government at this point, they don't belong to Payton Gendron.

THE COURT: The -- the defense shared some of this information with the -- with one of the lawyers for some of the victims, and the government knew about it and didn't do anything about it. Is there -- is there a waiver argument there?

MR. TRIPI: I don't believe so, because I think, Judge, if you go -- if you stepped it back to the beginning, I

09:41AM think all that speaks to is the government tried to be reasonable. Several times, you know, first of all, if you go all the way back to the protective order, the defense could have negot -- this was fully negotiated, the defense could have made plain and demanded a clause that said we get to share the stuff with the civil -- civil attorneys for the victims to use in civil lawsuits. We wouldn't have agreed to it because of the reasons I've just stated. So it wasn't negotiated at the outset.

09:42AM Then, when we catch wind of and we have meetings with the civil attorneys, we expressly stated in no uncertain terms, you can't do this. You can't do this.

09:42AM Now, if you want to fault us for not running to the Court sooner, I -- I guess you can. But at the same time I think if we ran immediately to the Court, you might be saying why didn't you try to work it out? So, we're caught in a rock and a hard place there.

09:42AM THE COURT: I understand.

09:42AM What sanctions did Judge Schroeder impose? I mean, they were not particularly onerous sanctions, were they?

09:43AM MR. TRIPI: No. He imposed upon the defense actually something we didn't ask for, which was to give us essentially a certification of who's been provided access. We're not make -- we're not standing by that, we're not asking for that. We think it's sufficient. We do believe that the who, what,

09:43AM and when, of who has been provided access is appropriate for someone to know, and we suggest that Your Honor gets that information. And if you looked at it and say there's nothing here that we need to follow up on, we'll -- we accept that.

09:43AM THE COURT: Okay. And that's the only sanction?

09:43AM MR. TRIPI: Yes.

09:43AM THE COURT: Okay. So, Ms. -- are you going to argue?

09:43AM MS. COVERT: Yes, Your Honor.

09:43AM THE COURT: So what Mr. Tripi says to me makes this a close question. But the standard is, you know, the magistrate judge has to have clearly erred. So when I factor that into the equation, boy, I have a tough time concluding that there's -- that there's clear error. Tell me why I'm wrong.

09:44AM MS. COVERT: Well, in the first instance, the magistrate judge used the wrong standard to assess whether or not there was a basis to modify the protective order. And I think that, using that wrong legal standard, would be clear error.

09:44AM And so what we've sort of outlined in our papers, why that is, the government says that they relied on the protective order, that the language of the protective order allows us to share that discovery with potential witnesses, of which these victims are. I think we've outlined exactly why that is, exactly why our reading of the protective order -- Judge, I sit here today to tell you we did not violate the

09:44AM protective order in sharing the discovery because the express language of the protective order allows for us to share it with potential witnesses for purposes of the defense.

09:44AM THE COURT: Yeah, for -- and, I mean, that's -- and that's where -- and that's where judge -- you lost Judge Schroeder, and that's where I have some question for purposes of the defense. And so I understand that you would like to help the victims, because you'd like them to understand that Mr. Gendron now wants to cooperate with them, that he has -- that he's showing some recognition that what he did was wrong, and so forth. But don't you do that simply by asking the Court to allow you to share the stuff, and if the Court says no, the victims know you're doing what you can for them?

09:45AM MS. COVERT: Well, the language in the protective order, and Judge, not just because he's expressed remorse and is willing to share the information, but because they should be informed about the path that he took, the online path that he took. They've asked for that information, I think they're entitled to it. And we were allowed to share that information with their attorneys under very strict parameters under the protective order, you know, only in our presence, without taking notes. It wasn't meaningful access to them, and so we moved to modify it to provide them more meaningful access.

09:46AM So, I just -- I struggle, Judge, on how, under the protective order, saying we can do it for purposes of defense,

and in a capital case --

And I think this case is different. This case is not like the Gerace case that this Court is aware of. We are not talking about the government having articulated any evidence, that there's threats to potential witnesses. That's not happening here. This isn't that type of case, Judge.

THE COURT: But there have to be -- there have to be lots of cases where, in addition to the criminal charges, there's a civil lawsuit. So any kind of case where there's an assault, or a murder, or something like that, there's got to be cases where a civil lawsuit came from the same facts.

And Mr. Tripi says that there's no case where a judge has ever done what you're asking me to do.

How can -- if -- how can that be? How can you be right, and there not be a case where a judge has done that?

MS. COVERT: I'm not sure, Judge, how it would have come up before. Right? We are in a position here where our client's device -- we're only talking about social media data of Payton Gendron, we are not talking about PEI of other witnesses --

THE COURT: Aren't there -- aren't there other ways that counsel in the civil case can get social media data with respect to Payton Gendron?

MS. COVERT: So, Judge, the cases that the government has cited that suggest that the civil process may be a means

09:47AM by which the civil lawyers could obtain this discovery,
09:47AM usually the government interferes and says no, we're gonna
09:47AM stop and we're gonna stay that discovery.

09:47AM If they're saying today that they're not going to
09:48AM interfere in the process and the civil lawyers can go and get
09:48AM it, well, that cuts both ways. Because then if they can go
09:48AM and get it by other means through the civil litigation and be
09:48AM successful in that, then that obviously doesn't threaten the
09:48AM integrity of the government's prosecution for that information
09:48AM to be disclosed.

09:48AM THE COURT: Mr. Tripi, would -- if the counsel in the
09:48AM civil case sought in the state court to get access to the
09:48AM social media, what -- would the government -- would the
09:48AM government intervene in that?

09:48AM MR. TRIPI: I -- I guess I don't have a crystal ball,
09:48AM and so I can tell you this: There have been several civil
09:48AM suits since this litigation has commenced, Your Honor, civil
09:48AM suits have been filed. So that sort of takes away from the
09:48AM argument that they can't progress in their civil lawsuits
09:48AM because now there are multiple civil lawsuits that have been
09:48AM filed, and we have not moved to enjoin any of those. We are
09:48AM not taking any action.

09:49AM Now there may be a situation, depending on how this
09:49AM argument goes, where the criminal defense team is trying to go
09:49AM to the state through the FOIL process, we can talk about that

later, that we might have to say something about. But I don't think we intend to intervene or try to enjoin civil lawsuits as long as the information that we're protecting -- and I should circle back.

There was one more sanction, if you want to call it that, that I'm aware of that Judge Schroeder imposed. It was that they cannot use what they gleaned from their viewing of the materials to date in their civil lawsuits.

THE COURT: Yep.

MR. TRIPI: So to the extent that's a sanction, I think that that's just compliance with the order.

THE COURT: And that wouldn't apply to counsel, it would apply to the lawyers in the civil case.

MR. TRIPI: To the civil attorneys, yes.

THE COURT: And whether we have jurisdiction over those lawyers, I'm not so sure.

But anyway, I'm gonna -- I'm going to overrule the defendant's objection. I don't think that there's clear error here. And I'm going to do that without prejudice to letting this -- the civil case play out. And if the government intervenes, we can revisit this then.

So let's let the civil case play out, let's let them get the usual discovery they would get in a civil case, and then if they come back to you and say, look it, we've -- we've hit a dead end, we can come back and talk about modifying the

09:50AM protective order.

09:50AM But based on the standard, based on the standard that I'm applying to Judge Schroeder's ruling, I just don't think I can -- I can say that he clearly erred, and so I'm going to overrule the objection.

09:50AM And I will take Mr. Tripi up on his generous suggestion that I review what Judge Schroeder instructed you to provide to the government. So provide that to me, and I will take a look at it.

09:50AM I don't think defense counsel violated the protective order. I mean, it certainly wasn't an intentional violation of the protective order. I think that they read -- they may have read it more broadly or more narrowly, depending upon your perspective, than you were reading it, but I certainly don't think that there's anything that was done that was truly sanctionable. But, as I say, I will take a look and --

09:51AM MR. TRIPI: All right.

09:51AM THE COURT: -- see if there's any --

09:51AM MR. TRIPI: I totally understand. And not impugning the integrity of any individual attorney.

09:51AM THE COURT: Yes.

09:51AM MR. TRIPI: It's obviously an adversarial process, Your Honor, and we had a different view.

09:51AM THE COURT: Yeah. No, I get that. I get that.

09:51AM Okay. Anything else that we need to do?

MS. COVERT: Judge, I just want to clarify for the record. Is the Court finding that we violated the protective order? I struggle with a sanction, Judge, because I've never been in a position where I've had to disclose work product without any understanding about what that's being used for.

THE COURT: So what are they -- they're supposed to tell me what --

MR. TRIPI: Who's been provided access.

THE COURT: Well, we know that, don't we?

MR. TRIPI: I don't know that.

THE COURT: It's either -- it's either Mr. Elmore or Mr. Connors.

MR. TRIPI: I can infer that, but I don't know that. And so I don't see the harm in telling you that, just to be sure. And the "when" and the "what," precisely "what."

THE COURT: Is there a harm in telling me that?

MS. COVERT: Well, Judge, I --

MR. TRIPI: I don't see that -- sorry, I didn't mean to interrupt.

I just don't view that as work product, especially because it's going to you, it's not going to us. I feel like we've made that concession already.

THE COURT: Yeah. Is there a harm in telling me that?

MS. COVERT: Judge, I -- I struggle with being forced

to disclose our efforts, our -- our investigation, our communications with the victims and their attorneys, and -- and being required to disclose that to the Court, the number of times we've met with them. That's where I'm -- that's where I'm struggling with, and -- and for what -- for what purpose.

I can tell you that in the papers, we made clear that none of the grand jury testimony was disclosed and shared with anybody, and I'm not sure that there's more. I think the filings indicate that, at least with respect to Mr. Elmore's letter, it was revealed that they reviewed social media data. And I'm not so sure that it should be required that we say how many times we've met with them, how often we've met with them, and any more specificity --

THE COURT: Yeah.

MS. COVERT: -- than that, Judge.

THE COURT: Toward -- toward what end, Mr. Tripi? What are we going to accomplish?

MR. TRIPI: Judge, I'm happy to cut the argument here and just defer to the Court's discretion on it.

THE COURT: Okay. So I'm not going to -- you've convinced me. I always say I keep an open mind, and obviously I am keeping an open mind. So you've convinced me. I will change my mind, and not require you to disclose that to me.

And I don't think that the defense, I mean, you know,

09:54AM again, I'm overruling the objection, but I really don't think the defense violated the protective order. They certainly did not violate it intentionally. It's a difference in reading of it, and I understand what Judge Schroeder found, and I'm agreeing with it right now. But, as I say, this is something we can revisit at some time. It's the standard that troubles me here.

09:54AM If this were de novo review, I might -- I mean, it would be a closer question. It would certainly be a closer question. But it's not de novo review, so that's why I'm deciding the way I'm deciding. Okay?

09:54AM MS. COVERT: Thank you, Judge.

09:54AM THE COURT: Anything else we need to do?

09:54AM MR. TRIPI: Can we just have a moment?

09:54AM THE COURT: Of course, yeah.

09:54AM (Off the record at 9:54 a.m.)

09:54AM (Back on the record at 9:54 a.m.)

09:54AM MR. TRIPI: Nothing further, Judge. Thank you.

09:54AM THE COURT: Anything further?

09:54AM MS. COVERT: Nothing, Judge.

09:54AM THE COURT: Let me ask, do we know where things are in Washington?

09:55AM MS. COVERT: I think I'm allowed, Judge, to disclose that we did have a meeting with the Capital Review Committee on September 18th. And I know we have a status scheduled in a

09:55AM couple weeks, I'm not sure if the Court would consider moving that, adjourning that a little bit. I'm not so sure that we'll have any decision by then, but that would be a question for the government.

09:55AM THE COURT: I'm happy -- I'm happy to adjourn that if you think that -- I understood -- I thought somebody told me end of September was a reasonable time to expect a decision. Obviously, that's come and gone.

09:55AM MR. TRIPI: Judge, we have no objection to adjourning that date. I can confirm what counsel stated, that the meeting with the Capital Review Committee has occurred. That deliberative process, whatever that committee does, is still underway. I fear that come October 20th, I'm not going to have much to report, and I'll be here saying the same thing.

09:55AM THE COURT: Fine, so let's put it off then. What do you think? Should we put it off 30 days from October 20th? Maybe make it toward the end of November? Make sense?

09:56AM MR. TRIPI: That would work for us.

09:56AM THE COURT: Let's do that. Ms. Demma?

09:56AM THE CLERK: Judge, I'm looking at Monday, November 20th, at 9:30. Does that work with your schedules?

09:56AM MR. TRIPI: It does.

09:56AM MS. COVERT: At 9:30?

09:56AM THE CLERK: 9:30.

09:56AM MS. COVERT: Judge, one of my cocounsel is not

available that week. I wonder if the Court is available the 27th, the following week.

THE CLERK: Tuesday, November 28th, at 9:30?

MR. TRIPI: That's fine, too.

MS. COVERT: Thank you, Judge.

THE COURT: Terrific. Okay. Anything else?

MR. TRIPI: Just in an abundance of caution, Judge, I know there's motions pending, and I believe time might already be excluded. If it's not, I want to just make an application to exclude time from today's date up to and including November 28th, 2023, in the interests of justice and in the interest of effective assistance and continuity of counsel pursuant to Title 18, U.S. Code, 3161(h)(7)(A) and (h)(7)(B)(iv). As the parties have previously reported there's voluminous discovery, counsel are going through all of that. The Capital Review Committee's evaluating its position. All of that is still sort of at play. And I think that we are awaiting scheduling a more robust motion schedule pending the outcome of that.

So for all those reasons, I'd ask that the Court exclude time in the interest of justice and for effective assistance and continuity of counsel.

MS. COVERT: No objection.

THE COURT: Yeah. So based on representations of counsel for both sides that there are a number of things going

09:57AM on right now that require their attention before we can go to
09:58AM trial in this case, and before we could even begin to think
09:58AM about a trial in this case, the Court finds that the interests
09:58AM of justice served by a continuance until and including
09:58AM November 28th --

09:58AM THE CLERK: Yes.

09:58AM THE COURT: -- 2023, namely that the failure to grant
09:58AM the continuance would unreasonably deny both sides the ability
09:58AM to do the things that they need to do, those are all interests
09:58AM that outweigh the interests of the defendant and the public in
09:58AM a speedier trial, and the Court therefore excludes time for
09:58AM Speedy Trial Act purposes under Title 18, United States Code,
09:58AM 3161(h)(7)(A) and (h)(7)(B)(iv) from and including today's
09:58AM date through and including November 28th.

09:58AM And, Mr. Tripi, your office will provide a written
09:58AM order for me?

09:58AM MR. TRIPI: I will, Your Honor. Thank you.

09:58AM THE COURT: Terrific. Okay. Anything else now?

09:58AM MR. TRIPI: No, Your Honor. Have a good day.

09:58AM MS. COVERT: No, Your Honor. Thank you.

09:58AM THE COURT: Thank you, everyone. Good seeing
09:58AM everybody.

09:58AM (Proceedings concluded at 9:58 a.m.)

* * * * * * *

**CERTIFICATE OF REPORTER**

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York on October 2, 2023.

s/ Ann M. Sawyer
Ann M. Sawyer, FCRR, RPR, CRR
Official Court Reporter
U.S.D.C., W.D.N.Y.