IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                              22-CR-109-V

PAYTON GENDRON,

     Defendant.

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PROPOSED SCHEDULE FOR LITIGATION PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(b)

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys, Laura Gilson, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Department of Justice Capital Case Section, of counsel, respectfully submits this response to defendant's Proposed Schedule for Litigation Pursuant to Federal Rule of Criminal Procedure ("FRCP") 12.2(b) and proposes an alternative schedule, attached as Exhibit A.

### FACTUAL BACKGROUND

On February 2, 2024, the parties appeared for a status conference wherein the Court set a pretrial litigation schedule and a trial date. *See* Docket No. 135, 2/2/2024 Minute Entry. During the conference, the Court asked the parties for briefing with respect to a schedule relating to FRCP 12.2. Defendant filed his proposed schedule on February 16, 2024. Docket

No. 138. On February 21, 2024, the government submitted a draft of its alternative proposal to defense counsel, and the parties held a telephonic conference to attempt to reach points of agreement. The parties agree that litigation relating to the contents of the defendant's potential FRCP 12.2(b) notice and certain procedural matters should occur prior to the defendant filing his FRCP 12.2(b) notice. The parties disagree, however, as to when the defendant should be required to file his FRCP 12.2(b) notice, as well as the timing for litigating issues relating to the scope of and procedures for potential rebuttal examinations by government experts.

After the parties conferred, defense counsel sent a revised proposal continuing to set June 23, 2025, as the FRCP 12.2(b) notice deadline and condensing the ensuing litigation schedule following the notice.[1] Although the government is amenable to compromise where appropriate, the government cannot agree to the revised proposal. Because the defendant's FRCP 12.2(b) notice will trigger extensive litigation, absent an earlier deadline to the file the notice, the defendant's condensed litigation schedule does not allocate adequate time.

---

[1] The defense proposed the following revised dates to condense the post-notice litigation:

June 23, 2025:  Notice of intent pursuant to 12.2 (b) due

July 7, 2025:     Government motion for compelled examination

July 21, 2025:   Defense response to government motion for compelled examination

July 28, 2025:   Government reply to defense response motion for compelled examination

August 4, 2025:  Oral argument and/or hearing (if necessary) on government motion for compelled examination

The government attaches its proposed FRCP 12.2(b) litigation schedule, which sets earlier deadlines for the defendant to file his FRCP 12.2(b) notice and all subsequent related litigation. *See* Exhibit A. In addition, all litigation pertaining to the scope and procedures for rebuttal examinations must necessarily follow the defendant's FRCP 12.2(b) notice. Advancing the FRCP 12.2(b) notice deadline allows adequate time for attendant litigation and ensures the government can complete any evaluations of the defendant prior to the start of jury selection. Accordingly, the Court should adopt the government's proposed FRCP 12.2(b) schedule.

## ARGUMENT

### I. THE COURT SHOULD ADOPT THE GOVERNMENT'S FRCP 12.2(b) DEADLINE.

The Court should set the FRCP 12.2(b) deadline no later than March 25, 2025, which is approximately 5.5 months prior to the start of trial. This deadline addresses the concerns of both parties and allows for the efficient administration of justice. In contrast, the defendant asks the Court to set the deadline for June 23, 2025, a mere 77 days prior to the start of trial. The defendant's deadline is unreasonable and impractical given the likely litigation and government evaluations that would necessarily follow.

Should the defendant file 12.2(b) notice, significant litigation would necessarily follow. Pursuant to the Federal Death Penalty Act, the government may "rebut any information received at the [sentencing] hearing, and shall be given a fair opportunity to present argument as to the adequacy of the information to establish the existence of any . . . mitigating factor." 18 U.S.C. § 3593(c). Federal Rule of Criminal Procedure 12.2 effectuates these rights by

3

requiring capital defendants to provide pretrial notice of their intent to introduce expert mental health evidence and allowing the government an opportunity to independently examine the defendant. *See* Fed. R. Crim. P. 12.2(c)(1)(B) ("If the defendant provides notice under Rule 12.2(b), the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."); *see also United States v. Fell*, 372 F. Supp. 2d 753, 759 (D. Vt. 2005) ("The right to offer rebuttal testimony to mitigating circumstances proffered by the defense would be a hollow one indeed without discovery into the mental condition of an accused at the time of commission of the offense.").

FRCP 12.2(b) requires the defendant to provide notice of his intent to introduce mental health evidence "within the time provided for filing a pretrial motion or at any later time the court sets." Fed. R. Crim. P. 12.2(b). The express purpose of the FRCP 12.2(b) notice provision is to give the government time to prepare its response to the defendant's mental health assertions while also preventing unnecessary trial delays. *See* Fed. R. Crim. P. 12.2 advisory committee's note ("The objective is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony. Failure to give advance notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administrative of justice."); *see also LeCroy v. United States*, 739 F.3d 1297, 1305 n. 6 (11th Cir. 2014) ("Early notice and reciprocity, then, motivate the Rule 12.2 requirement [of serving both efficiency and fairness]."); *United States v. Sampson*, 335 F. Supp. 2d 166, 242-43 (D. Mass. 2004) (noting that the Advisory Committee cited favorably to caselaw grounding the need for pretrial notice "in the government's right to develop rebuttal evidence fairly and efficiently: and in the opportunity to conduct the kind of investigation

needed to acquire rebuttal evidence).   Here, the Court would advance these dual purposes of FRCP 12.2(b) by adopting the government's proposed notice deadline of March 25, 2025, enabling the government to adequately prepare to respond to the defendant's mental health evidence and the parties to give attendant litigation the meaningful consideration it deserves, while minimizing risk of trial delay.

While courts have been inconsistent when setting schedules for FRCP 12.2(b) notices and attendant litigation, the majority set schedules that permit testing by a government rebuttal expert to be completed well in advance of trial.   Such schedules comport with the rationale underlying FRCP 12.2.   The following cases are demonstrative:

- *United States v. Smith (D. Alaska No. 16-cr-86).*   On March 22, 2017, the defendant was charged in a superseding indictment with capital offenses stemming from a June 2016 double-homicide committed during a robbery.   On July 31, 2019, the district court ordered the defendant to provide FRCP 12.2(b) notice by January 2, 2020.   *United States v. Smith*, 2019 WL 11863700, *2 (D. Alaska Jul. 31, 2019).   At the time, trial was scheduled to commence on June 1, 2020.   *See id*. at *1 ("[F]ind[ing] it appropriate for the government to have at least five months between receiving notice related to the penalty phase and the beginning of jury selection, given the anticipated motion practice on this issue and the other pretrial deadlines in early 2020").

- *United States v. Council (D.S.C. No. 17-cr-866).*   On September 20, 2017, the defendant was indicted for a double homicide committed during a bank robbery that occurred on August 21, 2017.   On October 31, 2018, the district court ordered the defendant to

provide FRCP 12.2(b) notice by May 30, 2019.  *See* Docket No. 310 at 1.  At the time, trial was set to commence on September 9, 2019.

- *United States v. Roof (D.S.C. No. 15-cr-472).*  On July 22, 2015, the defendant was indicted in connection with the June 17, 2015, mass shooting in a historic Charleston church that resulted in the deaths of nine persons.  The government filed its notice of intent to seek the death penalty on May 24, 2016.  *See* Docket No. 164.  On June 30, 2016, the district court ordered the defendant to provide FRCP 12.2(b) notice by July 11, 2016. *See* Docket No. 226.  At the time, trial was set to commence on November 7, 2016.

- *United States v. Ciancia (C.D. Cal. No. 13-cr-902).*  On December 17, 2013, the defendant was indicted for the November 1, 2013, murder of a TSA officer during a mass shooting at Los Angeles International Airport.  On March 4, 2015, the district court ordered the defendant to provide FRCP 12.2(b) notice by August 3, 2015.  *See* Docket No. 98 at 1.  At the time, trial was set to commence on February 23, 2016.

- *United States v. Tsarnaev (D. Mass. 13-cr-10200).*  On June 27, 2013, the defendant was indicted for killing three persons and maiming others during the April 15, 2013, bombing at the Boston Marathon, as well as the subsequent shooting murder of a police officer.  On June 23, 2014, the district court ordered the defendant to provide FRCP 12.2(b) notice by August 1, 2014.  *See* Docket No. 385 at 1.  At the time, trial was set to commence on January 5, 2015.

- *United States v. Briseno (N.D. Ind. No. 11-cr-77).*  On June 2, 2011, the defendant was indicted on racketeering conspiracy charges, and on April 5, 2012, the government superseded the indictment to allege multiple capital charges of murder in aid of racketeering.  On June 25, 2014, the district court ordered the defendant to provide

6

FRCP 12.2(b) notice by September 1, 2014. *See* Docket No. 963 at 2. At the time, trial was set to commence in January 2015.

- *United States v. McCluskey (D.N.M. No. 10-cr-2734).* On December 29, 2010, the defendant was indicted for an August 2, 2010, carjacking and double homicide. On September 9, 2011, the district court ordered the defendant to provide FRCP 12.2(b) notice by June 8, 2012. *See* Docket No. 219. At the time, trial was set to commence on March 11, 2013.

- *United States v. Savage, et al. (E.D. Pa. No. 07-cr-550).* On April 8, 2009, the defendants were indicted in connection with the October 2004 arson of an apartment building that resulted in the deaths of six persons, as well as multiple murders in aid of racketeering. On March 26, 2012, the district court ordered the defendants to provide FRCP 12.2(b) notice by April 9, 2012. At the time, trial was set to commence on November 6, 2012.

- *United States v. Wilson (E.D.N.Y. No. 04-cr-10106).* On November 17, 2004, Wilson was indicted for the March 10, 2003, murders of two undercover police officers. On July 22, 2005, the district court ordered the defendant to provide FRCP 12.2(b) notice by January 20, 2006. *See* Docket No. 43. At the time, trial was set to commence on September 11, 2006.

These cases demonstrate 1) that district courts have routinely set deadlines for capital defendants to provide FRCP 12.2(b) notice four-to-six months prior to the start of trial, if not earlier; and 2) that courts have routinely required defendants to provide FRCP 12.2(b) notice on dates when they have been represented by counsel less than the amount of time the defendant, in the instant case, will have been represented by his current attorneys should the

Court adopt the government's proposed March 25, 2025, deadline.  Here, setting the FRCP 12.2(b) notice deadline approximately 5.5 months before trial accomplishes the dual goals of allowing the government adequate time to respond to potential expert mental health evidence from the defense and avoiding undue delay to the trial schedule.

First, this deadline affords the government a "meaningful right" to rebut any mental health evidence offered by the defendant.  *See United States v. Umana*, Case No. 08-cr-134, 2009 WL 2489309, *2-3 (W.D.N.C. Aug. 12, 2009) (establishing pretrial deadlines for defendant to provide FRCP 12.2(b) notice and for government to complete its rebuttal examinations).  The filing of an FRCP 12.2(b) notice will trigger a tremendous volume of work for both parties and the Court.  Indeed, in *Smith*, referenced above, the court required the defendant to file the notice five months prior to trial for this reason.  *See Smith*, 2019 WL 11863700 at *1-2.

After the defendant provides his notice, the government will need to identify experts to evaluate and potentially rebut his claims.  The government will also need to define the scope of the proposed rebuttal examination(s), coordinate with the defense as to any objections, and coordinate scheduling with the selected experts.  Subsequently, the parties will be best-situated to negotiate — and litigate, if necessary — issues such as the time and location of testing, the scope of permissible evaluations and/or tests to be administered, the scope of questioning pertaining to the crime, who may be present for evaluations, and whether evaluations may be recorded.  Therefore, the Court should adopt the government's proposed schedule with respect to setting an earlier deadline for the FRCP 12.2(b) notice.

Second, as reflected in FRCP 12.2's advisory committee notes, *supra*, early notice of the defendant's intent to introduce mental health evidence is intended to aid the Court in avoiding trial delay. This Court has broad discretion to establish the notice deadline and must establish a deadline in this case that will minimize the risk of such delay. During the February 2, 2024, status conference, this Court set trial to begin on September 8, 2025, explaining that this was a "realistic trial date" and that it was "the date we're all going to work toward." 2/2/24 Tr. at 48-49. Likewise, the Court stated that it was going to keep the case on a short leash and that it "wanted to move this case. . . . I don't want this to sit at the back burner." *Id.* at 37, 56. The defendant's proposed schedule nearly guarantees delay and continuances.

There is no good reason for the court to allow the defense to wait until June 23, 2025, to file an FRCP 12.2(b) notice. Doing so undermines the efficiency and equity principles underpinning the FRCP 12.2(b) notice requirement. Recognizing again that it is impractical to expect to conduct meaningful litigation relating to the scope of and procedures for the government's rebuttal examinations until the defendant files his notice, there is simply not enough time after June 23, 2025, and the start of trial to accomplish all the tasks that will need to be accomplished. Indeed, the defendant's proposed schedule would have the Court ruling on whether government experts could conduct rebuttal examination of the defendant after jury selection commences and would have government experts attempting to conduct their examinations while proceedings are ongoing. This would take away from the parties' and court's focus on jury selection, as well as the myriad other important issues that will likely need to be resolved on the eve of trial, including the scope of jury instructions.

9

Although some courts have set FRCP 12.2(b) deadlines closer to the commencement of trial, such cases are outliers. If anything, recent cases cited by the defense, *Bowers* and *Saipov*, demonstrate why early FRCP 12.2(b) notice is needed. Over the last 20 years, FRCP 12.2 litigation has evolved significantly, particularity applying greater scrutiny to the scope of and procedures for rebuttal examinations by government experts. Recent litigation in *Bowers* evidences such point. There, the late notice deadline caused the parties and court to scramble to handle a plethora of motions and disputes after jury selection had begun and on the eve of the start of the guilt phase of trial. In the current arena of capital litigation, *Bowers* illustrates that allowing the FRCP 12.2(b) notice only 60 days prior to trial is inefficient and insufficient.

*Saipov* is, likewise, an unpersuasive example. As noted by the defense, the district court in *Saipov* directed the defendant to provide his FRCP 12.2(b) notice on February 3, 2020, approximately 60 days prior to the scheduled April 2020 trial date. What followed suggests that the court did not allot enough time. First, on February 3, 2020, the date Saipov was to file his FRCP 12.2(b) notice, the defense instead moved for additional time. *United States v. Saipov*, No. 17-722, Docket No. 258 (S.D.N.Y. Feb. 3, 2020). The district court acquiesced, but also voiced in its memo endorsement its displeasure, giving the defense only two additional weeks. Docket No. 281. Then, on February 18, 2020, the defense offered a barebones notice that merely tracked FRCP 12.2 language and only led to further litigation. Docket No. 284 (stating only that the defendant "intends to introduce, at the penalty phase of this capital case, expert evidence relating to a mental disease or defect or any other mental condition bearing on the issue of punishment"). Saipov then withdrew his FRCP 12.2(b)

10

notice on March 3, 2020 (Docket Nos. 307 & 308) and did not renew his notice when his case resumed in 2022 following disruptions related to COVID-19.

The defendant's constitutional rights are offended by the government's proposed schedule. FRCP 12.2 establishes procedures that specifically protect the defendant's Fifth Amendment right to be free from self-incrimination by limiting the government's access to any statements he makes during the evaluation process and prohibiting the government from making affirmative or derivative use of any such statements. *See* Fed. R. Crim. P. 12.2(c)(2-4). A March 2025 notice deadline will not affect these limitations. Further, as to his Sixth and Eighth Amendment rights, counsel is afforded ample time to conduct investigation and expert evaluations prior to the government's proposed deadline of March 25, 2025, which is nearly three years after defense counsel was appointed in this case. This allots more time than attorneys were given prior to notice in nearly all of the cases listed above, and the government is not aware of any instance in which a federal appeals court found that a district court abused its discretion by setting a FRCP 12.2(b) deadline too early. The defendant is represented by multiple experienced criminal defense attorneys, including attorneys who are learned in the law specific to capital cases. He is also likely to be supported by multiple mitigation specialists and/or investigators and has been or will be afforded the opportunity to obtain the services of any number of mental health experts to evaluate him and potentially testify on his behalf. The three-month discrepancy between the defense and government proposed notice dates should have little effect on the defense's ability to adequately investigate the defendant's background and evaluate his mental status, while these three months are critical to ensuring

11

the parties and court efficiently proceed toward the commencement of trial on September 8, 2025.

In sum, to accomplish FRCP 12.2(b)'s goals of providing adequate time for the government to respond to the defendant's expert mental health evidence and avoiding trial delay, the Court should adopt the dates proposed by the government, beginning the process in November 2024 and requiring the defendant to provide his 12.2(b) notice no later than March 25, 2025.

## II.    THE COURT SHOULD ADOPT THE GOVERNMENT'S PROPOSED LITIGATION SCHEDULE WITH RESPECT TO THE SCOPE OF AND PROCEDURES FOR GOVERNMENT EXPERT EXAMINATIONS.

The defendant argues that "it makes sense for all issues that are likely to arise in the 12.2(b) context to be briefed and adjudicated together," suggesting such issues should be litigated prior to the time he must file his FRCP 12.2(b) notice. *See* Docket No. 138 at 3. Although the government agrees that any dispute regarding the content of the FRCP12.2(b) notice must be resolved prior to the date on which the notice must be filed, most of the issues the defendant anticipates litigating relate to logistics and procedures for the government's rebuttal examinations, not his 12.2(b) notice.  For instance, the defendant anticipates litigation regarding the following topics:

- The timing of the government's expert's examination;[2]

---

[2] The defendant's citation to *United States v. Taveras*, 233 F.R.D. 318 (E.D.N.Y. 2006), underscores the need to litigate issues relating to potential government rebuttal examinations *after* the defendant files his FRCP 12.2(b) notice and to require the FRCP 12.2(b) notice to be filed months in advance of trial.  In *Taveras*, the district court took the unusual step of permitting a government rebuttal examination to occur only after the defendant was found guilty.  This decision, which could inject substantial delay into the trial process, is an outlier

- Disclosure of the identity of the government's experts;
- Specific tests the government experts propose to administer;
- Limiting the scope of the government expert's inquiry;
- Limiting the scope of specific areas of questioning by the government's experts;
- Potential recording of examinations by government experts

Docket No. 138 at 3-4. He cites no cases, however, in which courts took up the Rule 12.2 litigation in the order he proposes.

The defendant's position is unreasonable, inefficient, and inconsistent with precedent. Litigation relating to procedures for rebuttal examinations by government experts should be conducted after the defendant provides his FRCP 12.2(b) notice, and concurrent with litigation pertaining to the government's requests to conduct rebuttal examinations. Only after the defendant provides his FRCP 12.2(b) notice will the government be able to move the Court to order an evaluation and then litigate the contours of such evaluation. Accordingly, the Court should adopt the government's proposed litigation schedule with respect to FRCP 12.2(b).

---

even in the district in which it was made. Just four months after Judge Weinstein's decision in *Taveras*, Judge Garaufis rejected the reasoning in *United States v. Wilson*, 493 F. Supp.2d 348 (E.D.N.Y. 2006), granting the government's request to conduct pretrial examination of the capital defendant and concluding the risk of delay outweighed concerns regarding the potential leak of information to the prosecution. *Id*. at 359. Regardless of the outcomes of these cases, they reflect litigation that is moot unless and until the defendant files FRCP 12.2(b) notice. Further, they demonstrate opposing views that may be taken by the parties in this case that will require thoughtful consideration and cannot be condensed into a period beginning just 77 days before trial.

13

## CONCLUSION

For all the reasons stated above, the Court should adopt the government's proposed schedule with respect to the FRCP 12.2(b) notice and litigation.

DATED: Buffalo, New York, February 23, 2024

TRINI E. ROSS
United States Attorney
Western District of New York

BY:    s/JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5839
Joseph.Tripi@usdoj.gov

BY:    s/BRETT A. HARVEY
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street
Rochester, New York 14614
(585) 399-3949
Brett.Harvey@usdoj.gov

BY:    s/CAITLIN M. HIGGINS
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5818
Caitlin.Higgins@usdoj.gov

BY:    s/MAEVE E. HUGGINS
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5872
Maeve.Huggins@usdoj.gov

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

BY:    s/LAURA B. GILSON
Trial Attorney
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, DC 20530
202-598-1141
Laura.gilson2@usdoj.gov

BY:    s/MICHAEL S. WARBEL
Trial Attorney
Criminal Division
U.S. Department of Justice
1331 F. St. NW, Ste. 623
Washington, DC 20004
(202) 514-5605
Michael.Warbel@usdoj.gov

14