UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

     v.                                  22-CR-109 (LJV-HKS)

PAYTON GENDRON,

              Defendant.
_____


## MOTION TO DISMISS COUNTS 11-20 OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. § 924(c)


## I.    INTRODUCTION

      Defendant, Payton Gendron, through undersigned counsel, moves the Court to dismiss Counts 11 through 20—the only capital counts in the Indictment—for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). These counts allege violations of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(iii) and 924(j)(1), which criminalize using, carrying, and discharging a firearm during and in relation to a predicate "crime of violence."

      The mass shooting Payton Gendron committed at the Tops grocery store on May 14, 2022 was a horrifying and violent attack. For that crime, Payton Gendron is being severely punished: this now-20-year-old will spend the entirety of his adult life locked away in a prison cell, serving the sentence of life without possibility of parole swiftly handed down by the State of New York.

      The federal government, however, has decided to prosecute him again, for the same acts. The principal charges it has filed against him are the same as those for which he has already been

convicted—hate crimes. And those charges carry the same sentence in federal court that has already been put in place by the state court—life imprisonment without possibility of release.[1]

In an attempt to nevertheless shoehorn this case into one in which the death penalty can be sought, the federal government has charged Payton Gendron with firearms offenses that allow for capital punishment, not for the racist motivation behind the dreadful attack or its scale but because it was committed with a gun.

In so doing, the government forces the Court to descend into the labyrinthine and undeniably vexing area of the law known as the categorical approach to statutory interpretation.[2] Notwithstanding the obvious, unspeakable violence of the crimes that Payton Gendron actually committed, the government's charging decision requires the Court to determine whether the

---

[1] The legislation that eventually became 18 U.S.C. §249, the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act of 2009, was first introduced to Congress in 1997. The proponents and supporters of the legislation adamantly and successfully resisted all efforts to amend a death penalty provision into the bill, citing the documented history of racial discrimination in the administration of capital punishment in this country and its disproportionate application against poor people. *See, e.g.*, Letter to the United States Senate from the Leadership Conference on Civil Rights, et al., *Oppose the Sessions Amendments to the Matthew Shepard Hate Crimes Prevention Act*, July 20, 2009 (signed by 48 civil and human rights organizations including the NAACP, National Urban League, and National Council of La Raza); Letter to the United States Senate from American Civil Liberties Union, *ACLU Urges NO Vote on SA 1615 – Sessions Death Penalty Amendment to Hate Crimes Amendment in Defense Authorization Bill (S. 1390); Sessions Amendment is Unconstitutional*, July 20, 2009.

[2] Although at times frustratingly complex, this area of the law developed as a critically important check on the power of the federal government to criminalize and punish conduct that has traditionally been held to be the prerogative of the states to regulate. Federal law imposes draconian sentence enhancements, including mandatory minimum terms of incarceration, for certain crimes involving the use of firearms. Particularly in light of the racial disparities and unfairness in the federal sentencing system, *see, e.g.*, M. Marit Rehavi and Sonja B. Starr, *Racial Disparity in Federal Criminal Sentences*, 122 J. of Political Economy 1320 (2014), it is vital that offenses that trigger increased penalties be defined carefully and uniformly nationwide. To do that, definitions must be based on the elements of such crimes, and not on titles or labels that often mean vastly different things depending upon the jurisdiction.

predicate charges against him—hate crimes—are, in all possible instances, crimes of violence within the precise definition of the term enforced by the Supreme Court. The answer to that question is no.

This Court must dismiss these counts because the sole predicates alleged are violations of 18 U.S.C. § 249(a)(1)(B)(i) (a provision of the Hate Crimes Prevention Act ("HCPA")), which, under the applicable categorical approach, do not satisfy the statutory definition of "crime of violence" as a matter of law. *See* 18 U.S.C. § 924(c)(3)(A). That is true for three reasons:

- Section 249(a)(1)(B)(i) criminalizes willfully causing bodily injury to "<u>any</u> person"—a phrase that the government has conceded includes "the defendant himself"—but § 924(c)(3)(A) requires the use of violent physical force "against the person . . . of *another*" (emphases added). *See* Supp. Br. of U.S. 16–17, *United States v. Barrett*, No. 21–1379 (2d Cir. Feb. 15, 2023), ECF No. 119 (conceding, on this ground, that provision of Hobbs Act criminalizing committing or threatening physical violence to "any person" is not a § 924(c)(3)(A) crime of violence).

- Section 249(a)(1)(B)(i) criminalizes willfully causing "bodily injury"—<u>i.e.</u>, "any . . . injury to the body, no matter how temporary," *see* 18 U.S.C. §§ 249(c)(1) and 1365(h)(4)(E) through *de minimis* force, but § 924(c)(3)(A) is limited to the intentional causation of "serious bodily injury" through violent physical force, *see Villanueva v. United States*, 893 F.3d 123, 130 n. 6 (2d Cir. 2018).

- Section 249(a)(1)(B)(i) can be violated not just by action but by culpable omission, but § 924(c)(3)(A) requires an affirmative act amounting to the "use" of force. *See United States v. Bowers*, 2022 WL 17718686, at *5–9 (W.D. Pa. Dec. 15, 2022) (ruling, on this ground, that § 249(a)(1) is not a § 924(c)(3)(A) crime of violence).

Accordingly, this Court should dismiss Counts 11–20.

## II.    BACKGROUND

The Indictment (ECF No. 6) alleges that on May 14, 2022, Payton Gendron "drove to the Tops grocery store" in Buffalo "carrying a loaded Bushmaster XM–15 .223 caliber rifle," "shot

four Black people in front of Tops," killing three, then "entered Tops and shot multiple people, killing seven more Black people and injuring two white people." *Id.* at ¶¶ 1–4.

Counts 1–10, each of which corresponds to one of the 10 homicide victims, allege that Payton Gendron "willfully caused bodily injury to [the 10 homicide victims] because of their actual and perceived race and color," and that "[t]he offenses resulted in the death of each of the victims." *Id.* at pp. 2–3 (citing § 249(a)(1)(B)(i)). Counts 11–20, each of which likewise corresponds to one of the 10 homicide victims, allege that Payton Gendron:

> knowingly used, carried, and discharged a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, *a violation of Title 18, United States Code, Section 249, as Charged in Counts One through Ten*, and in the course of the violation caused the death of [the 10 homicide victims] through the use of a firearm in such manner as to constitute murder as defined in Title 18, United States Code, Section 1111, in that [ ] Payton Gendron, with malice aforethought, did unlawfully kill each victim . . . with a firearm.

*Id.* at p. 4 (citing §§ 924(c)(1)(A)(i), 924(c)(1)(A)(iii), and 924(j)(1) (emphasis added)).

## III.  ARGUMENT

**This Court Must Dismiss Counts 11–20 For Failure To State An Offense Because The § 249(a)(1) Violations Alleged As Predicate Crimes Of Violence Do Not Satisfy § 924(c)(3)(A)'s Elements Clause.**

A.  Legal Framework

Sections 924(c)(1)(A)(i) and 924(c)(1)(A)(iii) criminalize using, carrying, and discharging a firearm during and in relation to a "crime of violence." Section 924(j)(1) creates a capital offense for "[a] person who, in the course of a violation of [§ 924(c)], causes the death of a person through the use of a firearm . . . if the killing is a murder (as defined in [18 U.S.C. § 1111])." These statutes—and thus Counts 11 through 20—require committing a predicate "crime of violence." *See* <u>United States v. Rodriguez-Moreno</u>, 526 U.S. 275, 280 (1999).

4

Section 924(c)(3)(A)'s elements clause defines a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[3] As discussed in greater detail below, four aspects of this definition have particular relevance to this Motion and dictate that § 249(a)(1)(B)(i) falls short.

First, physical force must be used "against the person or property of *another*." § 924(c)(3)(A) (emphasis added). Use of force against *oneself* or one's *own* property does not suffice. *See Portee v. United States*, 941 F.3d 263, 271 (7th Cir. 2019) (state intimidation offense that encompassed threatening self-harm did not satisfy elements clause);[4] *United States v. Salas*, 889 F.3d 681, 683–84 (10th Cir. 2018) (same for federal arson offense that encompassed destroying one's own property). Second, "physical force" means "*violent* force—that is, force capable of causing physical pain or injury." *Johnson v. United States*, 559 U.S. 133, 140 (2010). The injury must be "serious physical injury"—*de minimis* use of force, or force capable of causing only minor injury, does not qualify. *See id.*; *Villanueva*, 893 F.3d at 130 n.6 (concluding that "serious physical injury," as opposed to "physical injury" *simpliciter*, was "necessary" to meet elements clause). Third, a defendant's use of force must be knowing and intentional.

_____

[3] Section 924(c)(3)(B)'s residual clause defines a "crime of violence" as a felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." But the residual clause is void for vagueness. *United States v. Davis*, 588 U.S. 445, 470 (2019). So "[p]ost-*Davis*, a § 924(c) conviction may only be premised on a crime of violence as defined under § 924(c)(3)(A)'s elements clause." *United States v. Medunjanin*, 99 F.4th 129, 133 (2d Cir. 2024).

[4] *Portee* addressed the elements clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i). The Second Circuit has "noted the similarities between ACCA's 'elements clause' and § 924(c)(3)'s '[elements] clause' and ha[s] accordingly looked to cases analyzing ACCA's elements clause to interpret the 'similarly . . . worded' [elements] clause presented in 924(c)(3)(A)." *United States v. Evans*, 924 F.3d 21, 29 n.4 (2d Cir. 2019) (quoting *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018)).

Offenses with a mens rea of recklessness, negligence, or strict liability with respect to the use of violent physical force against the person of another do not count. *See Singh v. Garland*, 58 F.4th 34, 36 (2d Cir. 2022) ("The 'use of physical force' refers to intentional, rather than accidental, force.");[5] *see also Borden v. United States*, 593 U.S. 420, 423 (2021) (plurality op.); *id.* at 446 (Thomas, J., concurring); *Leocal v. Ashcroft*, 543 U.S. 1, 9–10 (2004). And fourth, the use of force must involve an affirmative act. Omissions, even those that cause injury or death, do not qualify. *United States v. Mayo*, 901 F.3d 218, 230 (3d Cir. 2018) (state assault offense criminalizing "acts of omission" did not satisfy elements clause); *United States v. Martinez-Rodriguez*, 857 F.3d 282, 286 (5th Cir. 2017) (same for state child injury offense that could be "committed by both acts and omissions"). *But see United States v. Scott*, 990 F.3d 94, 125 (2d Cir. 2021) (en banc) (causing serious injury or death by culpable omission can satisfy elements clause).[6]

To determine whether an offense meets § 924(c)(3)(A)'s definition, "courts apply the categorical approach." *United States v. Medunjanin*, 99 F.4th 129, 134 (2d Cir. 2024). "'Under this approach, we do not consider the particular facts before us; rather, we identify the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions—*i.e.*, the elements of the offense.'" *Id.* (quoting *United States v. Pastore*, 83

---

[5] *Singh* addressed the elements clause of the federal criminal code's general "crime of violence" definition, 18 U.S.C. § 16(a), which "is in all relevant aspects identical to the § 924(c) elements clause," *United States v. Morris*, 61 F.4th 311, 320 (2d Cir. 2023).

[6] The defense acknowledges that *Scott* currently binds this Court. However, the Supreme Court has granted certiorari on the question "[w]hether a crime that requires proof of bodily injury or death, but can be committed by failing to take action, has as an element the use, attempted use, or threatened use of physical force." Pet. for Writ of Certiorari, *Delligatti v. United States*, No. 23–825 (cert. granted June 3, 2024). For purposes of preservation, we maintain that *Scott* is wrongly decided and should be overruled.

F.4th 113, 118 (2d Cir. 2023)). The categorical approach "does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *United States v. Taylor*, 596 U.S. 845, 850 (2022). "In other words, it is not enough that the evidence in the case shows that the defendant committed the charged predicate crime in a way that involved the use of force . . . . Instead, the predicate crime must be one whose elements are defined in such a way that the crime must, 'in every instance, by its very definition, involve the use of force" against the person or property of another. *United States v. Capers*, 20 F.4th 105, 117 (2d Cir. 2021) (quoting *United States v. Martinez*, 991 F.3d 347, 353 (2d Cir. 2021)). If the statute defining the predicate offense "'criminalizes any conduct that would not fall within the scope of . . . the [elements] clause'" then that statute "'is not categorically a crime of violence and cannot serve as a predicate offense' for purposes of § 924(c)." *United States v. Davis*, 74 F.4th 50, 53 (2d Cir. 2023) (quoting *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017)). "[A] statute that 'sweeps more broadly than' the [elements] clause is not a categorical match and cannot count as a § 924(c) predicate." *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)).

Prior to *Taylor*, some courts had required defendants raising categorical overbreadth challenges to crime-of-violence predicates to demonstrate "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence," by "'point[ing] to . . . cases in which the . . . courts did in fact apply the statute in the . . . manner for which he argues.'" *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Likewise, some

courts had rejected defendants' reliance on "hypotheticals," as opposed to "actual cases," to show that predicate statutes swept more broadly than the elements clause. *E.g., id.* at 57 n.9. At the same time, the Second Circuit had recognized that statutory clarity could eliminate the point-to-a-case requirement. That is, "[t]he realistic probability test is obviated by the wording of the state statute, which on its face extends to conduct beyond the definition of the corresponding federal offense." *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018).

In any event, in *Taylor*, the Supreme Court removed any doubt and put the realistic probability test to rest, clarifying that when it comes to federal predicates, the only analysis necessary (or appropriate) is a side-by-side comparison of the text of the predicate and of § 924(c)(3)(A)'s elements clause: "The statute before us asks only whether the elements of one federal law align with those prescribed in another." 596 U.S. at 859. A defendant need not "point to [a] case" or "present evidence about how his crime of conviction is normally committed or usually prosecuted." *See id.* at 858. Moreover, a defendant may enlist a hypothetical to demonstrate overbreadth. *Taylor* itself did just that, deploying a lengthy "hypothetical" (involving a robber named "Adam") to "illustrate" why attempted Hobbs Act robbery does not categorically involve the use, attempted use, or threatened use of force. *Id.* at 851–52. Following *Taylor*, "where a [§] 924(c) charge rests on a federal predicate offense, defendants need not show a 'reasonable probability' that the statute will be applied in a particular manner." *Bowers*, 2022 WL 17718686, at *3. *See also id.* (noting government's concession that *Taylor* "held that the categorical approach requires courts to analyze the elements of the federal statutes as written . . . , and should not look to how those federal statutes are applied"); *United States v. Eckford*, 77 F.4th 1228, 1235 (9th Cir. 2023) ("*Taylor* held that the realistic probability test was not implicated because the Court was comparing two federal statutes."); *United States v. Hari*, 67

F.4th 903, 910 (8th Cir. 2023) ("*Taylor* casts substantial doubt on the use of the 'realistic probability' test to determine whether a statute applies to conduct that falls outside the [elements] clause."). Under *Taylor* and *Hylton*, the sole analysis permitted here is a text-to-text, element-to-element comparison of § 249(a)(1)(B)(i) with § 924(c)(3)(A)'s elements clause.

Whether an offense satisfies § 924(c)(3)(A)'s definition is a pure question of law. *Davis*, 74 F.4th at 52. Where a § 924(c) count alleges as a predicate "crime of violence" an offense that does not meet the statutory definition, pretrial dismissal of that count for failure to state an offense is proper. *E.g., Bowers*, 2022 WL 17718686, at *5–9 (dismissing §§ 924(c) and 924(j) counts to the extent predicated on § 249(a)(1)); *United States v. Forbes*, 2022 WL 4545256, at *5 (W.D.N.Y. Sept. 29, 2022) (dismissing § 924(c) counts predicated on attempted Hobbs Act robbery in light of *Taylor*); *United States v. Culbert*, 453 F. Supp. 3d 595, 596–97, 601 (E.D.N.Y. 2020) (dismissing § 924(c) count predicated on attempted Hobbs Act robbery); *United States v. Tucker*, 2020 WL 93951, at *1 (E.D.N.Y. Jan. 8, 2020) (dismissing § 924(c) count predicated on attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery).

B. Section 249(a)(1)(B)(i) Reaches The Use Of Force Against "Any Person"—Including Oneself—But The Elements Clause Requires The Use Of Force Against "The Person . . . Of Another."

Section 924(c)(3)(A) encompasses only offenses that have as an element the use of force against the person "of another." Section 249(a)(1) does not meet that definition because that statute's plain text embraces the use of force against oneself. Section 249(a)(1) prohibits "willfully caus[ing] bodily injury to any person . . . because of the actual or perceived race [or] color . . . of any person." "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). "[S]o long as 'Congress did

9

not add any language limiting the breadth of that word,' the term 'any' must be given literal effect." *Deravin v. Kerik*, 335 F.3d 195, 204 (2d Cir. 2003) (quoting *Gonzales*, 520 U.S. at 5). *See also, e.g., Republic of Iraq v. Beaty*, 556 U.S. 848, 856 (2009) ("[T]he word 'any' . . . has an 'expansive meaning,' giving us no warrant to limit the class." (quoting *Gonzales*, 520 U.S. at 5). Section 249(a)(1) does not limit or qualify the phrase "any person," so this Court must give the phrase its plain meaning—"all" persons "of whatever stripe," *Massachusetts v. EPA*, 549 U.S. 497, 529 (2007)—including the defendant himself.

The Second Circuit has applied these well-settled rules of construction to hold that the phrase "any person"—the precise phrase at issue here—includes oneself. *United States v. Dean*, 591 F. App'x 11, 15 (2d Cir. 2014); *United States v. Weisinger*, 586 F. App'x 733, 738–39 (2d Cir. 2014). Both *Dean* and *Weisinger* addressed 18 U.S.C. § 2246(3), which defines "sexual contact" in pertinent part to mean "the intentional touching . . . of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person." Both cases hold that the "person" who is "intentional[ly] touch[ed]" can be oneself. Indeed, *Weisinger* rejected the defendant's argument that to reach self-touching, "the statutory definition would have needed to reference 'the touching of any person or oneself,'" explaining: "[C]anons of construction do not require redundancy where Congress has used the all-encompassing word 'any.'" 586 F. App'x at 739. Three other Circuits have agreed that "any person" can include oneself. *United States v. Pawlowski*, 682 F.3d 205, 212 (3d Cir. 2012); *United States v. Shafer*, 573 F.3d 267, 273–74 (6th Cir. 2009); *United States v. Aldrich*, 566 F.3d 976, 979 (11th Cir. 2009). And the government has elsewhere so conceded. Br. of U.S. 74, *United States v. Weisinger*, No. 13–3655 (2d Cir. May 23, 2014), ECF No. 43 ("[T]he plain meaning of 'any person' includes one's self."); Supp. Br. of

U.S. 17, *Barrett, supra* (""[A]ny person'" in 18 U.S.C. § 1951(a) "could in fact mean any person—including even the defendant himself.").

Section 249(a)(1)'s plain text reaches willfully causing bodily injury to oneself. Section 249(a)(1) also requires that the defendant cause such injury "because of the actual or perceived race, color, religion, or national origin of any person." But the statutory language makes clear that the person "injur[ed]" (who can be "any person") need not be the same as the person whose "race [or] color" motivates the injury (who can also be "any person").[7] Indeed, in this Indictment, Counts 22 and 23 allege that Payton Gendron injured C.B. and J.W., "white people," "because of the actual and perceived race and color of any person, to wit, Black people." Indictment ¶ 4 & pp. 5–6. On this understanding, it is not difficult to envision how a defendant could willfully cause bodily injury to himself ("any person") because of the race of someone else ("any person").

For example, earlier this year, Aaron Bushnell, an active-duty member of the Air Force, set himself on fire outside the Israeli embassy in Washington, D.C., stating that he would "no longer be complicit in genocide"—i.e., what he saw as Israel's genocide in Gaza. *See* Juliana Kim, *The U.S. Airman Who Set Himself On Fire To Protest The War In Gaza Has Died*, NPR (Feb. 26, 2024), https://www.npr.org/2024/02/25/1233810136/fire-man-israeli-embassy-washington. Many saw Bushnell's action as reflecting animus against Israelis and Jewish people, as evidenced by his selection of the Israeli embassy as the site for his self-immolation and his extremist online posts, among other things. *See, e.g.*, Jamie Joseph, *Sen. Cotton Probes DOD*

---

[7] *Compare* 18 U.S.C. § 249(a)(1) ("Whoever . . . willfully causes bodily injury to *any person* . . . because of the actual or perceived race . . . of *any person*"), *with* 18 U.S.C. § 245(b)(2) ("Whoever . . . willfully injures . . . any person because of *his* race . . . and because *he* is or has been" engaged in federally protected activities").

*How Airman Who Lit Himself on Fire Was "Allowed To Serve On Active Duty,"* Fox News (Feb. 28, 2024) (reporting Senator Cotton's remarks that Bushnell committed an "act of horrific violence" "in support of a terrorist group"), https://www.foxnews.com/politics/sen-cotton-probes-dod-how-us-airman-set-himself-fire-allowed-active-duty-status; Anti-Defamation League, *Anti-Israel Activists, Terrorist Organizations Hail Aaron Bushnell As A "Martyr" After Self-Immolation Outside Israeli Embassy*, ADL Blog (Feb. 27, 2024) (reporting that "Bushnell made multiple extreme anti-Israel posts on Reddit" and cataloguing statements of support for Bushnell from "anti-Israel," "antisemitic," and "anti-Zionist" organizations), https://www.adl.org/resources/blog/anti-israel-activists-terrorist-organizations-hail-aaron-bushnell-martyr-after-self. So, Bushnell willfully caused bodily injury to "any person" (himself), because of the "religion" or "national origin" of "any person" (Jewish people or Israelis he deemed responsible for the war in Gaza). But he did not use, attempt to use, or threaten to use force against "another." His violence was self-directed.[8]

One can therefore violate § 249(a)(1) by willfully causing bodily injury to oneself. As a result, that offense "sweeps more broadly" than § 924(c)(3)(A)'s elements clause, which is limited to the use, attempted use, or threatened use of force "against the person . . . of another." The Seventh Circuit has embraced this logic, holding that an Indiana intimidation offense criminalizing "the use or threat of force against a human being, or . . . imminent danger of bodily

---

[8] That example is not anomalous. To take another: In 1981, Bobby Sands of the Irish Republican Army died following a hunger strike while imprisoned in Northern Ireland. Some viewed his conduct as motivated by animus against the Protestants and British who controlled the territory. *See* Doughty, "The Hunger Strike Terrorists": The British Press And The Hunger Strikers, Irish Times (July 5, 2016), https://www.irishtimes.com/culture/books/the-hunger-strike-terrorists-the-british-press-and-the-hunger-strikes-1.2706714. So, like Bushnell, Sands can be said to have willfully caused bodily injury to "any person" (himself) because of the religion or national origin of "any person" (Protestant/British occupants of Northern Ireland).

injury to a human being" was categorically broader than the elements clause "because the human being facing force or danger could be the defendant himself." *Portee*, 941 F.3d at 271. As *Portee* explained, "the plain language of Indiana's felony intimidation statute encompasses . . . situation[s] involving threats of self-harm. By encompassing self-harm, Indiana's intimidation statute is broader than the elements clause, which references the 'person of another.'" *Id.* at 273.

Likewise, courts have held that statutes criminalizing the destruction of one's own property do not satisfy § 924(c)(3)(A)'s elements clause. For example, a federal arson statute, 18 U.S.C. § 844(i), prohibits using fire or an explosive to destroy "any building, vehicle, or other real or personal property." The government has conceded, and the Tenth Circuit has held, that this offense does not qualify as a § 924(c)(3)(A) crime of violence because § 844(i) "may apply to a person who destroys his or her own property." *Salas*, 889 F.3d at 683–84. *See also, e.g., Torres v. Lynch*, 578 U.S. 452, 466 (2016) (18 U.S.C. § 16(a) elements clause "would not reach arson in the many States defining that crime to include the destruction of one's own property").

The government has conceded that § 1951(a), a provision of the Hobbs Act punishing "[w]hoever . . . commits or threatens physical violence to <u>any person</u> or property in furtherance of a plan or purpose to do anything in violation of this section," does not fit the elements clause because "any person" includes the defendant himself. *See* Supp. Br. of U.S. 16–17, *United States v. Barrett, supra*. Prior to *Taylor*, the Second Circuit had held that this offense qualified under § 924(c)(3)(A) and had rejected the defendant's overbreadth argument that § 1951(a) reaches "threat[s] of violence to the defendant himself or his property" for failure to identify "any case that applied the Hobbs Act in this way." *United States v. Nikolla*, 951 F.3d 51, 54 (2d Cir. 2020) (citing *Duenas-Alvarez*, 549 U.S. at 193, and *Hill*, 890 F.3d at 56). After *Taylor* rejected the use of *Duenas-Alvarez*'s realistic probability test to analyze federal predicate offenses under

§ 924(c)(3)(A), the government—citing "guidance from the Department of Justice"—began conceding that this provision of § 1951(a) does not support a § 924(c) charge and moving to vacate or dismiss such charges. *E.g.*, Gov't Letter 1, *United States v. Mobley*, 19 Cr. 221 (RJD) (E.D.N.Y. Nov. 1, 2022), ECF No. 356 (moving to vacate § 924(c) count predicated on committing or threatening physical violence in furtherance of a plan to commit robbery, § 1951(a)); Gov't Letter 1, *United States v. Cheatham*, 21 Cr. 422 (EK) (E.D.N.Y. Nov. 2, 2022), ECF No. 41 (same; moving to dismiss pretrial). Confronted with these concessions in *Barrett*, the government admitted:

> In addition to punishing robbery and extortion, the Hobbs Act also punishes anyone who "commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." As [the defendant] notes, the Government agrees that violation of this provision does not constitute a crime of violence in light of *Taylor*. . . . [T]hat provision expressly applies to threats or violence against "any person." . . . "[A]ny person" could in fact mean any person—including even the defendant himself . . . .

Supp. Br. 16–17, *Barrett, supra* (citations omitted). That concession controls here.

The fact that Counts 1–10 allege the additional element that "[t]he offenses resulted in . . . death," (ECF No. 6 at p.3), has no effect on this analysis. *See* § 249(a)(1)(B)(i) (increasing statutory maximum to life "if . . . death results from the offense"). With respect to this element, § 249(a)(1)(B)(i)'s plain text imposes a single requirement: but-for causation of death. *See, e.g., Burrage v. United States*, 571 U.S. 204, 219 (2014) ("death results" provision of 21 U.S.C. § 841(b)(1)(C) requires but-for causation); *United States v. Felder*, 993 F.3d 57, 70 (2d Cir. 2021) ("death results" provision of federal carjacking statute, 18 U.S.C. § 2119(3), requires only but-for causation); *United States v. Roof*, 10 F.4th 314, 400 (4th Cir. 2021) (§ 249(a)(1)(B)(i)'s "'death results' element 'imposes . . . a requirement of actual causality, <u>i.e.</u>, but-for causation'"). That means that the defendant need not intend the death or supply the force that causes the death.

So the person who dies need not be the same as the person whom the defendant willfully injured. Rather, all that's necessary is that the defendant's conduct "'put into motion a chain of events'" that culminates in someone's death. *See United States v. Molina*, 106 F.3d 1118, 1123–24 (2d Cir. 1997) (quoting *United States v. White*, 979 F.2d 539, 544–45 (7th Cir. 1992)).

Section 249(a)(1)(B)(i)'s "death results" element does not require proof that the defendant intended to cause the death. *See Felder*, 993 F.3d at 68 (with respect to § 2119(3)'s "death results" provision, upholding instruction requiring jury to find "that but for the actions of the Defendant . . . the victim would not have died" but specifying that "[t]he Government is not required to prove that the Defendant . . . intended to cause the death of the victim"); *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009) ("death results" provision of Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(b)(2), "does not require that the death have been the intended result"). (Separately, the absence of an intent requirement with respect to "death" precludes this result from satisfying § 924(c)(3)(A)'s violent-force requirement. *See infra* § III.C.) In addition, the defendant need not supply the force that causes death. In § 249(a)(1)(B)(i), "Congress[] use[d] . . . the phrase 'results from' rather than 'causes,'" and "'resulting in death and causing death are not equivalents.'" *Felder*, 993 F.3d at 69 (quoting *United States v. Burkholder*, 816 F.3d 607, 614 (10th Cir. 2016)). Likewise, "Congress[] use[d] . . . the passive voice in the phrase 'results from,' a choice that generally 'evinces a concern with whether something happened—not how or why it happened.'" *Id.* at 69–70 (quoting *Burkholder*, 816 F.3d at 614, in turn quoting *Dean v. United States*, 556 U.S. 568, 572 (2009)).

In light of these linguistic choices, numerous courts have upheld sentencing enhancements for death or bodily injury that "resulted from" a defendant's conduct, in the sense of but-for causation, even though the defendant did not inflict the injury himself and was distant

from the injury-causing event. For example, the Second Circuit held applicable a Guidelines enhancement for bodily injury that "resulted from" a defendant's conduct where a bystander was shot by security guards fending off the defendant's robbery attempt. *United States v. Molina*, 106 F.3d 1118, 1122–25 (2d Cir. 1997). In *Molina*, the defendants tried to rob an armored car and shot at the car's guards. The guards returned fire and one of the guards' bullets hit a bystander's foot. *Id.* at 1120. The circuit concluded that the bystander's injury had "resulted from" the defendants' conduct—even though "the harm to the victim was the immediate result of a bullet fired from the weapon of a guard"—because the defendants had "'put into motion a chain of events' that contained the 'inevitable tragic result' of the bullet being lodged in the bystander's foot." *Id.* at 1123–24 (quoting *White*, 979 F.2d at 544–45). In *White*, the Seventh Circuit affirmed an upward departure under the Guidelines where "death resulted" from the defendant's offense of transporting a minor interstate for purposes of prostitution, where the minor was found murdered after an appointment with a john. 979 F.2d at 541. Even though there was no evidence that the defendant himself had murdered the minor, he had "put into motion a scenario" that resulted in her death. *Id.* at 544–45. And in *United States v. Metzger*, 233 F.3d 1226, 1227–29 (10th Cir. 2000), the Tenth Circuit upheld a Guidelines enhancement for bodily injury that "resulted from" the defendant's conduct, where a police officer responding to a credit union robbery shot a bystander, mistakenly believing the bystander to be the robber, who had in fact left the scene and was not even present when the shooting occurred.

Under the foregoing principles, all that § 249(a)(1)(B)(i) requires is that the defendant's offense conduct—i.e., his willful causation of bodily injury to "any person"—be the but-for cause of someone's death. It is not necessary that the death be intended or even foreseeable (*Felder*), that the defendant himself cause the death (*Molina*), or that the person killed be in any

16

way involved in the offense (*Molina*). The "minimum criminal conduct necessary for conviction under" § 249(a)(1)(B)(i)'s death-resulting enhancement, *see Medunjanin*, 99 F.4th at 134, is thus (i) the defendant's willful causation of bodily injury to "any person" (including the defendant himself); (ii) for one of the prohibited reasons ("the actual or perceived race, color, religion, or national origin of any person"); (iii) "result[ing]" in someone's death, even if unintended or effected by someone or something external to the defendant. To return to an example adduced above: If Aaron Bushnell had survived his self-immolation, but the fire had accidentally killed someone else (a firefighter responding to the scene, a bystander), then Bushnell would have (i) willfully caused bodily injury to "any person" (himself); (ii) for a prohibited reason (the "religion" or "national origin" of Jewish people or Israelis); (iii) "result[ing]" in the death of the firefighter or bystander, and could have been charged with violating § 249(a)(1)(B)(i). But in doing so, Bushnell would not have intentionally used, attempted to use, or threatened to use physical force "against the person . . . of another." § 924(c)(3)(A).

As explained above, *see supra* § III.A, the defense need not identify a case involving this conduct to establish categorical overbreadth. *Taylor* refused to impose that obligation or otherwise apply the realistic probability test in deciding whether attempted Hobbs Act robbery was a § 924(c)(3)(A) crime of violence. Indeed, in answering that question, *Taylor* placed extensive reliance on a lengthy hypothetical no different from those the defense has posited here. Moreover, § 249(a)(1)(B)(i)'s overbreadth is apparent on the face of the statute, "obviat[ing]" any need to point to an exemplary case. *Hylton*, 897 F.3d at 63. Section 924(c)(3)(A)'s elements clause "asks only whether the elements of one federal law align with those prescribed in another." *Taylor*, 596 U.S. at 859. That is a very "straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use,

17

or threatened use of force" against the person "of another." *Id.* at 860. The elements of

§ 249(a)(1)(B)(i) contain no such requirement.

C. <u>Section 249(a)(1)(B)(i) Reaches Willfully Causing Bodily Injury Simpliciter Through De Minimis Force, But The Elements Clause Requires Intentionally Causing Serious Physical Injury Through Violent Force.</u>

Section 249(a)(1)(B)(i) fails to satisfy the elements clause for a second, independent

reason. The elements clause is limited to offenses involving the use of violent force. Section

249(a)(1)(B)(i) is not so limited because it requires only the willful causation of "bodily injury"

*simpliciter*, not "*serious* physical injury," as is "necessary" to fit the elements clause. *Villanueva*,

893 F.3d at 130 n.6; *see, e.g., United States v. Dobey*, 2019 WL 5205475, at *5 (S.D.N.Y. Oct.

16, 2019) (state attempted assault offense requiring "intent to cause only physical injury," as

opposed to "serious physical injury," did not satisfy elements clause).

As noted above (*supra* § III.A), the elements clause requires the use of "physical force,"

which is not just *de minimis* force but "*violent* force—that is, force capable of causing physical

pain or injury to another person." *Johnson*, 559 U.S. at 140. "Minor uses of force may not

constitute 'violence' in the generic sense." *Castleman v. United States*, 572 U.S. 157, 165 (2014).

For example, it is "'hard to describe . . . as 'violence' 'a squeeze of the arm that causes a

bruise.'" *Id.* (quoting *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003)). Rather, "'the word

'violent' " "connotes a substantial degree of force," and in the context of § 924(c)(3)(A), a statute

defining felony crimes of violence, the "connotation of strong physical force is even clearer."

*Johnson*, 559 U.S. at 140. *Johnson* clarified that the phrase connotes "strong physical force" or

"great physical force or strength," and by way of illustration cited the definition of "violent

felony" in Black's Law Dictionary: "'A crime characterized by extreme physical force, such as

murder, forcible rape, and assault and battery with a dangerous weapon.'" *Id.* at 140–41.

18

The Second Circuit has never held that an offense prohibiting the intentional causation of physical injury *simpliciter* is categorically violent under *Johnson*'s definition. To the contrary, the Circuit has said that intentionally causing not just injury, but "serious" injury is what's required. In *Villanueva*, the Second Circuit held that Connecticut first-degree assault, Conn. Gen. Stat. § 53a-59(a)(1), which proscribes intentionally causing serious physical injury with a deadly weapon or dangerous instrument, satisfies the elements clause. 893 F.3d at 124-25. In doing so, *Villanueva* distinguished a prior precedent, *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), which had held that Connecticut third-degree assault, Conn. Gen. Stat. § 53a-61(a) (intentionally causing physical injury *simpliciter*), was not a crime of violence.[9] Specifically, *Villanueva* explained: "[T]he . . . offense [in *Chrzanoski*] required intent to cause only 'physical injury,' not 'serious physical injury,' as required for Villanueva's . . . assault conviction. That latter element is *necessary* to make his offense a 'violent felony.'" 893 F.3d at 130 n.6 (emphasis added). *See also id.* at 135 (Pooler, J., dissenting) (noting majority's view that "death or serious bodily injury" element "suffices to show violent force").

Several other Second Circuit precedents follow *Villanueva* and treat the intentional causation of serious injury as essential to meeting the strictures of the elements clause. *E.g., Singh*, 58 F.4th at 37 ("[T]he intent to cause serious physical injury, particularly in combination with the deadly weapon . . . element, necessarily encompasses the use of violent force"); *United States v. Brown*, 2 F.4th 109, 111 (2d Cir. 2021) ("[A] predicate offense is to be categorically recognized as a 'crime of violence' . . . where conviction requires that the defendant

---

[9] The defense recognizes that *Chrzanoski* was subsequently abrogated. *See Scott*, 990 F.3d at 112 n.20. We mention that decision only to provide context for the analysis in *Villanueva*, which had to treat *Chrzanoski* as precedent, and so to reconcile its holding with *Chrzanoski*'s.

'intentionally cause at least serious physical injury'" (quoting *Scott*, 990 F.3d at 110); *Thompson v. Garland*, 994 F.3d 109, 111–12 (2d Cir. 2021) ("A person who causes serious physical injury with the intent to do so . . . necessarily uses physical force. . . . Moreover, force that causes 'serious physical injury' is '*violent* force'" under *Johnson*); *Scott*, 990 F.3d at 99 ("[T]he causation of death . . . by a person intent on causing at least serious physical injury . . . necessarily involve[s] the use of violent force."). In *Dobey*, the district court read *Villanueva*, correctly, to hold that "[a] crime must have as an element 'serious physical injury'" to meet the elements clause. 2019 WL 5205475, at *5 (citing *Villanueva*, 893 F.3d at 130 n.6). Thus, *Dobey* concluded that a state assault offense prohibiting intentionally causing physical injury in a correctional facility fell short because it "require[d] intent to cause only 'physical injury.'" *Id.* In the court's view, that offense did not demand "the use of violent force" because "the offense can be based on causing any degree of physical injury to another person." *Id.*

Section 249(a)(1)(B)(i) does not meet the *Villanueva* standard because the minimum conduct necessary to violate the statute is the willful causation of *de minimis* bodily injury, well short of the "serious physical injury" that *Villanueva* held is "necessary." Section 249(c)(1) provides that "bodily injury," for purposes of the HCPA, "has the meaning given such term in [18 U.S.C. §] 1365(h)(4), but does not include solely emotional or psychological harm." Section 1365(h)(4), in turn, provides that "bodily injury" means "(A) a cut, abrasion, bruise, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." Those provisions define "bodily injury" in the broadest possible terms. Other circuits, applying this definition in various contexts, have held that *de minimis* injury suffices. For example, the First Circuit has used § 1365(h)(4) to define "bodily injury" for purposes of 18 U.S.C. § 242, which

prohibits deprivation of civil rights under color of law, and has approved a jury instruction defining "bodily injury" as "any injury to the body, no matter how minor, slight, or temporary." *United States v. Bailey*, 405 F.3d 102, 111 n.5 (1st Cir. 2005). And in *United States v. Coughlin*, 609 F. App'x 659, 660 n.2 (1st Cir. 2015) (Souter, J.), the First Circuit confirmed that there is no "*de minimis* exception to the definition of 'bodily injury.'" Similarly, the Seventh Circuit, analyzing a textually identical "bodily injury" definition at 18 U.S.C. § 1515(a)(5) (applicable to obstruction of justice offenses), has held that the definition "encompasses practically any adverse effect on the victim, including simple physical pain or an extremely transitory injury." *United States v. Cunningham*, 54 F.3d 295, 299 (7th Cir. 1995). *See also, e.g., United States v. Ferrugia*, 604 F. Supp. 668, 670, 674–75 (E.D.N.Y. 1985) (indictment charging witness retaliation, 18 U.S.C. § 1513, sufficiently alleged element of causing or threatening "bodily injury" where defendant spit on witness and then invited him to "step outside" courtroom).

Consequently, a defendant could willfully cause "bodily injury" for purposes of § 249(a)(1)(B)(i) through a *de minimis* use of force that causes only a minor "bruise," ephemeral "pain," or an "injury" lasting mere seconds—think paper cuts, stubbed toes, or bumped elbows. *Compare Castleman*, 572 U.S. at 165 (a squeeze on the arm causing a bruise is "hard to describe . . . as violence"); *Johnson*, 559 U.S. at 140 (the word "violent" in ACCA's "violent felony" definition "connotes a substantial degree of force," i.e., "strong physical force"). For example, a defendant could, driven by anti-Black animus (i.e., "because of the . . . race [or] color . . . of any person"), grab the arm of a man he believed to be Black and cause a "bruise," *see* § 1365(h)(4)(A); poke the man in the chest during an argument and cause him fleeting "pain," *see* § 1365(h)(4)(B); spit in his eye and cause him to lose vision for an instant or shout in his face and cause his ears to ring, *see* § 1365(h)(4)(D) ("impairment of the function of a bodily member

[or] organ"); or shove him into a crowd of others, causing bumps and scrapes, *see* § 1365(h)(4)(E) ("any other injury to the body, no matter how temporary"). While criminal and reprehensible, none of this conduct would rise to the level of force demanded by *Johnson* and *Villanueva*. Rather, it would constitute simple battery of the type held insufficient in *Johnson*.[10]

The quantum-of-force analysis is unaffected by the fact that Counts 1–10 allege the additional element that "[t]he offenses resulted in . . . death." (ECF No. 6 at p. 3). As shown above, the "death" that "result[s]" from the defendant's offense conduct need not be intentional: "death result[ing]" is a strict liability element akin to the death in a felony murder. *See supra* § III.B; *see also, e.g., United States v. Moya*, 5 F.4th 1168, 1181 (10th Cir. 2021) (holding that § 841(b)(1)(C)'s "death results" enhancement "imposes strict liability," and collecting cases); *United States v. McDuffy*, 890 F.3d 796, 802 (9th Cir. 2018) (same, with respect to "death results" enhancement of federal bank robbery statute, 18 U.S.C. § 2113(e), and collecting cases). But the Second Circuit and the Supreme Court have held that the elements clause only encompasses the intentional use of force. *Singh*, 58 F.4th at 36; *Borden*, 593 U.S. at 423, 446. Accordingly, the only element that is relevant to this Court's analysis is § 249(a)(1)'s willful causation of bodily injury element, because that is the only element to which Congress has attached a mens rea. Because a defendant can willfully cause bodily injury with *de minimis*, nonviolent force that inflicts the most inconsequential of injuries, that element does not meet § 924(c)(3)(A)'s stringent standard. The "death results" element has no impact on that conclusion. *See United States v. Ross*, 2022 WL 4103064, at *1 (8th Cir. Sept. 7, 2022) (noting

---

[10] It does not matter that a defendant's willful causation of bodily injury must be motivated by the race or color of "any person." *See Johnson*, 559 U.S. at 131 n.1 (fact that offense criminalizes assault on particular class of victims, there, police officers, "has no bearing upon whether the substantive element of th[at] offense[] . . . involves the use of 'force'").

government's concession "that kidnaping resulting in death is not a crime of violence under *Borden*"). As the government's brief in that appeal explained, the federal kidnaping statute, 18 U.S.C. § 1201, is not an elements-clause crime of violence because "it can be committed through means, such as decoy and inveiglement, that do not require the use . . . of force." Supp. Br. for United States 3, *United States v. King and Ross*, Nos. 18–2800 and 18–2877 (8th Cir. March 30, 2022), *available at* 2022 WL 1028063. And the "death results" element does not change things: "Because the Government does not need to prove any mental state related to the death that results from a kidnaping, after *Borden* that offense is no longer a crime of violence under § 924(c)(3)(A)." *Id.* at 1.

By the same token, a defendant could violate § 249(a)(1) through one of the *de minimis* uses of force described above, and "death" could "result[]," even though that was not what the defendant intended. For example, the defendant above could shove his Black victim not into a crowd of others but, accidentally, into the path of an oncoming police car, which could strike and kill him. Or his finger poke could cause the man to fall and suffer a fatal head injury. Those unintended consequences would elevate the base § 249(a)(1) offense to a § 249(a)(1)(B)(i) offense carrying a maximum sentence of life imprisonment. But because those deaths were accidental and Congress imposed no mens rea requirement with respect to them, those results would not transform the offense into a § 924(c)(3)(A) crime of violence. In these examples, the defendant would have used force against another person, but not the sort of "violent" physical force, associated with the intentional causation of "serious bodily injury," that the Second Circuit demands. *See Villanueva*, 893 F.3d at 130 n.6; *see also Singh*, 58 F.4th at 37; *Brown*, 2 F.4th at 111; *Thompson*, 994 F.3d at 111–12; *Scott*, 990 F.3d at 99.

D. Section 249(a)(1)(B)(i) Can Be Violated By Omission, But The Elements Clause Requires Affirmative Action.

Section 924(c)(3)(A) covers only offenses that have as an element the "use" of force. As the Third and Fifth Circuits have held, offenses that include the causation of injury or death by inaction or culpable omission in breach of a duty of care—for example, by withholding food or medicine from a child—do not satisfy the elements clause because they do not entail such "use." *Mayo*, 901 F.3d at 230 (3d Cir.) ("[T]he use of physical force required by the [elements clause] cannot be satisfied by a failure to act"); *Martinez-Rodriguez*, 857 F.3d at 286 (5th Cir.) (state child injury offense "is not categorically a crime of violence for purposes of the [elements clause] because such offenses may be committed by both acts and omissions"); *United States v. Resendiz-Moreno*, 705 F.3d 203, 205 (5th Cir. 2013) (state child cruelty offense did not satisfy elements clause because one could commit offense "by depriving the child of medicine or by some other act of omission that does not involve the use of physical force"), *overruled on other grounds, United States v. Reyes-Contreras*, 910 F.3d 169, 187 (5th Cir. 2018) (en banc); *see id.* at 181 n.25 (noting that en banc court did not address omissions). The defense acknowledges that the Second Circuit has held to the contrary. *Scott*, 990 F.3d at 125 ("[T]he ordinary meaning of 'use' applies as much to a use of physical force by omission as by commission"). For purposes of preservation, and in light of the Supreme Court's grant of certiorari in *Delligatti, see supra* n.6, we maintain that offenses that can be committed by a failure to act do not satisfy the elements clause.

Under that rule, § 249(a)(1)(B)(i) cannot serve as a § 924(c) predicate, as the district court ruled in *Bowers*, a case controlled by *Mayo* but otherwise on all fours with this one. 2022 WL 17718686, at *5–9 (in capital prosecution, dismissing §§ 924(c) and 924(j) counts pretrial, to

the extent predicated on § 249(a)(1)). As the *Bowers* court reasoned: "Nothing in the text of [§] 249(a)(1) requires the government to prove that the defendant used force to obtain a conviction. The statute focuses on the willful causation of a result—bodily injury—without reference to how that result is caused. Indeed, the government does not contest that the statute may be satisfied when a defendant causes bodily injury to a person by omission. Accordingly, it cannot be a crime of violence for purposes of [§] 924(c)." *Id.* at *6. Moreover, *Bowers* explained, "the 'death results' . . . element[] . . . does not . . . change that conclusion," because the "severity of the result" does not "change[] the fact that the mechanism employed to . . . cause the result—an omission—does not constitute 'the use, attempted use, or threatened use of force under *Mayo*.'" *Id.*

## IV.   CONCLUSION

This Court should dismiss Counts 11–20 for failure to state an offense.

Dated:        June 10, 2024
              Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/Anne M. Burger*
Anne M. Burger
Supervisory Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law
