IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

              v.                           22-CR-109-V

PAYTON GENDRON,

                Defendant.

———————————————————————

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 11-20 OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. § 924(c) [Docket No. 180]

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General, Civil Rights Division; and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys; Laura B. Gilson, Trial Attorney, Civil Rights Division; and Michael Warbel, Trial Attorney, Criminal Division, hereby submits this Response in Opposition to Defendant's Motion to Dismiss Counts 11-20 of the Indictment for Failure to State an Offense Under 18 U.S.C. § 924(c) [Docket No. 180].

On July 14, 2022, a federal grand jury in the Western District of New York returned an Indictment charging Defendant Payton Gendron with 27 counts, including ten counts of violating the Matthew Shepard, James Byrd Jr. Hate Crimes Prevention Act ("Shepard-Byrd Act"), resulting in death, in violation of 18 U.S.C. § 249(a)(1)(B)(i) (Counts 1-10). *See* Docket No. 6. These violent crimes are the predicate offenses for ten death-eligible counts of use and discharge of a firearm to commit murder, and during and in relation to a crime of violence, and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§

924(c) and 924(j) (Counts 11-20) (collectively, the "Section 924(c)" counts). The defendant now moves to dismiss these capital counts based on his assertion that his underlying Section 249(a)(1) offenses are not crimes of violence.[1]

The motion should be denied because 18 U.S.C. § 249(a)(1) is a crime which has as an element the use, attempted use, or threatened use of force against another person, thereby satisfying the definition of crime of violence set forth in 18 U.S.C. § 924(c)(3)(A). The defendant's three arguments to the contrary—one of which he concedes is foreclosed by binding circuit precedent—fail for the reasons explained below.

## I.     Legal Standards

### A.     A Motion to Dismiss an Indictment Under Federal Rule of Criminal Procedure 12(b)

A motion to dismiss an indictment under Federal Rule of Criminal Procedure 12(b) questions whether the indictment can, or properly does, charge the offense that the defendant is accused of committing. To be successful, such a motion "must meet a high standard." *United States v. Beardsley*, No. 120CR00049RJAMJR, 2022 WL 7706943, at *2 (W.D.N.Y. Sept. 23, 2022), *report and recommendation adopted,* No. 20-CR-49-A, 2022 WL 7626094 (W.D.N.Y. Oct. 13, 2022) (citation omitted). Further, at this stage, rather than weighing the evidence, the court "accepts as true the facts alleged in the Indictment and determines only whether the Indictment is 'valid on its face.'" *Id.* (quotation omitted); *see also Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952) (same).

---

[1] The defendant does not seek to dismiss the Section 924(c) charges in Counts 24 to 26, where the predicate offenses are violations of the Shepard-Byrd Act involving an attempt to kill.

### B. 18 U.S.C. § 924(c) and a Crime of Violence

Section 924(c) prohibits the use and discharge of a firearm during and in relation to the commission of a federal crime of violence, as well as the possession of a firearm in furtherance of the same type of predicate offense. 18 U.S.C. § 924(c)(1)(A). Section 924(j) provides for an enhanced penalty when a defendant, "in the course of violat[ing] [§ 924](c), causes the death of a person through the use of a firearm [and] the killing is a murder." 18 U.S.C. § 924(j)(1). Section 924(c)(3)(A) defines a crime of violence as a federal felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" ("the force clause").[2, 3]

### C. The Categorical and Modified Categorical Approach

Courts employ a "categorical approach" to determine whether an offense is a crime of violence under Section 924(c). *See United States v. Taylor*, 596 U.S. 845, 850 (2022); *Medunjanin v. United States*, 99 F.4th 129, 134 (2d Cir. 2024). Under that approach, a court "focus[es] solely" on "the elements of the crime of conviction," not "the particular facts of the case." *Mathis v. United States*, 579 U.S. 500, 504 (2016). The categorical approach assesses

---

[2] Several federal statutes have a similar or identical force clause, which courts have interpreted in the same way. *See United States v. Tabb*, 949 F.3d 81, 84 (2d Cir. 2020) ("[T]he identical language of the elements clauses of 18 U.S.C. § 16(a) and ACCA [Armed Career Criminal Act of 1984] means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute, as well as in interpreting U.S.S.G. § 4B1.2.") (internal quotation marks, alterations, and citations omitted); *United States v. Evans*, 924 F.3d 21, 29 n. 4 (2d Cir. 2019) (noting that the similarities between § 924(c)(3)'s force clause, the ACCA's elements clause, and § 4B1.2 of the Guidelines makes an authority interpreting one phrase persuasive in interpreting the other phrase).

[3] Section 924(c)(3)(B) alternatively defines a crime of violence as one "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" ("the residual clause"). In *United States v. Davis*, 588 U.S. 445 (2019), the Supreme Court held that the residual clause is unconstitutionally vague. This case involves only Section 924(c)(3)(A), and the government does not rely on any pre-*Davis* cases arising under the residual clause.

whether the "least culpable" conduct that could satisfy the offense elements in a hypothetical case would "necessarily" involve the "use, attempted use, or threatened use of physical force against the person or property of another." *Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality opinion). The defendant's actual conduct is "irrelevant." *Ibid.* If the statute encompasses conduct that does not require the use, attempted use, or threatened use of physical force against the person or property of another, the offense does not qualify as a Section 924(c) predicate. *Descamps v. United States*, 570 U.S. 254, 261 (2013); *United States v. Davis*, 74 F.4th 50, 54-57 (2d Cir.), *cert. denied,* 144 S. Ct. 436 (2023).

Where a statute is "divisible"—that is, the statute "comprises multiple, alternative versions of the crime"—courts apply the "modified categorical approach" to determine which version of the crime was charged, and whether that crime constitutes a qualifying offense. *Descamps*, 570 U.S. at 261-62; *see also Shepard v. United States*, 544 U.S. 13, 19-20, 26 (2005). "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis*, 579 U.S. at 504 (internal quotation marks and citations omitted). When a statute presents alternative elements, it is divisible and may be subject to the modified categorical approach. *Id.* at 505-06.

The Shepard-Byrd Act is divisible, and thus subject to the modified categorical approach, because it contains multiple offenses that carry different punishments. The defendant does not argue otherwise. As the Fourth Circuit held, "§ 249(a)(1) is a divisible statute, with one version of the offense having as an element that death resulted from the crime's commission and carrying a maximum sentence of life imprisonment, and the other version excluding the death-results element and carrying a ten-year maximum sentence."

4

*United States v. Roof*, 10 F.4th 314, 400 (4th Cir. 2021). Here, as in *Roof*, the defendant was charged in Counts 1 to 10 with death-resulting offenses under Section 249(a)(1). *See* Docket No. 6. The elements of this crime are that the defendant (1) willfully, (2) caused bodily injury to any person, (3) because of the actual or perceived race of any person, and (4) that death resulted. *See* 18 U.S.C. 249(a)(1) and (a)(1)(B)(i). Under the modified categorical approach, then, the question is whether these elements categorically require the use or attempted use of physical force against the person of another. As explained below, they do.

## II.     Section 249(a)(1) Is Categorically a Crime of Violence

Because the Section 249(a)(1) offenses charged in Counts 1 to 10 always require a defendant to willfully cause bodily injury to another person, the statute necessarily satisfies Section 924(c)'s force clause. In asserting otherwise, the defendant makes three arguments. The first two arguments focus on the amount and type of force that generally must be used to qualify as a crime of violence, but those arguments conflict with established precedent. In fact, the defendant concedes that Second Circuit precedent forecloses his argument that willful omissions do not violate Section 924(c)'s force clause. Docket No. 180 at 24 (preserving this argument for later review); *see also United States v. Scott*, 990 F.3d 94, 100-01 (2d Cir. 2021).

The defendant's final argument, that a person could theoretically commit a hate crime by causing bodily injury only to oneself, fares no better. The charged Shepard-Byrd Act offenses, by their text and as properly understood, do not reach a defendant who causes bodily injury only to himself. Rather, they require physical injury to the victim. In other words, every completed offense categorically requires the use of physical force against another person.

A.      **Section 249(a)(1) categorically requires the use of physical force.**

Under Supreme Court and Second Circuit precedent, the Section 249(a)(1) offenses that are the predicates for Counts 11 to 20 are crimes of violence because they require the "physical force" that Section 924(c)(3)(A) demands. Indeed, other courts that have similarly analyzed whether violations of the Shepard-Byrd Act satisfy Section 924(c) have concluded that they do. *See, e.g.*, *United States v. Howald*, 104 F.4th 732, 744 (9th Cir. 2024) (holding a Section 249(a)(2)(A)(ii)(II) offense including an attempt to kill is a crime of violence); *Roof*, 10 F.4th at 400-02 (holding that "death results" offenses under Section 249(a)(1) are crimes of violence); *United States v. Earnest*, 536 F. Supp. 3d 688, 719-722 (S.D. Cal. 2021) (holding that a Section 249(a)(1) death-results offense is a crime of violence); *United States v. Doggart*, 2016 WL 6205804, at *5 (E.D. Tenn. Oct. 24, 2016) (holding that a Section 249(a)(1) offense is a crime violence because "it has as an element the use, attempted use, or threatened use of physical force against the person or property of another, as required by 18 U.S.C. § 924(c)(3)(A)") (internal quotation marks omitted).

1.      *Neither the Supreme Court nor the Second Circuit requires "serious" bodily injury to satisfy the force clause.*

The Supreme Court has interpreted "physical force" to require "force capable of causing physical pain or injury." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson 2010*"). It must be "force exerted by and through concrete bodies," and not "intellectual force or emotional force." *Id.* at 138. The amount of force need not be significant or prolonged, and *any* act sufficient to "overc[o]me a victim's resistance, however slight that resistance might be," necessarily qualifies. *Stokeling v. United States*, 586 U.S. 73, 78 (2019) (internal quotations omitted); *see id.* at 85 ("force as small as hitting,

slapping, shoving, grabbing, pinching, biting, and hair pulling" qualifies as "physical force") (internal quotation marks and citation omitted); *see also Johnson 2010*, 559 U.S. at 143 (noting that physical force "might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example"). Indeed, physical force does not "require any particular degree of likelihood or probability that the force used will cause physical pain or injury; *only potentiality*." *Id.* at 84 (emphasis added). The type of force may be indirect and involve no actual bodily contact, as with poisoning, *see United States v. Castleman*, 572 U.S. 157, 170 (2014), but the use of force must be intentional, *see, e.g.*, *Borden*, 593 U.S. at 431-32.

Applying this caselaw, the Second Circuit has explained that "the 'knowing or intentional causation of bodily injury *necessarily* involves the use of physical force.'" *Scott*, 990 F.3d at 111 (quoting *Castleman*, 572 U.S. at 169). Accordingly, this Court can easily dispose of the defendant's challenge. Section 249(a)(1) requires the government to prove that the defendant willfully caused bodily injury. Under *Scott*, that suffices to satisfy Section 924(c)(3)(A).

Second Circuit caselaw also refutes the defendant's argument that Section 924(c)'s force clause covers only "serious" bodily injury. Docket No. 180 at 18. For example, in *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018), the court held that an offense that prohibited putting the victim "in fear of injury" was a predicate crime of violence under Section 924(c)(3)(A). The court did not require the victim's fear to be of "serious" injury, or that any "serious physical injury" occur. To the contrary, the Second Circuit cited with approval Justice Scalia's *Castleman* concurrence, which "reject[ed] the argument that *Johnson*

[2010] 'requires force capable of inflicting *'serious'* bodily injury," as opposed to 'force capable of causing physical pain or injury, *serious or otherwise.*'" *Id.* at 58 (emphasis added).[4]

In arguing that only "serious" bodily injury satisfies Section 924(c)'s force clause, the defendant misquotes *Villanueva v. United States*, 893 F.3d 123, 124 n.6 (2d Cir. 2018). *See* Docket No. 180 at 18-23. *Villanueva* did not adopt a higher standard of requiring "serious" bodily injury, as the complete text of the footnote that defendant relies on clearly shows, with the defense's omitted language in bold:

> The holding of *Chrzanoski* has not been disturbed. First, the defendant's prior offense, which our Court assumed to be third degree assault in violation of Conn. Gen. Stat. 53a-61(a)(1), *see* 327 F.3d at 192, was a misdemeanor and could not for that reason have qualified as a "violent felony" under ACCA. Second, the **misdemeanor** offense required intent to cause only "physical injury," not "serious physical injury," as required for Villanueva's **first degree** assault conviction. That latter element is necessary to make his offense a "violent felony."

*Villanueva*, 893 F.3d at 124 n.6 (emphases added). By omitting the words "misdemeanor" and "first degree" from his motion, the defendant materially changed the import of the footnote, which simply conveyed that "serious" physical injury was one of the distinctions required to

---

[4] Other circuits considering offenses involving "bodily injury" or "physical injury" have also found them to be predicate crimes of violence. *See, e.g., United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019) (holding 18 U.S.C. § 1513 conviction, for "knowingly . . . causing bodily injury to another person . . . with intent to retaliate against any person" for being a witness in certain proceedings, was an ACCA predicate); *United States v. Mendez*, 593 F. App'x 441, 444 (6th Cir. 2014) (holding Indiana statute criminalizing battery "result[ing] in bodily injury to . . . the other person" was a § 4B1.2 predicate, rejecting argument that "serious bodily injury" is required); *United States v. Jennings*, 860 F.3d 450, 459 (7th Cir. 2017) ("[A] criminal act (like battery) that causes bodily harm to a person necessarily entails the use of physical force to produce the harm."); *United States v. Rice*, 813 F.3d 704, 705 (8th Cir. 2016) (holding offense of "intentionally or knowingly, without legal justification, caus[ing] physical injury" to certain categories of people was a crime of violence under sentencing guidelines); *United States v. Cabrera-Perez*, 751 F.3d 1000, 1007 (9th Cir. 2014) (holding A.R.S. § 13–1203(A)(2), prohibiting "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," was a § 16 predicate); *United States v. Winder*, 926 F.3d 1251, 1256 (10th Cir. 2019) (holding Wyoming statute criminalizing "intentionally and knowingly caus[ing] or attempt[ing] to cause bodily injury to a peace officer" was § 4B1.2 predicate); *United States v. Gandy*, 917 F.3d 1333, 1339-40 (11th Cir. 2019) (holding Florida aggravated battery, prohibiting "intentionally caus[ing] bodily harm to [a detainee]," was a § 4B1.2 predicate).

elevate Villanueva's conduct from a *misdemeanor* to a *first degree felony* under Connecticut law. *Ibid.*

Therefore, *Villanueva* does not support the defendant's argument that only "serious" bodily injury satisfies Section 924(c)'s force clause. Indeed, *Villanueva* cannot hold as much or it would no longer be good law after the Supreme Court's decision in *Stokeling*, which the defense fails to cite. In *Stokeling,* the Supreme Court clarified the meaning of "physical force": "In the wake of *Johnson [2010]*, the Court has repeated its holding that 'physical force' means 'force capable of causing physical pain or injury.'" *Stokeling*, 586 U.S. at 84. The Supreme Court emphasized that "physical force" under *Johnson 2010* does not "require any particular degree of likelihood or probability that the force used will *cause physical pain or injury; only potentiality*." *Stokeling*, 586 U.S. at 84 (emphasis added). It then embraced Justice Scalia's *Castleman* concurrence, which had reasoned that "force as small as 'hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling,' satisfied *Johnson*'s definition." *Id.* at 85 (internal citations omitted). The *Stokeling* Court found these "relatively minor forms of injury" to be consistent with the use of violent force under the ACCA because they encompass force sufficient to overcome resistance from even the feeblest of victims. *Ibid.*[5]

Lest there be any doubt, the Second Circuit has since affirmed that "force *need not be of a particular strength*" to qualify as a crime of violence. *United States v. Evans*, 924 F.3d 21, 31 n.7 (2d Cir. 2019) (emphasis added); *see also, e.g., United States v. Love*, 7 F.4th 674, 679 (7th

---

[5] In the context of Second Circuit and Supreme Court precedent, the unpublished, non-controlling out-of-district decision in *United States v. Dobey*, 2019 WL 5205475, at *5 (S.D.N.Y. Oct. 16, 2019), was wrongly decided, as it relies on the same misreading of *Villanueva* that the defendant offers here, and it fails to acknowledge or consider *Stokeling*.

Cir. 2021) (explaining that *Stokeling* set a floor for the force clause that was "not much more severe than mere unwanted or offensive touching"). Against this clear precedent, the defendant's argument for a heightened requirement of "serious" bodily injury easily fails.

Finally, the remaining cases the defendant cites in support of his argument stand only for the proposition that serious physical injury *suffices* under Section 924(c)(3)(A)—not that it is necessary. None of these cases suggest, much less hold, that the outcome would have been different if the statute under review required only bodily injury. Instead, these cases stand for the unremarkable proposition that an offense involving the intentional causation of serious physical injury qualifies as a predicate crime. *See Singh v. Garland*, 58 F.4th 34, 37 (2d Cir. 2022) ("[T]he intent to cause serious physical injury, particularly in combination with the deadly weapon . . . element, necessarily encompasses the use of violent force."); *Thompson v. Garland*, 994 F.3d 109, 112 (2d Cir. 2021) ("A person who causes serious physical injury with the intent to do so, in violation of NYPL § 120.05(1), necessarily uses physical force."); *United States v. Brown*, 2 F.4th 109, 111-12 (2d Cir. 2021) ("NYPL § 120.05(1) requires the intentional causation of serious physical injury and is therefore a 'crime of violence.'").

      2.      *Binding precedent establishes that Section 924(c)'s force clause is satisfied even where the defendant's use of force is accomplished through willful omissions.*

The defendant also argues that acts of omission cannot satisfy Section 924(c)'s force clause, but he acknowledges that binding Second Circuit precedent forecloses this argument. Docket No. 180 at 24-25 (preserving this argument for later review). That binding precedent is *United States v. Scott*, where the Second Circuit held that *Castleman* "compelled" the

conclusion that a predicate offense constitutes a crime of violence even where it can be accomplished through an act of omission. 990 F.3d at 111.[6]

The Second Circuit explained that "the Supreme Court made clear in *Castleman* that where 'use' is being construed in relationship to 'physical force,' a defendant's use of such force does not depend on *his* having forceful contact—or indeed any physical contact—with his injured victim," but "[r]ather, what matters is that the defendant must have knowingly and intentionally caused an injury that can result only from the use of physical force." *Id.* (quoting *Castleman*, 572 U.S. at 169). On this point, the Second Circuit emphasized the Supreme Court's unqualified statement that "the 'knowing or intentional causation of bodily injury *necessarily* involves the use of physical force.'" *Id.* (quoting *Castleman*, 572 U.S. at 169). Consistent with binding circuit precedent, this Court must reject the defendant's argument on omissions.

       3.     *Section 249(a)(1)'s bodily-injury and death-resulting elements qualify as physical force.*

Viewed under the correct legal lens, the Section 249(a)(1) offenses that are the predicate crimes for Counts 11 to 20 fall comfortably within Section 924(c)'s force clause. Those offenses (namely, Counts 1 to 10) each require proof that the defendant (1) willfully (2)

---

[6] Apart from the Third Circuit, every circuit to consider this issue has reached the same result as *Scott*. The Supreme Court granted certiorari to resolve this conflict next Term. Despite the correctness of the majority view, the government agreed that certiorari review was warranted given the circuit split. *See Delligatti v. United States*, No. 23-825 (*cert. granted* June 3, 2024). Notably, the Third Circuit's decision regarding omissions in *United States v. Mayo*, 901 F.3d 218 (2018), compelled the conclusion in *United States v. Bowers*, No. 18cr292, 2022 WL 17718686, at *5-9 (W.D. Pa. 2022), that Section 249(a)(1) is not a crime of violence. Because Second Circuit precedent is correct as to omissions, and because this Court is bound by *Scott* regardless, the reasoning from *Bowers* is inapplicable here.

caused bodily injury and (3) death resulted from the offense. They categorically involve the requisite level of physical force described above.

As should be clear by now, the elements of the charged Section 249(a)(1) offenses satisfy Section 924(c)(3)(A)'s physical-force requirement. In *Scott*, for example, the Second Circuit held "[t]he causation of death . . . by a person intent on causing at least serious physical injury . . . necessarily involve[s] the use of violent force." *Scott*, 990 F.3d at 99-100. The Second Circuit has also held that an offense that prohibits "inflicting bodily injury" on certain federal officials is a crime of violence. *See Gray v. United States*, 980 F.3d 264, 266 (2d Cir. 2020).[7] Further, here, the government must also prove that the Section 249(a)(1) offenses resulted in death. As the Fourth Circuit concluded when it addressed the same argument that the defendant raises, "when a defendant 'willfully causes bodily injury' and 'death results' from the defendant's conduct, that offense satisfies the 'use of physical force' requirement and of course constitutes a crime of violence." *Roof*, 10 F.4th at 400. Indeed, it is difficult to see how death could result from the defendant's offense if the defendant's conduct did not include more than *de minimus* force. "[E]ven if there is no mens rea attendant to the 'death resulting' element, the fact that an offender's conduct resulted in death only further bolsters the conclusion that the use of physical force" in all such offenses satisfies Section 924(c)(3)(A). *Earnest*, 536 F. Supp. 3d at 722. This Court should reach the same conclusion here.

---

[7] *Gray* differentiated between "inflicting" bodily injury and "causing" bodily injury with no *mens rea* or physical causation. *Id.* at 267. Here, Section 249(a)(1) requires "willfully caus[ing] bodily injury" and is therefore more akin to "inflicting" bodily injury under *Gray*. And Section 249(a)(1) requires more than a resultant injury; it requires proof that the defendant willfully caused that bodily injury.

To be sure, the defendant is correct that a bruise qualifies as "bodily injury" under the Shepard-Byrd Act. Docket No. 180 at 21. The Act relies, in part, on 18 U.S.C. § 1365(h)(4), to define "bodily injury" as including "a cut, abrasion, bruise, burn, or disfigurement," "physical pain," "illness," "impairment of the function of a bodily member, organ, or mental faculty," and "any other injury to the body, no matter how temporary." But the defendant is wrong that a bruise does not qualify as physical force sufficient to constitute a crime of violence.

In *Stokeling*, which the defendant does not even cite, the Supreme Court rejected a similar argument and concluded that the "physical force" *Johnson 2010* requires is "the force necessary to overcome a victim's physical resistance," however slight that resistance might be. 586 U.S. at 79, 82-83. Force that bruises someone is consistent with force necessary to overcome a victim's resistance. *See id.* at 85 (suggesting that "force as small as hitting, slapping, [or] grabbing," *i.e.*, things that might cause a bruise, meet the requisite level of force). In sum, whenever someone willfully causes bodily injury under the Shepard-Byrd Act, they have also used the requisite physical force for Section 924(c)'s force clause.

**B.    Section 249(a)(1) categorically requires that the use of physical force be inflicted upon another person.**

Not only does Section 249(a)(1) categorically require the use of physical force, but it also categorically requires that the force be directed at another person. The text, structure, and purpose of the Shepard-Byrd Act all refute the defendant's argument that Section 249(a)(1) "embraces the use of force against oneself." Docket No. 180 at 9. This novel theory clashes with established principles of statutory interpretation and rests on inapt case law. Put simply,

13

the Section 249(a)(1) offenses charged here require the government to prove that the defendant willfully caused bodily injury to another person.

       *1.     Section 249(a)(1)'s text does not criminalize a defendant's use of physical force against only himself.*

Although an element of Section 249(a)(1) is "caus[ing] bodily injury to any person," the phrase "any person" does not apply to the defendant, as this defendant argues. To be sure, courts and dictionaries define the word "any" to include "every" or "all," and the government agrees that ordinarily a word's usage will follow its dictionary definition. "In law as in life, however, the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015). In *Yates*, the Supreme Court "affirmed that identical language may convey varying content when used in different statutes." *Ibid.* (listing many examples). *Yates* thus held that in the statute before the Court, "any … tangible object" does not mean "all objects in the physical world." *Id.* at 536; *see also Martin v. Hadix*, 527 U.S. 343, 354 (1999) (noting that, "although the word 'any' is broad, it stretches the imagination to suggest that Congress intended" that word to mean "all" there.).

As this precedent shows, there is no categorical rule that "any person" must mean "every person" and include the defendant. Indeed, a statute allowing someone to marry "any person" who is at least 18 years old would not allow someone to marry themself. As Judge Learned Hand explained, "words are chameleons, which reflect the color of their environment." *Commissioner v. National Carbide Corp.,* 167 F.2d 304, 306 (2d Cir. 1948) (Hand, J.). That is why courts have "a duty to construe statutes, not isolated provisions." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023) (internal quotation marks omitted). "After all, a statute's meaning does not always turn solely on the broadest imaginable

definitions of its component words." *Dubin v. United States*, 599 U.S. 110, 120 (2023) (internal quotation marks omitted). In fact, the Supreme Court recently rejected an expansive interpretation of a criminal law because "a general phrase [was] given a more focused meaning by the terms linked to it." *Fischer v. United States*, 144 S. Ct. 2176, 2184 (2024). So too here: the Shepard-Byrd Act's reference to "any person" in Section 249(a)(1) is limited by the other text in the statute.

*First*, start with the text of Section 249(a)(1), which must be read consistent with the Shepard-Byrd Act's definition of "bodily injury." *See* 18 U.S.C. § 249(c)(1) (incorporating 18 U.S.C. § 1365(h)(4)'s meaning). That definition explicitly states that "bodily injury . . . does not include solely emotional or psychological harm to *the victim*." *Id.* (emphasis added). Section 249(a)(1)'s bodily-injury element thus requires the government to show that the defendant willfully caused bodily injury to another person—"the victim." When Section 249(a)(1), like other federal criminal offenses, uses the term victim, it refers to someone other than the perpetrator, as Section 249(a)(2) makes apparent. *See* 18 U.S.C. § 249(a)(2)(B) (delineating between "the defendant" and "the victim"); *see also* 18 U.S.C. § 3771 (setting forth "Crime victims' rights" and delineating between a victim and the accused in a way that makes clear the defendant and the victim are not the same person); 34 U.S.C. § 20141 (listing services federal agencies and officials must afford victims and again distinguishing the victim from the suspected offender or defendant); 18 U.S.C. § 3663A (where mandatory restitution to victims applies, as here, distinguishing the defendant from the victim).

*Second*, consider the full context of the bodily-injury element. Section 249(a)(1) does not simply prohibit causing bodily injury to "any person"; it prohibits doing so "because of

the actual or perceived race . . . of any person." Read together and with the rest of the statute, the two "any person" phrases can be understood only to reach conduct that willfully causes bodily injury to *another person* "because of the actual or perceived race" of *another person*.

*Third*, look at Section 249's title, "Hate crime acts." *See Dubin*, 599 U.S. at 120 (relying on the title of a criminal statute to construe its breadth). Hate crimes quintessentially target other people—victims—whether because of their protected traits (like their race) or because of their association with others with protected traits (like a white partner to a Black person). Thus, the text in Section 249(a)(1)'s title also signals that the law does not criminalize a defendant injuring only himself.

*Fourth*, examine the Shepard-Byrd Act's limitation on federal prosecutions, which provides another textual clue that the offenses do not reach bodily injury to only oneself. *See* 18 U.S.C. § 249(b). This limitation states that federal prosecutions may proceed only when the Attorney General certifies that certain circumstance exist, such as "when a sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating *bias-motivated* violence." *Ibid.* (emphasis added). This "bias-motivated violence" consideration amplifies Section 249's title ("Hate crime acts") and shows that the law applies only when violence is directed at others. And in any event, a defendant who causes physical injury to only himself almost certainly would not fall under the narrow circumstances when federal prosecutions are permitted. *Ibid.*

Simply put, statutory context matters. Section 249(a)(1)'s use of "any person" does not include a defendant who willfully injures himself and not another person. Nor does the Shepard-Byrd Act stand alone in this respect. Other commonly charged federal crimes

illustrate that the phrase "any person" does not invariably include the defendant and must instead be defined based on context. These include, for example, 18 U.S.C. § 111 (making it a crime to forcibly assault, resist, oppose, impede, or interfere with "any person" on account of the person's duties as a federal officer); 18 U.S.C. § 875 (making it a crime to extort "any person" by threatening to kidnap "any person"); and 18 U.S.C. § 201 (making it a crime to bribe "any person" to induce "such person" to take official action). In each of these instances, the phrase "any person" cannot be understood to include a defendant assaulting, kidnapping, or bribing himself, respectively. The same is true here. Viewed as a whole, the text of the Shepard-Byrd Act does not permit the defendant's self-serving interpretation of the statute.

2.     *The purpose of Section 249(a)(1) is to punish racially motivated violence against others, not oneself*

The purpose of Section 249(a)(1)'s prohibition on racially motived violence reinforces the textual conclusion that one cannot violate the law solely by injuring oneself. And purpose is important: the Second Circuit has rejected sweeping interpretations of laws when doing so conflicts with the statutory purpose. *See Cunningham v. Cornell Univ.*, 86 F.4th 961, 976 (2d Cir. 2023). "The best evidence of [Congress's] purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 98 (1991), *superseded by statute*, 42 U.S.C. § 1988(c) (1994). Here, that statutory text includes congressional findings confirming that Congress designed the law to cover racially motivated assaults against *other* people:

- "violence motivated by the actual or perceived race . . . of the *victim* poses a serious national problem," 34 U.S.C. § 30501(1) (emphasis added);

- "[a] prominent characteristic of a violent crime motivated by bias is that it devastates not just *the actual victim* and the family and friends *of the victim*, but

frequently savages the community sharing the traits that caused *the victim* to be selected," *id.* § 30501(5) (emphases added); and

- "[s]lavery and involuntary servitude were enforced . . . through widespread public and private violence *directed at persons* because of their race," *id.* § 30501(7) (emphasis added).

Similarly, Congress enacted rules of construction for the Shepard-Byrd Act which further highlight that the law cannot be violated unless the defendant causes bodily injury to another person. The rules prohibit prosecutions "based solely on an individual's expression of racial, religious, political, or other beliefs." *Id.* § 30506(4). So self-injury alone, even if motivated by racial or political statements, is not enough to violate the Shepard-Byrd Act.

Finally, the defendant's reading of Section 249(a)(1) conflicts with Congress's intent to exercise its authority under the Thirteenth Amendment to combat the badges and incidents of slavery. *See* 34 U.S.C. § 30501(7). Racially motivated violence against *others* falls in the heartland of this purpose. *Ibid.* In contrast, the Thirteenth Amendment is not concerned with a defendant's self-immolation or hunger strikes. That is another reason why Section 249(a)(1) does not criminalize the types of self-injury that the defendant posits. *See* Docket No. 180 at 11-12 & n.8.

3. *Other statutes using the words "any person" involve conduct far afield from the hate crimes Section 249(a)(1) prohibits.*

Recognizing that no court has interpreted Section 249(a)(1) the way he does, the defendant tries to shore up his argument by relying on cases interpreting other criminal statutes that use the words "any person" to include the defendant. Docket No. 180 at 10-13. But "the same words, placed in different contexts, sometimes mean different things." *Yates*, 574 U.S. at 537. And in any event, the cases cited by the defendant involve markedly different

statutes than this one. All those cases are distinguishable because, although they may involve action taken against the defendant's *own* person or property (*e.g.*, masturbation, threats of self-harm, or arson), these acts harm or risk harm to another person, the victim. The crux of the crime is thus not the self-harm alone, but the resulting effect that the harm has or risks having on a separate victim. In these instances, the term "any person" must be broadly construed to protect the victim from sexual coercion, extortion, or fraud, for example, and attendant emotional and psychological harms. In contrast, the charged Section 249(a)(1) offenses here criminalize physical force used *directly* against the victim, as the definition of bodily injury in Section 249(c)(1) makes clear.  That is, emotional and psychological harm is not enough.

Many of the defendant's cases, for example, interpret 18 U.S.C. § 2246, which defines "sexual contact" to include touching "any person." 18 U.S.C. § 2246(3). Courts have uniformly (and properly) interpreted that phrase to include masturbation by the defendant. *See, e.g., United States v. Dean*, 591 F. App'x 11, 15 (2d Cir. 2014). But these courts did not mechanically conclude that "any person" automatically included the defendant. Rather, courts examined the statute as a whole and determined that including the defendant among "any person" followed congressional intent. *See United States v. Pawlowski*, 682 F.3d 205, 212 (3d Cir. 2012). In the Shepard-Byrd Act, however, Congress gave no indication that it intended to criminalize self-injury. Quite the contrary, Congress specifically defined "bodily injury" to require physical injury to the victim and to exclude solely emotional or psychological harm to that person.

The defendant's extortion cases (Docket No. 180 at 13-14) likewise do not control here. The Hobbs Act, for example, has two clauses, one of which requires force against

another for completed robbery, and one that does not. *See* 18 U.S.C. § 1951(a). The first clause criminalizes obstructing or affecting commerce by "robbery," which is defined to include taking or obtaining property from another person through specific acts. *See id.* §§ 1951(a) and (b)(1). The second clause, however, criminalizes committing or threatening physical violence to any person or property in furtherance of a plan or purpose to violate the Act. *Id.* § 1951(a). That is why the Department of Justice agrees that the second clause does not satisfy the categorical approach—one can threaten to harm himself to rob or extort money from someone else. Relatedly, *Portee v. United States*, 941 F.3d 263, 271 (7th Cir. 2019), is distinguishable because it too involved an extortion statute that included threats of force against "a human being." There too, the law does not seek to criminalize the defendant's threat to commit, or actual commission of, self-harm. It is the defendant's use of those threats or acts of self-harm to rob or extort another person—the victim—that the law criminalizes. Here, by contrast, the plain text of Section 249(a)(1) does not cover a defendant causing bodily injury only to himself. Nor is that the purpose of the criminal prohibition. Rather, the victim must suffer physical injury for a statutory violation to exist.

Lastly, the defendant's arson cases fail for similar reasons. First, the federal arson statute reaches "any building, vehicle, or other real or *personal property*" that is maliciously damaged or destroyed by someone using fire or an explosive. 18 U.S.C. § 844(i) (emphasis added). "Personal property" unambiguously includes a defendant's own possessions. Second, Section 844(i) also contains no bias motivation like Section 249—someone can be convicted for burning down their own property to obtain insurance proceeds, as prosecutions under Section 844(i) demonstrate. Yet no such ability to convict under Section 249(a)(1) exists here.

The four corners of the Shepard-Byrd Act do not allow for such prosecutions, for the reasons already explained.

In sum, every violation of Section 249(a)(1) for willfully causing bodily injury categorically requires the use of physical force against *another person*, as Section 924(c)(3)(A) provides. Thus, this court should reject the defendant's motion to dismiss Counts 11 to 20.

III.   **Conclusion**

For these reasons, the government requests that the Court deny the defendant's motion to dismiss the Section 924(c) counts because Section 249(a)(1) is categorically a crime of violence.

TRINI E. ROSS
United States Attorney
Western District of New York

BY:   s/*JOSEPH M. TRIPI*
      s/*BRETT A. HARVEY*
      Assistant United States Attorney's
      United States Attorney's Office
      Western District of New York
      138 Delaware Avenue
      Buffalo, New York 14202

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

BY:   s/*LAURA B. GILSON*
      Trial Attorney
      Civil Rights Division
      U.S. Department of Justice
      150 M Street NE
      Washington, DC 20530


BY:   s/*MICHAEL S. WARBEL*
      Trial Attorney
      Criminal Division
      U.S. Department of Justice
      1331 F. St. NW, Ste. 623
      Washington, DC 20004