UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                            22-CR-109 (LJV-HKS)

    v.

PAYTON GENDRON,

        Defendant.

_____

## REPLY IN SUPPORT OF MOTION TO STRIKE THE DEATH PENALTY AS A POSSIBLE PUNISHMENT

**A. Even If Current Supreme Court Precedent Bars The Court From Finding That The FDPA Is Unconstitutional, The Court Nonetheless Has An Obligation To Allow Payton Gendron To Build The Factual Record Necessary For Reviewing Courts To Consider These Important Issues Later.**

Defendant, Payton Gendron, through undersigned counsel, hereby replies to the government's Response (ECF No. 191) to his Motion (ECF No. 181) to strike the death penalty as a possible punishment in this case, or grant other appropriate relief because the Federal Death Penalty Act is unconstitutional. In its Response, the government does not actually contest many of the facts Payton Gendron presents, arguing instead that they are irrelevant because binding precedent in the Second Circuit and the Supreme Court have upheld the death penalty as a constitutional punishment. (ECF No. 191 at 2-3, 6-9, 21, 23, 26-28, 33.)

Payton Gendron readily acknowledged in his Motion that "the Court is bound by Supreme Court precedent." (ECF No. 181 at 6.) The government, however, ignores a fundamental truth about death penalty jurisprudence: the requirements of the Eighth Amendment are not static or "fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice." *Weems v. United States*, 271 U.S. 349, 378 (1910); *see also*

*Hall v. Florida*, 572 U.S. 701, 707 (2014) ("The Eighth Amendment's protection of dignity reflects the Nation we have been, the Nation we are, and the Nation we aspire to be."). The Supreme Court has "acknowledged an ongoing 'obligation to re-examine capital-sentencing procedures against evolving standards of procedural fairness in a civilized society.'" *Gardner v. Florida*, 430 U.S. 349, 357 (1977). And Second Circuit law makes clear that an evidentiary "hearing is the preferred course of action in cases where disputed factual issues exist." *United States v. Cuervelo*, 949 F.2d 559, 567 (2d Cir. 1991).

In *United States v. Fell,* confronted with arguments similar to those Payton Gendron now makes, the trial judge acknowledged that though he could not overrule the Supreme Court, "a trial court has its own contribution to make to the debate. The court can hold a hearing and permit witnesses to testify." 224 F. Supp. 3d 327, 329 (D. Vt. 2016). *See also United States v. Sampson*, No. 01-cr-10384-MLW, 2015 WL 7962394 at *4 (D. Mass. Oct. 28, 2015) ("[I]f there has been a material change in facts relevant to the evolving standards [of decency] analysis -- a question initially for the trial courts--an issue is not foreclosed by Supreme Court precedent because the Supreme Court has not decided the matter in dispute. Rather, the district court is deciding a distinguishable case and controversy"). The district judge in *Fell* knew that *Furman v. Georgia*, 408 U.S. 238 (1972), "identified systemic failures in the administration of the death penalty across the United States" and that while the Supreme Court in *Gregg v. Georgia*, 428 U.S. 153 (1976), "announced procedural reforms and requirements calculated to remedy these violations," even decades later "the question of a systemic violation of the Eighth Amendment remains." *United States v. Fell*, No. 5:01-cr-00012-1, ECF No. 724 at 1-2 (D. Vt. Feb. 9, 2016).

Taking inspiration from the Justice Breyer's dissent in *Glossip v. Gross,* 576 U.S. 863, 909-916 (2015) (Breyer, J., dissenting), the district judge in *Fell* noted:

2

> The trial court's obligation does not end with a review of the facts. The court is required to address the legal issues raised by the parties. That resolution may be no more than an acknowledgment that the law has been settled on a particular question. Alternatively, the new factual record may require a fresh look at the manner in which existing principles are applied to a factual record which continues to develop.

*Id.* Thus, at the very least, the issues Payton Gendron raises include several questions the government does not answer, and the only appropriate way to answer those questions is with evidence presented at a hearing.

### B. The Government's Argument That The Law As It Currently Stands Precludes A Finding That The Federal Death Penalty Is Applied In An Arbitrary And Capricious Manner Is Unavailing.

None of the cases the government cites prohibits this Court from ordering a hearing on whether the federal death penalty act is applied in an arbitrary manner. In the eight years since the *Fell* court held an evidentiary hearing of the kind Payton Gendron seeks, no other court has done the same. More importantly, following the hearing there, the district court found that "[t]he imposition of the death penalty through the FDPA remains arbitrary despite the efforts of the prosecution and the courts to impose legal standards to guide the decisions leading to a death sentence." *Fell*, 224 F.Supp.3d at 345. Not only that, five years after this finding, the Attorney General himself, who authorized Payton Gendron's capital prosecution, plainly acknowledged the "serious concerns [that] have been raised about the continued use of the death penalty across the country, including *arbitrariness* in its application." Attorney General Memorandum re "Moratorium on Federal Executions Pending Review of Policies and Procedures," (July 1, 2021), available at https://www.justice.gov/opa/page/file/1408636/download (emphasis added). Thus, contrary to the government's arguments in this case, even though fact-based constitutional challenges have been rejected by the Second Circuit in the past, a new challenge based upon our

current understanding of the arbitrariness and capriciousness of the death penalty - an understanding that the Attorney General evidently shares – is in not foreclosed.

The government's Response relies in large part on *United States v. Aquart*, 912 F.3d 1 (2d Cir. 2018), and argues that "[a]ny reevaluation of 'evolving standards of decency' must be undertaken by the Supreme Court." ECF No. 191 at 8. What the government fails to acknowledge, however, is that any analysis of the evolving standard of decency necessarily involves a factual review. And nothing in the Second Circuit's decision in *Aquart* forecloses the kind of evidentiary hearing that Payton Gendron now seeks. Because the district court in *Aquart* did not have a hearing, it is unsurprising that the Second Circuit's only option was to hold that "only the Supreme Court can overrule *Gregg*." 912 F.3d at 49. Thus, *Aquart* is not dispositive on the issue of whether this Court can hold an evidentiary hearing on these matters.

The government also disagrees with Payton Gendron's position that prosecutorial discretion is a basis for the arbitrary application of the FDPA, but it offers scant evidence to contradict those allegations. For example, the government takes issue with Payton Gendron's claims that it has chosen not to pursue the death penalty against at least three other similarly situated defendants-- Patrick Crusius (El Paso Walmart shooter who killed 23 persons and injured many more); Anthony Jordan (St. Louis-area drug dealer responsible for at least 12 drug-related murders); and Jairo and Alexi Saenz (leaders of a Long Island MS-13 clique responsible for directing eight charged murders (seven for Jairo))--even though it is seeking death against him. *See* ECF No. 191 at 15. Crusius is particularly noteworthy because, like Payton Gendron, he was a young man (21 years of age) when he killed 23 individuals because of their Hispanic heritage. Yet, beyond a blanket assertion that this decision was based on an "individualized

4

consideration" and the "safeguards included in the Justice Manual's Death Penalty Protocol," ECF No. 191 at 17, the government offers no explanation for this disparate treatment.

Like any other power conferred upon the Executive Branch, prosecutorial discretion "'is not unfettered,'" but remains "'subject to constitutional constraints.'" *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *United States v. Batchelder*, 442 U.S. 114, 124-25 (1979)); *see Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("broad though [prosecutorial] discretion may be, there are undoubtedly constitutional limits upon its exercise"). As the Supreme Court has recognized repeatedly, these "constitutional limits" include the guarantees of fair and equal treatment contained in the Due Process Clause of the Fifth Amendment. Although the prosecutor is permitted "the conscious exercise of some selectivity" in his enforcement of the criminal laws, *Oyler v. Boles*, 368 U.S. 448, 456 (1962), equal protection principles forbid him to "deliberately base" those discretionary decisions "upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886)); *see also Batchelder*, 442 U.S. at 125 n.9.

To safeguard these constitutional guarantees, the Supreme Court has long held that the federal courts may review even those decisions committed to the sole discretion of the prosecutor for the limited purpose of ensuring that the prosecutor is exercising his discretion in a constitutional manner. *See Wayte*, 470 U.S. at 608-14 (reviewing United States Attorneys' charging decisions for alleged equal protection and first amendment violations); *United States v. Goodwin*, 457 U.S. 368, 384-85 & n.19 (United States Attorney's charging decision may be reviewed for vindictive motivation that violates due process). To accept the government's suggestion that it has absolute, unfettered discretion in the death penalty authorization process, wholly without scrutiny from the courts, would place its actions beyond the reach of the

Constitution and reduce the constitutional guarantees of due process and equal protection to empty platitudes.

### C. Even If *Lockhart V. Mccree*, 476 U.S. 162 (1986) And *Buchanan V. Kentucky*, 483 U.S. 402 (1987) Currently Sanction Death Qualification Of Potential Jurors, This Court Can Still Determine Whether The Way It Occurs Is Susceptible To Constitutional Errors.

The government dismisses the studies Payton Gendron cites as "insufficient to establish that any federal capital jury (or even a significant majority of federal capital juries) is so incapable of understanding the FDPA's sentencing scheme as to render it unconstitutional." ECF No. 191 at 24. In the government's view, these studies are "purely speculative." *Id.* at 23. But the government offers no evidence in support of why it believes jurors can understand the FDPA's sentencing scheme. In contrast, the facts Payton Gendron discusses in his Motion are what led the district court in *Fell* to conclude that:

> "[T]he procedures for conducting jury trials mandated by the *Gregg* decision have not cured systemic shortcomings in jury selection and jury deliberations. The death qualification process continues to weight jury panels in favor of conviction and in favor of the death penalty through the exclusion of a large portion of the community which holds views opposed to the death penalty. When surveyed, jurors who actually served in capital cases had great difficulty in following the trial courts' instructions. It is an inadequate response to presume that juries follow our instructions when the evidence is to the contrary. *The evidence introduced at the hearing demonstrates that despite efforts to create a more just death penalty regime, the FDPA--like the very similar state death penalty statutes enacted after Furman--remains inherently unreliable as it seeks to identify those cases in which death is the just outcome.*"

*Fell*, 224 F. Supp. 3d at 339. (emphasis added). This Court can do the same and hold a hearing to determine whether Payton Gendron's arguments are purely speculative, as the government claims, or whether the *Fell* court was correct when it found that post-*Furman* death penalty statutes have simply failed to live up to the hope upon which that decision is founded.

D. **Because All Of The Arguments Payton Gendron Raises Have A Factual Component,** *Stare Decisis* **Does Not Bar The Court From Finding The FDPA Is Unconstitutional. Even If It Did, The Court Nonetheless Has An Obligation To Allow Him To Build The Factual Record Necessary For The Supreme Court To Consider These Important Issues.**

As Payton Gendron stated at the beginning of his Reply, even if this Court were to find that his Motion raises questions that can only be settled by the Supreme Court, it still "has its own contribution to make to the debate." *Id.* at 328. Although the parties developed an extensive record in *Fell*, that record is now five years old and much has changed in the interim. It bears repeating that since then, the Attorney General has publicly acknowledged that the history of the death penalty is marred by arbitrariness, the application of unreliable procedures, and also--contrary to the position the government takes in its Response here--recognizes that those concerns persist today. Thus, an evidentiary hearing is necessary to fully develop the facts and arguments relevant to Payton Gendron's current constitutional challenges.

## CONCLUSION

For the reasons set forth in his Motion to Strike the Death Penalty on the Ground That it is Unconstitutional as Administered Under the Federal Death Penalty Act, (ECF No. 181), and this Reply, Payton Gendron respectfully moves this Court to enter an order scheduling a hearing where he may submit additional evidence and testimony in support of his position. In the alternative, he requests that the Court enter an order finding that the federal death penalty

constitutes a cruel and unusual punishment prohibited by both the Fifth and Eighth Amendments, and striking the government's Notice of Intent to Seek Death.

Dated:     August 19, 2024
           Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/Anne M. Burger*
Anne M. Burger
Supervisory Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law