UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                              22-CR-109 (LJV-HKS)

PAYTON GENDRON,

               Defendant.
_____

## REPLY IN SUPPORT OF MOTION FOR AN ORDER CATEGORICALLY EXEMPTING PAYTON GENDRON FROM THE DEATH PENALTY BECAUSE HE WAS EIGHTEEN YEARS OLD AT THE TIME OF THE ALLEGED CAPITAL CRIMES

      Defendant, Payton Gendron, through undersigned counsel, submits this brief Reply to the government's Response (ECF No. 192) to his Motion (ECF No. 182) for an order, after an evidentiary hearing, categorically exempting him from the death penalty because he was eighteen years old at the time of the alleged capital crimes.

      In his Motion, Payton Gendron urged a limited expansion of the Supreme Court's holding in *Roper v. Simmons*, 543 U.S. 551 (2005), that the Eighth Amendment forbids imposing the death penalty on persons under the age of 18. At the time of his alleged capital offenses, Payton Gendron was 18, a mere 328 days past the line drawn in *Roper*. In seeking an expansion of *Roper*'s protections, he noted that the Supreme Court had relied on a consensus—at that moment in time---in the scientific community that the juvenile (under 18) brain differs markedly from that of an adult, in ways that indicated a constitutionally significant lesser culpability: lack of maturity and an undeveloped sense of responsibility, greater vulnerability to negative influences and outside pressures, and inchoate character development (ECF No. 182 at 2) (citing *Roper*, 543 U.S. at 569-70). And he reviewed extensively the developments, in the 20 years since *Roper*, in

the science of brain development and its relationship to behavior, which have produced in a new consensus among the professional community: namely that the brain continues to develop through the late teens and early 20s, in precisely the same areas that underpinned the Court's holding in *Roper*. *Id.* at 3-12. Finally, Payton Gendron urged in his Motion that, consistent with the changed scientific understanding, a new consensus has developed against capital punishment for late adolescents, demonstrated, he urged, through its lack of use and/or outright prohibition through repeal in jurisdictions across the country. *Id.* at 12-20.

In light of these significant factual developments since *Roper*, Payton Gendron urged that its protections should be extended to include persons such as himself, mere months older than 18 at the time of his alleged capital offenses. And he requested an evidentiary hearing to develop the factual record in support of his contentions.

In opposing his Motion, the government disputes neither the post-*Roper* developments in the science of late-adolescence brain development that he described nor the move away, in jurisdictions across the country, from capital punishment for persons under the age of 21. Instead, it argues simply that *Roper*'s line-drawing at 18 froze the inquiry, depriving this Court of authority to grant the relief Payton Gendron seeks---even to hold a hearing on the matter. But the government misconceives the nature of the claim he raises, and its approach would, essentially, encase the Constitution in amber and deprive Payton Gendron of the opportunity to develop the factual record necessary to litigate his claim.

First, the Supreme Court's 8th Amendment analysis in *Roper* expressly employed the "evolving standards of decency" analysis, which rests on an understanding that the country's mores may evolve over time and that a consensus, with constitutional implications, may develop that previously acceptable punishments have become disproportionate---cruel and unusual within

2

the meaning of the amendment's prohibition. 543 U.S. at 560-61. In *Roper* itself, the Missouri Supreme Court, cognizant that *Stanford v. Kentucky*, 492 U.S. 361 (1989) had expressly rejected a broader categorial exemption for juveniles, reviewed the changes in the legal and scientific landscape over the intervening 14 years, and concluded that "evolving standards" had reached a consensus against executing persons under the age of 18 at the time of their capital offenses. 112 S.W.3d 397 (2003). The United States Supreme Court affirmed that determination---with no hint that the state court had engaged in impropriety or encroached on a prerogative reserved uniquely to the high court.

Payton Gendron's claim is not one addressed in *Roper*. He argues, instead, that in the nearly 20 years since, science has evolved and a new consensus against capital punishment for late-adolescents has developed: His claim rests on the assertion of new facts not available to the *Roper* Court. *See United States v. Sampson*, Cr. No. 01-10384-MLW, 2015 WL 7962394 at *4 (D. Mass. Oct. 28, 2015) ("[I]f there has been a material change in facts relevant to the evolving standards [of decency] analysis---a question initially for the trial courts---an issue is not foreclosed by Supreme Court precedent because the Supreme Court has not decided the matter in dispute. Rather, the district court is deciding a distinguishable case and controversy").

Second, even if the Supreme Court had, implicitly, reserved to itself the ultimate choice of whether or when to extend *Roper*'s protections to late adolescents, an evidentiary hearing in this Court would be vital to permit development of the factual record necessary for evaluation by that Court. This was the procedure followed by the district court in *United States v. Fell*, 224 F. Supp. 3d 327 (D. Vt. 2016). Although it may not overrule the Supreme Court, "a trial court has its own contribution to make to the debate. The court can hold a hearing and permit witnesses to testify.". *Id.* at 329. To fully litigate Payton Gendron's claim, an evidentiary hearing, at which

the parties could call expert witnesses to testify about the new brain-development science and its relationship to behavior and culpability, after which this Court could make findings of fact, is necessary.

Finally, the government argues that this Court need not entertain Payton Gendron's Motion because he can, at a capital sentencing hearing, introduce evidence of his youth as a mitigating factor for the jurors to consider. (ECF No. 192 at 9-10.) The State of Missouri, however, raised this same contention in *Roper* itself, 543 U.S. at 572 ("They assert that even assuming the truth of the observations we have made about juveniles' diminished culpability in general, jurors nonetheless should be allowed to consider mitigating arguments related to youth on a case-by-case basis, and in some cases to impose the death penalty if justified."), and the Supreme Court rejected it:

> We disagree. The differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty despite insufficient culpability. An unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less severe than death. In some cases a defendant's youth may even be counted against him..

*Id.* at 572-73 (internal citations omitted); *id.* at 573 (lay jurors should not be burdened with the task of an individualized assessment that trained experts have determined is too difficult to be done reliably). The government's reprise of the argument rejected in *Roper* should be rejected here on the same reasoning.

For the foregoing reasons and those discussed in Payton Gendron's original Motion, and pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution and the FDPA, the defendant requests that this Court grant the Motion.

Dated:       August 19, 2024
               Buffalo, New York

<u>s/Sonya A. Zoghlin</u>
Sonya A. Zoghlin
Assistant Federal Public Defender

<u>s/Anne M. Burger</u>
Anne M. Burger
Supervisory Assistant Federal Public Defender

<u>s/MaryBeth Covert</u>
MaryBeth Covert
Senior Litigator

<u>s/Julie Brain</u>
Julie Brain
Attorney at Law