UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

          v.                                       22-CR-109 (LJV)

PAYTON GENDRON,

               Defendant.
_____


### JOINT PROPOSED VOIR DIRE AND JURY SELECTION PROCEDURES

1. The Clerk of Court will randomly select names from the Master Jury Wheel for this trial and utilize the "one-step summons / qualification form" described in the Jury Plan. Each person selected shall be assigned a random number specific for this case, which will continue with them through the jury selection process. Prospective jurors shall be given the opportunity to respond to the "one-step summons / qualification form" by filling out the form manually and returning it to the Clerk's Office by mail or by completing the form electronically through the Court's internet website.

2. The Clerk of Court shall determine the date of mailing out the "one-step summons / qualification form[s]" to ensure the Court, with input from the parties, has three weeks to review and make the determinations of juror qualifications and exemptions. The Clerk of Court shall determine the number of individuals to be selected from the Master Jury Wheel and mailed the "one-step summons / qualification form[s]" in order to ensure approximately 1,000 to 1,200 prospective jurors will remain available to fill out the Special Juror Questionnaire after individuals who are not qualified and/or exempt from service are released from service.

3. The Clerk of Court shall provide to the parties the names of the individuals selected from the Master Jury Wheel for this case (including demographic information regarding the age, gender, race and ethnicity and zip code of the individual prospective jurors on the list) in a native electronic file format (Excel or CSV file).

4. The Clerk of Court and his or her staff shall be directed to ensure all communication with individuals sent a "one-step summons / qualification form" for this case is in writing or memorialized in writing. The completed "one-step summons / qualification form[s]", correspondence, communication, and documents received from (or "other competent

1

evidence"[1] regarding) the prospective jurors[2] selected from the Master Jury Wheel shall be preserved and electronic PDF file format copies provided to the Court and parties.

5.      The determination that an individual selected from the Master Jury Wheel is not "deemed qualified to serve on . . . petit juries"[3] or is exempt from service because of membership in a particular "occupational class[] or group[] of persons"[4] shall be made by the Court with input from Clerk of Court and the parties. The Court will release from service those individuals who are not qualified and/or exempt from service and provide the Clerk of Court with this information <u>fifteen weeks before the date that in-court voir dire is scheduled to start</u> in order to provide the Clerk of Court's staff time to organize and schedule the prospective jurors to appear in person to fill out the Special Juror Questionnaire.

6.      The Clerk of Court shall communicate to any prospective jurors requesting to be deferred or excused from service on grounds of undue hardship or extreme inconvenience[5] that they will have an opportunity to provide the basis for these requests when they appear to fill out the Special Juror Questionnaire.[6] All requests for excusal or deferral on hardship and inconvenience grounds will be considered and ruled upon by the Court with input from the parties after the jurors complete the Special Juror Questionnaire.

7.      The prospective jurors selected from the Master Jury Wheel who are qualified and not exempt from service will be summoned to appear in groups for completion of the Special Juror Questionnaire scheduled over one or two weeks, <u>to be completed ten weeks before the date that in-court voir dire is scheduled to start</u>. The size of the group, dates, and location of the Special Juror Questionnaire process will be determined closer to the trial date. Each juror who appears for the Special Juror Questionnaire process shall be given their previously-assigned number, which they will write on their questionnaire and will continue with them through the voir dire process.

8.      Panels will be summoned for morning and afternoon sessions and will complete the questionnaires under the supervision of court personnel. The Court will briefly address each panel instructing them not to read about, investigate, or discuss or post information about the case, and other relevant matters. (The parties shall confer and then provide the Court with proposed language for these instructions <u>four weeks prior to the jurors appearing for completion of the Special Juror Questionnaire</u>.) The defendant and a specified number of representatives from the prosecution and defense may be present for each questionnaire session.

---

[1] U.S. District Court for the Western District of New York Jury Plan (May 9, 2018) ("Jury Plan") at 6.

[2] Or mail returned as undeliverable or other information received from the United States Postal Service regarding efforts to deliver mail to these individuals.

[3] Jury Plan at 6.

[4] Jury Plan at 6.

[5] Jury Plan at 7.

[6] It is anticipated that the Special Juror Questionnaire will include a section, Trial Schedule and Availability, that includes questions addressing hardship issues.

9.      The Court will make completed questionnaires electronically available in PDF file format to the parties[7] for review beginning as soon as is feasible for Clerk of Court staff, preferably on a rolling basis, and completed eight weeks before the date that in-court voir dire is scheduled to start.

10.     The parties will confer and file with the court no later than four weeks before the date that in-court voir dire is scheduled to start a list of stipulated strikes for cause and hardship based on the questionnaire responses. Any juror for whom there is no agreement will remain in the jury pool.

11.     The Court will excuse all members of the venire appearing on this stipulated list and provide the Clerk of Court with this information three weeks before the date that in-court voir dire is scheduled to start in order to provide the Clerk of Court's staff time to organize and schedule the remaining prospective jurors for in-court voir dire panels.5 It is anticipated that the Special Juror Questionnaire will include a section, Trial Schedule and Availability, that includes questions addressing hardship issues.

12.     The Clerk of Court shall provide the Court and parties in a native electronic file format (Excel or CSV file) a list of the remaining prospective jurors by name and previously-assigned number in numerical order, which is the order in which they will be scheduled to appear and called, starting with the lowest number.

13.     The Clerk of Court will divide the prospective jurors into panels of 12 that will be scheduled to appear in court for voir dire each day and will notify the prospective jurors of the dates they are to appear.

14.     Starting with the date the in-court voir dire is scheduled to start, 12 prospective jurors will be summoned per day until a requisite number of jurors are qualified. This number may be adjusted up or down at the Court's discretion as jury selection proceeds and the Court learns how much time is necessary to complete individual voir dire.

15.     The government shall disclose its criminal history reports of prospective jurors to the defense five days prior to the date on which a juror is scheduled to appear for in-court voir dire.

16.     The jurors each day will be brought together into the courtroom where the Court will provide an overview of the process and general applicable legal concepts, including the possibility the jurors will have the responsibility of deciding whether Payton Gendron is sentenced to either life in prison without the possibility of release or death. (The parties shall confer and then provide the Court with proposed language for these instructions four weeks prior to the start of in-court voir dire.) Following the Court's instructions, the prospective jurors will be excused to the jury room and brought back into the courtroom one at a time for individual sequestered voir dire.

Defense Proposed 17.        When an individual juror returns to the courtroom, one attorney from either the government or the defense will take turns questioning that juror, alternating which side begins the questioning. At the conclusion of the questioning, the juror will be excused to the jury room. Cause challenges, if any, will be argued after the

---

[7] The logistics shall be determined after the Court consults with the Clerk of Court staff and parties.

completion of individual voir dire for each prospective juror, and the Court will rule on the challenge. If a party's cause motion is granted, the juror will be excused from further jury service.

Government Proposed 17.    When a juror is returned to the courtroom for individual voir dire, the Court will conduct individual questioning of the juror, including appropriate areas of inquiry requested by counsel in light of juror questionnaire responses. The parties will then be afforded the opportunity for brief follow-up questioning. The parties will alternate going first and only one attorney on behalf of each party may ask questions of each prospective juror. Each party will have only one opportunity to ask questions and there will not be an opportunity for re-questioning, except by leave of Court. The Court will restrict repeated questioning and will limit each party's questioning of each prospective juror to 10 minutes. Cause challenges will be argued after the completion of individual voir dire for each prospective juror. This procedure will then be repeated for those prospective jurors who remain. Each prospective juror not excused for cause will remain at the call of the Court for possible jury service.

Defense Proposed 18.    If a juror is not struck for cause and is qualified to serve, the parties will then have an opportunity to exercise a peremptory challenge against the juror, starting with the government and then alternating which side proceeds first in raising a peremptory challenge. Jurors who have not been peremptorily challenged by the parties shall become jurors.[8] Both the selected jurors and the jurors who have been peremptorily challenged will be told that they remain part of the potential jury pool unless and until they have been advised otherwise by the Court. Each party may raise the maximum number of peremptory challenges granted to each party until these are exhausted. This process will continue until twelve jurors in the main panel have been seated.

Government Proposed 18.    Once 70 jurors have been qualified and accepted by the Court (12 petit jurors, 20 peremptory strikes per side, six alternate jurors, three alternate strikes per side, and six additional prospective jurors in case issues or problems arise regarding juror availability), individual voir dire shall cease. The Jury Division will provide a list of qualified jurors to the parties and Court as soon as possible. The following business day, the parties will exercise peremptory challenges and the petit jury will be selected. Using the numbered list provided by the Jury Division, and going in numerical order from smallest to biggest number, the parties will alternate going first in choosing whether to strike or pass each prospective juror. Each party may exercise up to 20 peremptory strikes. See Fed. R. Crim. P. 24. Once a jury of 12 is selected, the parties will continue the process to select six alternate jurors. When selecting alternate jurors, each party may exercise up to three peremptory strikes. Any peremptory strikes not used in picking the

---

[8] The Court will defer final ruling on the peremptory challenges raised by the parties until the parties have an opportunity to make appropriate motions under *Batson v. Kentucky*, 476 U.S. 79 (1986) (or until the time for making such motions has elapsed). The peremptory challenges raised by the parties shall not be made public until the conclusion of jury selection. In order for the parties to consider and raise appropriate *Batson* and related challenges, it is anticipated that the parties will be required to review the pattern of peremptory challenges raised over the course of jury selection and perform comparative juror analysis. *Riley v. Taylor*, 277 F.3d 261, 282 (3d Cir. 2001).

petit jury may not carry over to be used in selecting the alternate jurors.  Once six alternate jurors are selected, any remaining prospective jurors will be excused and the jury selection process will be at a close.

Defense Proposed 19.        The same process of individual questioning and motions and rulings on cause challenges shall be employed for the selection of six alternate jurors. Each party may raise the maximum number of peremptory challenges allowed to each party in selecting the alternate jurors. Peremptory challenges not used in selecting the main panel of 12 jurors may not be carried over to be used in selecting the alternate jurors. The jurors who have not been peremptorily challenged by the parties shall become alternate jurors. This process will continue until six alternate jurors have been seated.

Government Proposed 19.      Defense 19 should be stricken in its entirety as surplusage in light of Gov. Proposed 18.

20.      The jurors selected shall not be advised of their status as jurors or alternate jurors until the jury is directed to begin deliberations.


Dated: February 3, 2025

_s/Sonya A. Zoghlin_
Sonya A. Zoghlin
Assistant Federal Public Defender

_s/MaryBeth Covert_
MaryBeth Covert
Senior Litigator

_s/Julie Brain_
Julie Brain
Attorney at Law


_s/Monica Foster_
Monica Foster
Indiana Federal Community Defenders, Inc.

_s/Joseph M. Tripi_
Joseph M. Tripi
Assistant United States Attorney

_s/Brett A. Harvey_
Brett A. Harvey
Assistant United States Attorney

_s/Daniel E. Grunert_
Daniel E. Grunert
Trial Attorney, Civil Rights Division
U.S. Department of Justice

_s/Michael S. Warbel_
Michael S. Warbel
Trial Attorney, Criminal Division
U.S. Department of Justice