UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

     v.

                                   22-CR-109 (LJV)

PAYTON GENDRON,

          Defendant.

_____

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO SUPPLEMENT TO
MOTION TO STRIKE THE DEATH PENALTY AS A POSSIBLE PUNISHMENT AND
FOR DISCOVERY**

## I.      Introduction

Payton Gendron files this reply to the government's response in opposition to his

supplementary motion for discovery, and to strike the death penalty as a possible punishment. In

its Response, the government asks the Court to deny Payton Gendron's discovery request

because, in its view, in capital cases, "far stronger proof" is required before a court may order

discovery of the kind that he seeks. ECF No. 300 at 7-8. This is incorrect. As Payton Gendron

previously told this Court, under *United States v. Armstrong*, 517 U.S. 456 (1996) and *United

States v. Bass*, 536 U.S. 862 (2002), all a criminal defendant need present is "*some evidence* of

both discriminatory effect and discriminatory intent." *Bass*, 536 U.S. at 862 (citing *Armstrong*,

517 U.S. at 465) (emphasis added). *See also United States v. Alcaraz-Arellano*, 441 F.3d 1252,

1264 (10th Cir. 2006) ("defendants seeking discovery need not establish a prima facie case of

selective prosecution"); *United States v. Whitfield*, 29 F. Supp. 3d 503, 513 (E.D. Pa. 2014),

aff'd, 649 F. App'x 192 (3d Cir. 2016) ("a defendant need not meet the clear evidence standard

to obtain discovery on a selective prosecution claim"). This standard applies equally to capital

cases, and Payton Gendron has met both prongs. The Court should therefore grant his discovery

request, and order the government to provide the materials requested. *See e.g., United States v. Tuitt*, 68 F. Supp. 2d 4, 7-10 (D. Mass. 1999) (granting defendant's motion for discovery in support of claim that prosecutors "unfairly, arbitrarily, and discriminatorily enforced" certain federal drug laws against black defendants); *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997) (applying *Armstrong*, granting discovery motion by church stripped of tax-exempt status to compel IRS to produce evidence about investigations of, or sanctions on, other churches engaged in similar political activity). In the alternative, the Court should direct the government to submit the requested discovery for in camera review before making a final decision on this request.

## II.    The comparator cases Payton Gendron cites involve non-white criminal defendants who are similarly situated to him.

Payton Gendron has proffered some evidence that the prior administration did not seek death sentences against similarly situated non-white defendants. The government urges the Court to disregard comparisons to the individuals who were subject to the Attorney General's clemency recommendations as similarly situated because: 1) decisions to grant clemency are ultimately those of the president alone, while decisions to seek the death penalty belong to the Attorney General; 2) clemency determinations are "standardless" while decisions to seek the death penalty are guided by statute; and 3) "much may have changed in the cases between the times the two decisions were made." ECF No. 300 at 6 n.6. The government further avers that, because the comparator cases do not include defendants who "committed the 'same basic crime in substantially the same manner as the defendant,'" i.e., "committed a race-based mass-shooting that killed 10 people in a single criminal episode, injured three others, and put more than 60 others at grave risk of death," Payton Gendron's claim fails. ECF No. 300 at 11 (internal citations omitted). These arguments lack merit.

2

The *Armstrong/Bass* standard, as the government correctly notes, does not require that the comparator cases be identical to the defendant's, only that they are similarly situated. ECF No. 300 at 8, 11. As an overarching matter, the cases Gendron cites all involve a decision or recommendation by the Attorney General either to pursue or to continue to pursue death sentences against a group of criminal defendants. Further, the non-clemency comparator cases are similarly situated in that they involve non-white defendants who committed heinous crimes, which involved planning and premeditation, and put additional innocent lives at risk. Similarly, even though the commutations were a function of presidential power, the Attorney General made the final recommendations about whether commutation was warranted for those individuals who had previously committed heinous crimes after planning and premeditation, that put innocent lives at risk. And the president adopted the Attorney General's recommendations wholesale, without any changes, a fact that was reported by the Wall Street Journal, and which the government does not dispute. *See* ECF No. 290 at 7 (quoting Wall Street Journal story). Not only that, the Journal predicted that Dzhokhar Tsarnaev, Robert Bowers and Dylann Roof would be excluded from the commutations list, which also happened. *See id.* Therefore, any argument that the president's decision was wholly independent and uninfluenced by the Attorney General is belied by the public record. And the suggestion that these cases are inappropriate comparators also fails because in all of them, the Attorney General is the ultimate decisionmaker on whether the death penalty is an appropriate punishment. To divide them into categories as the government suggests is to create distinctions without differences.

III.    **Payton Gendron has proffered some evidence that establishes that the Attorney General's decision to pursue the death penalty against him had both a discriminatory intent and a discriminatory effect,[1] warranting discovery under *Armstrong* and Bass.**

Under the *Armstrong/Bass* standard, the Court must look at the sum of the evidence proffered to determine whether the defendant has established discriminatory intent and discriminatory effect. He is not required to show that the government chose to seek the death penalty against every white person, while failing to do the same against every non-white person. *See* ECF No. 300 at 12 (arguing that the government's decision not to seek the death penalty against Patrick Crusius, and other white offenders, including those who killed multiple persons, "demonstrated a lack of racial bias against white people in the capital charging process").[2] All that the law demands of Payton Gendron is a showing that the prosecution of some white person, in this case him, had an impermissible basis, which he has done. Nothing more is necessary.

In addition, the cases the government cites for the proposition that Payton Gendron has not proffered some information to warrant discovery under *Armstrong* or *Bass*, *see* generally ECF No. 300 at 10-14, are easily distinguishable or inapposite. Some of the cases focus solely on arbitrariness. *See, e.g., McCleskey v. Kemp*, 481 U.S. 279, 291 (1987) (arbitrariness claim about Georgia's death penalty statute); *United States v. Lawrence*, 735 F.3d 385, 439 (6th Cir. 2013) (arbitrariness in charging practice);  *United States v. Bowers*, No. CR 18-292-RJC, 2023 WL

---

[1] Because the evidence proffered supports both the discriminatory intent and effect prongs of the *Armstrong/Bass standard*, Gendron will address both together in this reply. *See also Tuitt*, 68 F. Supp. 2d at 10 ("A discriminatory effect which is severe enough can provide sufficient evidence of discriminatory purpose.")

[2] Equally unavailing is the government's attempt to recast Sayfullo Saipov is a "minority defendant" against whom the Attorney General did not withdraw the death notice. *See* ECF No. 300 at 13. Saipov is a white male from Uzbekistan and so the decision to seek death against him strengthens, rather than weakens, Gendron's claim.

3198215, at *1 (W.D. Pa. May 2, 2023) ("arbitrary pursuit of the federal death penalty"); *United States v. Johnson*, 900 F. Supp. 2d 949, 968 (N.D. Iowa 2012) (arbitrariness claim).

In some, the defendants offered only statistical data in support of their discovery requests and included no evidence of similarly situated defendants. *See, e.g., United States v. McCluskey*, No. CR 10-2734 JCH, 2012 WL 13080252, at *4 (D.N.M. July 26, 2012) (defendant "fails to inform the Court where he has identified such similarly situated individuals"); *United States v. Lecco*, No. CRIM.A.2:05-00107-01, 2009 WL 3347108, at *4 (S.D.W. Va. Oct. 15, 2009) (same); *United States v. Henderson*, 485 F. Supp. 2d 831, 862 (S.D. Ohio 2007) (same).

And a third category of cases involves defendants who cited comparator cases that the court found were not in fact similarly situated; those, too, are distinguishable. *See*, e.g., *United States v. Watts*, 14-cr-40063, 2016 WL 305059, *5 (S.D. Ill. Jan. 25, 2016) (defendant "described nothing but the race and gender of the defendants and victims and the general nature of the crimes charged" and failed to describe other considerations, including that none of the comparator defendants were charged with killing multiple victims); *United States v. Edelin*, 134 F. Supp. 2d 59 (D.D.C. 2001) (Edelin's criminal history, including 14 murders and participation in a continuing criminal enterprise, provided race neutral reason for capital prosecution); *United States v. Olvis*, 97 F.3d 739, 742 (4th Cir. 1996) (government chose not to indict co-conspirators for reasons including prior disposition in state court, or decision to cooperate).

Payton Gendron, however, has no criminal history, no co-conspirators, was not engaged in a continuing criminal enterprise, and has already pled guilty in state court and been sentenced to life without the possibility of parole. He has repeatedly offered to cooperate with federal authorities and plead guilty if the government ends its pursuit of the death penalty against him. And yet, similarly situated non-white defendants who have worse criminal histories, were

equally culpable co-conspirators, and had no parallel state prosecutions, were spared the death penalty and allowed to plead guilty in exchange for sentences of life without the possibility of parole. *See* ECF No. 290 at 7-8 (discussing cases).

The government also faults the defense for providing "no discussion of the strength of the government's evidence in the various [comparator] cases [he cites], the prosecutorial priorities involved, potential mitigation, or any other legitimate prosecutorial factors." ECF No. 300 at 11. But this is information that only the government has. And that is the whole point of this exercise: to seek discovery about the Attorney General's decision-making process because the credible evidence that Gendron currently has points to a race-based decision to seek the death penalty against him. It defies common sense to criticize Payton Gendron for his failure to discuss the minute details of the government's decision-making process when he lacks access to the information utilized in that process. He has still managed to show that there is some credible evidence that the decision to seek the death penalty against him was influenced by the fact that he is a white male, and that is all that is required to merit discovery.

In sum, Payton Gendron's claim does not rest solely on statistics nor is he making a general request for discovery. *See* ECF No. 300 at 10-11. Rather, he raises a specific and narrow race based selective prosecution claim and has provided credible evidence that supports his claim including: 1) the Attorney General's decision to withdraw death notices against Alexei and Jairo Saenz, Anthony Jordan, and Victor Skates, all of whom were responsible for heinous murders against multiple innocent victims; 2) the Attorney General's recommendation—which was accepted wholesale by the president—that death sentences for all the men on death row, except those of Robert Bowers, Dylann Roof and Dzokhar Tsarnaev, three white men, be commuted; 3) the Attorney General's statements at both his confirmation hearings and after that he had

"serious concerns" about the death penalty's "disparate impact on Black Americans"; and 4) the former Administration's views on race in the criminal legal system. *See* ECF No. 290 at 6-12. [3]

In addition, Payton Gendron has drawn reasonable inferences from the Attorney General and prior administration's statements about the death penalty, as well as the Attorney General's decisions about when to seek the death penalty, withdraw previously filed death notices and which death sentences to commute, and shown that the decision to seek the death penalty against him was influenced by race. This is no "great leap," as the government posits, but rather the result of simple deductive reasoning. And this credible evidence, which the government does not dispute, amounts to much more than "statistical studies or thumbnail sketches of other cases." ECF No. 300 at 10.

### IV.    Conclusion

For the foregoing reasons, and those in his opening Motion, Payton Gendron respectfully requests that the Court grant his request and order the government to produce discovery as requested.

---

[3] Relatedly, any privileges the government believes it may have are accommodated by the *Armstrong/Bass standard*, which requires discovery once the defendant has made a showing of discriminatory intent and effect. *See* ECF No. 300 at 17-21 &n.5. Furthermore, the government may not, as a later date, assert additional privileges. *See* ECF No. 300 at 20 n.5. The Court ordered the government to assert all privileges it believed would bar discovery of the information requested; failure to do so constitutes a waiver. S*ee* DE 267. In both *Armstrong* and *Bass*, the Court drew no distinction between privileged and non-privileged materials. *See Bass*, 536 U.S. at 864 ("Under *Armstrong*, therefore, because respondent failed to submit relevant evidence that similarly situated persons were treated differently, he was not entitled to discovery."). Payton Gendron has not asked for discovery on all the files related to the Attorney General's clemency recommendations, or in all cases where the government chose not to pursue the death penalty or withdrew previously filed death notices. Instead, he has taken a more prudent and narrow approach with his discovery request. The government cannot now invoke executive or deliberative process privilege, or the work product privilege to deny Payton Gendron the discovery he has shown he is entitled to under the *Armstrong/Bass* standard. As an alternative, should the Court have any lingering concerns, Gendron believes that *in camera* review of the discovery before release to him is appropriate.

Dated: March 31, 2025
        Buffalo, New York

_s/Sonya A. Zoghlin_
Sonya A. Zoghlin
Assistant Federal Public Defender

_s/MaryBeth Covert_
MaryBeth Covert
Senior Litigator

_s/Julie Brain_
Julie Brain
Julie Brain, Attorney at Law

_s/Monica Foster_
Monica Foster
Executive Director
Indiana Federal Community Defenders Inc.