UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

　v.

PAYTON GENDRON,

　Defendant.

22-CR-109-LJV
DECISION & ORDER

---

The defendant, Payton Gendron, has moved to dismiss count 27 of the indictment, Docket Item 234, the government has responded, Docket Item 239, and Gendron has replied, Docket Item 256. On March 12, 2025, this Court held oral argument, Docket Item 287, and both sides then filed supplemental briefs addressing a recent district court case, Docket Items 295 and 302.

For the reasons that follow, Gendron's motion is denied.

## BACKGROUND

Count 27 charges a violation of 18 U.S.C. § 249(a)(1), which prohibits "willfully . . . through the use of . . . a firearm . . . attempt[ing] to cause bodily injury to any person[] because of the actual or perceived race, color, religion, or national origin of any person." More specifically, count 27 alleges that:

> On or about May 14, 2022, in the Western District of New York, the defendant, . . . GENDRON, through the use of a firearm attempted to cause bodily injury to Black people, other than the victims identified in [c]ounts [1] through [10] and [21], in and around the Tops grocery store, located at 1275 Jefferson Avenue, Buffalo, New York 14208, because of their actual and

perceived race and color.  The offense included an attempt to kill Black people in and around Tops.[1]

Docket Item 6 at 7 (bold omitted).[2]

This Court previously ordered the government to provide a bill of particulars and an informational outline.  Docket Items 197 and 198.  As to count 27, the Court ordered the government to specify and provide particulars about "the Black people whom Gendron attempted to willfully injure" and "the persons (among the Black people 'in and around Tops,' as stated in the indictment) whom Gendron attempted to kill."  Docket Item 198 at 9, 11.

The government filed its bill of particulars and informational outline in September 2024.  See Docket Items 209 and 210.  In the bill of particulars, the government maintained that Gendron "was attempting to kill all Black people in the Tops' vicinity at the time of his mass shooting, and he took several substantial steps in his attempt to achieve his goal."  Docket Item 209 at 8.  Although it argued that it "need [not] prove that [Gendron] was targeting any specific Black person," the government noted that "there were approximately 69 people (not including the victims who[m Gendron] murdered) in and around Tops, the majority of whom were Black."  Id. at 7.  In its informational outline, the government identified those 69 people by first and last name.  Docket Item 210 at 4-5.

More specifically, the informational outline identified three "surviving victims . . . who were shot by the defendant during the attack," as well as 66 others who "were

---

[1] Counts 1 through 10 identify ten Black victims who were killed, and count 21 identifies one Black victim who was shot but survived.  Docket Item 6 at 2-3, 21.

[2] Page numbers in docket citations refer to ECF pagination.

2

present, either in front of or inside the store, at the time of the attack." *Id.* The three surviving victims were not included among the intended victims in count 27, as that count expressly excluded "the victim[] identified in [c]ount[] . . . [21]," a Black person who was one of those victims, and the indictment identified the two other surviving victims as white. Docket Item 6 at 2, 5, 7; Docket Item 210 at 20. Therefore, the potential universe of intended victims in count 27 are the remaining 66 people who were in front of or inside the Tops market, Docket Item 210 at 4-5, all of whom the government identified by name but some of whom may not be Black.[3]

About two months after he received the bill of particulars and informational outline, Gendron moved to dismiss count 27 because that count "fails to include an essential element of the offense charged, namely the identity of the intended victim." Docket Item 234 at 1. He cites the Fifth, Sixth, and Eighth Amendments, the requirements of which he says are "embodied" in Federal Rule of Criminal Procedure 7. *See* Docket Item 234 at 2. In the alternative, Gendron suggests that if count 27 sufficiently identifies the intended victims, it is duplicitous. *Id.* at 5 n.1.

## DISCUSSION

### I. SUFFICIENCY OF THE INDICTMENT

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the

---

[3] At oral argument, the government said that it "identif[ied] in the bill of particulars that . . . 69 [B]lack individuals . . . were in and around Tops on [May 14, 2022]." Docket Item 288 at 13. But the bill of particulars says only that the "majority" of those individuals were Black. Docket Item 209 at 7.

3

offense charged." "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (quoting *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000)).

"An indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *Id.* at 162. "When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, [the Second Circuit] has 'repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity.'" *Stringer*, 730 F.3d at 124 (alteration omitted) (quoting *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999)). Therefore, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).

### A. First Requirement: Elements of the Offense and Notice

An indictment's "primary" purpose is "to inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767 (1962); *see also United States v. Simmons*, 96 U.S. 360, 362 (1877) (explaining that an indictment must inform the defendant, "with reasonable certainty, of the nature of the accusation against

him"); *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) ("A criminal defendant is entitled to an indictment that states the essential elements of the charge against him."). The concerns behind this requirement are at least twofold: giving a defendant enough information to prepare his defense, *see Simmons*, 96 U.S. at 362, and preventing the government from "roam[ing] at large[ and] shift[ing] its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal," *Russell*, 369 U.S. at 768.

Gendron argues that count 27 is missing "an essential element of the offense charged" because it does not include "the identity of the intended victim." Docket Item 234 at 1. Because section 249 is a "substantive offense requiring a mens rea of intent to cause harm to a particular individual," Gendron says, the indictment must include the identity of each particular individual. *Id.* at 3; *see* Docket Item 256 at 1. The government responds that count 27 "clearly delineate[s] a discrete class of victims: the Black people who were present in and around Tops during [Gendron]'s mass shooting," so there is no ambiguity about the intended victims' identities.[4] Docket Item 239 at 8. And the government notes that it has made the "identities of [those in the class of victims] available in . . . discovery." *Id.* at 9.

The arguments made by both sides beg the question: What does it mean to "identify" an intended victim in this context? It could mean, for example, that the indictment must list the first and last name of every intended victim. Or it could mean that the indictment must give enough detail to discern the identity of each intended

---

[4] The government also argues that because count 27 alleges an attempt, "the identity of a victim cannot be an essential element of the indictment." Docket Item 239 at 10-11. Because this Court concludes that the indictment sufficiently identifies the intended victims, *see infra*, the Court need not and does not reach this argument.

victim "with reasonable certainty."  See *Simmons*, 96 U.S. at 362.  For the reasons explained below, this Court holds that it means the latter.

Gendron concedes that listing an intended victim "by name" is not always necessary.  See Docket Item 256 at 4; *see, e.g.*, *Stringer*, 730 F.3d at 127; *United States v. John-Baptiste*, 747 F.3d 186, 195-96 (3d Cir. 2014); *United States v. Morlan*, 756 F.2d 1442, 1445-46 (9th Cir. 1985).  And this Court agrees with Gendron that "[t]here are multiple ways in which an indictment can identify an intended victim without using the person's name, including by [using] initials, as was done in this case with regards to the surviving victims."  See Docket Item 256 at 4 (citing Docket Item 6 at 6-7); *see also id.* at 10, 12.  Names also are not essential because other details in the indictment—and sometimes in discovery—can help identity the intended victim or victims with sufficient particularity.

For example, in *Lewis v. Weiss*, 2016 WL 1718251 (S.D.N.Y. Apr. 27, 2016), which Gendron cites, Docket Item 256 at 5, the court found that a criminal complaint adequately identified the alleged victim of a threat to kill a federal judge notwithstanding the omission of that judge's name.[5]  *Lewis*, 2016 WL 1718251 at *6.  The court noted that the complaint provided the judge's title, the name of the district court, the fact that the judge had closed a civil lawsuit brought by the defendant, and particulars about the alleged threats.  *Id.*  Those details provided the identity of the victim with sufficient particularity.[6]

---

[5] *Lewis* was a civil case in which the plaintiff raised Fourth Amendment claims related to criminal proceedings against her.  2016 WL 1718251 at *5-6.

[6] Gendron also argues that the Sand jury instructions for section 249 help to demonstrate that the indictment must identify a "particular person" as the victim.  Docket Item 234 at 4-5.  Those instructions require the government to "prove beyond a

6

Again, Gendron's contention is not that indictments must always name the victims but that in this case, unlike *Lewis*, the indictment was insufficiently detailed to identify the alleged victims.  This Court disagrees.  Count 27 identifies the intended victims as those Black people who were "in and around the Tops grocery store . . . at 1275 Jefferson Avenue, Buffalo, New York," on May 14, 2022.  Docket Item 6 at 7.  And the indictment details the means by which Gendron allegedly committed the offense, including driving to Tops, wearing body armor, "carrying a loaded Bushmaster XM-15 .223 caliber rifle and multiple loaded magazines," and "sho[oting]" people in front of and inside the grocery store.  *Id.* at ¶¶ 1-4.  So the indictment refers to a discrete group of people in a particular location, on a particular date, and at the particular time when Gendron allegedly arrived and began shooting.  *See generally id.*

Gendron cites *United States v. Agone*, 302 F. Supp. 1258 (S.D.N.Y. 1969), and *United States v. Solovey*, 2005 WL 1279228 (W.D.N.Y. May 31, 2005), *report and recommendation adopted in substantial part*, Case No. 04-cr-244, Docket Item 41 (W.D.N.Y. July 29, 2005), two decisions that found indictments to have been insufficient.  But those cases were far different.  In *Agone*, for example, the indictment alleged that the defendant intimidated an unidentified member of a union on a particular day "in the Southern District of New York."  *Agone*, 302 F. Supp. at 1258.  The

---

reasonable doubt" that the defendant "attempted to cause bodily injury to [name of victim]."  Leonard B. Sand et al., *1 Modern Federal Jury Instructions-Criminal*, ¶ 17.06, Instr. 17-39 (2025).  But the Sand jury instructions for the crime at issue in *Lewis* feature the same key "name of victim" component.  *See id.* at ¶ 14.02, Instr. 14-13 (requiring the government to "prove . . . beyond a reasonable doubt" that "the defendant threatened to assault, kidnap, or murder [name of victim]").  In any event, the language and context of the indictment, not the model jury instructions, determine whether an indictment sufficiently identifies the victim.

7

government agreed to reveal the victim's name but "requested . . . that the delivery of this information be delayed until two weeks before the trial." *Id.* at 1260-61.  The government said that it needed to conceal the victim's name until then because "'a number of people' . . . might answer that description" of being a union member that the defendant intimidated.  *Id.* at 1261.  In other words, even the government contended that the defendant was—or at least might be—in the dark about the victim's identity. *Agone* therefore highlighted the concerns of insufficient notice and the government roaming at large.  *See id.* (stating that indictment, by "fail[ing] to say who among a substantial number of possibilities is supposed to have been the target of the alleged crime[,] . . . left the prosecution free to fill in this vital missing element").

Likewise, the indictment in *Solovey* left the identity of the victim uncertain.  *See* 2005 WL 1279228.  That indictment included two witness tampering counts that spanned a 16-month period, took place somewhere "in the Western District of New York," and involved victims identified only as "persons known to the Grand Jury."  *Id.* at *1.  One count charged a crime an element of which required that the witness tampering involve an "official proceeding," but the indictment also failed to identify any such proceeding.[7]  *United States v. Solovey*, Case No. 04-cr-244, Docket Item 41 at 4-6.

---

[7] In its order adopting the report and recommendation "in substantial part," the *Solovey* court noted one "reservation."  Case No. 04-cr-244, Docket Item 41 at 6-7. More specifically, while the report and recommendation said that the government's "supply[ing] this essential information [about the victim's identity] by way of a bill of particulars or other form of disclosure . . . [would] not cure the defect in the indictment," *Solovey*, 2005 WL 1279228 at *4, the district court "decline[d] to opine" on that issue because the defendant had not moved for a bill of particulars and the government had not provided the information through informal discovery, *United States v. Solovey*, Case No. 04-cr-244, Docket Item 41 at 6-7.  Therefore, *Solovey* speaks only to the sufficiency of an indictment "standing alone."  *Id.* at 7.

In contrast, Gendron's indictment provides the exact date, location, and incident at issue—a shooting in front of and inside the Tops grocery store on May 14, 2022. *See* Docket Item 6. And instead of seeking to prove that one person or a subset of the Black people present were intended victims, which might have allowed the government to "roam at large," the government seeks to prove that Gendron intended to injure them "all." *See* Docket Item 209 at 8. Furthermore, and unlike the defendant in *Agone*, Gendron has been given the intended victims' names well in advance of trial.

In addition to the indictment's specificity, the discovery provided to Gendron—including the bill of particulars and the informational outline, provided about a year before the current trial date—removes any lingering uncertainty. "[D]iscovery cannot save a defective indictment but[] 'where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether' the constitutional requirements have been met."[8] *Stringer*, 730 F.3d at 124-25 (quoting *Walsh*, 194 F.3d at 45). And as the Second Circuit held in *Stringer*, an indictment may be sufficient even if "an essential element" is missing when the government provides the requisite information with enough notice to allow the defendant to prepare for trial. *Id.* at 126.

---

[8] Gendron cites the Supreme Court's 1962 decision in *Russell*, 369 U.S. at 770, which warned that "a bill of particulars cannot save an invalid indictment." *See* Docket Item 256 at 2. But the Second Circuit has instructed that *Russell* "must be seen . . . not as a broad requirement applicable to all criminal charges that the indictment specify how each essential element is met" but "as addressed to the special nature of [the charge at issue in *Russell*,] a charge of refusal to answer questions in a congressional inquiry." *Stringer*, 730 F.3d at 125-26. And *Stringer* permits courts to "look to the record as a whole" so long as the indictment is "minimally sufficient." *Id.* at 124-25 (quoting *Walsh*, 194 F.3d at 45).

9

The defendant in *Stringer* contended that his indictment was "constitutionally deficient for failure to name or sufficiently identify the person or persons whose means of identification he used in [a] bank fraud scheme." *Id.* at 121.  The Second Circuit noted that the indictment itself provided "substantial . . . detail as to the means by which [the defendant] committed the offense," specifying that the bank fraud involved creating counterfeit checks drawn on an account in a Manhattan bank and depositing them into accounts in a Florida bank. *Id.* at 124.  In addition, the court acknowledged the government's "disclosures that included the victims' names, well in advance of trial." *Id.*  Although the name of the victim was "of course an essential element of the charge" and "unquestionably important," it did not fall into the "narrow category" of information "of such importance to the fairness of the proceeding that it must be spelled out in the indictment." *Id.* at 126-27.  The Second Circuit "conclude[d] that, notwithstanding the failure of [the] indictment to name the persons whose means of identification were used in the commission of bank fraud, the indictment was constitutionally adequate." *Id.* at 127.

For the reasons explained above, Gendron's indictment is at least "minimally sufficient," so this Court may look beyond it.  And as in *Stringer*, well in advance of trial, the government has provided substantial information about the events of May 14, 2022, *see* Docket Items 209 and 210, and has specified its theory—that Gendron "was attempting to kill *all* Black people in the Tops' vicinity at the time of his mass shooting," Docket Item 209 at 8 (emphasis added).  What is more, the government has identified by first and last name the 66 people who "were present, either in front of or inside the store, at the time of the attack." Docket Item 210 at 4-5.

10

In sum, the indictment "contains the elements of the offense charged and fairly informs [Gendron] of the charge against which he must defend." *See Stringer*, 730 F.3d at 124. And together with the government's other disclosures, it provides sufficient detail to identify the alleged intended victims in count 27. *See id.* Gendron therefore has been given sufficient notice of the charge in count 27.

### B. Second Requirement: Protection Against Double Jeopardy

"An indictment must sufficiently inform the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events." *De La Pava,* 268 F.3d at 162.

Gendron argues that "a conviction on [count 27] would prove an ineffectual bar to a subsequent prosecution for the same conduct because the government could later claim the new charge relates to a victim not included in the original count." Docket Item 234 at 6. The government concedes in its response that count 27 covers "every Black individual in and around Tops at the time of the . . . mass shooting" and that it therefore "will be barred from any future prosecution involving [Gendron's] attempt to shoot *any* member of that class." Docket Item 239 at 7. And at oral argument, defense counsel agreed that their motion "is[ not] based on double jeopardy . . . [but is] based on the statutory language and the interpretation of that language." Docket Item 288 at 11. Nevertheless, Gendron's motion papers raised the issue of double jeopardy, so the Court therefore addresses the merits of that argument.

There is no risk of double jeopardy. In fact, a broadly worded indictment like the one at issue even better protects the defendant from future prosecution and can be a "virtue" for double jeopardy purposes. *See, e.g.*, *Morlan*, 756 F.2d at 1446 (explaining

11

that an indictment broadly identifying the victims as "'the employees' and 'a [bank] teller[]' . . . precluded the possibility of future trials for assaulting any particular tellers or employees"). And "[p]rinciples of equity" will "prohibit the government from benefitting from [any] prejudicial ambiguity" that it created in its indictment. *See United States v. Sturdivant*, 244 F.3d 71, 77 (2d Cir. 2001). So the government is correct that it will be barred from any future prosecution involving Gendron's attempt to shoot any Black person in and around Tops on May 14, 2022. The indictment therefore meets the second requirement because it "enables [Gendron] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See Stringer*, 730 F.3d at 124 (quoting *Hamling*, 418 U.S. at 117).

## II. DUPLICITY

Gendron says in a footnote of his motion that if the indictment "[w]ere . . . to allege attempts to injure multiple, identified victims, the count would fail for impermissible duplicity." Docket Item 234 at 5 n.1 (emphasis omitted). The government responds that Gendron "has not shown the required prejudice from any alleged duplicity," Docket Item 239 at 11 n.8, a point that Gendron does not address in his reply, *see generally* Docket Item 256.[9] At oral argument, Gendron reiterated that "[count 27

---

[9] Gendron's only reference to duplicity in his reply is the assertion that if the government had charged the ten counts of hate crimes resulting in death in a single count, "that . . . would obviously have been impermissibly duplicitous" and that the government's charging decisions for those charges and count 27 "cannot both be right." Docket Item 256 at 4. That argument does not relate to prejudice. And that argument fails on the merits because the Second Circuit "ha[s] declined to accept . . . 'that any acts capable of being charged as separate offenses must be alleged in separate counts.'" *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992) (quoting *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981)). Therefore, the government's charging decisions as to count 27 and the ten death counts indeed can both be right.

is] not duplicitous because it doesn't state an offense.  If it did state an offense, it would be duplicitous."  Docket Item 288 at 22-23.

"An indictment is duplicitous if it joins two or more distinct crimes in a single count."  *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).  But "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme."  *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989).  And "[a] defendant must demonstrate prejudice in order to invoke [the] duplicity doctrine because the doctrine is 'more than an exercise of mere formalism.'"  *Sturdivant*, 244 F.3d at 75 (quoting *United States v. Murray*, 618 F.2d 892, 897 (2d Cir.1980)).  The Second Circuit further stated,

> [t]he relevant policy considerations guiding a court's determination of whether a defendant was actually prejudiced by a duplicitous indictment include: 'avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.'

*Id.* (quoting *Margiotta*, 646 F.2d at 733).

Gendron summarily states that count 27, if it states an offense, is duplicitous.  *See* Docket Item 288 at 22-23; Docket Item 234 at 5 n.1.  But he does not say which of the relevant policy considerations favor a finding of duplicity.  As this Court has already explained, *see supra* Section I, the notice and double jeopardy issues are not implicated.  Furthermore, because the government's theory, as presented in its bill of particulars, is not that Gendron was trying to kill *some* Black people but that he "was attempting to kill *all* Black people in the Tops' vicinity at the time of his mass shooting,"

13

*see* Docket Item 209 at 8 (emphasis added), the uncertainty and unanimity concerns do not appear to be implicated.[10]

Gendron's repeated but conclusory statements that count 27 is duplicitous therefore fall short of demonstrating duplicity.

## **CONCLUSION**

For the reasons stated above, the motion to dismiss count 27 is DENIED.

SO ORDERED.

Dated:   May 12, 2025
         Buffalo, New York

                                                   /s/ Lawrence J. Vilardo
                                                  LAWRENCE J. VILARDO
                                                  UNITED STATES DISTRICT JUDGE

---

[10] Gendron suggests that he may try to prove that he did not attempt to kill certain Black people at Tops who "were never in [his] field of vision" and who he says that he therefore "could not have specifically intended to injure." Docket Item 234 at 6. He complains that the government could "defeat[]" this defense "by simply shifting the identity of the intended target." *Id.* The government responds that given its theory of guilt, this "is not a viable defense." Docket Item 239 at 9 n.6. This Court need not and does not opine on whether Gendron's theory is a viable defense at this stage. But if Gendron is correct and it is a viable defense, evidence that Gendron did *not* attempt to kill one or more Black people at the Tops would seem to contradict the government's stated theory that Gendron "was attempting to kill *all* Black people in the Tops' vicinity," *see* Docket Item 209 at 8 (emphasis added). Put differently, if Gendron could prove his suggested defense, that would mean that he did not do what the government alleges in count 27—try to kill *all* Black people in the vicinity—and the government could not "defeat[]" his defense by "shifting the identity of the intended target." *See* Docket Item 234 at 6.