UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

PAYTON GENDRON,

Defendant.

22-CR-109 (LJV)
Redacted Version of ECF No. 376

**MOTION TO SUPPRESS EVIDENCE SEIZED FROM FACEBOOK ACCOUNT**

Payton Gendron, by and through his attorneys, pursuant to the Fourth Amendment to the United States Constitution and Fed. R. Crim. P. 41, respectfully submits this Motion to Suppress Evidence Seized from Facebook Account. Payton Gendron moves to suppress all evidence seized from the Facebook account [redacted], directed to Meta Platforms, Inc. (the "Facebook warrant"). The Facebook warrant was deficient for two reasons. First, the warrant application was predicated on information that was illegally obtained through an Emergency Disclosure Request ("EDR") that was submitted to Facebook hours after any conceivable emergency had ended. Second, absent that illegally obtained information, the warrant failed to establish probable cause that evidence of the shooting at the Tops Market on May 14, 2022, in violation of the Hate Crimes Prevention Act, 18 U.S.C. § 249, and 18 U.S.C. § 924(c)(1)(A)(iii) and 924(j)(1), would be found anywhere in records associated with the Facebook account.

**FACTUAL BACKGROUND**

[redacted][1] [redacted]

[redacted]

[redacted]

---

[1] [redacted] The request and all fruits thereof should, therefore, be suppressed on this ground also. *See* ECF No. 324 at 21:9-22:15.

will lead to evidence of violations of Title 18, United States Code, Section 249 (hate crimes act) and Title 18, United States Code, Section 924(c)(1)(A)(iii) and 924(j)(1) (discharge of a firearms causing death in furtherance of a crime of violence." *Id*.

[redacted]

[redacted]

[redacted]

## ARGUMENT

### I. The Court Should Suppress Evidence Recovered from Payton Gendron's Facebook Account Because There is an Insufficient Nexus Between the Account and the Alleged Criminal Activity.

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and requires that warrants must be supported by "probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Probable cause determinations require "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the reviewing magistrate judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The determination of whether probable cause exists is based on the facts set forth in the four corners of law enforcement's sworn affidavit, and "wholly conclusory statement[s]" do not suffice. *Id.* at 239.

"The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police offers unbridled

discretion to rummage at will among a person's private effects"). Both the Supreme Court and the Second Circuit have repeatedly warned about the need to enforce the nexus requirement—*i.e.* the connection between the place to be searched and the evidence investigators believe is likely to be found there—in the context of searches and seizures of digital evidence given the significant risk of unlawful intrusion into the most sensitive aspects of a person's life.

> Many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . [A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Riley v. California*, 573 U.S. 373, 395-97 (2014) (emphasis in original); *see also United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) ("A general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] contain.'") (quoting *Galpin*, 720 F.3d at 446) (alteration in original). The same is true in the context of social media accounts. For example, in *United States v. Shipp*, the court held that the threat of intrusion into one's privacy is "further elevated in a search of Facebook data because, perhaps more than any other location—including a residence, a computer hard drive, or a car—Facebook provides a single window through which almost every detail of a person's life is visible." 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019).

Probable cause is both location specific and crime specific: a magistrate judge may not approve a warrant unless there is a "nexus between the items sought and the 'particular place' to be searched." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting U.S. Const., amend. IV). Additionally, there must be a sufficient nexus between the criminal activities alleged and the

location or items to be searched. *Id.*; *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) ("The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity."); *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020) ("The affidavit thus must demonstrate cause to believe not only that an item of evidence is likely to be found at the place to be searched, but also that there is a nexus between the item to be seized and the criminal behavior under investigation.") (quoting *Griffith*, 867 F.3d at 1271) (brackets omitted); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). This requirement "protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Clark*, 638 F.3d at 94 (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). The nexus requirement ensures that, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched" and there must be a "nexus . . . between the item to be seized and criminal behavior." *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)); *Warden, Md. Penitentiary*, 387 U.S. at 307. Consistent with this requirement, probable cause requires more than speculation or hunches. *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023).

The nexus requirement is particularly important in the context of search warrants for digital devices and information. *See Galpin*, 720 F.3d at 446. The combination of the often-personal nature of digital evidence, combined with the vast storage capacity of digital devices, compound the potential for privacy violations. *Id.* at 446-47; *Lauria*, 70 F.4th at 128-29. The nexus requirement protects against that potential by requiring case-specific reasons to believe that evidence of the crime(s) under investigation is likely to be found before digital evidence

may be searched and seized. *See United States v. Silva*, No. 23 Cr. 204 (PGG), 2024 WL 3488305, at *6 (S.D.N.Y. July 19, 2024) ("What is missing here is some 'case-specific evidence' that 'nudge[s] [Det. Boyer's] training and experience across the line from sheer speculation to probable cause'") (quoting *United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023)).

Courts routinely hold that a law enforcement officer's training and experience cannot, on its own, create the required nexus in the absence of case-specific reasons to believe that evidence of the crime under investigation will be found in the place to be searched. *Id.*; *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *7 (D. Conn. July 28, 2023) ("the officer's opinion, standing alone, is generally not sufficient to establish a link between the item to be searched and the alleged criminal activity") (quotation omitted); *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (holding that while an agent's specialized knowledge can be considered, it cannot alone establish probable cause without specific evidence connecting illegal activity to the place searched); *State v. Thein*, 138 Wash. 2d 133, 147–48 (1999) (rejecting generalizations that drug dealers often store drugs at home as insufficient for probable cause); *Commonwealth v. Broom*, 52 N.E.3d 81, 89 (Mass. 2016) (requiring a "substantial, particularized basis" connecting phone files to the crime under investigation).

Here, the affidavit of SA Dlugokinski submitted in support of the application for the Facebook search warrant contained sufficient facts to establish probable cause to believe that a racially motivated mass shooting resulting in the deaths of 10 people was committed on May 14, 2022, and that Payton Gendron was the person who committed it. However, the affidavit failed to establish probable cause to believe that evidence of the crime would be found in Payton

Gendron's Facebook account because the only basis for probable cause came from illegally obtained information.

### A. The Facebook Warrant was Predicated on Illegally Obtained Information.

The Stored Communications Act ("SCA") governs the voluntary and compelled disclosure of electronic information by third party internet service providers ("ISP") like Snapchat. The SCA prohibits an ISP from disclosing its customers' communications or records to governmental entities. 18 U.S.C. § 2702(a). In turn, the SCA confers upon account holders a statutory right of privacy in the nondisclosure of information held by ISPs:

> The SCA gives network account holders statutory privacy rights against access to stored information held by ISPs. The statute also creates Fourth Amendment-like privacy protections regulating the methods by which government investigators may obtain users' private information in a service provider's possession. First the SCA limits the government's ability to compel service providers to disclose information in their possession about their subscribers. *See* 18 U.S.C. § 2703. Second, it limits the service provider's ability to voluntarily disclose information about their subscribers to the government. *See id.* § 2702.

*In re United States*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009). One exception to those privacy rights, and the general prohibition against disclosure of account-holder information, however, is for emergency situations "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay." 18 U.S.C. § 2702(b)-(c).

[redacted]. By that time, however, neither law enforcement nor Facebook had any basis to believe there was an ongoing emergency involving "danger of death or serious physical injury." *Id.* Payton Gendron was in custody, and there was no evidence to suggest that any additional suspects created any ongoing danger. Indeed, similar EDR requests submitted by law enforcement to Twitter and Twitch were rejected for precisely that reason. Accordingly, investigators' EDR to Facebook, and

Facebook's subsequent return of information, violated the SCA and Payton Gendron's statutory rights in the nondisclosure of that information.

The Second Circuit has held that when a warrant application contains illegally obtained evidence, the reviewing court should "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Reilly*, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996); *see also United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).

[redacted] But the reviewing magistrate judge never should have been able to consider that information because it was obtained in violation of the SCA.

Accordingly, upon review, this Court should excise that illegally obtained evidence and assess whether the remaining "untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Reilly*, 76 F.3d at 1282 n.2.

**B. <u>SA Dlugokinski's Affidavit Otherwise Fails to Link Payton Gendron's Facebook Account to the Alleged Criminal Activity.</u>**

Aside from the illegally obtained information that Payton Gendron had a Facebook account and the details provided in the EDR response, the application has absolutely no fact-based assertions tying the Facebook account to the shooting.

All that remains after the information is excised is SA Dlugokinski's generalized assertion about the social media habits of persons who engage in hate crimes and white supremacist ideology. Such a claim based on training and experience does not make up for the affidavit's failure to present case-specific facts that establish probable cause to believe Payton Gendron's Facebook account would contain evidence of the crimes under investigation. "[A]t bottom the[se] are merely 'blanket generalizations about how people who commit crimes act,' which are 'not sufficient' to establish probable cause." *Silva*, 2024 WL 3488305, at *7.

WHEREFORE, for the foregoing reasons, Defendant, Payton Gendron, respectfully requests that this Motion be granted and that all information recovered from his Facebook account through the invalid EDR, and all fruits thereof be suppressed.

Dated: June 9, 2025
Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law