IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                  22-CR-109-V

PAYTON GENDRON,

                    Defendant.

---

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S REQUEST FOR APPOINTMENT OF COUNSEL AND TO ADJOURN TRIAL DATE

The United States of America, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Mac Warner, Deputy Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi, Brett A. Harvey, Caitlin M. Higgins, and Maeve E. Huggins, Assistant United States Attorneys, Sanjay Patel, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Department of Justice Capital Case Section, of counsel, respectfully submits this response in opposition to defendant's motion for appointment of counsel and to adjourn the trial date (*see* Docket No. 395).

## PRELIMINARY STATEMENT

The right to be represented by counsel of choice can be limited by mundane case-management considerations. If a trial judge schedules a trial to begin on a particular date and defendant's counsel of choice is already committed for other trials until some time thereafter, the trial judge has discretion under appropriate circumstances to refuse to postpone the trial date and thereby, in effect, to force the defendant to forgo counsel of choice. These limitations on the right to counsel of choice are tolerable *because the focus of the right is the quality of the representation that the defendant receives, not the identity of the attorney who provides the representation*. Limiting a defendant to

1

> those attorneys who are willing, available, and eligible to
> represent the defendant still leaves a defendant with a pool of
> attorneys to choose from—and, in most jurisdictions today, a
> large and diverse pool.  Thus, these restrictions generally have
> no adverse effect on a defendant's ability to secure the best
> assistance that the defendant's circumstances permit.

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 155, 126 S.Ct. 2557, 2567–68 (2006) (Alito, J., dissenting) (emphasis added and internal citation omitted).

The Constitution entitles this and every other defendant to certain rights.  It does not, however, entitle them to everything they may want.  The Constitution entitles defendants to effective assistance of counsel.  It does not, however, entitle indigent defendants to counsel of their choice.  The Constitution entitles this defendant to competent counsel who is qualified pursuant 18 U.S.C. § 3005 and the Western District of New York Criminal Justice Act ("CJA") Plan.  It does not, however, entitle him to the appointment of Theresa M. Duncan, Esq., which will delay this case indefinitely.

## FACTUAL BACKGROUND

On May 14, 2022, on a sunny hot day in Western New York, the defendant livestreamed himself killing and injuring innocent men and women based on their skin color.  On or about the same day, Magistrate Judge Schroeder appointed the defendant counsel prospectively anticipating federal charges.  *See* Docket No. 5 at 11.  Specifically, Judge Schroeder stated "[a]nd that is where I was compelled, upon consent, as well as upon request, to appoint what is called learned counsel, as defined in the act."  *Id.*  Judge Schroeder further held that he was "advised and determined that two members of the Federal Public Defenders office, namely Ms. Anne Burger . . . and Ms. Sonya Zoghlin . . . have been qualified as learned counsel."  *Id.*  In addition to Ms. Burger and Ms. Zoghlin,

Judge Schroeder also appointed Ms. Covert to "serve in the function of assistant counsel to those two learned counsel." *Id.* at 11-12. Even before this defendant was charged federally, he had three court-appointed attorneys—two of which qualified learned counsel—representing him.

On January 12, 2024, after the government filed notice that it would seek the death penalty, the parties appeared for a status conference. *See* Docket Nos. 125-26. During the status conference, the government stated:

> [I]t's my understanding that in these cases, typically attorneys get added to the defense team […]. We would ask that if that is going to happen, that it happen expeditiously so that it doesn't build delay later on in the case, because you inject new attorneys and they need to get up to speed. So I just wanted to flag that.

*See* Docket 127 at 6. In response, counsel for the defendant stated, "I respectfully suggest that the defense team will organize ourselves as we see appropriate." *Id.* at 6. And they have.

On February 2, 2024, this Court appointed a third learned counsel, Julie Brain, Esq., to the defense team. Ms. Brain is a staff attorney with the Federal Capital Trial Project, has extensive experience in federal capital cases, and currently maintains a private practice consisting of direct representation and consulting in state and federal capital trial and post-conviction cases." *See* https://fdprc.capdefnet.org/project-staff/julie-brain. On the same day, the Court set a trial date in September 2025 over the defense's objection. *See* Docket No. 154 at 48. Over eight months later, on October 24, 2024, Monica Foster, Esq.,

entered a notice of appearance as the fourth qualified learned counsel.[1]  *See* Docket No.
232.

On November 29, 2024, after years of resisting scheduling orders and trial dates,[2]
the defense unleashed their concerted efforts to adjourn the trial date.  *See* Docket Nos.
246, 303, 304, 320, 334.  They used the volume of discovery, the need for further
investigation, and even the anniversary of the defendant's heinous crime as reason to
adjourn.  During an April 10, 2025 status conference, the Court, recognizing the interests
of all parties, stated:

> This case has been pending for quite some time, and we've
> been setting schedules that I -- I have been deferring to the
> defense in lots of ways in setting the schedule.  But all things
> must come to an end, including the time for trial preparation
> in this case.  So while I am willing -- I'm not setting the date
> in stone today, and I am willing to accept reasonable tinkers
> from both sides, that's where we're going to be.

*See* Docket No. 324 at 34.

In the beginning of May, the defense alerted the Court and the government that Ms.
Foster needed to withdraw from the case due to serious health reasons.  *See* Docket No.
347.  The defense contended Ms. Foster's withdrawal necessitated adjourning the trial date.
In response, the government asserted that:

> [It did not] oppose an additional attorney being assigned to
> Gendron's defense team to replace Ms. Foster, and there is
> enough time for the defense to identify and add another
> attorney before trial.  However, even if the defense does not
> replace Ms. Foster, the experience and ability of the other
> learned counsel and attorneys comprising Gendron's capital
> defense team are more than sufficient to provide

---

[1] The government previously argued that Ms. Foster's withdrawal as counsel should not warrant
extensive delay, and we incorporate these arguments by reference.  *See* Docket No. 365.
[2] The government addressed this pattern in its response to the defendant's motion to adjourn the
trial date.  *See* Docket No. 316.

> constitutionally effective assistance of counsel, and for trial to
> begin as scheduled.

Docket No. 365 at 7.

Furthermore, on May 21, 2025, the Court held a status conference during which defense counsel stated that she "[thought] it would be helpful to know that the Court is quite flexible on the January start date, because it's difficult to get any lawyer -- like, as I've said, I don't think any lawyer with experience would sign on at this point for a very, very serious trial."  Docket No. 367 at 15.  In response the Court pointedly stated that "[y]eah, I don't know that I'm 'quite flexible,' but I would say that I'm 'flexible.'"  *Id.*  The Court then explained that "'flexibility' does not mean we're gonna put this off for a significant period of time.  But I --I am considering moving that a bit."  *Id.* at 16.  The government agreed that "some flexibility" may be appropriate and recognized that the Court would strike the appropriate balance in setting the trial date.  *Id.* at 18.  Finally, the Court instructed the defense that they could "tell whatever lawyer that you talk to that there's some flexibility . . . but not a lot.  Not a lot."  *Id.* at 21.

On June 17, 2025, the Court reiterated this sentiment when it told the defense "[a]nd as I said last time, I'm inclined to give the defense a bit more time than we were talking about because of the loss of a key person to the defense team, but it's not gonna be a lot more time."  *See* Docket No. 387 at 77.  The defense asked the Court to hold off on setting a trial date until they filed their motion for appointment of additional counsel.

On June 20, 2025, after repeated admonishments from the Court that it would not consider a substantial adjournment to the trial date, the defendant filed an *ex parte* submission requesting the Court to appoint Theresa M. Duncan, Esq., as learned counsel and, as a contingency of that request, to set a trial date for in or after August 10, 2026

5

(essentially the same request the defense made in their original motion to adjourn in March 2025). The Court should deny the defendant's appointment request or, in the alternative, grant the request contingent on trial beginning between January and May 2026.

## ARGUMENT

### I. The Court Should Deny the Defendant's Request to Adjourn the Trial Date to August 2026.

The defendant seeks the appointment of Ms. Duncan to replace Ms. Foster and makes this request contingent on the Court setting a trial date on or after August 10, 2026. *See* Docket No. 395 at 13. Because the defendant is not entitled to counsel of his choice, and Ms. Duncan's financial constraints and prior commitments will create unreasonable and unfair delay in the administration of justice in this case, the Court should either deny the defendant's request for the appointment or, in the alternative, grant the defendant's appointment request conditioned on the trial beginning between January and May 2026.

#### A. The Sixth Amendment Right to Counsel

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." For a criminal defendant who can pay for representation, this encompasses the right to choose his or her own legal counsel. *See Wheat v. United States*, 486 U.S. 153, 158–59, 108 S.Ct. 1692 (1988) (recognizing Sixth Amendment right to choose own counsel, but noting that this right is "circumscribed in several respects"). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez–Lopez*, 548 U.S. 151. "The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented

by attorneys appointed by the court." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646 (1989). Indeed, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159.

What is more, even where a defendant enjoys the limited right to counsel of his choice—which this defendant does not—this right must yield at times to the "swift and efficient administration of criminal justice." *Randolph v. Sec'y Pa. Dep't Corr.*, 5 F.4th 362, 375 (3d Cir. 2021). A defendant's right to counsel of his choice "does not include a lawyer whose other commitments preclude compliance with a court's reasonable scheduling of its cases." *United States v. Delia*, 925 F.2d 574, 575 (2nd Cir.1991). "If the attorney is likely to be unavailable for an extended period, or if other factors exist that tip the balance in favor of proceeding in spite of a particular attorney's absence, the defendant's motion for a continuance clearly may be denied." *Morris v. Slappy*, 461 U.S. 1, 25, 103 S.Ct. 1610 (Brennan, J. concurring in the result (joined by Marshall, J). Thus, "'where the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial, the court may require the defendant to secure other counsel.'" *Kleba v. McGinnis*, 796 F.2d 947, 952 (7th Cir.1986) (quoting *United States v. Cicale*, 691 F.2d 95, 106 (2d Cir.1982)); *United States v. Robins*, 673 F. App'x 13, 20 (2d Cir. 2016) ("[B]ecause a district court has a great deal of latitude in scheduling trials [it] need not grant a continuance so that a defendant may be represented by counsel of his choosing, where such a continuance would cause significant delay." (internal quotation marks omitted)); *see also United States v. Brumer*, 528 F.3d 157, 160 (2d Cir. 2008) ("Judges must be vigilant that

requests for appointment of a new attorney . . . should not become a vehicle for achieving delay."). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris,* 461 U.S. at 11, 103 S.Ct. 1610 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841 (1964)); *see also United States v. Scopo*, 861 F.2d 339, 342–44 (2nd Cir.1988) (finding no abuse of discretion and no Sixth Amendment violation in denying a motion to continue).

In a capital case, in addition to the principles above, 18 U.S.C. § 3005 requires courts to "upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases." Likewise, pursuant to 18 U.S.C. § 3006, the Western District of New York Criminal Justice Act Plan ("CJA Plan") governs appointment of counsel in capital cases for indigent defendants. As the defense recognizes, the CJA Plan states that "[a]t the outset of every capital case, the court must appoint two attorneys, at least one of whom meets the qualifications for 'learned counsel' as described below. If necessary for adequate representation, more than two attorneys may be appointed to represent a defendant in a capital case." CJA Plan, Sec. XV.C.1.c. Although the CJA Plan requires the Court to "consider the recommendation of the Federal Public Defender," with respect to appointing counsel, the CJA Plan does not, and cannot, bestow indigent defendants the right to counsel of their choice in capital cases. The CJA Plan, however, ensures that defendants receive competent counsel by, *inter alia*, setting qualifications for appointment of learned counsel. Nothing in the CJA Plan, however, grants an indigent defendant—capital or otherwise—the right to counsel of his choice.

To the contrary, the CJA Plan states that "[t]he suitability of learned counsel should be assessed with respect to the particular demands of the case, the stage of the litigation,

and the defendant." The CJA Plan further contemplates that "[s]econd and additional counsel may, but are not required to, satisfy the qualifications for learned counsel," and—critically—that "[s]econd and additional counsel must be willing and able to adjust other caseload demands to accommodate the extraordinary time required by the capital representation."

### B. The Court Should Deny the Defendant's Appointment Request.

The defense seeks the appointment of Ms. Duncan, even though: (1) "she is unable to commit herself primarily to Payton Gendron's case until CJA payments resume after October 1, 2025"; and (2) she is committed to a non-capital federal trial commencing on April 21, 2026 and will, thus, "be unavailable [from April 21, 2026, through approximately May 19-29, 2026] and "for the preceding several weeks while she is preparing for that trial." *See* Docket No. 395 at 11-12. At bottom, the defendant requests nearly exactly what he did months ago in his motion to adjourn the trial: a trial date beginning with in-person voir dire starting on or *after* August 10, 2026.

It is, however, what the defendant *does not and cannot concede* that should ultimately doom his appointment request. By appointing Ms. Duncan, the defense is essentially usurping the Court's power to set a trial date and holding the trial date hostage indefinitely. Although the defense states that Ms. Duncan's non-capital trial is set for April 21, 2026, that is not a fair representation. As this Court is acutely aware, trial dates are inexorably subject to adjournment for any number of reasons—as illustrated in this case. What happens when Ms. Duncan's April 21, 2026, trial date moves to November 2026? Do we hold the proceedings in this case, torturing the surviving victims and deceased victims' families even more—many of whom are elderly, until Ms. Duncan can complete the trial

in her non-capital federal case?  Do we begin jury selection in 2027, almost five years after this defendant brazenly livestreamed himself storming into a grocery store and executing and injuring innocent people because of their race?  No.  *Cf. Barker v. Wingo*, 407 U.S. 514, 521 (1972) ("Delay is not an uncommon defense tactic.").[3]

Although the Court must consider the Federal Public Defender's recommendation as to appointment of counsel, it is not bound by it.  As the defense admits "[c]ounsel who may be suitable for appointment as counsel or learned counsel in one federal capital prosecution may not be an appropriate choice for another, based on any number of factors including the timing of the trial and other significant events and counsel's other professional obligations at the time that appointment is required."  Docket No. 395 at 3.

Here, because Ms. Duncan's financial and time constraints render her unsuitable for this case, the Court should deny the defendant's request for her appointment.  First, doing so will not deprive the defendant of effective assistance of counsel.  The current defense team has and will continue to provide effective assistance of counsel to this defendant.  The defendant currently has three attorneys, two of whom are qualified learned counsel, and one of whom has extensive experience in federal capital cases.  He has had at least one learned counsel on his team since or about May 14, 2022 and has benefitted from the federal capital experience of Ms. Brain since February 2024.  As it stands now, the defendant has a formidable defense team that exceeds the requirements of the CJA Plan

---

[3] The government previously asserted that this defendant has no incentive to proceed to trial in this case.  *See* Docket No. 316 at 23-24 ("'Where the client is incarcerated with no capital sentence, every day in prison is another day of freedom lost, thus delay runs contrary to what is being sought.' *The Twenty-First Century Death Penalty and Paths Forward*, 37 Miss. C. L. Rev. 80, 90 (2019).  In contrast, '[i]n capital cases, every day is another day of the client's life prolonged, another step toward achieving the prevention of the state from executing the condemned prisoner.' *Id.*").  His concerted efforts to delay the trial since November 2024, including seeking appointment of an attorney who cannot try this case before august 2026, trial underscore this point.

and ensures the defendant will receive effective assistance of counsel. *See* Docket No. 365 at 4-5 ("Preceding Ms. Foster's involvement, Gendron's capital defense team engaged in critical defense work, which included: (i) navigating dual state and federal prosecutions; (ii) presenting death penalty mitigation evidence to the Department of Justice's Capital Review Committee; (iii) filing at least 27 motions, responses, appeals, or memoranda in support of the defendant's various motions (which included, among other things, multiple motions to dismiss based upon constitutional and statutory grounds, challenges to the grand jury proceedings and for disclosure, requests for a bill of particulars and an informational outline, to strike death penalty aggravating factors, to exempt Gendron from capital punishment, etc.); and, (iv) appearing and arguing on behalf of the defendant during at least fifteen court appearances in federal court."). Accordingly, even if the Court denies the defendant's current request for appointment, the defendant will unequivocally receive effective assistance of counsel.[4]

Second, denying the defendant's appointment request comports with Sixth Amendment jurisprudence. Because the defendant does not have a right to counsel of his choice, the Court can and should exercise its discretion to deny an appointment that will cause substantial delay to the fair administration of justice in this case. *Cf. Delia,* 925 F.2d at 575 (even where the right to choice of counsel applies, it "does not include a lawyer whose other commitments preclude compliance with a court's reasonable scheduling of its cases"). The defense contends that they have "tried and failed to find any other workable

---

[4] *See* Docket No. 365 at 5-6 ("Moreover, the defense filings and in-court statements indicate that Gendron's capital attorneys are supported by investigators, at least one mitigation specialist, and multiple mental health experts—in other words since the beginning the defendant has had, and continues to have, a "multi-disciplinary team, guided and overseen by attorneys who, by virtue of experience, understand this specialized endeavor and what it takes.").

alternative that would ensure the provision of constitutionally adequate representation in this case." *See* Docket No. 395 at 13.  The government cannot fully respond to this argument because the defense has redacted the portion of the motion related to their efforts to obtain counsel.  The government, however, questions whether the defense sought counsel from an artificially-small pool of candidates.  For example, it bears noting that the defense team has always been comprised of solely female attorneys.  At the very least, this raises the question: Did the pool of available candidates include lawyers of both sexes?  After all, famed death penalty attorney Judith Clarke is known to infantilize and humanize her clients, such as Boston-bombing defendant Dzhokhar Tsarnaev, as an optical mitigation strategy for the jury.[5]

Furthermore, although the defendant is entitled to "learned counsel," that simply means "learned in the law applicable to capital cases," meaning federal or state.  18 U.S.C. § 3005.  *See* CJA Guidelines – Guide, Vol. 7A, Ch. 6 (defining learned counsel as a lawyer with "distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in state death penalty trials, appeals, or post-conviction review").  Did the defense limit the pool of candidates to lawyers with federal capital experience?

---

[5] "Clarke sat on Tsarnaev's left, and Conrad, an animated woman in her fifties, sat on his right, so that the jurors always saw him flanked by women. They whispered and exchanged little jokes with him, and they touched him—a pat on the back, a squeeze of the arm. This was deliberate: like the Pope stooping to embrace a disfigured pilgrim at St. Peter's, the women were indicating that Tsarnaev was not a leper."  https://www.newyorker.com/magazine/2015/09/14/judy-clarke-defense-lawyer-dzhokhar-tsarnaev.  "Clarke's winning streak ended with an outright rejection of her attempts to humanize Tsarnaev as a man-child influenced by an obsessed older brother."  *See* https://www.cnn.com/2015/05/17/us/tsarnaev-13th-juror-last-word (last visited June 25, 2025); "With her arm around the young man's back, she gives him a gentle pat and leans in to whisper something to him. Judy Clarke could be his mother, with this simple, comforting gesture, but she is not."  *See* https://www.wbur.org/news/2015/02/22/tsarnaev-lawyer-judy-clarke (last visited June 25, 2025).

If the answer to either question is "yes," then there are other "workable alternatives," in the form of other capable attorneys who can meet the CJA requirements that do not include unfairly delaying the trial date in this case.  That the defense team *prefers* Ms. Duncan is of no moment to the Sixth Amendment analysis.  The only question for the Court is whether the defense can obtain counsel consistent with the CJA Plan.  There is nothing particularly complex about this case—either as a factual or legal matter—that would preclude an attorney with state capital experience from representing the defendant.  Indeed, there are many such qualified CJA attorneys in the Western District of New York.

Third, denying the defendant's request for appointment is not an unreasonable or arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay," impeding the defendant's right to counsel.  *Cf. Morris*, 461 U.S. 11-12 (quotation marks omitted).  In fact, under the Speedy Trial paradigm, proceeding to trial after four years would never be deemed expeditious, but rather presumptively prejudicial.[6]  If the Court denies this appointment request, far from violating the defendant's right to counsel, it is exercising its "great deal of latitude in scheduling trials," in the face of a request for a continuance that "would cause significant delay."  *United States v. Johnson*, 861 F. App'x 483, 490 (2d Cir. 2021) (quotation marks omitted).

Put simply, the government does not object to the Court appointing the defendant another attorney, whether it is Ms. Duncan or someone else—but, consistent with the CJA Plan, that attorney's commitments cannot obstruct the fair and efficient administration of justice in this case.

---

[6] The government has argued extensively regarding preserving the right to a speedy trial of all parties involved and incorporates these arguments by reference.  *See* Docket Nos. 316, 365.

II.    **In the Alternative, if the Court Grants the Defendant's Request for Appointment, the Court Should Condition the Appointment on Beginning Trial between January and May 2026**.

Alternatively, if the Court is inclined to grant the defendant's request for appointment, it should do so conditioned on the fact that the trial commence in the Spring of 2026. Although the defense asserts that Ms. Duncan cannot commence work on this case until October 2025 due to the CJA voucher deferral, this argument fails for several reasons. First, government attorneys are subject to pay freezes during shutdowns and are required to continue work. Ms. Duncan undertook this risk when she signed up to be a CJA attorney. Second, the argument assumes that the funding issue will be resolved in October 2025. What happens if it is not? Presumably, the defense will request *another* adjournment on the same grounds, and we will, again, be facing a trial in 2027. Third, commencing work on this case does not constrain Ms. Duncan from working on other cases or taking on paying clients. This is all to say that justice in this case should not be paused indefinitely because Ms. Duncan does not want to begin until October 2025.

If Ms. Duncan begins work on this case immediately, there is no reason we cannot begin trial in January to accommodate her non-capital federal trial date. Ms. Duncan is a highly skilled capital lawyer who can presumably use that experience to assimilate quickly into a case, particularly when she is assisted by three other highly-skilled attorneys.

Furthermore, if the defense truly cannot find a different CJA capital qualified attorney, Ms. Duncan should withdraw from representation in her non-capital case. There, Ms. Duncan's client will continue to receive effective assistance of counsel because he has another lawyer who was appointed learned counsel. That case may be "complex," but it is not a death-penalty case. Indeed, Ms. Duncan has withdrawn from at least one other

14

case after the government filed a notice of intent not to seek the death penalty because the defendant was also represented by "diligent, competent and qualified counsel from the Federal Public Defender," and her "services were no longer required." *See* Docket No. 20-cr-00091, Docket No. 106.  That a choice may be unenviable does not render it infeasible.

## CONCLUSION

For all the reasons stated above and set forth in the government's prior arguments, the Court should either deny the defendant's request for the appointment and to adjourn the trial date until on or after August 10, 2026, or, in the alternative, grant the motion for the appointment contingent on trial beginning sometime between January and May 2026.

DATED:      June 25, 2025
            Buffalo, New York

                         MICHAEL DIGIACOMO
                         United States Attorney
                         Western District of New York


            BY:    *s/JOSEPH M. TRIPI*
                   *s/ BRETT A. HARVEY*
                   *s/ CAITLIN M. HIGGINS*
                   Assistant United States Attorney
                   United States Attorney's Office
                   Western District of New York
                   138 Delaware Avenue
                   Buffalo, New York 14202
                   (716) 843-5818
                   Caitlin.Higgins@usdoj.gov