UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


    v.                                                                                     22-CR-109 (LJV)
                                                                                (Redacted Version of ECF No. 400)


PAYTON GENDRON,


      Defendant.

_____

## MOTION TO SUPPRESS EVIDENCE SEIZED
## FROM DESKTOP COMPUTER AND THUMB DRIVES

Payton Gendron, by and through his attorneys, pursuant to the Fourth Amendment to the

United States Constitution and Fed. R. Crim. P. 41, respectfully submits this Motion to Suppress

Evidence Seized from Desktop Computer and Thumb Drives. Payton Gendron moves to

suppress all evidence—and all derivative fruits of that evidence—seized from a desktop

computer and two thumb drives ("the devices") pursuant to three search and seizure warrants,

22-mj-111-1, 111-2 and 111-3. The warrants for the devices were deficient for four reasons: First,

the warrant application failed to establish probable cause that evidence of the shooting at the

Tops Market on May 14, 2022, would be found anywhere on any device. Second, even if some

nexus had been demonstrated between the crime at issue and the account in general, the warrants

were further deficient because they failed to establish probable cause that evidence of the crime

would be found within each category of data on the devices that the warrant authorized law

enforcement to seize. The warrants lacked any temporal limitation that could have constrained

officers' discretion and ensured a connection between the categories of information to be seized

and the alleged criminal activity; they were thus overbroad. Third, the warrants were

insufficiently particular in their description of the data that could be seized. Finally, suppression is required because the execution of the warrants violated the Constitution in multiple respects. The information seized during the responsiveness review exceeded the scope permitted by the warrants. Additionally, not only has the government retained the entire contents of all three devices, but it also appears to have unlawfully re-reviewed that data, including information determined to be outside the scope of the warrants.

## **FACTUAL BACKGROUND**

Payton Gendron is charged in a 27-count Indictment related to the killings of 10 people and the wounding of three others at the Tops grocery store in Buffalo on May 14, 2022. ECF No. 6. He is charged under 18 U.S.C. § 249(a)(1)(B)(i) and (ii), the federal hate-crime statute, and 18 U.S.C. §§ 924(c) and (j), the federal firearms statute.











After the review process was completed, complete copies of both the original return and the evidence seized as relevant and within the scope of the warrant were provided to the United States Attorney's Office and stored thereafter in the office's files where they are freely accessible to staff, including the prosecution trial team.

**ARGUMENT**

I.    **The Court Should Suppress Evidence Seized From Payton Gendron's Devices Because There is an Insufficient Nexus Between the Devices and the Alleged Criminal Activity.**

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and requires that warrants must be supported by "probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Probable cause determinations require "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the reviewing magistrate judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The determination of whether probable cause exists is based on the facts set forth in the four corners of law enforcement's sworn affidavit, and "wholly conclusory statement[s]" do not suffice. *Id.* at 239.

"The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police offers unbridled discretion to rummage at will among a person's private effects"). Both the Supreme Court and the Second Circuit have repeatedly recognized the heightened privacy concerns that are implicated in the context of searches and seizures of digital evidence given the significant risk of unlawful intrusion into the most sensitive aspects of a person's life.

> Many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . [A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Riley v. California*, 573 U.S. 373, 395-97 (2014) (emphasis in original); *see also United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) ("A general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] contain.'") (quoting *Galpin*, 720 F.3d at 446) (alteration in original). The same is true in the context of social media accounts. For example, in *United States v. Shipp*, the court held that the threat of intrusion into one's privacy is "further elevated in a search of Facebook data because, perhaps more than any other location— including a residence, a computer hard drive, or a car—Facebook provides a single window through which almost every detail of a person's life is visible." 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019).

Probable cause is both location specific and crime specific: a magistrate judge may not approve a warrant unless there is a "nexus between the items sought and the 'particular place' to be searched." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting U.S. Const., amend. IV). Additionally, there must be a sufficient nexus between the criminal activities alleged and the location or items to be searched. *Id.*; *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) ("The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity."); *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020) ("The affidavit thus must demonstrate cause to believe not only that an item of evidence is likely to be found at the place to be searched, but also that there is a nexus between the item to be seized and the criminal behavior under investigation.") (quoting *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017)) (brackets omitted); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). This requirement "protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Clark*, 638

F.3d at 94 (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). The nexus requirement ensures that, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched" and there must be a "nexus . . . between the item to be seized and criminal behavior." *Griffith*, 867 F.3d at 1271 (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)); *Hayden*, 387 U.S. at 307. Consistent with this requirement, probable cause requires more than speculation or hunches. *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023).

The nexus requirement is particularly important in the context of search warrants for digital devices and information. *See Galpin*, 720 F.3d at 446. The combination of the often-personal nature of digital evidence, combined with the vast storage capacity of digital devices, compounds the potential for privacy violations. *Id.* at 446-47; *Lauria*, 70 F.4th at 128-29. The nexus requirement protects against that potential by requiring case-specific reasons to believe that evidence of the crime(s) under investigation is likely to be found before digital evidence may be searched and seized. *See United States v. Silva*, No. 23 Cr. 204 (PGG), 2024 WL 3488305, at *6 (S.D.N.Y. July 19, 2024) ("What is missing here is some 'case-specific evidence' that 'nudge[s] [Det. Boyer's] training and experience across the line from sheer speculation to probable cause'") (quoting *United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023)).

Courts routinely hold that a law enforcement officer's training and experience cannot, on its own, create the required nexus in the absence of case-specific reasons to believe that evidence of the crime under investigation will be found in the place to be searched. *Id.*; *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *7 (D. Conn. July 28, 2023) ("the

officer's opinion, standing alone, is generally not sufficient to establish a link between the item to be searched and the alleged criminal activity") (quotation omitted); *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (holding that while an agent's specialized knowledge can be considered, it cannot alone establish probable cause without specific evidence connecting illegal activity to the place searched); *State v. Thein*, 138 Wash. 2d 133, 147–48 (1999) (rejecting generalizations that drug dealers often store drugs at home as insufficient for probable cause); *Commonwealth v. Broom*, 52 N.E.3d 81, 89 (Mass. 2016) (requiring a "substantial, particularized basis" connecting phone files to the crime under investigation).

### A. SA Dlugokinski's Affidavit Fails to Link Payton Gendron's Devices to Any Potential Evidence of the Alleged Criminal Activity.





████████████████████████████████████████████

████████████████████████████████████ The information consists

solely of the vaguest generalities about the typical behavior of criminals that were found

insufficient to establish probable cause in the cases cited above. Computers are used so routinely

by all members of the community (not just criminals), that it is unreasonable to conclude that

merely possessing such a device gives rise to probable cause sufficient to justify the search of the

device whenever the owner is accused of any type of crime. And courts suppress evidence where

the warrant applications fail to connect a digital device or account to the specific offense under

investigation. As the court in *Silva* concluded:

> The government's contention that Silva communicated with fellow gang members
> over the seized cellphone—and that the evidence of those communications will
> likely be found on that cellphone—rests on no more than a hunch. That hunch is
> premised on the notion that because cellphones have become ubiquitous and
> indispensable in daily life, anyone engaged in conspiratorial criminal activity
> would likely use his cellphone in connection with or to facilitate that criminal
> activity. Relying on that logic would, however, entirely vitiate the requirement that
> a search warrant must aver some fact that connects the location or material to be
> searched to a suspect's alleged participation in criminal activity.

*Silva*, 2024 WL 3488305, at *6.

In *Lauria*, the Second Circuit found that the fact that Mr. Lauria and his co-defendant,

Mr. Molina, were Facebook "friends," and the fact that Mr. Lauria's cell phone was in

communication with Mr. Molina's phone shortly before a robbery, did not demonstrate a

"'reasonable probability' that the sought months of records for [Mr.] Molina's -2454 cell phone

would contain evidence pertaining to" two robberies. 70 F.4th at 129.

In *Garcia*, the court suppressed evidence obtained from a warrant to search a cell phone

despite overwhelming evidence that Mr. Garcia was involved in the homicide under

investigation. 2023 WL 4850553, at *7-8. Notwithstanding that evidence, the court suppressed

the cell phone evidence because nothing in the warrant application connected Mr. Garcia's *cell phone* to the homicide. As the court explained, despite Mr. Garcia's connection to the offense, "nothing in the . . . warrant application package, provides any facts upon which the issuing judge could find that there was a fair probability that contraband or evidence of the crime in question— homicide—would be found on *Garcia's cell phone*." *Id.* at *8 (emphasis in original).

 This inclusion of incorrect information and omission of information that should have led the magistrate judge to reject the warrant application outright requires an evidentiary hearing to establish whether it was intentional or reckless and thus requires suppression of all of the fruits of the warrants on this ground also. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Therefore, the warrants failed to establish the requisite nexus between the criminal activity under investigation and the devices, and all evidence seized pursuant thereto must be

suppressed. *Lauria*, 70 F.4th at 129; *Silva*, 2024 WL 3488305, at *6; *Garcia*, 2023 WL 4850553, at *7-8.

## II.  Evidence Seized From Payton Gendron's Devices Must be Suppressed Because the Warrants Were Unconstitutionally Overbroad

Even if it had been sufficient to establish probable cause to search some aspect of Payton Gendron's devices, the affidavit manifestly failed to justify issuance of warrants purporting to authorize law enforcement to rummage through every scrap of information on the three devices. And yet, that was precisely the effect of the warrants that were ultimately issued. The warrants were therefore unconstitutionally overbroad. The determination of overbreadth requires a focus on "'whether there exists probable cause to support the breadth of the search authorized.'" *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 464 (S.D.N.Y. 2013) (quoting *United States v. Hernandez*, No. 09 CR 625(HB), 2010 WL 26544, at *8 (Jan. 6, 2010)).

A warrant must not authorize law enforcement to search or seize evidence that is outside the scope of the probable cause that the warrant application establishes. In *Galpin* the Second Circuit explained that a warrant can be overbroad where the "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (quotations omitted). Similarly, "an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause." *Garcia*, 2023 WL 4850553, at *4 (quoting *United States v. Conley*, 342 F. Supp. 3d 247, 271 (D. Conn. 2018)). "In other words, a warrant is overbroad if the description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant." *Id.* (quoting *Conley*, 342 F. Supp. 3d at 271).

### A.  The Warrants Were Overbroad Because They Imposed No Temporal Limitation on the Data to be Searched or Seized

An important consideration in deciding whether a warrant is overbroad[1] is whether the warrant contains a temporal limitation that reasonably corresponds to the conduct for which probable cause has been established. Courts within the Second Circuit, and elsewhere, routinely hold that warrants violate the Fourth Amendment where they lack any temporal limitation that constrains the government's power to search and seize information. *See, e.g.*, *Zemlyansky*, 945 F. Supp. 2d at 459-60 (collecting cases); *Wey*, 256 F. Supp. 3d at 387-88 (same); *see also Garcia*, 2023 WL 4850553, at *11; *United States v. Harvey*, No. 21-CR-335(SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022). The importance of a temporal limitation is even greater in the context of a crime that was short in duration. *See id.* As explained above, the warrant application failed to establish probable cause to believe that evidence of the crime under investigation would be found anywhere in Payton Gendron's devices. But even if it had, the warrants authorized the search and seizure of information—with no temporal limitation—that stretched far broader than any conceivable probable cause that the warrant application established.

███████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[1] Courts sometimes address the issue of the lack of a temporal limitation under the rubric of the Fourth Amendment's particularity requirement. *See, e.g., Zemlyansky,* 945 F. Supp. 2d at 459-60 ("'[a] warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular'") (quoting *United States v. Costin*, No. 5 Cr. 38, 2006 WL 2522377, at *12 (D. Conn. July 31, 2006) (alteration in original)).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ the resulting warrants were effectively without meaningful temporal limitation. They were accordingly unconstitutionally overbroad. *Harvey*, 2022 WL 684050, at *10 ("the Court is troubled by the warrant's unlimited temporal sweep and the lack of any plausible basis to justify it").

### B. The Warrants Were Facially Invalid Because They Were Overbroad With Respect to the Data That Could Be Searched for and Seized

The information seized from Payton Gendron's devices must also be suppressed because the warrant authorized the search and seizure of vast amounts of data for which no probable cause had been established. While the warrant application may have established probable cause to believe that the shooting at the Tops Market on May 14, 2022, had been committed and Payton Gendron committed it, the warrants themselves authorized the seizure of data unconnected to that crime for which no probable cause had been shown; it was therefore unconstitutionally overbroad.

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████



18 U.S.C. § 249 is a broad statute that covers a wide variety of bias-motivated conduct. It encompasses crimes committed or attempted because of a person's race, color, religion or national origin, § 249(a)(1), as well as those committed or attempted because of a person's gender, sexual orientation, gender identity or disability that have some effect on interstate commerce, § 249(a)(2)(A)-(B). It incorporates the willful causation of bodily injury running the gamut from "a cut, abrasion, bruise" or "any other injury to the body no matter how temporary," 18 U.S.C. § 1365(h)(4), § 249(c)(1), to death, § 249(a)(1)(B)(i), § 249(a)(2)(A)(ii)(I), and includes crimes involving kidnapping, aggravated sexual abuse and attempts to commit same, § 249(a)(1)(B)(ii), § 249(a)(2)(A)(ii)(II). The statute includes offenses committed both with and without the use of any kind of firearm, dangerous weapon, explosive or incendiary device. § 249(a)(1), § 249(a)(2)(A). The statute thus covers everything from pinching someone's arm to a fatal mass shooting, committed because of any of eight separate categories of heterogenous

personal characteristics. Similarly, a broad range of conduct can violate both 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1), so long as it involves the discharge of any firearm, from a machinegun to a pistol, during any categorical crime of violence.

No probable cause was established to seize anything unrelated to the shooting at the Tops Market on May 14, 2022. ███████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ As drafted, however, they were fatally overbroad.

### III.    The Warrants Were Invalid Because They Were Insufficiently Particular Regarding the Data That Could Be Seized

The information seized from Payton Gendron's devices also must be suppressed because the warrants lacked the constitutionally required particularity with respect to the data that could be seized. "To satisfy the Fourth Amendment's particularity requirement, a warrant must: (1) 'identify the specific offense for which the police have established probable cause;' (2) 'describe the place to be searched;' and (3) 'specify the items to be seized by their relation to designated crimes.'" *United States v. Motovich*, 21-CR-497-WFK, 2024 WL 2943960, at *9 (E.D.N.Y. 2024) (quoting *Galpin*, 720 F.3d. at 445-46).

The warrant must be "'sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize.'" *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (quoting *United States v. LaChance*, 788 F.2d 856, 874 (2d Cir. 1986) (alteration omitted)). It must provide a basis upon which to distinguish items that are evidence of the crime under investigation from those that have no connection to it.  *See Zemlyansky,* 945 F. Supp. 2d at 457 (citing *Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) (in the

context of a search of a house for stolen goods, categories in warrant are overbroad where they "provid[e] no basis to distinguish the stolen items from [the defendant's] own personal property") and *United States v. Hernandez*, No. 09 Cr. 625, 2010 WL 26544, at *10 (S.D.N.Y. Jan. 6, 2010) (the categories of items to be seized from a business lack particularity where they "could have encompassed most all of the business records on the premises")).

"Mere reference to 'evidence' of a violation of broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (citing *United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C. Cir. 1990) (holding that warrant authorizing seizure of business records and equipment "evidencing a scheme, artifice or devise of transactions in interstate or foreign commerce," which are "fruits, instrumentalities and evidence of crimes against the United States of America, that is fraud by wire in violation of Title 18, United States Code, Section 1343" insufficiently particular as "[r]eferences to broad statutes realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and therefore cannot save it") and *United States v. Holzman*, 871 F.2d 1496, 1509-10 (9th Cir. 1989) (holding that warrant for "any property or devices used or obtained through fraud operations" is "epitome of a general warrant" because it failed to limit the search to items readily identified with a particular transaction")); *see also United States v. Spilotro,* 800 F.2d 959, 964 (9th Cir. 1986) (holding warrants lacked sufficient particularity where, *inter alia*, they failed to "at the very least, . . . describe[e] the criminal activities themselves rather than simply referring to the statute believed to have been violated," and instead "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[d] no guidelines to distinguish items used lawfully from those the government had probable cause to seize"); *United States v. Sayles*,

No. 19-CR-186, 2021 WL 3195016, at *9 (W.D.N.Y. May 6, 2021) *adopted by* 2021 WL

3191886 (W.D.N.Y. July 28, 2021) (finding warrant insufficiently particular where it authorized

search for evidence of a shooting at specified date, time and location but failed to set forth items

to be searched for and seized").

     Overall, the Fourth Amendment requires the officer drafting the warrant to be as specific

as possible. "A failure to describe the items to be seized with as much particularity as the

circumstances reasonably allow offends the Fourth Amendment because there is no assurance

that the permitted invasion of a suspect's privacy and property are no more than absolutely

necessary." *George*, 975 F.2d at 76.

     The warrants in this case satisfy neither the first nor the third particularity requirement.

They cite only to broad criminal statutes that they allege to have been violated, even though the

application they are based on established probable cause (except for the required nexus to the

account) for only one specific criminal incident, namely the shooting at the Tops Market on May

14, 2022. And the warrants fail to adequately specify the items to be seized by their relation to

the shooting, ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████

     ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

 In short,

the warrants were so vague on the subject of what could be seized that they were effectively

unconstitutional general warrants.

## IV. The Execution of the Warrants Violated the Fourth Amendment in Multiple Respects

In addition to the unconstitutionality of the warrant itself, the manner in which it was

executed by the government violated the Fourth Amendment in several distinct ways. "The

general touchstone of reasonableness which governs Fourth Amendment analysis governs the

method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted). *See also United States v. Graziano*, 558 F. Supp. 2d 304, 316 (E.D.N.Y. 2008) (noting that "under the Fourth Amendment, the manner of the execution of the warrant in searching the computer also will be subject to judicial review under a 'reasonableness' standard"). The government seized data that were outside the scope of the search warrants during its initial responsiveness review, and thereafter disregarded the terms of the warrants altogether when it effectively seized the entire digital contents of all three devices and intermingled responsive and non-responsive data, to all of which the prosecution team had unfettered access.

### A. Law Enforcement Seized Evidence From Payton Gendron's Devices That Was Outside the Scope of the Warrant.

Law enforcement unconstitutionally seized data from the devices that were outside of the scope of the seizure authorized by the warrant. "A search must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). "[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items." *Id.* When the officers executing the warrant act "in flagrant disregard of the warrant's terms," however, the appropriate remedy is "suppression of *all* evidence seized" pursuant to that warrant. *Id.* (emphasis in original). "Executing agents are considered to have 'flagrantly disregarded' the warrant's terms where '(1) they effect a widespread seizure of items that were not within the scope of the warrant and (2) do not act in good faith.'" *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 309 (S.D.N.Y. 2018) (quoting *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000)).

Law enforcement's obligation under the Fourth Amendment, Fed. R. Crim. P. 41(e)(2)(B) and the terms of the warrant at issue here was to conduct a timely responsiveness review of the devices and to seize only the data that fell within the scope of the warrant. Under Fed. R. Crim.

P. 41(e)(2)(B), a warrant for digital information may authorize the executing officers to initially

over-seize such information and to subsequently search the data provided to identify and seize

that which is within the scope of the warrant. *Id.* ("A warrant [for electronically stored

information] may authorize the seizure of electronic storage media or the seizure and copying of

electronically stored information. Unless otherwise specified, the warrant authorizes a later

review of the media or information consistent with the warrant"); *id.* Advisory Comm's Note

(2009) ("[t]his rule acknowledges the need for a two-step process: officers may seize or copy the

entire storage medium and review it later to determine what electronically stored information

falls within the scope of the warrant"). *See generally United States v. Nejad*, 436 F. Supp. 3d 707,

734-38 (S.D.N.Y. 2020). Although there is no fixed time limit on when the responsiveness

review must be completed, "'the Fourth Amendment requires the government to complete its

review, i.e., execute the warrant, within a reasonable period of time.'" *Wey*, 256 F. Supp. 3d at

383 (quoting *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) (collecting

cases)).



   **B. The Government Disregarded the Requirements of the Warrants and Seized the Entire Data Sets From the Devices.**

After the review of the data for responsiveness by law enforcement was finished,

execution of the warrants was complete. *See Nejad*, 436 F. Supp. 3d at 736 (finding that "at the

conclusion of its responsiveness review . . . the D.A. had identified all of the documents from the entire data set properly seized under the warrants, and the execution of those warrants was thus complete"); *United States v Sun*, No. 24-cr-346, 2025 WL 1220040, at *3 (E.D.N.Y. Apr. 28, 2025) (finding execution of warrant complete when FBI agents generated a responsiveness report).  Any further examination of the non-responsive data that was included in the original disclosure by Google thus required the government to obtain a new search warrant. *See id.; Nejad*, 436 F. Supp. 3d at 736 (finding that "searches conducted subsequent to the completion of the responsiveness review violated the Fourth Amendment"); *United States v. Ganias*, 824 F.3d 199, 220-21 (2d Cir. 2016) (en banc) (approving government's decision to apply for new warrant to search mirrored copies of computer hard drives seized and previously reviewed). That data should have been segregated from the responsive data and either returned to Payton Gendron or stored securely with no further government access. Instead, however, law enforcement maintained all data in its regular filing system and provided a copy of the entire data set to the United States Attorney's Office.

Upon information and belief, the unresponsive data was treated the same way as all other discovery material by the United States Attorney's Office, intermingled with it and accessed freely by the prosecution team. An evidentiary hearing is required to establish the extent to which government personnel have accessed and reviewed the non-responsive material. *See Wey*, 256 F. Supp. 3d at 366 (noting that hearing was required to address whether government acted reasonably in executing searches of computers and computer-related equipment). At a minimum, however, staff members indexed and filed the material and affixed electronic Bates numbers and, in some cases, descriptors, to each page. Copies of both responsive and non-responsive portions of the data were subsequently disclosed to the defense team in discovery in multiple productions.

WHEREFORE, for the foregoing reasons, Defendant, Payton Gendron, respectfully requests that this Motion be granted and that all information recovered from his devices and all fruits thereof be suppressed.

Dated:  June 27, 2025
        Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law
