UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

        v.

PAYTON GENDRON,

                Defendant.

_____

22-CR-109 (LJV)
Redacted Version of ECF No. 401

**MOTION TO SUPPRESS EVIDENCE RECOVERED FROM VERIZON WIRELESS**

      Payton Gendron, by and through his attorneys and pursuant to the Fourth Amendment to the United States Constitution and Fed. R. Crim. P. 41, moves to exclude all evidence obtained pursuant to two emergency disclosure requests ("EDRs"), and a search and seizure warrant that authorized agents to search and seize historical cell-site location information, and other cell-phone-related data, from Verizon Wireless ("Verizon") (the "Verizon warrant"). ███████

████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████ █



The Verizon warrant was defective for five reasons.

First, the warrant was predicated on information that law enforcement illegally obtained through the EDRs it submitted to Verizon. Second, the Verizon warrant application failed to establish probable cause that evidence of the crimes under investigation—hate crime acts and discharging a firearm causing death in furtherance of a crime of violence at the Tops Market on May 14, 2022—would be found in cellular data associated with Payton Gendron's phone number. Third, even if the Verizon warrant application had established probable cause, the warrant itself violated the Fourth Amendment's particularity requirement by failing to adequately specify the offense for which the issuing magistrate judge found probable cause and failing to specify the items to be seized by their relation to the designated crimes. Fourth, the warrant was overbroad in what it authorized law enforcement to search and seize. And fifth, law enforcement's

---

[1] As explained in more detail in Payton Gendron's Motion to Suppress Evidence Recovered from iPhone Pursuant to a State Warrant to Search Payton Gendron's Car, GoPro, and iPhone, the information provided by Verizon in response to the EDRs should be suppressed as the fruit of the unlawful warrant challenged in that Motion.

execution of the warrant violated the Fourth Amendment because the information seized exceeded the scope permitted by the warrant.

## **Factual Background**









**Argument**

I.     <u>Law Enforcement Violated Payton Gendron's Fourth Amendment Rights by Obtaining ███████████████████████████████████ Through Emergency Disclosure Requests that Were Submitted After Any Conceivable Emergency Had Ended.</u>

The Stored Communications Act ("SCA") governs the voluntary and compelled disclosure of electronic information by third party internet service providers ("ISPs") like Verizon. The SCA prohibits an ISP from disclosing its customers' communications or records to governmental entities. 18 U.S.C. § 2702(a). In turn, the SCA confers upon account holders a statutory right of privacy in the nondisclosure of information held by ISPs:

> The SCA gives network account holders statutory privacy rights against access to stored information held by ISPs. The statute also creates Fourth Amendment-like privacy protections regulating the methods by which government investigators may obtain users' private information in a service provider's possession. First the SCA limits the government's ability to compel service providers to disclose information in their possession about their subscribers. *See* 18 U.S.C. § 2703. Second, it limits the service provider's ability to voluntarily disclose information about their subscribers to the government. *See id.* § 2702.

*In re United States*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009). One exception to those privacy rights, and the general prohibition against disclosure of account-holder information, however, is for emergency situations "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay." 18 U.S.C. § 2702(b)-(c).

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████ ██

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

---

[3] ████████████████████████████████████



Accordingly, investigators' EDRs to Verizon, and Verizon's subsequent return of information, violated the SCA because there was no conceivable "emergency involving danger of death or serious physical injury to a person, necessitating disclosure without delay." 18 U.S.C. § 2702(b)-(c).

In addition to violating the SCA, law enforcement's seizure of Payton Gendron's cellular data from Verizon, through the unlawful EDR requests, violated his rights under the Fourth Amendment. In *Carpenter v. United States*, the Supreme Court held that a person has a reasonable expectation of privacy "in the record of his physical movements as captured through" cell site location information ("CSLI"). 585 U.S. 296, 310 (2018). "The Court has further recognized government acquisition of CSLI from service providers to constitute a 'search' within the meaning of the Fourth Amendment." *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023). Therefore, "the Government must generally obtain a warrant supported by probable cause before acquiring [CSLI] records." *Carpenter*, 585 U.S. at 317.

The reason for *Carpenter*'s holding is that "modern cell phone usage is so ubiquitous that [CSLI] . . . can reveal not only nearly the whole of an individual's movements but also, in the process, much about his personal and professional life." *Lauria*, 70 F.4th at 128-29. As the

Supreme Court put it, CSLI "provides an all-encompassing record of the [cell phone user's] whereabouts . . . [,] revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Id.* at 129 (quoting *Carpenter*, 585 U.S. at 311) (alterations in original). Indeed, by May 16, 2022, law enforcement had used the CSLI it obtained from Verizon to plot Payton Gendron's whereabouts between May 13, 2022, and May 14, 2022. Ex. C, Warrant App., at ¶ 41.

Because law enforcement obtained CSLI and other cellular data from Verizon without a warrant, and in violation of the SCA, law enforcement violated Payton Gendron's Fourth Amendment rights. Accordingly, the information produced by Verizon in response to the EDRs—and all information that derived from those responses—should be suppressed.

II.     **The Warrant Application Lacked Probable Cause Because There Was an Insufficient Nexus Between Payton Gendron's Cellular Data and Alleged Criminal Activity.**

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and requires that warrants must be supported by "probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Probable cause determinations require "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the reviewing magistrate judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The determination of whether probable cause exists is based on the facts set forth in the four corners of law enforcement's sworn affidavit, and "wholly conclusory statement[s]" do not suffice. *Id.* at 239.

"The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of

general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police offers unbridled discretion to rummage at will among a person's private effects"). Both the Supreme Court and the Second Circuit have repeatedly warned about the potential privacy implications of general warrants that authorize searches and seizures of digital evidence given the significant risk of unlawful intrusion into the most sensitive aspects of a person's life.

> Many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . [A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Riley v. California*, 573 U.S. 373, 395-97 (2014) (emphasis in original); *see also United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) ("A general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] contain.'") (quoting *Galpin*, 720 F.3d at 446) (alteration in original).

Probable cause is both location specific and crime specific: a magistrate judge may not approve a warrant unless there is a "nexus between the items sought and the 'particular place' to be searched." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting U.S. Const., amend. IV). Additionally, there must be a sufficient nexus between the criminal activities alleged and the location or items to be searched. *Id.*; *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) ("The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity."); *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020) ("The

affidavit thus must demonstrate cause to believe not only that an item of evidence is likely to be found at the place to be searched, but also that there is a nexus between the item to be seized and the criminal behavior under investigation.") (quoting *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017)) (brackets omitted); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). This requirement "protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Clark*, 638 F.3d at 94 (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). The nexus requirement ensures that, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched" and there must be a "nexus . . . between the item to be seized and criminal behavior." *Griffith*, 867 F.3d at 1271 (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)); *Warden, Md. Penitentiary*, 387 U.S. at 307. Consistent with this requirement, probable cause requires more than speculation or hunches. *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023).

The nexus requirement is particularly important in the context of search warrants for digital devices and information. *See Galpin*, 720 F.3d at 446. The combination of the often-personal nature of digital evidence, combined with the vast storage capacity of digital devices, compound the potential for privacy violations. *Id.* at 446-47; *Lauria*, 70 F.4th at 128-29. The nexus requirement protects against that potential by requiring case-specific reasons to believe that evidence of the crime(s) under investigation is likely to be found before digital evidence may be searched and seized. *See United States v. Silva*, No. 23 Cr. 204 (PGG), 2024 WL 3488305, at *6 (S.D.N.Y. July 19, 2024) ("What is missing here is some 'case-specific evidence' that 'nudge[s] [Det. Boyer's] training and experience across the line from sheer speculation to

probable cause'") (quoting *United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023)).

Courts routinely hold that a law enforcement officer's training and experience cannot, on its own, create the required nexus in the absence of case-specific reasons to believe that evidence of the crime under investigation will be found in the place to be searched. *Id.*; *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *7 (D. Conn. July 28, 2023) ("the officer's opinion, standing alone, is generally not sufficient to establish a link between the item to be searched and the alleged criminal activity") (quotation omitted); *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (holding that while an agent's specialized knowledge can be considered, it cannot alone establish probable cause without specific evidence connecting illegal activity to the place searched); *State v. Thein*, 138 Wash. 2d 133, 147–48 (1999) (rejecting generalizations that drug dealers often store drugs at home as insufficient for probable cause); *Commonwealth v. Broom*, 52 N.E.3d 81, 89 (Mass. 2016) (requiring a "substantial, particularized basis" connecting phone files to the crime under investigation).





An evidentiary hearing is required to establish whether this omission was intentional or reckless. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

A.  **The Verizon Warrant Was Predicated on Illegally Obtained Information.**

As explained above, law enforcement's EDR requests for cellular data, and Verizon's production of that data, violated both the SCA and Payton Gendron's Fourth Amendment rights. The Second Circuit has held that when a warrant application contains illegally obtained evidence, the reviewing court should "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Reilly*, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996); *see also United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).



Accordingly, upon review, this Court should excise that illegally obtained evidence and assess whether the remaining "untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Reilly*, 76 F.3d at 1282 n.2.

B.  **SA Dlugokinski's Affidavit Fails to Link Payton Gendron's Cellular Data to Any Potential Evidence of the Alleged Criminal Activity.**



"[A]t bottom the[se] are merely 'blanket generalizations about how people who commit crimes act,' which are 'not sufficient' to establish probable cause." *Silva*, 2024 WL 3488305, at *7.

Cell phones are used so routinely by all members of the community (not just criminals), that it is unreasonable to conclude that allegedly taking steps to plan an offense by lawful items creates probable cause sufficient to justify the search and seizure of cellular data, including CSLI. And courts suppress cellular data—including CSLI—where the warrant applications fail to connect that data to the specific offense under investigation.

In *Lauria*, the Second Circuit found that the fact that Mr. Lauria and his co-defendant, Mr. Molina, were Facebook "friends," and the fact that Mr. Lauria's cell phone was in communication with Mr. Molina's phone shortly before a robbery, did not demonstrate a "'reasonable probability' that the sought months of records for [Mr.] Molina's -2454 cell phone would contain evidence pertaining to" two robberies. 70 F.4th at 129.

The same is true here. Even if SA Dlugokinski's affidavit connects Payton Gendron to the shooting on May 14, 2022, nothing in it connects his cell phone, or the data it generated, to

that offense. Therefore, the Verizon warrant lacked probable cause, and all information derived from it should be suppressed. *Lauria*, 70 F.4th at 129; *Silva*, 2024 WL 3488305, at *6; *Garcia*, 2023 WL 4850553, at *7-8.

### III.    The Verizon Warrant Violated the Fourth Amendment's Particularity and Overbreadth Requirements.

As explained above, the question of whether the warrant is supported by probable cause focuses on the warrant application. However, the warrant itself must also comply with the Fourth Amendment. "The Warrants Clause both 'requires particularity and forbids overbreadth.'" *Garcia*, 2023 WL 4850553, at *4 (quoting *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009)). Accordingly, even if this Court finds that the Verizon warrant was supported by probable cause, the information collected pursuant to it should still be suppressed because the warrant lacked particularity and was overbroad.

*Particularity.* "Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017) (quoting *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013)). And "where, as here, the property to be searched is digital, the particularity requirement assumes even greater importance." *United States v. Harvey*, No. 21-CR-335 (SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022) (quoting *United States v. Purcell*, 967 F.3d 159, 183 (2d Cir. 2020)). The Second Circuit has held that a warrant must satisfy three criteria in order to comport with the Fourth Amendment's particularity requirement. First, the warrant must "identify the specific offense for which the police have established probable cause." *Galpin*, 720 F.3d at 445. Second, the warrant must "describe the place to be searched." *Id.* at 445-46. Third, the warrant must "specify the

items to be seized by their relation to designated crimes." *Id.* at 446 (internal quotation marks omitted).

   ***Overbreadth.*** Overbreadth is a related, but distinct, concept. "[A] search warrant does not necessarily lack particularity simply because it is broad." *Garcia*, 2023 WL 4850553, at \*5 (quoting *Ulbricht*, 858 F.3d at 100). "A warrant that comports with the Fourth Amendment's particularity requirements may nevertheless be overbroad where the 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *Id.* (quoting *Galpin*, 720 F.3d at 446). While overbreadth and particularity are distinct legal concepts (though they are "frequently conflated"), "'an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause.'" *Id.* (quoting *United States v. Conley*, 342 F. Supp. 3d 247, 271 (D. Conn. 2018)).

### A.  <u>The Verizon Warrant Violated the Fourth Amendment's Particularity Requirement.</u>

   As discussed above, the Second Circuit has held that a warrant must satisfy three requirements in order to comport with the Fourth Amendment's particularity principle: (1) the warrant must identify the specific offense for which the government has established probable cause; (2) the warrant must describe the place to be searched; and (3) the warrant must specify the items to be seized by their relation to the offense for which there is probable cause. The Verizon warrant failed the first and third of those requirements.

### 1.  <u>The Verizon Warrant Failed to Specify the Specific Offense for Which the Issuing Magistrate Judge Found Probable Cause.</u>

   The Verizon warrant here failed to adequately specify the crime under investigation. █

████████████████████████████████████████████████████████



*Zemlyansky*, 945 F. Supp. 2d at 454; *Wey*, 256 F. Supp. 3d at 384.

### 2. The Verizon Warrant Failed to Specify the Items to Be Seized By Their Relation to the Designated Crimes.

The warrant must be "'sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize.'" *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (quoting *United States v. LaChance*, 788 F.2d 856, 874 (2d Cir. 1986) (alteration omitted)). It must provide a basis upon which to distinguish items that are evidence of the crime under investigation from those that have no connection to it. See *Zemlyansky*, 945 F.

Supp. 2d at 457 (citing *Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) (in the context of a search of a house for stolen goods, categories in warrant are overbroad where they "provid[e] no basis to distinguish the stolen items from [the defendant's] own personal property") and *United States v. Hernandez*, No. 09 Cr. 625, 2010 WL 26544, at *10 (S.D.N.Y. Jan. 6, 2010) (the categories of items to be seized from a business lack particularity where they "could have encompassed most all of the business records on the premises")).

"Mere reference to 'evidence' of a violation of broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (citing *United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C. Cir. 1990) (holding that warrant authorizing seizure of business records and equipment "evidencing a scheme, artifice or devise of transactions in interstate or foreign commerce," which are "fruits, instrumentalities and evidence of crimes against the United States of America, that is fraud by wire in violation of Title 18, United States Code, Section 1343" insufficiently particular as "[r]eferences to broad statutes realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and therefore cannot save it") and *United States v. Holzman*, 871 F.2d 1496, 1509-10 (9th Cir. 1989) (holding that warrant for "any property or devices used or obtained through fraud operations" is "epitome of a general warrant" because it failed to limit the search to items readily identified with a particular transaction")); *see also United States v. Spilotro,* 800 F.2d 959, 964 (9th Cir. 1986) (holding warrants lacked sufficient particularity where, *inter alia*, they failed to "at the very least, . . . describe[e] the criminal activities themselves rather than simply referring to the statute believed to have been violated," and instead "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[d] no guidelines to distinguish items

used lawfully from those the government had probable cause to seize"); *United States v. Sayles*, No. 19-CR-186, 2021 WL 3195016, at *9 (W.D.N.Y. May 6, 2021) *adopted by* 2021 WL 3191886 (W.D.N.Y. July 28, 2021) (finding warrant insufficiently particular where it authorized search for evidence of a shooting at specified date, time and location but failed to set forth items to be searched for and seized").

Overall, the Fourth Amendment requires the officer drafting the warrant to be as specific as possible. "A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *George*, 975 F.2d at 76.



Accordingly, the warrant fails to adequately specify the items to be seized by their relation to the designated crimes.

### B.  The Verizon Warrant Was Overbroad.

As explained above, "a warrant is overbroad if the description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant." *Garcia*,

2023 WL 4850553, at *4 (quoting *Conley*, 342 F. Supp. 3d at 271); *Galpin*, 720 F.3d at 446. One reason a warrant might be overbroad is because it lacks particularity. *Garcia*, 2023 WL 4850553, at *4 ("'an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause'") (quoting *Conley*, 342 F. Supp. 3d at 271). Overall, the determination of overbreadth requires a focus on "'whether there exists probable cause to support the breadth of the search authorized.'" *Zemlyansky*, 945 F. Supp. 2d at 464 (quoting *Hernandez*, 2010 WL 26544, at *8). The Verizon Warrant was overbroad for all the same reasons, explained above, that it lacked particularity. However, beyond its lack of particularity, the Verizon Warrant also authorized agents to search and seize items that had no conceivable link to the probable cause purportedly established by the warrant application.

   1.  **The Warrant Was Overbroad in What it Authorized Agents to Search.**







Even if the Verizon warrant was supported by probable cause to search Payton Gendron's cellular data, that probable cause was limited to searching for evidence related to the motivation for, planning of, or execution of the May 14, 2022, shooting. ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████  ████████████████ ████████████████████████████████████████. *See United States v. Winn*, 79 F. Supp. 3d 904, 920 (S.D. Ill. 2015) (holding that if officers must "explain in the complaint how and why each type of data was connected to Defendant's criminal activity") (quoted in *Wey*, 256 F. Supp. 3d at 392).

## 2. <u>The Warrant Was Overbroad in What it Authorized Agents to Seize.</u>

For all of the same reasons explained above that the warrant lacked particularity in what it authorized agents to seize, it was also overbroad. █████████████████████████████ ████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ █████████████████████████

18 U.S.C. § 249 is a broad statute that covers a wide variety of bias-motivated conduct. It encompasses crimes committed or attempted because of a person's race, color, religion or national origin, § 249(a)(1), as well as those committed or attempted because of a person's gender, sexual orientation, gender identity or disability that have some effect on interstate commerce, § 249(a)(2)(A)-(B). It incorporates the willful causation of bodily injury running the gamut from "a cut, abrasion, bruise" or "any other injury to the body no matter how temporary," 18 U.S.C. § 1365(h)(4), § 249(c)(1), to death, § 249(a)(1)(B)(i), § 249(a)(2)(A)(ii)(I), and includes crimes involving kidnapping, aggravated sexual abuse and attempts to commit same, § 249(a)(1)(B)(ii), § 249(a)(2)(A)(ii)(II). The statute includes offenses committed both with and

without the use of any kind of firearm, dangerous weapon, explosive or incendiary device. §
249(a)(1), § 249(a)(2)(A). The statute thus covers everything from pinching someone's arm to a
fatal mass shooting, committed because of any of eight separate categories of heterogenous
personal characteristics. Similarly, a broad range of conduct can violate both 18 U.S.C. §§
924(c)(1)(A)(iii) and 924(j)(1), so long as it involves the discharge of any firearm, from a
machinegun to a pistol, during any categorical crime of violence.

No probable cause was established to seize anything unrelated to the shooting at the Tops
Market on May 14, 2022. Had the warrant authorized the seizure only of "information relating to
the motivation, planning, and/or execution of the May 14, 2022, mass shooting at Tops Friendly
Markets, located at 1275 Jefferson Avenue, Buffalo, New York," it might have passed
constitutional muster in this respect. As drafted, however— ███████████████████
███████████████████—it was fatally overbroad.

## IV.    Law Enforcement's Execution of the Verizon Warrant Violated Mr. Gendron's Fourth Amendment Rights.

"'The touchstone of the Fourth Amendment is reasonableness,' and 'the reasonableness
of government conduct in executing a valid warrant, can present Fourth Amendment issues.'
Therefore, '[t]he manner in which a warrant is executed is subject to later judicial review as to its
reasonableness.'" *United States v. Oztemel*, No. 3:23-CR-00026 (KAD), 2024 WL 3090251, at
*8 (D. Conn. June 21, 2024) (quoting *United States v. Ganias*, 824 F.3d 199, 209-10 (2d Cir.
2016) (en banc)).

Once the government has seized a "trove of electronic information, 'the Fourth
Amendment requires the government to complete its review, *i.e.*, execute the warrant, within a
'reasonable' period of time.'" *Id.* at *9 (quoting *United States v. Metter*, 860 F. Supp. 2d 205,
215 (E.D.N.Y. 2012)). Moreover, once the government has completed its search of the digital

evidence as authorized by the warrant, the government may not "return to the proverbial well months or years after the relevant [w]arrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories." *Wey*, 256 F. Supp. 3d at 406.

There are many unknowns about the government's execution of the Verizon warrant in this case. Due to the fact-intensive nature of the procedures employed by the government to search the warrant return from Verizon, and to seize what the government determined to be within the scope of the warrant, Payton Gendron respectfully requests an evidentiary hearing to establish those facts. For example, it is unclear to what extent law enforcement engaged in the required two-step process by which officers review the entire return and separate materials that can be seized within the scope of the warrant from those that are outside the scope of the warrant.

Relatedly, the government appears to have retained the entire Verizon warrant return— which unquestionably contains information outside the scope of the warrant. The government also appears to have accessed the full return even after any initial responsiveness review would have been conducted. As explained above, the government must conduct a search of digital evidence it collects pursuant to a warrant within a reasonable period of time. After that review, the government may not re-search the materials that it determined were outside the scope of what the warrant authorized the government to seize. In other words, it may not "return to the proverbial well months or years after the relevant [w]arrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories." *Wey*, 256 F. Supp. 3d at 406; *see also United States v. Sun*, No. 24-cr-346 (BMC), 2025 WL 1220040, at *3-5 (E.D.N.Y. Apr. 28, 2025) (collecting cases). Rather, if the government wants to conduct

a subsequent search through materials it previously determined were outside the scope of a warrant, it must obtain a new warrant. *See Ganias*, 824 F.3d 199.

That is not what happened here. Even if the government conducted an initial responsiveness review within a reasonable period of time, at some point, the entire Verizon warrant return was provided to the U.S. Attorney's Office. It remains unclear whether, when, and how the government accessed, used, or searched the full return after the original search. At a minimum, though, the government accessed the non-responsive material in order to produce it to the defense in this case. In addition to violating the warrant, the government's retention and successive uses of the full Verizon return (including the non-pertinent portions of it) has effectuated a seizure of the entire return in violation of Payton Gendron's Fourth Amendment rights. At a minimum, this Court should suppress any materials that were originally deemed to be outside the scope of the warrant during the government's initial responsiveness review. *Sun*, 2025 WL 1220040, at *6 Additionally, an evidentiary hearing is required in order to develop a complete factual record regarding the government's access to, and use of, the full return, and to determine whether any such use requires suppression of the entire return.

## <u>CONCLUSION</u>

Payton Gendron respectfully requests that this Court grant an order of suppression of all fruits of the Verizon warrant on the grounds alleged herein and any other grounds that may become apparent upon a hearing on the Motion.

Dated:        June 27, 2025
              Buffalo, New York


                              *s/Sonya A. Zoghlin*
                              Sonya A. Zoghlin
                              Assistant Federal Public Defender

26

_s/MaryBeth Covert_
MaryBeth Covert
Senior Litigator

_s/Julie Brain_
Julie Brain
Julie Brain, Attorney at Law