UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                                      22-CR-109 (LJV)

v.

PAYTON GENDRON,

        Defendant.

## REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE SEIZED FROM FACEBOOK ACCOUNT

      Payton Gendron submits this Reply in support of his Motion to Suppress Evidence Seized from Facebook account, ECF No. 376.[1] In that Motion, he moved to suppress information illegally obtained by the government from his social media account with the online platform Facebook pursuant to a search warrant that was based on information illegally obtained from Facebook pursuant to an Emergency Disclosure Request ("EDR") that was issued in violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2702(b)-(c).

      In its Response, the government does not contest that the EDR that it submitted to Facebook on May 14, 2022, violated the SCA because it misrepresented the existence of an ongoing emergency involving danger of death or serious physical injury that required disclosure

---

[1] In the original Motion to Suppress, counsel sought suppression of the evidence "produced in response to the invalid EDR, and all fruits thereof." See ECF Nos. 376, 389, at 10. Reference was made to the belief that law enforcement made an Emergency Disclosure Request to Facebook, but noted that the government had not yet produced the EDR in discovery. ECF Nos. 376 and 389, at 2. Since the filing of the original Motion, the government has provided additional discovery confirming that an EDR request was made to Facebook on May 14, 2022, but still has not provided a copy of the actual EDR request itself. As noted in the Motion, the government's failure in this regard independently justifies suppression of the Facebook material. *See* ECF No. 376 at 2 n.1.

of otherwise confidential data without delay. Instead, it argues that Payton Gendron's Motion should be denied because there is no statutory basis for suppression of material illegally produced under the SCA. However, the absence of a separate remedy under the statute in no way affects the availability of suppression of material obtained through the use of a search warrant. If illegally obtained information is included in an application for a warrant, a reviewing court must excise that information from its consideration and determine whether the remainder of the application establishes probable cause to justify the requested warrant. In this case, absent the information illegally obtained using the EDR, the warrant failed to establish probable cause to believe that evidence of the May 14, 2022, shooting at the Tops Market would be found in Payton Gendron's Facebook account. All fruits of that warrant must therefore be suppressed.

Additionally, the information illegally obtained by the government through its improper use of the EDR was private information that is protected by the Fourth Amendment. The government was therefore required to obtain a valid warrant before it could demand production of that data and it failed to do so. Accordingly, the information produced pursuant to the EDR must also be suppressed under the Fourth Amendment, and the information obtained through the warrant must also be suppressed as the fruits of this independent constitutional violation. Once again, the unavailability of a separate statutory suppression remedy under the SCA is irrelevant to the analysis.

    **I.**    **Absent the Information Illegally Obtained Using the EDR, the Facebook Warrant Application Failed to Establish Probable Case to Believe that Evidence of the May 14, 2022, Shooting Would be Found in Payton Gendron's Facebook Account.**

As explained in the Motion, ECF No. 376 at 4-10, absent the illegally obtained information produced pursuant to the EDR, the application for the Facebook warrant failed to establish the requisite nexus between the May 14, 2002, shooting at the Tops Market and Payton

Gendron's Facebook account. The government does not dispute that fact in its Response, relying solely on the absence of a statutory basis for suppression under the SCA. In so doing, it also fails to address the binding authority set forth in the original Motion that directs a court when faced with a warrant application containing illegally obtained information to "excise that illegally obtained evidence and assess whether the remaining 'untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" ECF No. 376 at 9 (quoting *United States v. Reilly*, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996) and citing *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)). Doing so makes clear that no probable cause would have been established and the Facebook warrant could not have been issued. The evidence that the government seized pursuant to that warrant must therefore be suppressed under the Fourth Amendment.

> **II.     Law Enforcement Violated Payton Gendron's Fourth Amendment Rights by Obtaining Facebook Activity Logs Through an Emergency Disclosure Request that Was Submitted After Any Conceivable Emergency Had Ended.**

The SCA governs the voluntary and compelled disclosure of electronic information by third party internet service providers ("ISPs") like Facebook. The SCA prohibits an ISP from disclosing its customers' communications or records to governmental entities. 18 U.S.C. § 2702(a). In turn, the SCA confers upon account holders a statutory right of privacy in the nondisclosure of information held by ISPs:

> The SCA gives network account holders statutory privacy rights against access to stored information held by ISPs. The statute also creates Fourth Amendment-like privacy protections regulating the methods by which government investigators may obtain users' private information in a service provider's possession. First the SCA limits the government's ability to compel service providers to disclose information in their possession about their subscribers. *See* 18 U.S.C. § 2703. Second, it limits the service provider's ability to voluntarily disclose information about their subscribers to the government. *See id.* § 2702.

3

*In re United States*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009). One exception to those privacy rights, and the general prohibition against disclosure of account-holder information, however, is for emergency situations "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay." 18 U.S.C. § 2702(b)-(c).

As noted in the original Motion to Suppress Evidence Seized from Payton Gendron's Facebook Account, law enforcement served an EDR on Facebook hours after he was taken into custody. The new discovery disclosures suggest the EDR was sent upwards of seven hours after he was taken into custody. Without a copy of the EDR, we cannot know the extent of law enforcement's misrepresentations to Facebook, but it is clear that, by that time, law enforcement had no basis to believe there was an ongoing emergency involving "danger of death or serious physical injury" that "require[d] disclosure without delay." 18 U.S.C. § 2702(b)-(c). Payton Gendron was in jail, and there was no evidence to suggest that there were any additional suspects involved in the shooting, much less any that were creating any ongoing danger or emergency.

In response to the EDR, Facebook provided, not simply subscriber information, but also the "Activity Log" for Payton Gendron's account. As represented by Facebook, an Activity Log is a place where a user can review and manage all of their Facebook activity. A user's Activity Log is a private section of a user's profile than only the user can view.[2] In 2012, Facebook added a new feature that lets users see a history of everything they have searched for on the platform. That search history remains in the private section of a user's profile.[3] Thus, Facebook disclosed

---

[2] *See* https://www.facebook.com/help/256333951065527/?helpref=search&query=activity%20log&search_session_id=455931b27d19f52972925431582d4b61&sr=3, last accessed July 30, 2025.
[3] *See* https://www.theverge.com/2012/9/21/3369878/facebook-saves-your-searches-activity-log, last accessed July 30, 2025.

content data in response to the EDR that was clearly covered by the Fourth Amendment. *See, e.g., United States v. Bledsoe*, 630 F. Supp. 3d 1, 18 (D.D.C. 2022) (finding the "weight of persuasive authority hold[s] that non-public content held on social media accounts is protected under the Fourth Amendment" and collecting cases). Stated another way, "[i]t cannot be the rule that the government can access someone's personal [data] without meeting the warrant requirement or one of the Supreme Court's delineated exceptions to it. The judiciary would not allow such a trespass upon privacy at its core." *United States v. Zelaya-Veliz*, 94 F.4th 321, 333–34 (4th Cir. 2024).

This is true despite the fact that the communications are made through and stored by third parties. Indeed, the Supreme Court in *Carpenter v. United States*, 585 U.S. 296 (2018)—addressing location data held by third-party carriers—rejected the applicability of the so-called "third-party doctrine" as it relates to such private information: "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, "what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id*. at 310 (citing *Katz v. United States*, 389 U.S. 347, 351-352 (1967)).

Because law enforcement obtained confidential content from Facebook without a warrant, and in violation of the SCA, law enforcement violated Payton Gendron's Fourth Amendment rights. Accordingly, the information produced by Facebook in response to the EDR—and all information that derived from that response—should be suppressed.

### III. Facebook Acted as an Instrument or Agent of Law Enforcement in Conducting the Search for Private Content Data.

The government's Response claims that Facebook made an "independent decision to disclose information" pursuant to the SCA, and thus the Court should not punish law enforcement for Facebook's decision that the statute was satisfied. First, as noted, the

5

government does not dispute the claim in the initial Motion that the EDR was invalid in the first instance, i.e., that law enforcement had no basis on which to represent that an ongoing emergency existed. Second, this analysis ignores the firmly established principle that the Fourth Amendment protects against unreasonable searches and seizures by government officials and by private entities acting as instruments or agents of the government. *See, e.g., United States v. Bennett,* 709 F.2d 803, 805 (2d Cir. 1983); *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003); *United States v. Feffer,* 831 F.2d 734, 739 (7th Cir. 1987).

Here, Facebook was acting at the behest of law enforcement. Law enforcement is required to make affirmative representations regarding the existence of an "emergency involving danger of death or serious physical injury to a person, necessitating disclosure without delay," before Facebook will disclose its users' private data. Facebook necessarily relies on the representations of law enforcement when making that assessment. It is perverse to suggest that where law enforcement misrepresents that an emergency exists, it is nonetheless allowed to rely on Facebook's trust in those affirmations to justify an illegal warrantless search conducted at their behest. It is therefore quite wrong to suggest that there is "nothing to deter by suppressing evidence" in such a situation. ECF 420 at 8. To the contrary, a rule that precluded suppression as a remedy would allow law enforcement to fabricate emergencies and misrepresent information to ISPs with impunity.

> IV. **The Subsequent Search Warrant Based on Information Provided in the EDR Response Must Also Be Suppressed as Fruit of the Poisonous Tree**

When evidence is obtained in violation of the Fourth Amendment, not only that evidence but also any additional items that are obtained as a result of the violation must be suppressed as the fruit of the poisonous tree. *See e.g. Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (evidence obtained by "exploitation of [] illegality" must be suppressed); *Murray v. United*

*States*, 487 U.S. 533, 536-37 (1988) (emphasizing that evidence is tainted when it is the direct "or indirect result of [an] unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint.") (emphasis added). The Facebook search warrant, and the data seized by the government pursuant thereto, were obtained as a direct result of the Fourth Amendment violation that was committed by law enforcement when they submitted the illegal EDR. The fruits of the warrant must therefore be suppressed on this ground, also.

## CONCLUSION

For all the reasons outlined herein and in the original motion to suppress, Defendant, Payton Gendron, respectfully requests that his Motion to Suppress Evidence Seized from his Facebook Account through the invalid EDR, and all fruits thereof be suppressed.

Dated:  July 31, 2025
        Buffalo, New York

                                                *s/Sonya A. Zoghlin*
                                                Sonya A. Zoghlin
                                                Assistant Federal Public Defender

                                                *s/MaryBeth Covert*
                                                MaryBeth Covert
                                                Senior Litigator

                                                *s/Julie Brain*
                                                Julie Brain
                                                Attorney at Law

                                                *s/Theresa M. Duncan*
                                                Theresa M. Duncan
                                                Law Office of Theresa M. Duncan