UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                           22-CR-109 (LJV)

PAYTON GENDRON,

           Defendant.
_____

## REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPLE ICLOUD ACCOUNT

Payton Gendron, by and through his attorneys, respectfully submits this Reply to the Government's Consolidated Response in Opposition to Defendant's Motions to Suppress, ECF No. 435, which responds to his Motion to Suppress Evidence Seized from Apple iCloud Account, ECF No. 399.

I.      **The Application for the iCloud Warrant was Based in Part Upon Information Illegally Obtained Using an Emergency Disclosure Request That Violated the Secure Communications Act.**

As set forth in the Motion, ECF No. 399 at 13-15, on May 15, 2022, law enforcement improperly used an Emergency Disclosure Request ("EDR") to demand the production of data from Apple regarding Payton Gendron's iCloud account, in violation of 18 U.S.C. § 2702(b)(8). By the time that the EDR was submitted, Payton Gendron had already been in custody for almost 30 hours, and law enforcement had no basis upon which to believe or certify that that "an emergency involving danger of death or serious physical injury to any person require[d] disclosure without delay." *Id.*

In its Response on this point, the government does not dispute that the EDR lacked a legitimate factual basis. Rather, it avers that "there is no suppression remedy for an improperly-

issued emergency disclosure request." ECF No. 435 at 69-70. However, the absence of a separate remedy under the SCA in no way affects the availability of suppression of material obtained through the use of a search warrant that independently violated the Fourth Amendment because it was based on illegally procured information. Because the subsequent warrant application that law enforcement submitted to search the entire iCloud was based in part on the information illegally procured using the EDR, when assessing the sufficiency of the probable cause established therein, the Court must "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Reilly*, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996); *see also United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).

The government also attempts to deflect responsibility by arguing that "Apple concluded, in its judgment, that § 2702 was satisfied" and that it somehow determined independently that disclosure of Payton Gendron's information was appropriate. ECF 435 at 70, n.24. While it is true that the SCA regulates internet service providers ("ISPs") insofar as it requires those ISPs to make a determination about whether an emergency disclosure is appropriate under the SCA's standard, the ISP can only make that determination based on the information law enforcement provides to it. Apple's EDR request form explicitly says as much by requiring the requesting government official to certify that all of the information entered into the form is "true and correct." Thus, Apple could not, and did not, make an independent decision that disclosure was appropriate. It simply took the information the government provided at face value, understandably relying on the government's baseless assurances there was in fact an ongoing emergency.

**II.    The Court Should Suppress Evidence Seized From Payton Gendron's iCloud Account Because There is Insufficient Nexus Between the Account and the Alleged Criminal Activity.**

As explained in the Motion, ECF No. 399 at 10-13, 15-18, the evidence seized pursuant to the iCloud account warrant must be suppressed because the warrant application failed to establish probable cause to believe that evidence of the shooting at Tops Market on May 14, 2022, would be found in Payton Gendron's iCloud account. In its Response, the government asserts that that the search of the iCloud account was simply an alternate means for law enforcement to access the contents of Payton Gendron's iPhone. *See* ECF No. 435 at 71 (stating that "in SA Dlugokinski's training and experience, users of iPhone devices . . . often backup data from the devices to iCloud'") (internal quotations omitted). It therefore argues the existence of a sufficient nexus to justify issuance of a warrant for the iCloud account on the same grounds that it argued there was a sufficient nexus to justify the issuance of a warrant for the iPhone itself. *Id.* at 71-74; *see* ECF No. 420 at 26-33. Accordingly, to avoid unnecessary duplication, Payton Gendron incorporates by reference herein the relevant portion of his Reply to the government's Response, ECF No. 436 at 3-5, as if fully set forth herein.

In addition, the recent decision by the Hon. Jed S. Rakoff in *United States v. Banyan*, __ F. Supp. 3d __, 2025 WL 1922025, at * 3 (S.D.N.Y. 2025), notes the important nexus requirement: "Under the Fourth Amendment, 'a search warrant must, *inter alia*, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched.'" *Id.* (quoting *United States v. Weigand*, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020)). "Probable cause 'does not demand hard certainties, but it does require more than a hunch.'" *Id.* (quoting *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023)).

Probable cause also requires more than just generic assertions about how criminals supposedly act based on the alleged expertise of the officer applying for the warrant. In *Banyan*, Judge Rakoff addressed this rule, too: "[G]eneralized assertions, based on unspecified aspects of [an officer's] training and experience, are plainly insufficient, without any other factual nexus, to establish probable cause." *Id.* at *5 (internal quotations omitted). Accordingly, he found an absence of probable cause where the affidavit was "missing case-specific evidence establishing a nexus between the charged crime and [the defendant's] cellphone." *Id; see also United States v. Silva*, __ F.4th __ 2025 WL 2078339, at *5-6 (2d Cir. July 24, 2025) (noting that probable cause may be established when "the law-enforcement affiant point[s] not only to personal expertise tending to bolster a claim of knowledge evidence might be found in a particular location, but also to other particular corroborating factual allegations linking the alleged crimes to the place to be searched" and finding agent's opinion based on familiarity with how gang members use cellphones sufficient because, "crucially," it was accompanied by case-specific allegations about defendant's pattern of racketeering activity with Dub City gang).

### III. Evidence Seized From Payton Gendron's iCloud Account Must be Suppressed Because the Warrant Was Unconstitutionally Overbroad

The iCloud warrant was unconstitutionally overbroad as to the scope of the authorized search and as to the data that could be seized, both of which extended far beyond any conceivable probable cause established by the warrant application.

### A. The Warrant Was Overbroad as to the Data That Could Be Searched

Even if one assumes that the affidavit in support of the iCloud search warrant supplied probable cause to search some aspect of the account, at most it could only support a search of the portion of the iCloud backups of the iPhone that contained web browsing data. And the search would have been required to have been limited to web browsing data from the time period for

which there was probable cause to believe that searches related to the planning and execution of the May 14, 2022, shooting may have been conducted. *See* ECF No. 399 at 18-21. Under no possible interpretation of the requirements of the Warrants Clause could a search of the entire iCloud account, from emails to text and voice messages to video game purchases, have been validly authorized. And yet, as the government properly concedes, the warrant "directed Apple to provide the entire contents of the defendant's Apple account" for review by law enforcement. ECF No. 435 at 76.

Once again, the government defends the overbreadth of iCloud warrant as to the data it permitted law enforcement to search on the same grounds that it defends the same defect in the iPhone warrant, and thus to avoid unnecessary duplication, Payton Gendron incorporates by reference herein the relevant portion of his Reply to the government's Response, ECF No. 436 at 12-15, as if fully set forth herein.

The warrant was also overbroad because it contained no temporal limitation that confined the authorized search to data that was likely to contain relevant evidence. In its Response, the government attempts to defend the complete absence of any time limitation in the warrant. *See* ECF 435 at 75-76.  Its principal argument is that, because law enforcement wanted to search the account for evidence of Payton Gendron's expression of racist beliefs, and because they lacked evidence to establish the time period in which he may have expressed racist beliefs, they should be permitted to search the entire account from its inception to see if it contained evidence anywhere within it of his expression of racist beliefs. *Id.*

The government has it exactly backwards. If law enforcement wish to obtain a search warrant, they must first put forth evidence establishing probable cause to believe that the evidence they seek will be found within the property in question. If probable cause exists to

believe that there might be relevant evidence of racist beliefs in data from a particular time

period, law enforcement can get a warrant to search data from that period. If that probable cause

is lacking, the warrant may not issue and the search cannot be conducted. The solution is not, as

the government would have it, to disregard the Fourth Amendment and allow law enforcement to

search whatever data happens to be available in the hope that something useful turns up. A

version of the government's argument was raised and rejected in *United States v. Burns*, 235

A.3d 758 (D.C. 2020):

> The government also contends, as a matter of policy, that the warrant's
> extraordinary breadth was justified by the police department's need for leads in
> the investigation and Detective Littlejohn's view of [the defendant's] phones as 'a
> promising avenue for insight into how and why [the decedent] had been killed.'
> This argument must be rejected. **A law enforcement officer's interest in**
> discovering leads or otherwise **furthering his investigation, no matter how**
> **understandable in the circumstances, is never an acceptable substitute for the**
> **constitutionally required showing of probable cause** that must be made before
> a search warrant may be issued. Police might often believe that data on a smart
> phone could shed light on the way a crime was committed or 'help identify
> potential witnesses, suspects and confederates yet unknown,' as the affidavits here
> surmised. But without a proper showing of probable cause, a search warrant is not
> available as a general investigative tool for law enforcement.

*Id.* at 777.

As noted in the Motion, Payton Gendron's iCloud account was opened in 2017, when he

was 13 years old. *See* ECF No. 399 at 20. Unquestionably, the police lacked any conceivable

basis to believe that he espoused bigoted beliefs at that age, much less that he was planning the

shooting that would occur at the Tops Market on May 14, 2022, more than five years later. At the

very earliest, information described in the search warrant affidavit suggested that Payton

Gendron may have begun to formulate a plan for the attack in January, 2022. Thus, setting aside

its other deficiencies, including that expression of racist beliefs is not evidence of a crime, the

warrant should have confined the authorized search of iCloud web browser data to the period between January and May 14, 2022. It failed to do so.

In its Response, *see* ECF No. 435 at 76-87, the government relies upon *In re Warrant for All Content and Other Information Associated with Email Acct. xxxxxxx@gmail.com Maintained at Premises Controlled by Google*, 33 F. Supp. 3d 386 (S.D.N.Y. 2014), as authority for its argument that the warrant's grant of access to Payton Gendron's entire iCloud account did not render it overbroad. Review of that opinion, however, reveals that it fails to support the government's position.

First, the warrant in that case sought access only to a single category of data maintained by Google, namely the content of emails sent and received by the subject of the investigation. *Id.* at 388. The court approved the warrant based on its finding that the application "provide[d] probable cause to believe that the target of the Government's investigation ha[d] been using the subject email account to engage in" the suspected criminal conspiracy and "also provide[d] probable cause to believe that emails and other information in that account will provide evidence of those criminal activities." *Id.* The court was not therefore faced with a warrant that, as here, authorized the search of categories of data, such as text messages, photos, contact lists or location information, that extended well beyond any probable cause established by the application.

The court did approve the warrant's demand that Google produce all emails in the account, even though there was not probable cause to believe that the account consisted exclusively of emails that constituted evidence of the specified criminal activity. *Id.* at 395-96. It did so for pragmatic reasons, finding that the alternative of requiring the email service provider to sift through the account to locate and produce only relevant content unworkable. *Id.* at 393-95.

In so doing, however, the court specifically noted that, in an appropriate case, narrowing the information to be produced "in a manner devoid of the exercise of skill or discretion," such as directing production of emails only "from a specific time period," may be appropriate. *Id.* at 394. The case thus underscores the proposition that a warrant that may direct production only of categories of data for which probable cause exists and should exclude readily separable data for which none has been shown; otherwise, it is overbroad.

### B.  The Warrant Was Facially Invalid Because it was Overbroad as to the Data That Could Be Seized

With respect to the overbreadth of the authorized seizures, the government begins by asserting that "the warrant's 'description of the objects to be seized' was comfortably 'justified by the probable cause upon which the warrant is based.'" ECF No. 435 at 78 (quoting *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013)). That is, of course, what is required by the Fourth Amendment. However, in this case it is simply not true. The warrant application established probable cause to believe that a mass shooting occurred at the Tops Market on May 14, 2022, and that Payton Gendron committed it. It did not even attempt to establish probable cause for any other crime and the government does not suggest that it does.[1] Once again, the

---

[1] The government does state that the premise "that probable cause is limited to the shooting at the Tops Market on May 14, 2022," is incorrect. ECF No. 435at 79 However, it then proceeds to discuss only the racial motivation for the shooting, and some slogans written on the gun used during the shooting. *Id.* It therefore appears that the government does not – and indeed could not – truly dispute the premise that probable cause was shown only for the May 14 attack. Rather, its point seems to be that the probable cause showing included the bias-motivation element of the offense, a fact that, as it acknowledges, the defense does not contest. *Id.* at 79.

The government's argument in essence is that probable cause as to the bias motivation for the shooting entitled law enforcement to search for and seize any evidence of beliefs, thoughts or expressions of animus by Payton Gendron about any racial or ethnic group whatsoever, at any time, even though unconnected to the planning or commission of the offense. For the reasons stated in the Motion and above, this assertion is contrary to law and must be rejected.

government defends the overbreadth of iCloud warrant as to the data it permitted law enforcement to seize on the same grounds that it defends the same defect in the iPhone warrant, and thus to avoid unnecessary duplication, Payton Gendron incorporates by reference herein the relevant portion of his Reply to the government's Response, ECF No. 436 at 15-19, as if fully set forth herein

### IV.   The Warrant Was Facially Invalid Because it was Insufficiently Particular Regarding the Data That Could Be Seized

"To satisfy the Fourth Amendment's particularity requirement, a warrant must: (1) 'identify the specific offense for which the police have established probable cause;' (2) 'describe the place to be searched;' and (3) 'specify the items to be seized by their relation to designated crimes.'"  *United States v. Motovich*, 21-CR-497-WFK, 2024 WL 2943960, at *9 (E.D.N.Y. 2024) (quoting *Galpin*, 720 F.3d. at 445-46). As set forth in the Motion, *see* ECF 399 at 23-26, the iCloud warrant satisfies none of the particularity requirements. First, it fails to identify the only specific offense for which probable cause was even arguably established, namely the shooting at the Tops Market on May 14, 2022, instead extending to *any* violation of 18 U.S.C. § 249 or *any* violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1).

In its Response on this point, the government declines to address any of the extensive authority cited by the defense establishing that reference only to broad criminal statutes that can be violated in innumerable different ways is insufficient to satisfy the first particularity requirement. *See* ECF 399 at 24-25. *See also Winn,* 79 F. Supp. 3d at 921 (noting that "'[a]n unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant'") (quoting *United States v. Leary,* 846 F.2d 592, 602 (10th Cir. 1988)) (citing *United States v. Spilotro,* 800 F. 2d 959, 965 (9th Cir. 1986); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980); *Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009)). It again argues that "the

premise that probable cause is limited to the shooting at the Tops Market on May 14, 2022" is incorrect. ECF No. 435 at 81. Again, its argument is not that probable cause for any criminal activity other than the shooting was established, but rather that probable cause as to the bias motivation for the shooting entitled law enforcement to search for and seize any evidence of beliefs, thoughts or expressions of animus by Payton Gendron about any racial or ethnic group whatsoever, at any time, even though unconnected to the planning or commission of the offense. For the reasons stated above, this contention should be rejected.

The fact that the government can make that argument based on the terms of the warrant provision underscores its fatal lack of particularity. As discussed in the Motion, to satisfy the particularity requirement a warrant must specify the items to be seized so as to "permit the rational exercise of judgement by the executing officers in selecting what items to seize," and distinguish between items that are evidence of the crime under investigation and those that are not. *See* ECF No. 399 at 2324 (quoting *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000)). The 15 vague and ambiguous descriptions of material listed in Attachment B.II. would fail to perform that function even if the warrant had also been properly limited to evidence of the planning and execution of the May 14, 2022, shooting at Tops Market that was the only crime for which probable cause could have been established. To avoid unnecessary duplication, Payton Gendron incorporates by reference the relevant portion of his Reply to the government's Response to the iPhone Motion, ECF No. 436 at 5-11, as if fully set forth herein.

V.    **The Good Faith Exception Should Not Excuse the Government's Fourth Amendment Violations**

The government argues that Judge Schroeder's decisions to issue the various warrants in this case despite their facial deficiencies should excuse any Fourth Amendment violations caused as a result of law enforcement's good faith reliance on his determinations that the warrants

passed constitutional muster. There are four circumstances in which the good-faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Wey*, 256 F. Supp. 3d at 395 (quoting *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015)). Here, two of these circumstances defeat the exception.

First, the warrants were "so lacking in indicia of probable cause" that no government agent reasonably could have relied on them. As explained above, the evidence was insufficient to establish probable cause to believe that evidence of the May 14, 2022, shooting would be found in Payton Gendron's iCloud account. As the court held in *United States v. Garcia,* No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *13 (D. Conn. July 28, 2023), "given that this warrant was not supported by probable cause, was not sufficiently particularized, and was extraordinarily overbroad, the Court finds that the warrant was so defective that the detectives had no objectively reasonable basis for relying upon it." *See also United States v. Harvey,* No. 21-CR-335 (SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022) ("Considering [the warrant's] lack of temporal limitation, combined with the questionable existence of probable cause, the Social Media Warrant appeared to authorize precisely the type of exploratory rummaging the Fourth Amendment protects against").

Second, the warrants were so facially unparticularized and overbroad that reliance on them was objectively unreasonable. The warrants authorized the seizure of exceedingly broad categories of information, most of which permitted the seizure of information that had nothing to do with the May 14, 2022, shooting, and none of which was temporally limited. *Wey*, 156 F.

Supp. 3d at 398 (refusing to apply the good-faith exception where the warrant "authorize[d] the seizure of multiple expansive categories of records . . . without any meaningful linkage to the suspected criminal conduct."). In *Wey*, the court held that "[w]hen, as here, a warrant plainly fails to comport with well-settled particularity requirements, officers' reliance upon it—especially in the absence of a credible circumstance-specific explanation—can hardly be deemed objectively reasonable." 256 F. Supp. 3d at 398-99 (collecting similar cases). The same rationale should apply here. *Id.*; *Harvey*, 2022 WL 684050, at *10.

Not only was law enforcement's reliance on these facially deficient warrants objectively unreasonable, but the government itself bears culpability for applying for, and then executing, them. And that culpability should weigh heavily against the application of the good-faith exception and heavily in favor of suppression. The court in *Wey* distilled four factors from the Second Circuit's decision in *United States v. Rosa* that guided its determination that the good-faith exception could not excuse the government's reliance on facially defective warrants, and that suppression was the proper remedy. The factors are designed to answer whether "the officers' conduct in applying for or executing the Warrants [was] insufficiently culpable for suppression to carry meaningful deterrence benefits or otherwise support a finding that any such benefits would not be worth the 'price paid by the justice system.'" *Wey*, 256 F. Supp. 3d at 399 (quoting *Rosa*, 626 F.3d at 64). As the *Wey* court explained, in *Rosa*, the Second Circuit held that suppression was *not* warranted after recognizing:

> (i) that the warrant application, issuance, and execution had all occurred under intense 'time pressures' in 'the three hours from 2:00 to 5:00am' of a single morning; (ii) that the application's affiant led the execution team and was later responsible for searching recovered digital media; (iii) that there was 'no evidence that . . . [the] officers actually relied on the defective warrant, as opposed to their knowledge of the investigation and the contemplated limits of the town justice's authorization, in executing the search'; and (iv) that there was 'no evidence that

the team of officers searched for, or seized, any items that were unrelated to the crimes for which probable cause had been shown' in the application.

*Wey*, 256 F. Supp. 3d at 397 (quoting *Rosa*, 626 F.3d at 64-66) (alteration in original). In *Wey*, the court applied these factors and found that, unlike in *Rosa*, suppression *was* warranted. This Court should hold a hearing to develop a factual record related to these four factors. Ultimately, though, like in *Wey*, the *Rosa* factors weigh in favor of suppression here.

First, unlike in *Rosa*, the warrants here were not cobbled together in a few hours as a terrorist attack or other emergency was unfolding. Rather, the application was submitted the evening of May 20, 2022, six days after the shooting. Second, SA Dlugokinski, who signed the affidavit, was not the agent who conducted the responsiveness review on the return when it was produced. *Id.*  Third, the evidence here suggests that agents unreasonably relied on the defective warrants rather than their own knowledge of the investigation because, as explained above, they seized a trove of information that had nothing to do with the May 14, 2022, shooting. Fourth, and similarly, there is evidence here, unlike in *Rosa*, that "'the team of officers searched for, [and] seized . . . items that were unrelated to the crimes for which probable cause had been shown' in the application." *Wey*, 256 F. Supp. 3d at 397 (quoting *Rosa*, 626 F.3d at 65). Therefore, as the court found in *Wey*, these factors weigh against the application of the good-faith exception and in favor of suppression as the appropriate remedy.

## VI. The Execution of the Warrant Violated the Fourth Amendment in Multiple Respects

### A. Law Enforcement Seized Evidence From Payton Gendron's iCloud Account That Was Outside the Scope of the Warrant.

As set forth in the Motion, ECF No. 399 at 27-32, law enforcement unconstitutionally seized large quantities of data from the iCloud return that were outside of the scope of the seizure authorized by the warrant. Because the officers executing the warrant acted "in flagrant disregard

of the warrant's terms," the appropriate remedy is "suppression of *all* evidence seized" pursuant to the warrant. *United States v. Matias,* 836 F.2d 744, 747 (2d Cir. 1988).

 The government acknowledges, as it must, that to be reasonable, "[a] search must be confined to the terms and limitations of the warrant authorizing it." *Id. See* ECF No. 435 at 81. However, it then argues that the fact that *some* of the evidence the executing agents seized was, in its view, within the scope of the warrant, shows that this requirement was met. *Id.* Plainly, the latter does not follow from the former. Moreover, many of the examples of relevant evidence that the government cites are themselves outside of the scope of the authorized seizure, including images of firearms and racist memes with no connection to the shooting at Tops. *Id.*

 The government also argues it was permitted to information such as the thousands of messages Payton Gendron exchanged with his family members over the course of many years because it "helps confirm 'the identity of the person(s) who created or used the Apple ID'— evidence whose seizure the warrant authorizes.'" *Id.* (citing ECF No. 399, Ex. C at 3). This argument demonstrates how attenuated the use, ownership, or control category (category (p)) of seizures authorized by the warrant is from any probable cause in the application. Simply put, the minutiae and day to day details of Payton Gendron's life and that of his family members during his childhood and adolescence have nothing to do with whether he committed a mass shooting. *See United States v. Holcomb,* 132 F.4th 1118, 1128 (9th Cir. 2025) (finding a warrant overbroad because it purported to authorize the unlimited seizure of evidence that the defendant had "dominion or control" over a computer). The government's argument also demonstrates how the use, ownership, or control category could be used to justify the seizure of nearly anything. *See id.*

### B. The Government Disregarded the Requirements of the Warrant and Seized the Entire Disclosure From Apple.

As noted in the Motion, *see* ECF No. 399 at 33-34, the government has retained a complete copy of the iCloud warrant return, including all data that it concedes is outside the scope of the search warrant, not only in the files of the FBI but also as part of the trial file maintained by the prosecution team at the United States Attorney's Office. In its Response, it claims to have done so only so it could provide the complete return to the defense in discovery. *See* ECF No. 435 at 82. To do that, however, it was wholly unnecessary for it to have received and retained the data in its own working files. Government counsel could have simply directed the FBI to deliver a copy of the return to the defense on a hard drive without affording access to the material to the government trial team. Additionally, the government's claim is belied by the fact that it also furnished a complete copy of the return, including all illegally seized data, to the Erie County District Attorney's Office for its use in prosecuting Payton Gendron in New York State Court for these offenses.

If it perceived no constitutional problem with delivering a copy of the entire Apple return to the state prosecution team, it is highly unlikely that the government considered its own use of the data constrained in any way. And, indeed, the government's Response leaves unanswered many questions about the way in which the data has been reviewed and by whom. As an initial matter, it does not dispute the assertion in the Motion, *see* ECF No. 399 at 33-34, that the FBI failed to segregate or lock down the full return from the portion extracted as relevant at the conclusion of the responsiveness review, as required by the Fourth Amendment, and instead maintained it in its regular filing system. It therefore appears that the full return has remained readily accessible to law enforcement throughout the pendency of this case. Nor does it contest that the prosecution team indexed, applied Bates numbers to and filed the complete return in its

own filing system, intermingled with other discovery material and inferably with no attempt to label the material off limits to members of the team. The government's assurance that it is "aware that it may not re-search the account without a new search warrant," ECF No. 435 at 82, is thus inadequate and underscores the need for an evidentiary hearing to establish the extent to which government personnel have accessed and reviewed the non-responsive material that it possesses in violation of the Fourth Amendment.

Dated:  August 28, 2025
        Buffalo, New York

> _s/Sonya A. Zoghlin_
> Sonya A. Zoghlin
> Assistant Federal Public Defender
>
> _s/MaryBeth Covert_
> MaryBeth Covert
> Senior Litigator
>
> _s/Julie Brain_
> Julie Brain
> Attorney at Law