UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                   22-CR-109 (LJV)

PAYTON GENDRON,

        Defendant.

---

# REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE SEIZED FROM PAYTON GENDRON'S RESIDENCE

      Payton Gendron, by and through his attorneys, respectfully submits this Reply to the Government's Consolidated Response in Opposition to Defendant's Motions to Suppress, ECF No. 435, which responds to his Motion to Suppress Evidence Seized from his Residence, ECF No. 405.  In that Motion, he moved to suppress evidence because the warrant was overbroad in what it authorized agents to seize, and also because agents exceeded scope of the warrant and seized items that went far beyond what the terms permitted. In its Response, the government alleges that Payton Gendron's mother consented to the search of the home, but offers nothing contemporaneous to demonstrate what the scope of that consent entailed, nor a recognition that items seized during a warrantless entry of a home justified by consent to search, must meet the requirement that they be readily apparent as contraband or evidence of criminality. Because many of the items seized fail to satisfy that standard, the analysis does not end there.

      Additionally, the government's Response demonstrates the limitless scope of the warrant to search the residence, and supports the defense argument that the warrant was in effect a general warrant that authorized the search and seizure of broad categories of items, including those that had no conceivable use as evidence in this case.

Alternatively, the government ignores the disregard agents had for the limitations it claims the warrant placed upon what could be seized. For example, the government identifies three documents which were "plainly covered by the warrant," *see* ECF No. 435 at 52, but ignores the volume of documents seized which were clearly outside the warrant's scope, such as school homework assignments, stacks of handwritten notes (written by Payton Gendron or others), family photo albums, and bank documents, to name a few. Similarly, while claiming probable cause existed for the search and seizure of firearms and ammunition related to the events of May 14, 2022, the government conveniently overlooks that agents seized every item that had anything to do with a firearm, including gun cleaning supplies, ear protection and spent shell casings regardless of caliber or ties to the shooting on May 14.

Because either the warrant was unconstitutionally overbroad in what it authorized law enforcement to search for and seize, or the execution of the warrant violated the Fourth Amendment because the executing officers seized items that were outside of the scope of the warrant, the evidence seized must be suppressed.

### I. The Government has Failed to Demonstrate that Consent to Search the Home Authorized the Seizure of Evidence Unrelated to the Shooting

The government, in support of the claim that "the defendant's mother consented to a search of [the residence]," cites to the grand jury testimony of Pamela Gendron taken after the execution of the search warrant. *See* ECF No. 435, Exhibit D ("Q. "You consented to the search of your home even though they later got a search warrant anyway, correct? A: That's right."). This alleged consent was not reduced to writing, and the government offers no evidence demonstrating what areas of the home law enforcement sought consent to search or for what purpose consent was given. Oddly, the contemporaneous recording of law enforcement's hours long interview with Pamela Gendron on May 14, 2022, captures no request for consent to search

the home and, instead, demonstrates that law enforcement, on more than one occasion, affirmatively represented that their next step was to seek a search warrant so that "we are going by the book here." And, in affirmations made in support of requests for further search warrants following the execution of the warrant for the residence, law enforcement represented that the premises were searched *pursuant to a search warrant* – saying nothing about consent whatsoever. *See e.g.* ECF No. 380, Ex. A. at ¶¶ 38-39.

Even if consent to search a defendant's home was given by a parent, a factual finding which requires an evidentiary hearing to establish, consent to search does not authorize the seizure of items which are not readily apparent as contraband or evidence of criminality. *See Soldal v. Cook County, Ill*. 506 U.S. 56, 66 (1992); *United States v. Hernandez*, No. CR 00-06, (JTE), 2001 WL 1344832, *14 (W.D.N.Y. 2001) ("The 'plain view' doctrine will justify a warrantless seizure of incriminating evidence and contraband provided the officer's initial intrusion was lawful, such that the officer can be justify being in a position to make the discovery, and that the officer must have a reasonable belief that the item seized is evidence of a crime."). Because law enforcement seized evidence that has no connection to the shooting on May 14, 2022, the government cannot rely on consent for the seizure of all of the items collected on that search.

II. **The Warrant Was Facially Invalid Because it was Overbroad as to the Items that Could be Seized.**

The Second Circuit has held that a warrant must not just "identify the specific offense for which the police have established probable cause," and "describe the place to be searched," it must also "specify the items to be seized *by their relation to designated crimes*." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (emphasis added). To be clear, the warrant

application established probable cause to believe that a mass shooting occurred at the Tops Market on May 14, 2022, and that Payton Gendron committed it. See ECF No. 405 at 7.

The government in its Response seems to suggest that the categories of information to be seized were limited by the introductory paragraph in Attachment B, which says: "Items of evidence of violations of Title 18, United States Code, Section 249 (hate crime acts), and Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 924(j)(1) (discharge of a firearm causing death in furtherance of a crime of violence), those violations involving Payton Gendron, and occurring on or around May 14, 2022, including" the 19 categories that follow. ECF No. 435 at 49 (quoting the introductory language). Second, the government argues that each of the 19 categories of items which follow are limited to items that are "tied to the defendant's planning, motive and execution of his attack." ECF No. 435 at 50.

With respect to the introductory sentence, the government confuses the issue and misconstrues the plain text of that sentence. Just because the introductory sentence in Attachment B "identifie[d] the specific offense[s] for which the police ha[d] established probable cause", does not mean that the warrant adequately "specif[ied] the items to be seized by their relation to designated crimes. *Galpin*, 720 F.3d at 446. And in fact, they did not.

For example, because Payton Gendron used a rifle to commit the attack, and his manifesto discussed the pros and cons of different firearm components, the government suggests executing officers were "justified [in seizing] evidence such as firearms [and] ammunition." ECF No. 435 at 50. What the government ignores is that, absent a limitation to the crime of May 14th, the warrant authorized the seizure of *every* piece of ammunition or firearm accessory, regardless of whether or not it had any connection to the crime for which there was probable cause.

Similarly, when the warrant authorized the seizure of any record or communication Payton Gendron had ever sent intimidating or threatening another person (category (f)), the warrant did not make clear that those messages or communications needed to have been related to the May 14, 2022, shooting. Instead, the warrant reads as authorizing the seizure of any threat or intimidating communication whatsoever—whether to a family member or a classmate or anyone else. The same is true with respect to the gun-related categories (a), (m), (n), and (o)). Those categories purport to authorize the seizure of *any* information related to possession of (catetory (a), "obtaining" (category (l)), "acquiring, transferring, using, and/or possessing" (category (m)), or "manufacturing" (category (n)) firearms, ammunition, and accessories. ECF No. 405 at 48. But none of those categories is tailored to firearms/accessories related to the May 14, 2022, shooting. Rather, they purport to authorize the seizure of nearly *any* information/item related to firearms contained within the residence.

The introductory sentence leaves the decision of what consitututes "evidence" of the offenses under investigation to the discretion of the searching agents. And then, having armed them with that discretion, lists 19 broad categories of information purport to authorize the seizure of information that stretches far beyond "evidence" that Payton Gendron committed the May 14, 2022 shooting (like, for example, a family photo album, or, hypothetically, a threatening text message sent to a classmate many years ago).

Additionally, the plain text of the introductory sentence makes clear that it is not intended to tailor the scope of the 19 categories to the May 14, 2022, shooting. The sentence says that the warrant authorizes the seizure of: "Items of evidence of violations of Title 18, United States Code, Section 249 (hate crime acts), and Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 924(j)(1) (discharge of a firearm causing death in furtherance of a crime of violence), those

5

violations involving Payton Gendron, and occurring on or around May 14, 2022, *including*" the 19 categories that follow. *Id*. (emphasis added). Thus, the sentence does not limit the scope of the 19 categories of information related to the May 14, 2022, shooting. Rather, it is simply an introduction to 19 examples of the kinds of evidence the government intended to authorize agents to seize as evidence of that shooting.

The government's second argument is equally unavailing. The government contends the categories of items that could be seized are all related to the probable cause contained in the search warrant affidavit and it cites to examples related to firearms/components, racial bias and other mass shootings, as evidence that all of the categories are all "tied to the defendant's planning, motive, and execution of his attack." ECF No. 435 at 50. That might be the government's interpretation of the warrant, but the warrant was not so limited. That is what category (b) authorized agents to seize: "[a]ny records, stored content, communications, messages and information relating to the motivation, planning and/or execution of the May 14, 2022 mass shooting at Tops Friendly Market, located at Jefferson Avenue, Buffalo, New York." ECF No. 405 at 48. Indeed, the defense acknowledged in its Motion that "[h]ad the warrant been limited to Attachment B.b. and q. ("computers or storage media used as a means to commit the violations,"), it might have passed constitutional muster. But instead the warrant added an additional 17 categories of information, some of which – like those that encompass nearly anything related to firearms, or any information about threats or intimidation, or any information about hostility toward social justice or political protests – stretch far beyond the motivation, planning, preparation, or execution of the May 14, 2022, shooting.

The government ignores the categories of evidence the warrant authorized to be seized that were entirely unlimited by the offense for which there was probable cause, and those

categories that plainly encompass activity or content that is not inherently criminal or may be constitutionally protected, such as the broad category of any "firearms, ammunition, firearm accessories and body armor." "A warrant that comports with the Fourth Amendment's particularity requirements may nevertheless be overbroad where the 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *Id.* (quoting *Galpin*, 720 F.3d at 446).

The Search Warrant for the residence failed to specify the items to be seized by their relation to the offense for which agents had purportedly established probable cause—i.e. the May 14, 2022, shooting. Therefore, the items seized pursuant to this Search Warrant should be suppressed because the Warrant was overbroad.

### III. Law Enforcement Seized Evidence From Payton Gendron's Residence that That Was Outside the Scope of the Warrant.

As set forth in the Motion, ECF No. 405, law enforcement unconstitutionally seized large quantities of evidence from the home that was outside of the scope of the seizure authorized by the warrant. Because the officers executing the warrant acted "in flagrant disregard of the warrant's terms," the appropriate remedy is "suppression of *all* evidence seized" pursuant to the warrant. *United States v. Matias,* 836 F.2d 744, 747 (2d Cir. 1988).

The government's efforts to defend its broad-based seizures of evidence from Payton Gendron's residence reveal the warrants' overbreadth. As the government demonstrates, those categories can be, and were, used to justify the seizure of materials that have nothing to do with the May 14, 2022, shooting. While the government identifies three pieces of evidence which it says were relevant to the investigation – a map and two notes – it ignores the volume of hand written notes, pictures and other documents, such as bank documents, it also seized that had no

7

connection whatsoever to the shooting. The same is true for the seizure of firearms related materials and electronics. Every scrap of spent shell casing, ammunition and cleaning supplies were seized despite there being no connection to the shooting. And, as referenced in the original Motion, law enforcement swept up 48 different electronic devices with no basis to say they were "used as a means to commit" the shooting. The government hides behind the broad terms of the warrant in suggesting they were authorized to seize every single electronic device from the home, while simultaneously arguing the warrant was limited by the crimes for which there was probable cause. In short, the government cannot have it both ways. Either the warrant was overbroad in allowing law enforcement to seize items wholly unconnected to the May 14th shooting, or the warrant was limited by the probable cause that existed for that shooting but law enforcement exceeded its scope when they seized items completely unrelated to that crime.

"Executing agents are considered to have 'flagrantly disregarded' the warrant's terms where '(1) they effect a widespread seizure of items that were not within the scope of the warrant and (2) do not act in good faith.'" *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 309 (S.D.N.Y. 2018) (quoting *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000)). The seizure voluminous individual items that were outside the scope of the warrant was, by any measure, a "widespread" unlawful seizure.

### IV. The Good Faith Exception Should Not Excuse the Government's Fourth Amendment Violations

The government argues that the Magistrate Judge's decision to issue the various warrants in this case despite their facial deficiencies should excuse any Fourth Amendment violations caused as a result of law enforcement's good faith reliance on the determinations that the warrants passed constitutional muster. There are four circumstances in which the good-faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2)

where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Wey*, 256 F. Supp. 3d 355, 395 (S.D.N.Y. 2017) (quoting *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015)). Here, the last of these circumstances defeats the exception.

The warrant for the residence was so facially overbroad that reliance on it was objectively unreasonable. It authorized the seizure of exceedingly broad categories of evidence, most of which had nothing to do with the May 14, 2022, shooting. *Wey*, 156 F. Supp. 3d at 398 (refusing to apply the good-faith exception where the warrant "authorize[d] the seizure of multiple expansive categories of records . . . without any meaningful linkage to the suspected criminal conduct."); *see also United States v George*, 975 F.2d 72 (2d Cir. 1992) (the good-faith exception to the exclusionary rule did not apply to officers' reliance on the overly broad warrant).

Not only was law enforcement's reliance on this facially deficient warrant objectively unreasonable, but the government itself bears culpability for applying for, and then executing, it. And that culpability should weigh heavily against the application of the good-faith exception and heavily in favor of suppression.

## CONCLUSION

For all the reasons outlined herein and in the original motion to suppress, Defendant, Payton Gendron, respectfully requests that his Motion to Suppress Evidence Seized from his residence, and all fruits thereof be suppressed.

Dated:  August 28, 2025
       Buffalo, New York

                                  *s/Sonya A. Zoghlin*
                                  Sonya A. Zoghlin
                                  Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law

*s/Theresa M. Duncan*
Theresa M. Duncan
Law Office of Theresa M. Duncan