UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

     v.                                     22-CR-109 (LJV)

PAYTON GENDRON,

            Defendant.
_____

## DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO MODIFY PROTECTIVE ORDER

Payton Gendron, through undersigned counsel, respectfully submits this Response to the government's Motion to Modify Protective Order, (ECF No. 444). For the following reasons, the Court should deny the government's Motion.

### I.    Introduction

Nearly three years after the Court issued, at the government's urging, a Protective Order Governing Discovery that was agreed to by both parties and has been followed ever since, the government now seeks to turn the provision regarding the public disclosure of discovery material on its head, eviscerating an important safeguard provided by that Order. Its proposed "modification" to the existing Order would permit the parties to file virtually any document or other material, including crime scene photographs, video recordings, autopsy reports, social media content, and more, on the public docket without providing the opposing party or the Court with any opportunity to first review the materials and seek, or impose, appropriate redactions.

The government has failed to demonstrate good cause for any modification of the existing Protective Order, still less one that would have such drastic, prejudicial and irrevocable consequences. The existing Order, and the implementation procedure that the parties have been

1

following for three years, demonstrably permits the Court to strike the appropriate balance between the presumption of public access to judicial documents and the First Amendment interests that it serves on the one hand, and the significant countervailing interests, including the defendant's Sixth Amendment right to a fair trial, on the other. The government's Motion to Modify that Order should therefore be denied.

## II.    Facts and Procedural History

Shortly after Payton Gendron was arraigned on the instant federal indictment (ECF No. 6) on July 18, 2022, and as a precondition to providing discovery material to the defense,[1] the government sought the issuance of a broad protective order prohibiting the disclosure of any of this material outside the defense team (both state and federal). The terms of this proposed order were negotiated between the parties, resulting in the government's unopposed Motion for Protective Order Governing Discovery (ECF No. 25). In support of this Motion, the government asserted the following:

> The proposed Protective Order would serve three important interests. First, it would protect the privacy interest of, among others, family members of the deceased, survivors of the attack, and eyewitnesses to the attack. Second, it would ensure that both the defendant and the government receive a fair trial. Third, it would allow the parties in the federal case to share and discuss discovery materials with the prosecution and defense teams working on the parallel state case arising from the same events.

*Id.* at 3.

---

[1]According to the government, "[t]he discovery materials in this case are voluminous and far exceeds what is required under federal law. It comes in various formats and includes sensitive, graphic, and private material. Many of the discovery materials and documents include personally identifiable information (PII) such as Social Security numbers, dates of birth, addresses, financial account numbers, and other personal identifiers. In addition, the discovery materials contain video recordings of the crime, crime scene photographs, the defendant's social media content and writings, grand jury materials (including transcripts of grand jury testimony and records obtained through grand jury subpoenas), and other law enforcement sensitive materials." ECF No. 25 at 3.

Magistrate Judge H. Kenneth Schroeder, Jr., granted the government's Motion and issued the proposed protective order without modification on September 16, 2022. As relevant here, the protective order requires that "any discovery materials" filed with a court by either party "in connection with pre-trial motions, trial, or other matters, shall be filed under seal and shall remain sealed until otherwise ordered by the Court." ECF No. 27, ¶10. Since that time, most pre-trial motions, related material, and other documents have been filed publicly, without redactions. To the extent that some material has been redacted pursuant to the Protective Order, the parties have engaged in consultation with each other and the Court to carefully isolate those portions that require redaction and permit the remainder to be filed on the public docket.[2]

On April 28, 2023, the defense filed a Motion to Modify the Protective Order to permit the victims' families, through counsel, to retain copies of certain limited discovery material that was potentially critical to their civil litigation against, *inter alia*, social media companies and gun dealers. ECF No. 54. The request was a modest one, i.e., for the civil attorneys to be permitted to retain copies of limited categories of discovery material (consisting of forensic images of Payton Gendron's digital devices and "social media data" obtained during the investigation of this crime) for their own internal review. *Id.* at 5. The proposed modification restricted access to this material to members of the victims' legal teams who would be subject to all the additional restrictions against public disclosure contained in the Protective Order. *Id.* at 6. The government strongly opposed this Motion. ECF Nos. 57, 65, 100. In its opposition, the government emphasized that the existing Protective Order was "*mutually agreed upon.*" ECF No. 57 at 2; ECF No. 100 at 2.

---

[2]To date, there are 455 docket entries for this case on PACER, the vast majority of which are entirely public. Of the entries that are not entirely public, at least two thirds of those are unrelated to the Protective Order Governing Discovery at issue here.

By Decision and Order dated July 13, 2023, ECF No. 82, Magistrate Schroeder denied Payton Gendron's Motion to Modify the Protective Order. In response to the defense's appeal of this decision, the government argued that modifying the Protective Order, even if only to provide limited material to the civil attorneys, "would jeopardize the integrity of this prosecution." ECF No. 100 at 9. This was so, it argued, because "[t]he government has a duty to ensure that the Defendant receives a fair trial, and the government is entitled to conduct its criminal investigation without worrying that the evidence it gathers will be made public before it is appropriate to do so." *Id*. After hearing oral argument on October 2, 2023, this Court overruled the defense objection to the Magistrate's decision to deny the Motion to Modify the Protective Order. ECF No. 113 at 15 (transcript of proceedings).

Since that time, the parties have operated under the existing Protective Order and the Court has monitored that process. The Court has consistently required the parties to create redacted versions of any pleading initially filed under seal, confer with opposing counsel, and provide the Court with the redactions proposed by each side. After reviewing the proposal, the Court resolved any disagreements and filed, or the parties have filed, a redacted version of the previously sealed document on the public docket. The parties recently followed the same procedure for suppression motions, responses and replies; decisions about the proposed redactions to some of those documents remain pending with the Court.

This process is neither onerous nor ineffectual; on the contrary, it is working. The defense has consistently abided by the Protective Order and relied on it to provide relevant information to the Court and make appropriate legal arguments based on that information. Thus far, the defense has not had to choose between making fulsome applications on Payton Gendron's behalf (thereby fulfilling our obligation to provide effective assistance of capital counsel) and risking

the injection of inflammatory and potentially inadmissible evidence into the jury pool, thereby compromising our client's right to a fair trial. *See United States v. McVeigh*, 119 F.3d 806, 814 (10th Cir. 1997) (affirming district court's decision to redact substantial portions of severance motions because "[g]ranting general access to such documents would create a Hobson's choice between the need to obtain severance and the need to protect the client's interest in avoiding prejudicial pre-trial publicity). This Court should maintain that status quo.

### III.                    Legal Argument

<u>The Government Has Failed to Establish Good Cause to Amend the Protective Order it Requested.</u>

To justify the modification of a protective order governing discovery once entered, the government must demonstrate, at a minimum, the existence of good cause for the proposed amendment. *See* Fed. R. Crim. P. 16(d)(1) ("At any time the court may, *for good cause*, deny restrict or defer discovery or inspection, or grant other appropriate relief.") (emphasis added); *see also United States v. Maxwell*, No. 20-CR-330 (AJN), 2020 WL 5237334, at *1 (S.D.N.Y. Sept. 2, 2020) (noting that "[u]nder [Rule 16(d)(1)], a Court may enter a protective order only after it finds good cause exists. Within this framework, the Federal Rules of Criminal Procedure leave it to the discretion of the Court to determine whether modification of an existing protective order is warranted"). For the reasons explained below, the government's Motion falls far short of establishing good cause.

A.    *There is No Evidence That the Existing Protective Order Has Impaired the Public's Ability to Follow and Understand the Progress of This Case*

The government's claim that the redactions "have affected the public's ability to follow and understand what is happening in a case that is very important to the public," (ECF No. 444 at 2), is inaccurate and misleading. In support of this assertion, the government cites a single article

published in the Buffalo News on August 14, 2025, which noted in passing that "more than 100 documents . . . have been sealed" according to the docket. *Id*. As the government well knows, however, most of these "sealed documents" would be unaffected by the proposed modification to the Protective Order because they include *ex parte* applications and orders wholly unrelated to discovery material, and filings under seal by Court order unrelated to the Protective Order Governing Discovery, e.g., confidential material regarding the JSSA litigation (ECF Nos. 199, 217, 218, 240, 261, 310, 311, 363, 373) and proposed juror questionnaires (ECF Nos. 314, 315). That number also includes sealed versions of documents that were subsequently filed in unsealed or redacted form under a different docket number, essentially double counting each document. *See, e.g.*, ECF Nos. 242 and 243 (sealed and unsealed versions of waiver of appearance); ECF Nos. 376-381, 399-403, 404 (sealed suppression motions) and 389-394, 423-428 (unsealed/partially redacted versions of same suppression motions). Though the government highlights what it describes as "pages and pages of nothing but black boxes," (ECF No. 444 at 5), this result is clearly the exception rather than the rule and, even these documents contain extensive, unredacted portions that serve to inform the reader (and public) of the legal issues at stake. *See McVeigh,* 119 F.3d at 815 (upholding redactions and finding that "substantial portions of the documents that were made publicly available have provided the press and the public with a constitutionally sufficient opportunity to understand the decisions at issue").

Moreover, every court appearance and subsequently filed transcript has been publicly available except for one in-chambers conference regarding an attorney's private health issues, which were later explained (with her consent) in open court. This Court has repeatedly acknowledged the importance of this case to the public and has facilitated the public's ability, whether in person or by media accounts, to understand and follow the proceedings.

The extent of the redactions and occasional sealing in this case pales in comparison to the facts underlying the cases cited by the government, most of which involved far broader restrictions on public access to information about court proceedings. Indeed, several involved closing entire proceedings to the public. *See, e.g., Press-Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986) (trial court excluded public from 41-day preliminary hearing, refused request to release the transcript, and failed to consider any alternatives to complete closure); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (trial court granted defendant's request to close the trial to the public, made no findings to support closure, and failed to consider alternative solutions). Others involved circumstances plainly distinct from those presented here, e.g., where suppression motions have already been decided and a jury impaneled. *See In re New York Times Co*., 828 F.2d 110, 116 (2d Cir. 1987) (wholesale sealing of motion papers was more extensive than necessary, especially where motions had been decided and jury impaneled).

In this case, the Court has approved, not closing the courtroom or even sealing entire motions, but appropriate, limited redactions to safeguard Payton Gendron's right to a fair trial, the integrity of the law enforcement investigation, and a multitude of privacy interests. *See Woods v. Kuhlman*, 977 F.2d 74, 76 (2d Cir. 1992) (the less stringent standard of "substantial reason," rather than "overriding interest" was appropriate to determine whether a defendant's right to a public trial was violated "because a partial closure [excluding members of the defendant's family during the trial testimony of one witness] does not implicate the same secrecy and fairness concerns that a total closure does"). That is as it should be and that is what the current Protective Order provides.[3]

---

[3] "Any discovery materials that the United States…or the defense team files with a court…shall be filed under seal and shall remain sealed *until otherwise ordered by the Court*." ECF No. 27, ¶10 (emphasis added).

B.    *The First Amendment Neither Requires nor Supports the Sweeping Modification of the Existing Protective Order Proposed by the Government*

The government seeks to modify paragraph 10 of the Order it drafted and urged the Court to adopt because, it now asserts, this paragraph imposes "a one-size-fits-all approach to redactions" that is incompatible with the "presumption of access to judicial documents." ECF 444 at 2-4. The First Amendment, it argues, "requires a far more nuanced approached." *Id*. at 4. Yet, the modification the government proposes is far from "nuanced." Rather, it constitutes a wholesale abandonment of the interests the Protective Order was designed to safeguard and invites, not a vindication of First Amendment principles, but an unmonitored free-for-all that disregards any countervailing interests. Rather than suggest what the law requires, i.e., the Court's careful consideration of both the rights of public access to court proceedings and the rights of the accused to a fair trial (among other significant concerns), the government suggests the Protective Order should be modified to permit virtually any discovery material to be publicly filed, removing not only opposing counsel's opportunity to object, but the Court's ability to perform its vital role.[4]

1.    The Applicable Standards Under the First Amendment

---

[4]The discovery in this case includes (but is by no means limited to): video recordings of the crime, crime scene photographs, and autopsy reports; grand jury materials (including transcripts of grand jury testimony and records obtained through more than 100 grand jury subpoenas); a vast amount of digital data including hundreds of thousands of posts and messages (from Payton Gendron *and many other people*); hundreds of police reports; the content from dozens of digital devices; police body camera footage; recorded 911 calls; recorded witness interviews; medical records; mental health records; and school records. In addition to the Protective Order, portions of this material are protected by other statutes, e.g., the Stored Communications Act, 18 U.S.C. §2701 (SCA); the Health Insurance Portability and Accountability Act of 1996 (HIPAA); the psychologist-patient privilege, *see Jaffee v. Redmond*, 518 U.S. 1 (1996); Fed. R. Evid. 501; the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, 34 CFR Part 99.

As courts have repeatedly held, "Even when it applies . . . the First Amendment right creates only a presumptive right of access." [5] *Newsday LLC v. County of Nassau,* 730 F.3d 156, 164-165 (2d Cir. 2013) (As we have noted, "[w]hat offends the First Amendment is the attempt to [exclude the public] without sufficient justification, not the simple act of exclusion itself.") (internal citation omitted)). *See also New York Times*, 828 F.2d at 116 ("[O]ur recognition of a qualified First Amendment right of access to the motion papers filed here does not mean that the papers must automatically be disclosed. The First Amendment right of access to criminal proceedings is not absolute"); *Lugosch v. Pyramid Co*., 435 F.3d 110, 120 (2d Cir. 2005) ("A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry.").

Indeed, each of the cases cited by the government in support of its request reiterates the Court's obligation to consider the countervailing interests before rejecting a proposal to seal or redact information from public view. *See, e.g*., *New York Times Co*., 828 F.2d at 114 ("[W]here a potential future chilling effect results from the application of a qualified First Amendment right of access, the chilling effect need not be ignored. The court, in applying the balancing test mandated by the First Amendment, should give added weight to fair trial and privacy interests where requiring disclosure will have a potential chilling effect on future movants); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (recognizing that transparency must at times yield to more compelling interests); *United States v. Doe*, 63 F.3d 121, 127 (2d Cir. 1995) ("Because the right of access to criminal proceedings is not absolute, it 'may give way in certain cases to other rights

---

[5] Of course, this standard applies only to those pleadings that are properly considered "judicial documents," to which both the common law right of public access and the qualified First Amendment right of access applies. *See United States v. Greenwood*, 145 F.4th 248, 254-256 (2d Cir. 2025). As the government itself acknowledges, not all the documents filed in this case are "judicial documents." *See* ECF No. 444, n.1.

or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information.'" (quoting *Waller v. Georgia*, 467 U.S. 39, 44-45 (1984)).

To strike the proper balance between these competing interests, a trial court must weigh the potential harm that public disclosure may cause against the right of public access, consider alternative solutions, and explain its conclusion. "Proceedings may be closed and, by analogy, documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *New York Times*, 828 F.2d at 116 (internal citations omitted). Put another way, a court must determine whether "there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party which closure would prevent." *Doe*, 63 F.3d at 128 (internal citation omitted). A defendant's right to a fair trial is a compelling interest. *See Waller v. Georgia*, 467 U.S. 39, 46 ("The central aim of a criminal proceeding must be to try the accused fairly…"). Compelling interests may also include the privacy interests of defendants, victims, or others that may be harmed by disclosure; the integrity of confidential, government activities; and danger to people or property. *Doe,* 63 F.3d at 128.

As noted above, when a trial judge determines that some level of redaction or sealing is necessary, the court must set out its decision and reasoning on the record; the law, however, does not require a lengthy or detailed exposition. As the Second Circuit recently explained:

> [W]e stress that district courts need not provide granular justifications for each redaction or even each sealing, as such a requirement would place an unworkable burden on district courts. District courts are presumed to proceed in accordance with the law and to conduct individualized review of sealed and redacted materials as necessary and appropriate under the circumstances of each case. District courts need not provide line-by-line justifications for each redaction to demonstrate that they have conducted such an individualized review. A brief explanation may be enough to justify the sealing or redaction of multiple filings, as long as it demonstrates that the district court made an individualized inquiry. Indeed, in the face of a contested motion to unseal in this case, the district court's

one-sentence explanation was enough to justify the redactions in Greenwood's sentencing memorandum.

*Greenwood*, 145 F.4th at 257.[6]

        2.       The Overwhelming Media Attention and Threat to Payton
                       Gendron's Right to a Fair Trial

The Supreme Court has long recognized that "adverse publicity can endanger the ability of a defendant to receive a fair trial." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979). "To safeguard the due process rights of the accused, a trial judge has the affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Id.* The danger of inflaming and prejudicing the jury pool is particularly acute where, as here, suppression motions are pending and in limine motions have yet to be made. *See McVeigh,* 119 F.3d at 814 – 815 (upholding district court's limited redaction of suppression motion and accompanying exhibits containing "references and attachments which are not now and may never be in evidence."); *DePasquale*, 443 U.S. at 378 ("Publicity concerning pretrial suppression hearings . . . poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury.") The government's proposed modification to the Protective Order provides no opportunity for the Court to prevent this contamination of the jury pool.

---

[6] In *Greenwood*, the Second Circuit upheld the district court's approved redactions in the defendant's sentencing memorandum, which were "narrowly tailored to protect Greenwood's privacy interests, the privacy interests of the family and friends, and their safety," as well as "law enforcement interests." *Id*. at 256. The court found, however, that the wholesale sealing of 34 exhibits to the sentencing memorandum was not adequately explained or justified and that "targeted redactions may strike a better balance in serving the First Amendment right while protection the privacy interests of those affected." *Id.*

The obligation to safeguard Payton Gendron's right to a fair trial and impartial jury is particularly weighty in a capital prosecution. *See Woodson v. North Carolina*, 428 U.S. 280, 305, (1976) ("[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case"); *see also Gholson v. Estelle*, 675 F.2d 734, 737 (5th Cir.1982) ("[Death] is different from all other punitive measures in that it is the most severe and exacting disciplinary mechanism available to a society that considers itself civilized and decent. In addition, the termination of human life is the most final and decisive method for inflicting a penalty that can be conceived. It is precisely the inflexible and terminal nature of the death penalty that makes it a matter of exceeding consequence to assure that before such a condemnation is made the individual receives the full force of the protections and safeguards guaranteed by the Constitution"). For this reason, too, the Court must be the final arbiter of whether material that may unfairly tilt the scales in favor of death should be publicly filed.

Considering the enormous media attention this case has received since its inception, it is hardly speculative to assume that inflammatory material, which this Court may ultimately determine is inadmissible, irrelevant, or should otherwise be precluded,[7] will be broadcast far and wide. This case, described in the government's Motion as "one of the country's most high-profile criminal cases" (ECF No. 444 at 5), has received an extraordinary amount of media

---

[7] *See*, e.g., 18 U.S.C. §3593(c) (information may be excluded [at a sentencing hearing] if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury).

attention, both locally and well beyond. Representatives from local media attend and report on every court appearance and nearly every pleading filed.

The defense maintains that the overwhelming amount of pretrial publicity engendered by this case makes it is impossible for Payton Gendron to select a fair and impartial jury in the Western District of New York. *See* ECF No. 308 (Motion to Transfer Venue Pursuant to Federal Rule of Criminal Procedure 21 and the Fifth, Sixth, and Eighth Amendments to the United States Constitution). It its Motion, the defense summarized the extensive media coverage of this crime in this district from May 14, 2022, through March 2025, estimating that local news articles alone likely exceeded 1800 and, on average, included approximately 12.4 news articles weekly in the Buffalo media market. *See id.* at 10-18.

In this context, the government seeks carte blanche to publicly file any document (or other form of discovery material) it chooses without regard for the potential prejudice it may cause, unencumbered by the obligation to seek advance authorization from the Court.[8] The Court should reject this request as unnecessary, overbroad and irreconcilable with the constitutional principles that the government invokes in its attempt to justify it.

3.  The Government's Proposed Modification Undermines the Court's Obligation to Strike the Appropriate Balance Between Important Constitutional Interests

The government's proposal would prevent the Court from fulfilling its constitutional obligation to protect Payton Gendron's right to a fair trial, a consideration barely mentioned in its Motion to Modify the Protective Order. The Second Circuit has directly addressed this concern:

> [W]e believe that the district court must assume responsibility for the balancing required by the cases cited above. The district court has laid down a bright-line

---

[8]The only exception included in the government's proposed modification is discovery material "which identifies witness [*sic*] or victims, or which contains personally-identifying information about any person." ECF No. 444 at 6.

> rule which directs the parties to seal all quotations from tape recorded
> conversations involving third parties and allows public filing of all quotations of
> conversations involving defendants or witnesses. But, as appellants point out, this
> rule makes the government the sole arbiter of what should be publicly disclosed,
> since once a paper is publicly filed, the damage is done. This rule fails to give
> defendants the opportunity to object to the submission of certain quotations on
> privacy or fair trial grounds.

*United States v. Gerena*, 869 F.2d 82, 86 (2d Cir. 1989). Consistent with this principle, the court

modified the district court's order and directed the government to give the defendants notice and

the opportunity to object *before* using unsuppressed Title III materials in a publicly filed

memorandum or brief. *Id.* This modification, the court found, "will insure that the district court,

not the prosecutor, makes the decision as to what Title III material should be publicly disclosed."

*Id.* That is precisely what the current Protective Order permits this Court to do.

> C.    *Contrary to the Government's Contention, the Vast Majority of Discovery
>        Material is Not "Publicly Available Elsewhere."*

The government's argument that the Protective Order has required "substantial redaction

of information about the defendant's crimes that has been within the public domain for years,"

ECF No. 444 at 5, is inaccurate. To support this assertion, the government points to the Criminal

Complaint filed to initiate this prosecution, (ECF No. 1), a 12-page document, only half of which

includes the underlying facts that support the crimes charged. While this Complaint does, in

several paragraphs, refer to the so-called "manifesto" and "Discord entries," these documents are

approximately 180 and 680 pages long, respectively, and neither is easily accessible by the

general public.

There is thus no comparison between the publicly filed Criminal Complaint and the

breadth of material contained in the discovery. Nor does the disclosure of portions of the

discovery material in some quarters justify its amplification to a wider audience. To the extent

that information is in fact clearly in the public domain such that further dissemination does not

threaten Payton Gendron's right to a fair trial, the government is free to so argue under the existing procedure and to urge the Court to reject any redactions it deems unnecessary. The solution assuredly should *not* be to simply allow the public filing of virtually any discovery material with no regard whatsoever for the irreversible damage that may be wrought.

### III.    Conclusion

Based on the foregoing, the undersigned respectfully request that this Court deny the government's Motion to Modify the Protective Order and retain the current procedure under which this Court is given an opportunity to make requisite findings that safeguard Payton Gendron's Sixth Amendment right to a fair trial and to the effective assistance of counsel *before* sensitive or potentially prejudicial material is publicly disclosed.

Dated:        September 4, 2025
              Buffalo, New York


                              *s/Sonya A. Zoghlin*
                              Sonya A. Zoghlin
                              Assistant Federal Public Defender

                              *s/MaryBeth Covert*
                              MaryBeth Covert
                              Senior Litigator

                              *s/Julie Brain*
                              Julie Brain
                              Julie Brain, Attorney at Law

                              *s/Theresa M. Duncan*
                              Theresa M. Duncan
                              Law Office of Theresa M. Duncan