UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

              v.                             22-CR-109 (LJV)

PAYTON GENDRON,

              Defendant.

_____

### REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE TESTIMONY OF GOVERNMENT EXPERTS AT *ROPER* EVIDENTIARY HEARING OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

Payton Gendron, by and through his attorneys, respectfully submits this Reply to the government's Response in Opposition, submitted for sealed filing on 1/21/26, ("Resp."), to his Motion to Preclude Testimony of Government Experts at *Roper* Evidentiary Hearing or, in the Alternative, for a *Daubert* Hearing, ECF No. 510. The *Roper* evidentiary hearing ordered by this Court addresses an evolving standards question: Whether, in the 20 years since *Roper*, the science of brain development has evolved such that there is a new consensus in the community that late adolescent brains are, in the ways *Roper* defined as constitutionally significant, so like the brains of early adolescents, such that they should be categorically exempted from the death penalty. The focus of the hearing is change, and nothing proffered by the government advances that inquiry.  Instead, the government proposes simply re-litigating the categorical versus individualized assessment the Supreme Court fully addressed and rejected in *Roper*.

Therefore, this Motion raises two separate bases for preclusion: first, that the proposed testimony is irrelevant to the issue that the Court must decide and for which the hearing was granted; and second, that the proposed testimony is unreliable and fails to meet minimum

standards for admissibility under Fed. R. Evid. 702. In its Response, the government fails to establish the relevance of its evidence. It also fails to articulate any basis for concluding that the evidence is reliable, arguing instead that the Court should admit it without regard for its lack of scientific value.[1] The Motion should accordingly be granted.

I.    **TESTIMONY REGARDING WITHIN-GROUP DIFFERENCES, CHARACTERISTICS OF INDIVIDUAL ADOLESCENTS AND PURPORTED DIFFERENCES BETWEEN ADOLESCENT PERPETRATORS OF HOMICIDE VERSUS OTHER OFFENSES IS IRRELEVANT TO THE EIGHTH AMENDMENT QUESTION BEFORE THE COURT.**

The government fails to offer any basis or authority for its untenable position that Payton Gendron's crime, and the personal characteristics it ascribes to him as a function thereof, are relevant to the question to be addressed at the upcoming evidentiary hearing. As set forth in the Motion, ECF No. 510 at 2-6, in *Roper* the Supreme Court held that the Eighth Amendment categorically exempts adolescents under the age of 18 from the death penalty, without regard to the type of capital offense they committed. It did so because, in light of the scientifically established characteristics of those adolescents as a class, including their capacity for redemption and change, it is impossible for juries to identify with a constitutionally acceptable level of reliability those few who may be properly categorized as "the worst of the worst" offenders for whom the death penalty is reserved. *Id.*

---

[1] In its Response, the government asks the Court to summarily deny the Motion as untimely and accuses the defense of "la[ying] in wait" to file it. *See* Resp. at 3, n.2. The accusation is unfair. The defense sought no tactical or other advantage by filing the Motion on December 18, 2025. Rather, the delay was caused simply by the unrelenting press of other litigation and trial preparation in this case. As explained in detail in the previous pleadings, *see* ECF Nos. 303, 304, 320, 334, 360, the defense of a federal capital case is a massive undertaking that the defense team is constitutionally obligated to complete to exacting standards in less than the amount of time that professional judgment deems necessary. Given that there was no formal deadline for filing the Motion to Preclude, and that it was filed two months in advance of the scheduled hearing, counsel respectfully request that the government's request for summary denial on grounds of untimeliness be rejected.

In his Motion for an Order Categorically Exempting Payton Gendron from the Death Penalty Because He Was Eighteen Years Old at the Time of the Alleged Capital Crimes, ECF No. 182 at 3-12, Payton Gendron asserts that advances in the neuroscience of adolescent brain development in the 20 years since *Roper* was decided compel the conclusion that the rule of constitutional law announced in that case must be applied to adolescents who have attained the age of 18. The Court granted an evidentiary hearing on the factual basis of the claim, i.e., whether there is now a consensus among neuroscientists that the general characteristics of adolescents aged 17 and under cited as the basis for the *Roper* decision are also generally present in adolescents aged 18 or older. *See* Motion, ECF No. 510 at 3; Resp. at 3.

As the government's Rule 16 disclosures make clear, however, its proposed expert testimony fails to address the current neuroscientific consensus regarding the comparative functioning of 17- and 18-year-old brains. Rather, it consists of ideologically based legal and criminological opinions that the *Roper* Court was wrong when it rejected reliance upon individual differences amongst same-aged adolescents and on accusations of extremely violent homicides to deny Eighth Amendment protections.[2] *See* ECF No. 510, Ex. A at 3-7 ███

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

---

[2] It bears repeating that, as noted in the Motion, *see* ECF No. 510 at 5, n.2, the defendant in *Roper* had been convicted of the premeditated, brutal abduction and murder of a woman that he later bragged about committing.



The government's intention to rely on evidence regarding purported individual characteristics of Payton Gendron and others who commit mass homicide is further demonstrated by its Response to the defense Motion to preclude this testimony. Its vague and unsupported assertion that its experts will "broadly address developments in neuroscience" during an unspecified period is followed in the same sentence by its admission that they will "reference information particular to the defendant and the facts of this case," and "the need for individualized assessment of development and responsibility, and how studies of homicide offenders (and mass homicide offenders) may specifically inform an inquiry into criminal maturity." Resp. at 6-7.

Indeed, the government quotes the abstract of an article authored by, *inter alia*, three of the experts whose testimony it seeks to present, that is an explicit critique of the Supreme Court's decisions in *Roper* and *Miller v. Alabama*, 567 U.S. 460 (2012). *See* Resp. at 7-8 (citing Michael Welner, Matthew DeLisi, Heather M. Knous-Westfall, Carolyn C. Meltzer & James D. Seward, *Homicide and Criminal Maturity of Juvenile Offenders: A Critical Review*, 48 Am. J. of

Crim. Just. 1157 (2022)). The arguments made therein are precisely those that were considered and rejected by the Supreme Court in those cases, and they are not the subject of the hearing before this Court. Yet the government describes the abstract as "[i]n a nutshell . . . encompass[ing] the exact breadth of Dr. Welner's anticipated testimony at the upcoming hearing, as well as the other members of the Forensic Panel[3] slated to testify for the government." *Id.* at 8.

In short, the government makes no meaningful attempt to explain the relevance of its proposed testimony or otherwise address this portion of the Motion to preclude it. The Motion should therefore be granted and the testimony excluded in its entirety.

## II.    THIS COURT IS OBLIGATED TO REFUSE TO CONSIDER PURPORTED EXPERT TESTIMONY THAT FAILS TO MEET THE *DAUBERT* STANDARD.

The government similarly fails to establish that its proposed testimony meets minimum standards for admissibility under *Daubert*, urging the Court to simply dispense with the assessment of its reliability entirely. This argument, too, should be rejected.

---

[3] All of the government's experts work together as part of a consulting firm, owned by Dr. Welner, called The Forensic Panel. It employs what its members refer to as a "peer review" process. The name of the process might suggest that each expert forms an opinion and writes a report, which is then shared with other experts to review and comment on---similar to the process, as suggested by the name, employed by academics, researchers, and other scholars seeking to publish the results of their work. In fact, as found by one court assessing claims of misconduct and misrepresentations by government attorneys who retained members of the Panel, the collaboration and consultation between the Panel members start before any individual expert reaches an opinion and inform each step of the process and the ultimate conclusions of each. *See United States v. Richardson*, No. 1:08-CR-139, ECF No. 903 at 13-14, 16, (N.D. Ga. April 10, 2012). The result is, in essence, a joint paper/opinion rather than separate, individually derived opinions. *See also United States v. Shields*, No. 2:04-cr-20254-JTF, ECF No. 557 at 7, (W.D. Tenn. May 11, 2019), (describing collaboration between Dr. Welner and two other members of The Forensic Panel in reaching diagnosis and finding that "[c]ontrary to the assertion of the Government's experts that Dr. Greiffenstein's report qualifies as a 'peer reviewed' assessment, the Court finds that The Forensic Panel's use of that term is misleading and that there was no 'peer review' performed that would be consistent with the generally accepted understanding of that term.").

### a.  The Court is Free to Grant the Relief Requested.

First, the government's assertion that the *Daubert* standard should be disregarded because there is no legal relief that can be granted on the Motion, *see* Resp. at 3, is incorrect. It is, of course, the case that only the United States Supreme Court has the authority to overrule one of its own precedents. *See, e.g., United States v. Fell*, 224 F. Supp. 3d 327, 358-59 (D. Vt. 2016) (citing *State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997)). Accordingly, "[a] federal trial judge is without authority to rewrite the law so as to overrule the majority position at the Supreme Court." *Id.* at 328. However, the Court is not required to overrule the Supreme Court's decision in *Roper*, or any other case, to grant the relief requested here.

The question before the Supreme Court in *Roper* was limited to whether the Eighth Amendment requires that adolescents between the ages of 15 and 18 be categorically exempted from capital punishment because of scientifically established characteristics generally displayed by members of that age group. *See* 543 U.S. at 555-56 ("This case requires us to address . . . whether it is permissible under the Eighth and Fourteenth Amendments to the Constitution of the United States to execute a juvenile offender who was older than 15 but younger than 18 when he committed a capital crime").[4] Thus, in accordance with fundamental principles of judicial decision-making, the Court's holding was confined to that class of adolescents only. *See Roper*, 543 U.S. at 578 ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.").

Additionally, in *Roper* the Supreme Court expressly employed the "evolving standards of decency" analysis, which rests on an understanding that the country's mores evolve over time

---

[4] The petitioner was 17 years old at the time of the crime for which he was convicted and sentenced to death. *Id.* at 556.

and that a consensus, with constitutional implications, may develop that previously acceptable punishments have become disproportionate, and thus cruel and unusual within the meaning of the Eighth Amendment. *Id.* at 560-61. To reach the result in *Roper*, the Court was required to overrule its previous decision in *Stanford v. Kentucky*, 492 U.S. 361 (1989), in which it affirmatively held that the Eighth Amendment did *not* categorically exempt adolescents under the age of 18 from the death penalty. *Id.* at 574-75. Here, in contrast, this Court need only apply the holding in *Roper* to the new facts that will be developed at the upcoming hearing to determine whether, based on the current consensus amongst neuroscientists regarding adolescent brain development, individuals who have attained the age of 18 must also be categorically exempted from execution.

In other words, as explained in the defense's Reply to the government's Response to the original Motion, ECF No. 205 at 2-3, Payton Gendron's claim is not one that was addressed in *Roper.* Rather, it is that, in the 20-plus years since that decision, science has evolved and a new consensus against capital punishment for 18-year-olds has developed that requires the application of the holding in *Roper* to an additional class of individuals. His claim rests on the assertion of new facts not available to the *Roper* Court. *See United States v. Sampson,* Cr. No. 01-10384-MLW, 2015 WL 7962394 at *4 (D. Mass. Oct. 28, 2015) ("[I]f there has been a material change in facts relevant to the evolving standards [of decency] analysis—a question initially for the trial courts—an issue is not foreclosed by Supreme Court precedent because the Supreme Court has not decided the matter in dispute. Rather, the district court is deciding a distinguishable case and controversy"). It is thus well within this Court's prerogative to find those facts, apply existing Supreme Court precedent thereto and find that 18-year-olds must be categorically excluded from capital punishment.

**b. Even if the Court Were to Ultimately Decline to Grant Relief at This Stage, it Remains Obligated to Create a Meaningful and Reliable Record for Further Review.**

Even if the Court were to ultimately agree with the government that it should not grant relief on the Motion, it should first ensure an adequate factual record, including by excluding unreliable evidence, resolving factual disputes, making credibility determinations and ultimately determining the relevant facts. Faced with a challenge to the constitutionality of the entire federal death penalty, the district court in *United States v. Fell*, 224 F. Supp. 3d 327, 328-29, 357-59 (D. Vt. 2016), held that it would be up to the Supreme Court to rule on the ultimate constitutional issue in the first instance. However, the court noted, "a trial court has its own contribution to make to the debate. The court can hold a hearing and permit witnesses to testify" to resolve relevant factual issues that are, like the ones in this case, "essentially empirical." *Id.* at 329.

Nor, the court held, does "[t]he trial court's obligation . . . end with a review of the facts." *Id.* Rather, "[t]he court is required to address the legal issues raised by the parties. That resolution may be no more than an acknowledgement that the law has been settled on a particular question. Alternatively, the new factual record may require a fresh look at the manner in which existing principles are applied to a factual record which continues to develop." *Id.* Accordingly, the court held an extensive evidentiary hearing on the motion, *id.* at 329-30, made "specific findings about the subject areas addressed by the parties," *id.* at 330, and applied the current legal "standards of decency" to those facts, *id.* at 355, in an effort to properly "set[] the table for further review," *id.* at 357.

Instead of performing this core judicial function, the government proposes that the Court allow it to introduce whatever testimony it desires, without regard to its relevance or reliability, and simply pass the resulting transcripts along to the Supreme Court to sort it out on certiorari

review. *See* Resp. at 3 (stating that the Court has "no factual disputes to resolve"); *id.* at 5-6 (stating that "the best course of action will be to liberally permit the introduction of the expert testimony, and then permit the Supreme Court to assess relevance should this matter ever advance to that Court"). That is simply not how the judicial process works. Reviewing courts, including the Supreme Court, rely on the superior ability of trial judges to find facts after hearing evidence presented in the courtroom, even on pretrial matters that never reach a jury. *See, e.g., Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) (noting that appellate courts may not review trial court findings of fact de novo and must accept them unless clearly erroneous because of "the superiority of the trial judge's position to make determinations of credibility" and the "expertise" that comes with "experience in fulfilling that role"); *United States v. Fiseku,* 915 F.3d 863, 869 (2d Cir. 2018) (noting that appellate courts review trial court fact findings in connection with denial of motion to suppress only for clear error); *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (noting that appellate court reviews trial court findings of fact in connection with denial of motion for new trial only for clear error).

Additionally, it is no doubt correct that experienced trial judges are less likely than juries to be "'swayed by dubious scientific testimony,'" Resp. at 4 (quoting *Watson P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012)), and the general view is that they retain the discretion to hear testimony first and assess its reliability and admissibility later, *see e.g., United States v. Ozuna*, 561 F.3d 728, 737 (7th Cir. 2009) (noting trial court may decline to conduct formal *Daubert* hearing prior to suppression hearing and assess reliability of evidence after it is presented).

But the trial court must nevertheless find such testimony admissible under *Daubert* before it may actually base its decision upon it. *See, e.g., id.*; *United States v. Mason*, 660 F.

Supp. 2d 479, 486 (W.D.N.Y. 2009) (adopting magistrate's Report and Recommendations finding expert testimony on voluntariness at suppression hearing sufficiently reliable under *Daubert* and denying government's motion to exclude); *United States v. Begay*, 310 F. Supp. 3d 1318, 1349-57 (D.N.M. 2018) (excluding expert testimony from consideration on suppression motion for failure to meet *Daubert* standard); *United States v. Banks*, 93 F. Supp. 3d 1237, 1248-50 (D. Kan. 2015) (applying *Daubert* analysis to expert testimony presented at suppression hearing). It is therefore a significant waste of judicial time and resources where, as here, the Court will spend days hearing expert testimony only to ultimately disregard it as irrelevant and unreliable.

Accordingly, the government frequently files motions to preclude the presentation of expert evidence by the defense at suppression hearings on *Daubert* grounds. *See, e.g., Mason*, 660 F. Supp. 2d at 486; *United States v. Mohamed*, 157 F. Supp. 3d 268, 270-72 (E.D.N.Y. 2016) (government motion to preclude expert testimony on eyewitness identification at suppression hearing under *Daubert*). And trial courts grant such motions where appropriate. *See id.* (granting government's motion and precluding expert testimony as usurping role of court as factfinder and unnecessary as court more than competent to assess evidence using common sense without expert assistance). In this case in particular the Court should do the same, not only to conserve resources but also to avoid the devastating impact upon Payton Gendron's right to a fair and impartial jury at trial that would be wrought by permitting the government to present this evidence at a public hearing. *See* Section II(d), *infra*.

### c. The Government's Proposed Evidence Fails to Meet Minimum Standards for Admissibility.

Aside from arguing that the Court should abdicate its judicial function and admit evidence without regard to its reliability, the government makes no real effort to establish that its

proposed testimony satisfies the requirements of Fed. R. Evid. 702, *Daubert* and its progeny. Nor

could it; as set forth in the Motion, ECF No. 510 at 7-22, the Rule 16 disclosures reveal that the

testimony consists largely of inadmissible junk science ████████████████████

███████████████ █████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

         █████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████. No challenge to the reliability of such evidence

was brought.

─────────────────────

[5] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
              nd, consequently, no objection to its use was included in the Motion. To the extent
that the government is intending to introduce evidence regarding this measure, it should be
precluded from doing so based on its failure to comply with the Court's discovery order.

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████ ; rather, the claim was that the admission of the evidence violated the defendant's

Sixth Amendment right to the assistance of counsel because it was extracted during an

examination by a government expert that exceeded the scope that defense counsel had agreed to.

*Id.* at 1240-42. Again, no challenge to the reliability of such evidence was before the court.

██████████████████████████████████████████████

█████████████████████. ████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████. ████████████████████████████████████████

██████████

**d. Admitting the Government's Irrelevant, Unreliable and Highly Prejudicial Testimony at the Hearing Risks Irreparably Tainting the Jury Pool.**

As set forth in the Motion, ECF No. 510 at 22-23, permitting the government to present its proposed testimony in open court at the upcoming hearing would create an unacceptable risk that the pool from which the trial jury will be selected will be unfairly prejudiced by exposure to the inevitable media coverage of inflammatory information and opinion that could never be introduced as evidence at trial. This very real concern was recognized in an analogous context by Judge Sessions in *Fell*, 224 F. Supp. 3d at 356 (declining to render opinion on disproportionality of federal death penalty, in part because "the court is aware that this case is scheduled for . . . jury selection and that any views of the trial judge will receive publicity. There is little value and considerable mischief in expressing the court's personal views in a manner which could further complicate jury selection").

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

The government's assertion that the defense has "opened the door" to this testimony, *id.* at 10, is inaccurate. By filing his Motion, Payton Gendron has only "opened the door" to reliable and admissible evidence that is relevant to the issue the Court must decide. The government's proposed testimony is none of those things, and it should therefore be excluded. Nor should the defense be forced to withdraw its request for the hearing, *id.* at 11, and forgo the opportunity to litigate this important issue to avoid jeopardizing Payton Gendron's constitutional right to a fair

and impartial jury.[6] Rather than "err[ing] on the side of accepting more evidence, not less," as the government urges, *id.* at 6, the Court should decline to err at all and grant the Motion to Preclude.

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that this Motion be granted and that the Court preclude the proposed testimony of the government's experts.

Dated: January 28, 2026
      Buffalo, New York

                              *s/Sonya A. Zoghlin*
                              Sonya A. Zoghlin
                              Assistant Federal Public Defender

                              *s/MaryBeth Covert*
                              MaryBeth Covert
                              Senior Litigator

                              *s/Julie Brain*
                              Julie Brain
                              Attorney at Law

                              *s/Theresa M. Duncan*
                              Theresa M. Duncan
                              Law Office of Theresa M. Duncan LLC

---

[6] If the Court declines to preclude the government's expert testimony, the defense may move to reschedule the hearing until after the trial has concluded and the jury has rendered its verdict(s). That way, if a death verdict is imposed and the *Roper* hearing is still necessary, there will be no risk that the jury deciding whether Payton Gendron lives or dies will be unfairly prejudiced against him by the irrelevant, unreliable, and inflammatory evidence that the government wishes to present.