**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

Plaintiff,

Case No. 1:22-cr-109 (LJV)

vs.

APRIL 22, 2026

**PAYTON GENDRON,**

Defendant.

# TRANSCRIPT OF STATUS CONFERENCE
**BEFORE THE HONORABLE LAWRENCE J. VILARDO**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**MICHAEL DiGIACOMO, ESQ.**
**UNITED STATES ATTORNEY**
**BY: JOSEPH M. TRIPI, ESQ.**
**CHARLES MARK KRULY, ESQ.**
**MAEVE E. HUGGINS, ESQ.**
**BRETT A. HARVEY, ESQ.**
**Assistant United States Attorneys**
138 Delaware Avenue
Buffalo, New York 14202
For the Plaintiff

**UNITED STATES DEPARTMENT OF JUSTICE**
**BY: MICHAEL S. WRABEL, ESQ.**
**CIVIL RIGHTS DIVISION**
**CRIMINAL SECTIONS**
950 Pennsylvania Ave., NW
Washington, DC 20530
For the Plaintiff

**UNITED STATES DEPARTMENT OF JUSTICE**
**BY: NEVILLE S. HEDLEY, ESQ.**
U.S. Department of Justice
Civil Rights Division Criminal Section
150M Street NE, Suite 700
Washington, DC 20002
For the Plaintiff

**UNITED STATES DEPARTMENT OF JUSTICE**
**BY: KEVIN C. NUNNALLY, ESQ.**
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
For the Plaintiff

**MARIANNE MARIANO, ESQ.**
**FEDERAL PUBLIC DEFENDER**
**BY: SONYA ZOGHLIN, ESQ.**
**MARYBETH COVERT, ESQ.**
**Assistant Federal Public Defenders**
300 Pearl Street, Suite 200
Buffalo, New York 14202
For the Defendant

**LAW OFFICES OF THERESA M. DUNCAN**
**BY: THERESA M. DUNCAN, ESQ.**
1215 Paseo De Peralta
Santa Fe, New Mexico 87501
For the Defendant

**LAW OFFICES OF JULIE BRAIN, PLLC**
**BY: JULIE C. BRAIN, ESQ.**
916 South 2nd Street
Philadelphia, Pennsylvania 19147
For the Defendant

**LAW CLERK:** **REBECCA FABIAN IZZO, ESQ.**
**LAURA A. STELIANOU, ESQ.**

**COURT CLERK:** **COLLEEN M. DEMMA**

**COURT REPORTER:** **LAUREL S. TUBBS, RPR, RMR, CRR**
Robert H. Jackson Courthouse
2 Niagara Square
Buffalo, New York 14202
laureltranscripts@gmail.com

Proceedings recorded by mechanical stenography,
transcript produced by computer.

* * * * * * * * *

(Proceedings commenced at 1:39 p.m.)

**THE CLERK:** All rise. United States District Court for the Western District of New York is now in session, the Honorable Lawrence J. Vilardo presiding.

**THE COURT:** Please be seated.

**THE CLERK:** 22-cr-109, United States of America versus Payton Gendron. Assistant United States Attorneys Joseph Tripi, Brett Harvey, Charles Kruly, Maeve Huggins, DOJ trial attorneys Michael Wrabel and Kevin Nunnally appearing on behalf of the government. Assistant Federal Public Defenders Sonya Zoghlin and Marybeth Covert and attorneys Julie Brain and Theresa Duncan appearing on behalf of the defendant.

The defendant is not present.

Also present is Clerk of Court Andrew Moeller; jury

administrator Joel Drier; and jury specialist Cheyenne Roberts.

This is the date set for a status conference.

**THE COURT:** Good afternoon, everyone.

**ALL COUNSEL IN UNISON:** Good afternoon, Your Honor.

**THE COURT:** Ms. Zoghlin, do you waive your client's appearance?

**MS. ZOGHLIN:** Yes.

**THE COURT:** So I've got about six or seven things on my agenda.

Is there anything that either side would like to do first?

**MR. TRIPI:** No. We'll follow your lead, Judge.

**THE COURT:** Same?

**MS. COVERT:** Yeah.

**MS. ZOGHLIN:** The same, Judge.

**THE COURT:** Okay. So let's talk about the special questionnaire first. We sent the parties a draft of that finalized questionnaire. Are there any objections to it?

**MR. TRIPI:** Only what we've already stated before we got to this point, Judge.

**THE COURT:** Okay. So -- so the finalized questionnaire -- and I've obviously ruled on those. The finalized questionnaire is going to be the questionnaire, then. The government's okay with -- with your objections. On the record, you're okay with it; is that right?

**MR. WRABEL:** Yes, Your Honor.

**THE COURT:** Okay. Defense?

**MS. ZOGHLIN:** Yes, Judge. Likewise, we've made our objections and the Court has ruled.

**THE COURT:** Okay. Yeah, I've ruled on the -- on the objections. Okay. Good. Great. That's number one.

Number 2. Let's talk about the transcript needs -- the court reporter needs that we're going to have and the logistic kind of needs, overflow courtroom, things like that.

So what are your plans for expedited transcripts and -- with respect to jury selection and with respect to the trial? Are you going to want daily transcripts? Does "daily" mean "daily," that you want them the next day? And -- and do you want it for both jury selection and trial?

Mr. Tripi, you can go first.

**MR. TRIPI:** From our perspective, Judge -- I think I communicated with your staff about this -- we were going to mirror what the Defense does on that, so --

**THE COURT:** Okay.

**MR. TRIPI:** -- it's up to them.

**MS. COVERT:** Judge --

**MS. ZOGHLIN:** Go ahead.

**MS. COVERT:** Judge, we would anticipate needing dailies and real-time transcripts for both jury selection and the trial.

**THE COURT:** Okay. Okay. So that means we're going to need to get more court reporters, and it may mean that the trial is going to take longer. Because if we don't get -- I think four court reporters -- we're probably not going to be able to go all day every day. And we'll do everything we can to accomplish that, but it sounds like we may need four court reporters to accomplish that.

**MS. COVERT:** Judge, one other clarification on the -- on the dailies. I had had communication with the court reporter at the time that the Roper hearings were scheduled. And I just -- in my mind, dailies are by the end of the day so that filings that are getting done overnight, there could be citations to the transcripts. But I -- I -- but then I got some indication that maybe then dailies was, you know, by the next day, and that was different than my experience. So I just want to have that clarified.

**THE COURT:** So -- so I think we're talking about two different things. And our court reporter can correct me if I'm wrong. But you'll get real- -- we'll have real-time that's done during the course of the day. But -- but that real-time is not going to be in a final form, by any means. When I look at my real-time, I see what is readable. But sometimes there are lots of misspellings, and sometimes words are not quite what they're supposed to be. You know, it's done phonetically. So -- so things turn out differently, sometimes, than you'd

like. So -- so by the end of the day, I suppose you will have the real-time, but you're not going to really have a transcript until the next day.

Is that correct?

**THE REPORTER:** They -- they have the option of having the final within two hours at the end of the day. That is one of the options.

**THE COURT:** The final by the end --

**THE REPORTER:** The final by the --

**THE COURT:** How would that -- how would you do that?

**THE REPORTER:** I'm going to have to hire scopists and proofreaders, which I've already planned on. But if it's by the end of the day, then I need to get more people at my expense.

**THE COURT:** Okay. Well, so I guess that's possible too.

Is that what you want? You want -- you want final finals?

**MS. ZOGHLIN:** That is -- that is what we expected, Judge, what we anticipate, because, as you said, the real-time is just the reading along with it. We can't, you know, file something overnight and cite to that.

**THE COURT:** Okay. Okay. Well, we'll do what we have to. And, you know, if we've got to go every other day, we go every other day. We can't ask our court reporters to do the

impossible.

**MS. ZOGHLIN:** Of course.

**THE COURT:** So we'll do what we can do and do it as expeditiously as we can, but --

So you're looking for finals on everything by the end of the -- by two hours afterwards. And -- and you want that for both voir dire and trial?

**MS. ZOGHLIN:** Yes. That's correct. Yes.

**THE COURT:** Okay. Okay. Let's talk about overflow courtrooms. You know, for the trial, obviously, we're going to need overflow courtrooms. What do the parties think about whether we need an overflow courtroom for the questioning phase and for voir dire?

**MS. ZOGHLIN:** Whether we need overflow courtrooms for those?

**THE COURT:** Yeah. Are we going to have -- is the courtroom going to be overflowing for the -- the questionnaire phase?

So when we come in, I'm going to --

**MR. TRIPI:** Could we just have one moment?

**THE COURT:** Take your time. Take your time.

So for the questionnaire phase, I'm going to be giving them some instructions at the beginning of the day. They're going to go fill out their questionnaires. Then in the afternoon, we'll have another group come in. Same deal. And

then for the voir dire stage, we're going to be questioning jurors one by one.

So go ahead.

**MR. TRIPI:** And, Judge, my sense of it is -- and this is, you know, some new territory for me. And while we're in communication with the clerk, the -- I don't think we're going to have a lot of -- of people watching the questionnaires being filled out portion. I would -- I would anticipate that the need would be greater when there's individual voir dire. But if that drags on, I think more so in the beginning because -- at least what I've explained to people is that process is going to be repetitive looking to an onlooker. So I assume people might come in greater numbers in the beginning, and as that sort of drags on --

**THE COURT:** See how boring it is --

**MS. ZOGHLIN:** Yeah.

**THE COURT:** -- and then stop.

**MS. ZOGHLIN:** That's the word.

**MR. TRIPI:** You could say it like that.

**THE COURT:** Yeah. No, no, I understand. Look it, I get it. I get it. And I think that that probably makes sense. And I sort of had the same instinct as you did. And I'm just looking for your best guess.

**MR. TRIPI:** Yeah. So I think maybe in the beginning of that process, having overflow capabilities at the ready

makes some sense. And then --

**THE COURT:** Okay.

**MR. TRIPI:** -- it might turn out that we don't need it as time goes on for that part of it.

**THE COURT:** Good. Okay.

Defense.

**MS. ZOGHLIN:** Basically, yes, we -- I think that sounds reasonable. And to the extent that we have people here, that's not what's going to make or break the decision whether to have an overflow courtroom. I think it's more who the government expects.

**THE COURT:** Sure.

**MS. ZOGHLIN:** And what -- what media might be here.

**THE COURT:** Yep. Yep. Okay. Good. Great.

Okay. So the parties asked for an updated list on a rolling basis, perhaps weekly, with the demographic information regarding the age, gender, race, ethnicity and ZIP codes for the prospective jurors. I've -- I've issued the agreed-upon protective order. So what is -- what are our capabilities with respect to that?

**MR. DRIER:** Judge, we would have to -- we -- we're still in the process of entering all the information. So because they're reviewing everything, it's not actually going into the system until it's been reviewed. So a lot of it has been reviewed, probably the bulk of it. But now we actually

have to enter all that information in the system. So we can provide what we have. And probably in the next week or two, that will -- that will be more reflective of the actual --

**THE COURT:** And then you can provide it on a rolling basis. So as you -- as you enter it, you can provide it?

**MR. DRIER:** Yeah, we just -- I believe it would just be a simple report that we print out.

**THE COURT:** Okay. So -- so any- -- anything either side wants to question or -- or tweak?

**MR. TRIPI:** No. That sounds fine by us, Judge.

**MS. ZOGHLIN:** Nothing I can think of right now, Judge.

**THE COURT:** Great.

**MR. DRIER:** And, Judge, it would be the same report. I mean, it would be the same report, just updated. It's the -- so it's not going to give you what we got this week as opposed to last week. It's just going to be an updated report.

**THE COURT:** Yeah. I think that's in everybody's interest.

**MS. COVERT:** And that's fine, Judge.

**THE COURT:** Great. Good. Okay.

Before we get into the individual objections, let's -- let's cover a couple other things.

The government has filed a memorandum of law regarding Section 2 of the Classified Information Procedures

Act. And I guess the motion has two parts. One is the request for a pretrial conference, and the other is a motion to designate a classified information security officer.

Do I have that right?

Who's going to speak to this?

**MR. NUNNALLY:** I am, Your Honor.

**THE COURT:** Yes.

**MR. NUNNALLY:** Would it be okay if I approach the --

**THE COURT:** Absolutely. Whatever you want to do.

In this courtroom -- is this your first time here in the courtroom?

**MR. NUNNALLY:** It is, Your Honor.

**THE COURT:** Welcome. The rule is you can do any- -- whatever you want. If you want to come to the podium, that's great. If you want to do it from sitting -- sitting, that's fine.

**MR. NUNNALLY:** I've been doing this for so long, Judge, standing up. It's hard for me to not --

**THE COURT:** Me too. When I was --

**MR. NUNNALLY:** -- look at my feet.

**THE COURT:** When I was a lawyer, me too. Me too.

So go ahead.

**MR. NUNNALLY:** So, Judge, the first thing would be to request, respectfully, that you enter the order appointing the -- CISO is the way that it's commonly referred to, the

courtroom security officer. And then we just need a date. We plan to file a Section 4. And we'll be asking the Court to delete a pretty small number of documents in discovery for a lot of reasons that I can't discuss in court.

**THE COURT:** Of course.

**MR. NUNNALLY:** I'm not really super familiar with how the Court wants to proceed and what things are coming up on your docket. But I was going to suggest a date and see if that would be acceptable to the Court.

**THE COURT:** Okay. Go ahead.

**MR. NUNNALLY:** Would -- it would be okay if -- would it be okay if we filed on June 12th?

**THE COURT:** Do we have a conference on the 12th?

**MR. NUNNALLY:** No. It would be -- we would file our CIPA Section 4 on --

**THE COURT:** Okay.

**MR. NUNNALLY:** -- June 12th for the Court to then consider.

**THE COURT:** Okay. So -- and it sounds like --

**MR. NUNNALLY:** I don't know if it would mess up the Court's -- whatever else it had going on, jury --

**THE COURT:** Yeah, that sounds fine to me.

**MR. NUNNALLY:** I'm sure you've got a lot going, but --

**THE COURT:** Yeah.

**MR. NUNNALLY:** -- Your Honor, I've done this many, many, times. And I've seen the volume of what we're talking about here, and it's very small.

**THE COURT:** Okay.

**MR. NUNNALLY:** And it would probably not take the Court very long, even if the Court wanted to review the actual document themselves. We could get them brought to the court.

**THE COURT:** Now, are these going to be documents that only I can review, or is it something that my clerks can review as well?

**MR. NUNNALLY:** Well, I mentioned that to your clerks at the beginning. The -- the CISO will reach out to chambers and discuss with you some of the procedures. And we'll ask you if you would like to have one of your -- or both of your clerks or even the courtroom clerk cleared. We will also possibly --

**THE COURT:** They would have to go through a clearance process.

**MR. NUNNALLY:** They would. It's a -- it's a somewhat attenuated one. But the CISO in this memo probably is --

**THE COURT:** Yeah. I've never had this come up. I've had document -- I have reviewed documents that only I could review, that even the magistrate judges couldn't review. So I had, you know, documents -- top-secret documents that were once handed to me -- they were the most boring things in the world. And I was so excited about getting to see these things. And

they were absolutely boring.

**MR. NUNNALLY:** I'm going to have to go no comment, Your Honor, on that one.

**THE COURT:** But they -- they brought in a briefcase, and I had to take the briefcase from the person, and only I could look at this stuff in the briefcase, and then lock the briefcase and hand it back to the person.

**MR. NUNNALLY:** It could very well be that because it may have been that your courtroom clerks did not have -- or your courtroom clerks did not have clearance. But it's all -- you know, I'm sure the Court knows, because of your appointment, you automatically have a top-secret clearance.

**THE COURT:** That's what I was told, yeah.

**MR. NUNNALLY:** But we can work to get anybody else cleared that you think is necessary --

**THE COURT:** Terrific.

**MR. NUNNALLY:** -- so that you can do that.

**THE COURT:** Great. That would be helpful.

**MR. NUNNALLY:** And so if -- if June 12th will work --

**THE COURT:** Yeah.

**MR. NUNNALLY:** -- you -- we'll -- we'll present an order for that and --

**THE COURT:** Great.

**MR. NUNNALLY:** -- go forward. And, Judge, if we get done early, we'll certainly file it early.

**THE COURT:** Okay. Great.

And anything defense counsel wants to weigh in on?

**MS. DUNCAN:** Yes, Your Honor.

We have no objection to the appointment. That's why we agree that that's a necessary step in this process. We do intend to file a response to the government's memorandum, and we ask the Court if we could file that by next Tuesday.

**THE COURT:** Sure.

**MS. DUNCAN:** And, yeah, I think we do have some objections and some clarifications.

**THE COURT:** Okay. Great.

**MR. NUNNALLY:** And, Judge, I'd be happy to come back and -- once Mr. Moeller or another CISO is appointed, we could also have an ex parte hearing where I can put more details on the amount of work that is likely to ensue from the filing.

**THE COURT:** Why don't we do this: You get your -- your response in -- next Tuesday is reasonable?

**MS. DUNCAN:** Yes, Your Honor.

**THE COURT:** Next Tuesday.

Do you want to do a reply?

**MR. NUNNALLY:** Sure.

**THE COURT:** Friday?

**MR. NUNNALLY:** Yeah, that would be fine.

**THE COURT:** Mr. Kruly -- even Mr. Kruly --

**MR. NUNNALLY:** Let me call in the left from the

bullpen.

**THE COURT:** All the color left his face.

**MR. KRULY:** Judge, could we have a week?

**THE COURT:** Pardon me?

**MR. KRULY:** Could we have a week?

**THE COURT:** Sure.

**MR. KRULY:** I'll always take a week.

**THE COURT:** You don't have a problem giving him a week, do you, for a reply?

Okay. And then if I need you back, we'll get you back.

**MR. NUNNALLY:** Very nice to appear in front of you, Your Honor. Thank you.

**THE COURT:** Pleasure.

Okay. Now, the Defense has moved for an extension of time to file its 12.2 notice. And you're asking until August. That's too long. That's going to jam up things just too much. I was thinking -- look, I've extended your time a couple of weeks already, and I was thinking extending it further, but it's not going to be a whole lot further. So I was thinking June 1st.

**MS. ZOGHLIN:** Ms. Brain is going to address this, Judge.

**THE COURT:** Okay. Go ahead.

**MS. BRAIN:** Yes, Your Honor.

No, we understand. But the request was made based on our good-faith estimate of how long it's going to take and, more importantly, how long it's going to take our expert. So we do believe that August is the soonest that we -- we could do it.

And for the reasons we set forth in our papers, I don't believe it will jam up the government or prejudice them in any way, given, in large part, because the Court has already addressed much of the litigation that often surrounds 12.2. We've done a bunch of that. So there's little left to do.

**THE COURT:** Who's going to speak for the government?

**MR. WRABEL:** I've got it, Judge.

**THE COURT:** Okay.

**MR. WRABEL:** Judge, I mean, we've made our arguments. We've made them multiple times. I think we can live with June 1st, but that's -- that's, you know, getting towards the -- about the end of it. And as we stated in our papers, this time, Judge, if we're waiting till August, we're not going to get access to the defendant for two months after they file their notice. That puts us in trial. And that's not workable, Judge.

**THE COURT:** Yeah, I agree with the government; it's not workable. And I understand that there's additional pressure put on your experts. But my goodness, you know, we're -- we're in the middle of April now, and June 1st is a

month and a half.

June 19th. Friday -- Friday, June 19th. Okay?

**MS. BRAIN:** Understood, Your Honor.

**THE COURT:** I know neither side is happy. But I tell you, when I do that, I know I got it right.

June 19th.

**MR. WRABEL:** Thank you, Your Honor.

**THE COURT:** And apologize to your expert for me. Tell him it's my fault.

Okay. Now, let's talk about the Defense's objections to the jury disqualifications. And -- and I'd like to go over these one by one. And some of them I just -- I think I understand why you're objecting, and some of them I agree with. But most of them I -- I don't know why -- what we're going to accomplish by bringing these folks in, so...

**MS. COVERT:** I appreciate that, Judge. If we go through them one by one, you'll at least understand --

**THE COURT:** Sure.

**MS. COVERT:** -- why we flagged them.

**THE COURT:** Yeah.

So -- so we'll do these by numbers, right? So I'll do the last four numbers. I think that will work.

So 6800 is the first one.

**MS. COVERT:** Correct, Judge.

And our objection on that is because there's no

indication -- so there are a lot of excusals for this reason. And --

**THE COURT:** Yeah.

**MS. COVERT:** And we were judicious in terms of trying to find some common ground on when it made sense and when it didn't. In many of them there's, some indication that somebody else filled out the form, and then that made sense.

**THE COURT:** Mm-hmm.

**MS. COVERT:** Here, there's no indication of that. And so for that reason, Judge, we flagged it as just maybe somebody that should be, yeah, providing you with some additional explanation.

**THE COURT:** So the next one has the same issue. It's 6138.

**MS. COVERT:** Yeah, Judge. And that one is, you know, that same thing. There's no --

**THE COURT:** I -- I agree with you on that one because those could have been checked incorrectly. That could just be somebody going down the list and checking something incorrectly.

The reason I think that the 6800 doesn't make sense is because the person tells us what their first language is -- or what their only language is -- apparently, based on the -- on the answer. So I just don't -- I mean, unless we think they're lying, that one just seems clear to me; whereas, the

second one could be a mistake. And I agree with you.

**MS. COVERT:** Yeah. And I -- and I think, Judge, we were just looking collectively at the group where it made sense and where it didn't.

**THE COURT:** Yeah.

**MS. COVERT:** And this just fell in the where --

**THE JUDGE:** Yeah.

**MS. COVERT:** -- it didn't make sense because we didn't have some other indication there.

**THE COURT:** Does the government want to weigh in on either of those or both?

**MR. TRIPI:** Judge, we'll just defer to your judgment on that.

**THE COURT:** Yeah. So I think -- I think 6800 we will excuse, and 6138 we'll grant, because, as I say, that could just have been somebody filling out something quickly and getting it wrong.

Okay. The next is 6131. And this is someone who says they're a full-time college student.

**MS. COVERT:** Right. And -- and this one there is no details about that and no -- just -- it could just be if it was grounds for a deferral, and sometimes they were excusals. So this one they say they're a full-time college student. But the frequently asked questions, the facts that they get in filling out the form says, Make sure you -- if you're requesting a

full-time college student excusal that you indicate where you're going to school, that kind of thing, so that we felt that there was a need for more information there.

**MS. ZOGHLIN:** It's also not -- it's not an excusal. According to the jury plan, that isn't one of the excusals. So -- so that's one issue. And the other issue is we don't know what time period they're talking about because they could certainly be a full-time student right now and by August they're done with school.

**THE COURT:** Yeah, yeah.

**MS. ZOGHLIN:** And I don't know if it means they're going back into school or not.

**THE COURT:** Okay. Okay. I'm fine -- I'm fine with that one. So we will -- we will not defer that person.

**MS. BRAIN:** One other thing if the Court would indulge me chiming in.

Also, it's the -- what we've seen, which is, admittedly, only a snapshot, the pool is trending towards older. So we're very attuned to the idea with students. We want to make sure they should be excused rather than just excusing them.

**THE COURT:** Yeah, I'm good with that.

Okay. The next one I have a question mark about. This is someone who's asking for -- asking to be excused because of -- takes care of a child with disabilities. But she

doesn't say she can't do it; she just says it would be difficult. So I'm sort of inclined to have this person come in and maybe explore a little bit more.

**MS. COVERT:** Yeah. And it wasn't flagged for that reason, but it was flagged as a deferral, and so it was -- that didn't fit either because it was -- the -- the dates aren't the entire time that juror questionnaires could be completed. So it did feel like this person could be brought in to fill out a questionnaire, get more information.

**THE COURT:** Okay. Yeah, so I agree with that.

The next one is 9915. And I agree with you on this. This person says that they're going to be out every Friday from March to October. And so we can very well accommodate that since the trial is probably going to be down every Friday. And March to October may be not the time that we're actually doing this.

So -- so I agree with that. There's no reason -- there's no reason to defer or excuse that person.

Okay. Next.

Oh, yeah, so there's a whole bunch that are felons -- people who say they're felons.

**MS. COVERT:** So, Judge, there have been a lot more than the ones we challenged. We did excuse anyone where we could confirm it.

I spoke with Mr. Tripi before court today to see if

the government would be willing to run a NICS on people that we can't confirm otherwise, and he said if the Court were inclined to order that, that they would be agreeable to run those on those people.

**MR. TRIPI:** If you want us to, Judge, that's fine. We think that people know if they're a felon or not. But if you want it done, we'll do it.

**THE COURT:** Well, yeah.

**MR. TRIPI:** There's --

**THE COURT:** You know, I'm working on a judicial committee right now where we're talking about these kind of things --

**MR. TRIPI:** Yeah.

**THE COURT:** -- where people sometimes get confused --

**MR. TRIPI:** Right.

**THE COURT:** -- about what's a felony and what's a misdemeanor, and I've been charged with a felony, but I pled to a misdemeanor. And, you know, sometimes people just don't know.

**MR. TRIPI:** Yeah, there's some here that give a little bit more detail, and maybe you can infer that they're pretty positive. But I understand.

**THE COURT:** Yeah. So -- so let's do that. Let's do that for this one. And then we can come back and discuss it if we need to. Okay?

**MS. COVERT:** Thank you, Judge.

**MR. TRIPI:** And, Judge, obviously, you're -- you're fine with us doing that and it doesn't violate your protective order. We can run the histories on that?

**THE COURT:** Right. Correct. Yeah. I don't see -- I don't see how it would. Again, don't -- don't tell -- don't tell Mr. Lakamp about it.

**MR. TRIPI:** Sounds good.

**THE COURT:** Okay. Same thing with the next guy.

**MS. COVERT:** And that's a good example, Judge, of somebody --

**THE COURT:** Yeah.

**MS. COVERT:** -- that might be misdemeanors and not a felony.

**THE COURT:** Exactly. Yeah. 45 years ago, the person says. That's number 0303.

**MS. COVERT:** Thank you, Judge.

**THE COURT:** So we'll do the same thing with that.

Yeah. Now -- now, the next one looks a little bit more specific. This is 4317.

**MS. COVERT:** That's correct, Judge. And our search included the county, the municipal court, and the superior court where this was alleged to have occurred, and we -- they do not have a record of it.

**THE COURT:** Okay.

**MS. COVERT:** And so that's why we were reaching out on that one.

**THE COURT:** Okay. So let's do that on that one as well.

Next one is 1828. Same thing.

**MS. COVERT:** Same thing, Judge.

**THE COURT:** So we'll do that as well.

The next one is 5647. What is the issue on this? I'm not finding it now.

**MS. COVERT:** Yeah. This is, you know, an indication of not speaking or reading, writing the English language. But the person did fill out the form, and there's no additional information.

**THE COURT:** Okay. And there's no -- again, this is the same as the other one where there's no other language.

**MS. COVERT:** No other language designated, no.

**THE COURT:** Okay. So let's bring this person in.

**MS. COVERT:** Thank you, Judge.

**THE COURT:** We're not going to excuse this person.

Oh, okay. So -- so another category, more or less, is 9583, somebody who's a resident in a medical program. I mean, there's no way on God's green earth that that person is going to -- I mean, they'd have to leave the residency program in order to participate. And there's no way in the world that I wouldn't excuse somebody in that situation. I know the kind

of hours that residents work, and there's -- it's impossible.

**MS. COVERT:** Again, though, no information on when the program ends. I agree with you that, you know, that might very well be a valid reason, but we just didn't have enough information on when that --

**THE COURT:** She said the schedules are fixed months in advance, up to a year. So that tells me the person is -- is, you know, just up against them. I think we're going to excuse this person.

**MS. COVERT:** Okay, Judge. Thank you.

**THE COURT:** And the same with the next one, which is 3206. The person gives us "full-time physician's assistant; undergraduate," and tells us where. And, yeah, I just don't -- I think that it's just -- there's no reason to bring the person in.

**MS. COVERT:** Well, just we don't know how long the program is, Judge. That's all.

**THE COURT:** Yeah. Again, the person is an undergrad at the time. And so even if the person finishes the program, the person is then going to be in a residency of some sort immediately after. So I think it's a waste of time to bring the person in.

The next one is 5430. Yeah. So this one is a little different. This one says "a student." But -- but we -- not only do we not know the -- and also says they're working. So I

don't know if it's a part-time student or a full-time student. So -- so I do have questions this one, and we'll bring this one in.

**MS. COVERT:** Thank you, Judge.

**THE COURT:** So we're going to bring in 5430.

Okay. The next one, the person says that they live in Florida.

**MR. KRULY:** Judge, I'm sorry. Which number?

**THE COURT:** I'm sorry. I'm sorry. 4985. I'm sorry, Mr. Kruly.

**MR. KRULY:** That's okay.

**THE COURT:** 4985.

So this person says a student in Florida who's going to be in Florida from August 14th to December 12th. So that -- that tells us the person is going to be in school in Florida during the fall semester and the spring semester.

**MS. COVERT:** Can I have just a minute, please, Judge?

**THE COURT:** Yeah. Go ahead.

**MS. COVERT:** The dates for August 14th to December 12th and January 4th to May 4th, Judge, are in -- are in answer to "Has your primary residence been in New York for the last year?" So those are last year's dates.

**MS. ZOGHLIN:** So those are last year's dates.

**THE COURT:** Oh, okay.

**MS. COVERT:** It's not a prospective question about

Are you a valid person moving forward? Again, this is a student, but there's no indication when the completion of the program is.

**THE COURT:** Okay. I guess -- yeah, I guess that's reasonable. Okay. We'll bring that person in, then.

8663. The person says that she's the sole proprietor for a business.

**MS. ZOGHLIN:** The issue there, Judge, is that the questionnaire asks for more information than that. And believe me, there were many that explained why they were a sole proprietor and the business would have to, basically, cease, which is -- which is what the -- the rule is. And this person didn't provide any information at all.

**THE COURT:** Yeah, there's nothing. It just says "self-employed and sole proprietor."

**MS. ZOGHLIN:** Well, that's what the question is to this one, Judge.

**THE COURT:** I think we can bring that person in and find out what that's all about.

The next one is 3150.

**MS. COVERT:** Right. It's not self-employment, Judge. It's somebody saying I'm a -- you know --

**THE COURT:** A doctor.

**MS. COVERT:** -- a doctor, and it would be detrimental to the patients --

**THE COURT:** Well, yeah.

**MS. COVERT:** -- to the business. And I -- it just --

**THE COURT:** I mean, you're going to ask somebody who's a doctor to give up the practice for -- I mean, I suppose that you could find coverage, but, my goodness, that's -- that's -- again, I can't imagine telling somebody who's a doctor with patients, Sorry, you've got to get coverage. You've got to come in. You've got to get coverage.

**MS. COVERT:** Judge, because it was somebody in a business that had more than just themselves. It wasn't like just one person. That's -- that was the reason we flagged it as just -- it didn't seem to fit the --

**THE COURT:** I don't think so. I think that person gets -- gets excused.

And the government, weigh in. I'm not looking to you because you folks said you were, more or less, deferring to the Defense. But if you folks want to weigh in on any of these and think I'm getting them wrong, or, if there's anything you want to say, please feel free to.

**MR. TRIPI:** Thank you, Judge.

**THE COURT:** 4486.

**MS. COVERT:** Just --

**THE COURT:** Yeah.

**MS. COVERT:** -- Judge, there was just insufficient

information.

**THE COURT:** I agree with that. I don't think that the information is sufficient on that, and I agree with that.

And -- and the same thing for 2572. It's the same issue.

And -- and I agree with the Defense on both of those. There's just not enough information there. It's -- it's a very amorphous kind of explanation as to why and whether -- in fact, in 2572 there's even a suggestion that it might not even be a problem.

**MS. COVERT:** Correct.

**THE COURT:** So, yes, I think we bring both of those in.

And I think the same for 6211 for largely the same reasons.

**MS. COVERT:** That was the reason we flagged it, Judge.

**THE COURT:** The next one is 0636. And again, this is a nurse practitioner in the same kind of situation as the chiropractor that we had earlier.

**MS. COVERT:** At a -- at a large -- larger facility, Judge. So that was just --

**THE COURT:** But again, at a larger facility, yeah. But these people have their own patients. And this is a psychiatric nurse practitioner. And you're -- I just think

we're -- we're creating some societal problems when we tell folks who are healthcare providers who have patients, especially psychiatric patients, that they're not going to be able to see those patients for three months or more, you know. That just seems -- again, there's no way in the world I'm going to tell this person no. So I think we excuse this person.

3343. I agree there's not enough information there for that one. So I think we bring that person in.

8361. I agree with the Defense; we bring that person in.

2817. Tell me why.

**MS. COVERT:** So, Judge, this one, it was unclear whether the issues have been resolved by the recent procedure because --

**THE COURT:** Well, not -- not the medical procedure. This person does, it looks like, runs a sole proprietorship, a horse training program. And there's no one else able to do the horse training for her or him. And that I think -- I don't know if it's a man or a woman. So that I think -- that person gets excused because of the sole proprietor.

Okay. The next one is 0223. I agree with the Defense on that one; there's not enough information with respect to the person.

The next one is 0503. And again, the childcare issues, I think, are insufficient. But what about the sole

proprietorship?

**MS. COVERT:** Could I have the number on that one again?

**THE COURT:** Oh, I'm sorry. I read the wrong number. I read the pool number. 2764. 2764.

**MS. COVERT:** The concern -- well, that person was excused for the "small children" reason. And I just think, in terms of small children, the rule is pretty clear. You need a little bit more information about certainly just because you have small children, you're excused.

**THE COURT:** Well, I agree. She says she's a pharmacist at Walgreens, and she is to be present when the pharmacy opens.

**MS. COVERT:** I did see that, Judge. I guess it was the fact that it's Walgreens. I mean, it's not exactly, you know, a mom-and-pop pharmacy. So my -- my thought was that they have multiple, multiple pharmacists, I'm sure, that work at that Walgreens and other Walgreens. So that's why I didn't think it was really clear. It's not -- you know, I'm looking at the definition of "sole proprietorship," which is, basically, the practice would have to cease operation.

**THE COURT:** Okay. Okay. You know, again, I think, depending on what the person tells me, I am probably likely to you excuse the person. But there's no harm in bringing them in for one day. It's a one-day inconvenience. So I'm okay with

that.

So -- so what about 3476? I think the last two, actually. They both have doctor's notes.

**MS. COVERT:** Yeah. We had a lot of folks with a note, Judge, but most of the notes detailed some explanation for the medical condition that made it meet and qualify for an excusal. And these last two don't have that kind of detail.

**THE COURT:** I understand. These people may be -- may be concerned about disclosing medical information. I hate to have to ask them. They have -- they both have "physician's assistant" and -- I guess two physician's assistants who say they can't do jury duty.

**MS. ZOGHLIN:** A lot of them, either the medical note or the person wrote what the problem is. So if the person wrote, This is -- this is the issue, and the medical note just said, Please excuse for medical reasons, we're going to challenge that. It's the ones that don't give us any clue either from the note or the -- or the summons.

**THE COURT:** But why should they have to? This is their private information. They don't have to tell us.

**MS. COVERT:** Well, the form itself, Judge, requires -- like when they check that box, it's not just you check that box. If you check that box, it tells them to provide details so that we can make the determination as to whether or not that --

**THE COURT:** Okay. And if someone doesn't want to do that because they don't want to disclose medical information, I have a tough time saying we have to force these folks to do it. I mean, they have a letter from a doctor, or a physician's assistant, in this case, working under the supervision of a doctor saying they can't do it. You know, unless -- unless we think that they and their medical providers are lying, I've got a tough time forcing them to tell us what their medical problems are. This is something that people are private about.

The government want to weigh in on this?

**MR. TRIPI:** Judge, I agree. They took the extra step to send in a note --

**THE COURT:** Yeah.

**MR. TRIPI:** -- from a medical provider. I have a hard time thinking that these people are going to come and say, I have a private medical issue, and I don't think I could serve, and the Court is going to say, No, sit here and go through the whole process.

**THE COURT:** Yeah. And tell -- and tell me what your medical issue is.

**MR. TRIPI:** Right.

**THE COURT:** I'm just not going to do that. I'm not going to do it.

**MS. ZOGHLIN:** Well, some of them -- I was just looking to see. Some of them just said it would be difficult

to, or, you know, some doctors may be more willing than others to say, If it's going to be difficult for you to sit, I'll give you a note. Maybe not.

This one also says, I do not feel she would be able to perform the duties of a juror.

So I understand, Judge, it's just a statement, but I thought we already had a jurist, so...

**THE COURT:** Well, we do. But some people think that this jurist is incapable of working as a jurist.

**MS. ZOGHLIN:** Get a note from your doctor, Judge.

**THE COURT:** I would love to for this case. I would love to.

No, we're going to excuse these last two. I think that the note from the --

**MS. BRAIN:** Some -- some of the doctors' notes, Your Honor, also don't actually say anything about disabilities. But quite a few doctors' notes do say, She asked me for a note to be excusing her from jury duty, so here it is. This -- 3476 certainly wasn't one of those. I don't know if the other one -- I didn't catch the other number, the other one the Court was excusing. But there were a couple of those. And mostly we let them go if there was some detail where we could say, Okay, clearly, this person is, in fact, disabled from jury duty.

**THE COURT:** Well, the first one, he says, I don't believe she'll be able to perform the duties of a juror.

Obviously, that's what the physician's assistant meant.

**MS. BRAIN:** Yeah, for sure. And that's 3476.

**THE COURT:** And that tells me enough there.

And the other one says her medical condition makes serving on a jury inadvisable at this time. Please excuse them from serving.

I mean, that tells me the person has got a medical condition that makes it such that the person should not be on a jury. And there's a doc- -- a physician's assistant telling us. No, we're going to excuse those two. We're going to excuse those two.

Okay. And I think that's all of them for now.

**MS. COVERT:** That is all of them for now, Judge.

**THE COURT:** We'll go through this again as we have to.

**MS. COVERT:** Judge, we -- I spoke with the jury administrator before court today. We are -- made substantial progress. So we'd actually -- with the Court's permission, we'd just go down to once a week because the trickle in now is a lot less voluminous.

**THE COURT:** Great.

**MS. COVERT:** And we're alerting the Court to the additional ones that we have as we go forward.

**THE COURT:** Sure. That's great. And we'll do what we have to do. If I think we -- I mean, you folks sort of

understand where I'm coming from now. If -- if there are -- if there are folks with a felony where there are issues, the government is to run the record check as best you can. And with respect to the others, you sort of have a sense of where I'm coming from, so that might color the ones you object to and the ones you don't object to.

**MS. COVERT:** Thank you, Judge.

**MR. KRULY:** Judge, just to clarify. So I think there were four people who reported -- who reported felony convictions. The government will run criminal history checks for those four individuals.

And then am I understanding -- understanding the Court that moving forward, as defense counsel identifies people reporting felony convictions, they can bring those to our attention if they reach out, then we can run them independent of bringing them to court?

**THE COURT:** Exactly. You have my authorization to run them, as you know.

**MR. TRIPI:** Judge, just one more on -- on that. Same issue. For the four that we've covered today, do you want us to run the criminal histories and submit to the Defense and the Court or just confirm whether or not -- how far -- we could send you the records or --

**THE COURT:** Yeah, send me -- send me the records and confirm to the Defense.

**MR. TRIPI:** Okay. Sounds good.

**THE COURT:** Okay?

**MS. ZOGHLIN:** Thank you, Judge.

**THE COURT:** And you're comfortable with that, right?

**MS. ZOGHLIN:** That's fine. That's fine.

**THE COURT:** Yeah. I mean, I think the fewer people who see these things, the better. So -- but you can send them to me and -- and just confirm or -- or don't confirm and tell us the person is not a felon.

**MR. TRIPI:** Okay.

**THE COURT:** Okay. So that's my list.

What do you folks have?

**MR. TRIPI:** Judge, most of our list was the same. I think the other things that you alerted us to be ready to discuss were the timing of the trial. I think we had an indication you wanted to discuss time frames.

**MS. COVERT:** Well, I think that was part of the juror questionnaires.

**THE COURT:** Yeah.

**MS. COVERT:** The -- what -- the notations in the questionnaires so that those could be printed and -- and ready.

**THE COURT:** Yeah. I think we sort of have a time frame for the trial; don't we? I mean, didn't I say the trial is not going to begin before, and I gave you date?

**MR. TRIPI:** October 13th is what you said.

**THE COURT:** Yeah. So -- and it's going to depend on the status of the appeal --

**MR. TRIPI:** Okay.

**THE COURT:** -- and all that kind of stuff. So I don't know that there's more that we can do about that.

**MR. TRIPI:** Gotcha. I just wanted to make sure you didn't want more of --

**THE COURT:** No, no, no.

**MR. WRABEL:** Judge, don't you -- don't we have to get a little more definite with the dates because you need to put them in the questionnaire?

**THE COURT:** I guess we do.

**MS. BRAIN:** They're in the questionnaire, Your Honor. That was Your Honor's last edit.

**THE COURT:** What did I put in them?

**MS. BRAIN:** You put in a start date and the date we would --

**THE COURT:** Of Oct- -- October 13th?

**MS. BRAIN:** Yeah. And the jurors need to be potentially available until January of the following year, which we thought was appropriate.

**THE COURT:** Okay. Yeah. So I think that's probably as good as we're going to get right now. And we'll have to, you know, adjust if we have to adjust.

**MR. TRIPI:** And then, Judge, there -- there was -- we

were alerted by the Defense that they were not yet in a position to file the -- their exhibit list, witness list, expert disclosures were due back on April 3rd. And we received a communication from them that they're not in a position to provide us that information yet, and so I think that some discussion is warranted. Obviously, you gave -- you gave a deadline for those things. They're -- they're telling us, at least, they can't comply with that deadline. But it's really your deadlines, Your Honor --

**THE COURT:** Sure.

**MR. TRIPI:** -- not ours, so...

**THE COURT:** So -- so what's the story?

**MS. ZOGHLIN:** The story is, Judge, we don't have that -- and we have not made any final decisions about what experts we're going to call or -- the same for the witness list, so -- and the -- and the exhibit list.

**THE COURT:** Well, you're not going to make final decisions until the government puts its case on. The -- the final decisions don't get made until the rubber hits the road, I guess. That doesn't mean you don't have to provide them with a list of potential witnesses and potential experts that you're going to call.

**MS. ZOGHLIN:** Well --

**THE COURT:** So, you know, you can't wait until the government says, We rest, Your Honor, and then say, Okay,

here's our -- our witness list. It's not going to work that way.

**MS. ZOGHLIN:** I understand that, Judge. But certainly in terms of the penalty phase, which is really what I think we're talking about, that is something that we don't necessarily have to wait for the government's guilt phase to end to -- to know that. But I think the rule requires us to tell them witnesses we're going to call, and we don't know yet who those people are, and that's why we weren't able to give them a list.

**THE COURT:** Well, when are you going to be able to give them a list?

**MS. ZOGHLIN:** I don't have a date in mind, Judge, because I don't -- I don't know when that information will be finalized. I mean, we certainly --

**THE COURT:** But again, it doesn't have to be finalized. It's not that you put the person on the list and you've got to call the person that -- you know that. You don't -- you don't -- you don't have to do that.

**MS. ZOGHLIN:** Sure. But we also -- sorry.

**THE COURT:** No, no. Go ahead.

**MS. ZOGHLIN:** Okay. Well, we also don't need to give them a list of These are the people we're thinking might be witnesses for us.

**THE COURT:** I understand. But there comes a point

where you need to make a decision about your potential witnesses so that the government has the list and -- and I understand that, you know, giving them the universe of people that might be called -- I'm good with respect to both sides -- something coming up and you saying, Well, I've got to call this person who was not on my witness list. Judge, here's why information came to my attention after I submitted my witness list that required me to put this new person on the list.

There are times when the government, in rebuttal, says, Judge, we've got to call somebody now. The defense case is -- what the defense case is, and I say, Well, it wasn't on your list.

Well, we didn't realize they were going to do this in their case.

So, okay, Government.

It's not fair to preclude them from doing that. So -- so I'm pretty good about that. But there's got to come a date, a time, where you say, Okay, this is the time I'm going to provide to them.

I'll give you 30 days. I'll give you 30. You've got -- you've got to put something together in 30 days and give it to them; a good-faith effort to come up with a witness list that you think will testify. Okay?

**MS. ZOGHLIN:** Well, just one more thing I wanted to add, Judge, that, you know, we're talking primarily about

witnesses for the penalty phase. So we're talking about something that's not going to happen until probably November. That -- I just don't know that they need that much lead time, especially when we're not prepared to make that decision yet. We don't -- we have not made those decisions yet.

**THE COURT:** Mr. Tripi, how much lead time do you need?

**MR. TRIPI:** It was -- just for clarifica- -- it was the exhibit list, the witness list, and the expert list.

And, you know, part of that, Judge, I don't know if it's just for the penalty phase or not. It was an exhibit list, witness list, expert list. So we need to be able to make an appropriate motion in limine. They're preparing motions based on our lists which were filed in November --

**THE COURT:** Right.

**MR. TRIPI:** -- you know, so -- and we put it -- we front-loaded it all.

**THE COURT:** Okay. So -- so -- so guilt phase, guilt phase, let's -- you're going to give them in 30 days. Penalty phase, you're going to give them in 60 days. Okay.

**MS. ZOGHLIN:** Understand. Yeah, I understand the Court's ruling.

**MR. TRIPI:** Thank you.

**THE COURT:** Okay. Anything else from the government?

**MR. TRIPI:** No, Your Honor.

**THE COURT:** Anything else from the Defense?

**MS. ZOGHLIN:** No. Thank you.

**THE COURT:** Okay. Thanks, everyone.

Do we have another date?

**THE CLERK:** No, Judge.

**THE COURT:** Should we -- should we set another -- let's set another date.

**THE CLERK:** Do you want to do 30 days out again?

(Discussion off the record.)

**THE COURT:** 30 days. Okay. Let's do that.

**MS. BRAIN:** Judge, does that work for the jury administrator? Will that be the next time that we do the -- our objections?

**THE COURT:** Probably, I would guess. I mean, let's see what we have, but -- but probably, yes.

**THE CLERK:** I was just going to say I think we need to know all the decisions by May 26th. So just before that. That's when the folks can call in and get the decision on if they're excused or not.

**THE COURT:** Oh, okay. We've got to do it before that.

**THE CLERK:** So May 20th.

**THE CLERK:** May 20th.

**THE COURT:** So are the parties available at 11:00 a.m. on Wednesday, May 20th?

**MR. KRULY:** That's the date set for the Second Circuit argument.

**THE CLERK:** Oh, that's right. I knew that date.

I'm just looking. Do you want to come in the day before?

**MS. ZOGHLIN:** I think people will probably be traveling that day.

**THE CLERK:** How about --

**THE COURT:** What about the 22nd?

**THE CLERK:** That day is full, Judge.

**THE COURT:** Is it?

**THE CLERK:** It's the day right before the Memorial weekend.

How about Thursday, May 21st, at 1:30? Would that work?

**MR. KRULY:** Yes.

**THE CLERK:** Yes?

**MR. TRIPI:** Works for us.

**THE CLERK:** Good.

**MS. ZOGHLIN:** Sure.

**THE COURT:** Okay. Good. We'll do it then.

Okay. So we'll see you in a month, less one day. Thank you all very much.

**MS. ZOGHLIN:** Thank you very much.

**MR. KRULY:** Thank you.

**THE COURT:** All rise.

(Proceedings adjourned at 2:34 p.m.).

* * * * * * * * *

**CERTIFICATE OF REPORTER**

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York on April 30, 2026.

s/ Laurel S. Tubbs
Laurel S. Tubbs, RPR, RMR, CRR
Official Court Reporter
U.S.D.C., W.D.N.Y.