# FEDERAL PUBLIC DEFENDER'S OFFICE
## WESTERN DISTRICT OF NEW YORK

MARIANNE MARIANO
***FEDERAL PUBLIC DEFENDER***
marianne_mariano@fd.org

SONYA A. ZOGHLIN
***ASST. FEDERAL PUBLIC DEFENDER***
Sonya_Zoghlin@fd.org

28 EAST MAIN STREET
FIRST FEDERAL PLAZA, SUITE 400
ROCHESTER, NEW YORK 14614

585-263-6201
FAX: 585-263-5871

BUFFALO OFFICE
300 PEARL STREET, SUITE 200
BUFFALO, NEW YORK 14202
716-551-3341
716-551-3346-FAX

*REPLY TO:* ***ROCHESTER***

August 19, 2026

Hon. Lawrence J. Vilardo
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

Re: *United States v. Gendron*, 22-cr-109 (LJV)

Dear Judge Vilardo,

The defense has proposed that "only the Court, court staff, and members of defense and prosecution teams be physically present in the courtroom during voir dire and that the proceedings be livestreamed to another courtroom where the public may observe them." *See* ECF No. 637 at 2. As the Court noted during our appearance on July 23, 2026, we are not suggesting that the proceedings be closed to the public; all the proceedings that would normally be heard and observed in the courtroom will be simultaneously broadcast to a nearby courtroom that is open to the public. *See* ECF No. 659 at 10 ("It's not closing the courtroom. People are going to be able to see what's going on. We're going to be transparent about this."). The goal of this proposal is to maximize juror candor in a situation that may be intimidating and fraught with anxiety for many of the potential jurors. In turn, juror candor would inform the Court's determination whether a potential juror is qualified to serve on a capital case and the parties' ability to exercise both cause and peremptory challenges.

From a logistical standpoint, this proposal would also accommodate the jurors who wish to discuss certain matters in private, which the Court has assured them will be permitted. The typical way of accomplishing the goal of respecting a juror's privacy is for the parties and the juror to approach the bench. Because both teams plan to have multiple attorneys participating in voir dire (potentially eight for the government and six for the defense), this procedure is logistically untenable. In contrast, as the Court observed on July 23, 2026, simply turning off the audio to the courtroom in which the proceedings are being broadcast will accommodate a juror's desire for privacy (without being surrounded at the bench), the team members' ability to hear and participate in the conversation, and the public's ability to observe the proceedings. *See* ECF No. 659 at 11 ("But if we can cut off the audio feed, I think that would solve that part of the problem because it would be essentially the same thing that we do when we have jurors in the courtroom or other people in the public in the courtroom.").

During the discussion of this proposal on the record, the Court recognized its advantages in both respects: "[T]he Defense's suggestion has two advantages that I see. One is candor. One

is having, you know, a situation where the juror is more likely to be candid because there are fewer people in the courtroom. And then the second is the ease of having discussions – private discussions without, you know, having to jump through hoops to have the discussion be private." *Id*.

Because many people in the Buffalo and surrounding communities have expressed strong feelings about the events of May 14, 2022, and Payton Gendron, and considering the substantial pretrial publicity this case has engendered, this Court should encourage juror candor by limiting public access to the courtroom in which the potential juror will be questioned while simultaneously ensuring public access to the proceedings by a livestream broadcast. In *United States v. King*, 140 F.3d 76 (2d Cir. 1998), the trial court excluded the public entirely from individual voir dire and delayed the release of the transcripts until the jury was impaneled. Affirming this procedure on appeal, the Second Circuit found this "modest limitation on [public] access" was justified by the need to promote juror candor in a case involving a controversial defendant who had been the subject of significant, negative pretrial publicity. *Id.* at 83. The Court concurred with the trial court's findings that "absent a degree of juror privacy, such candor is likely to be restricted." *Id.* at 79. Moreover, the District Court was appropriately concerned "not merely with protecting the privacy of the jurors from public disclosure of sensitive, personal matters but also with assuring their candor in responding to questions so that a fair trial would be assured." *Id*. at 82.

In *King*, the Court found that denying public access to the voir dire and delaying the release of the voir dire transcripts until after the jury was impaneled was "a sensible and restrained procedure" in response to the unusual circumstances presented. *Id.* at 84. *See also ABC, Inc. v. Stewart,* 360 F.3d 90, 105 (2d Cir. 2004) (distinguishing its decision in *King*, finding trial court erred by excluding media entirely from voir dire, which occurred in the judge's robing room, without considering alternatives including "partial closure" as "an available and an effective means of ensuring the candor of prospective jurors"). Here, in response to the unique circumstances of this high-profile, capital trial, the defense is requesting a much more limited accommodation than was upheld in *King*, i.e., that the public be permitted to hear and observe voir dire from a separate space, thereby respecting the rights of the public and the victims while reducing the risk that potential jurors will be inhibited by their presence in the courtroom. This proposal strikes an appropriate balance between the public's right of access under the First Amendment, the rights of victims under the CVRA, *see* 18 U.S.C. §3771 (a) (3), and Payton Gendron's right to due process and a fair trial under the Fifth and Sixth Amendments.

The use of a livestream broadcast to a separate courtroom as an appropriate alternative to courtroom closure has been approved in other contexts. *See United States v. Ansari*, 48 F. 4th 393, 403 (5th Cir. 2022) (requiring spectators to watch and listen on livestream rather than in the trial courtroom [for social distancing purposes] was "reasonable, neutral, and largely trivial"); *United States v. Hendricks*, 950 F. 3d 348, 356 (6th Cir. 2020) (approving use of "light disguise" and live-streamed audio to a separate room to safeguard the identity of undercover FBI agent witness); *United States v. Barrow*, 2021 U.S. Dist. LEXIS 152; 2021 WL 3602859 (D.D.C. Aug. 13, 2021) (limiting presence in the trial courtroom to those directly participating in the trial and providing public access by livestream to an overflow courtroom for social distancing purposes).

Nor is this request unprecedented in a high-profile, capital case. In *United States v. Tsarnaev,* 2015 U.S. Dist. LEXIS 18089; 2015 WL 631330 (D. Mass. Feb. 13, 2015), the Court rejected the parties' initial, joint proposal to conduct individual voir dire entirely in closed session. However, the Court subsequently accepted the parties' alternative proposal that attendance in the trial courtroom be restricted to five spectators chosen by each side, two pool reporters, and two sketch artists. The proceedings in the trial courtroom were to be simultaneously streamed by a live video and audio feed into two overflow courtrooms, one reserved for media and the other for the general public. The Court also directed that the camera for the live feed be positioned behind the individual juror so the juror's face would not be visible in the overflow courtrooms. Noting that the typical "sidebar" conference for jurors wishing to make disclosures privately would be impractical because the trial teams were too large, the Court determined that the same effect could be achieved by temporarily stopping the audio transmission to the overflow courtrooms. The Court found that these procedures were "narrowly tailored to promote juror candor, insulate prospective jurors from extraneous influences, and achieve efficient courtroom management," and were consistent with the First and Sixth Amendments as well as the Crime Victims' Rights Act (18 U.S.C. § 3771(a)(3)).

The defense submits that limiting the number of people inside the trial courtroom to the necessary participants in the voir dire process while livestreaming the proceedings to a public courtroom is the most appropriate way to encourage juror candor while maintaining the transparency this Court seeks with members of the public, the press, and the victims' family members. If the Court is not inclined to grant this proposal, however, the defense requests that the Court impose a limit on the number of observers and members of the media that may be present in the courtroom during the individual voir dire.

Respectfully,

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/Julie Brain*
Julie Brain
Attorney at Law

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Theresa M. Duncan*
Theresa M. Duncan
Law Office of Theresa M. Duncan LLC