UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. 22-CR-109 (LJV)

PAYTON GENDRON,

Defendant.

**SUPPLEMENT TO MOTION TO STRIKE STATUTORY AND NON-STATUTORY AGGRAVATING FACTORS**

Payton Gendron, through counsel, respectfully submits this Supplement to his Motion to Strike Statutory and Non-Statutory Aggravating Factors, ECF No. 268, and to the portion of his Motion to Establish Procedures for Admission of Victim Impact Evidence and to Exclude Categorically Inadmissible Testimony that addresses the Injury to Surviving Victims aggravating factor, ECF No. 309 at 35-41.

The Court previously ruled on certain aspects of these Motions. *See* ECF No. 464. The government filed an interlocutory appeal of that Order to the Second Circuit, and that court issued an opinion on July 27, 2026. In this Supplement, Payton Gendron asks the Court to rule on aspects of his original Motions that the Court previously did not reach. Specifically, he asks that the Court adjudicate: (1) his challenge to the racially motivated aggravating factor and evidence offered in support thereof on First Amendment grounds, *see* ECF No. 268 at 23; (2) his challenge to evidence of conduct that allegedly occurred prior to age 18 offered in support of that factor, *see id.* at 27-28; and (3) his challenge to the injury to surviving victims aggravating factor on the ground that evidence of nonphysical injury to survivors is inadmissible. Additionally, (4), the Court should consolidate the duplicative injury to surviving victims aggravating factor with

the victim impact aggravating factor to avoid unfairly skewing the jury's weighing determination in favor of a death sentence.

## I. THE COURT SHOULD ORDER THE GOVERNMENT TO REDRAFT THE RACIALLY MOTIVATED KILLINGS AGGRAVATOR AND LIMIT THE EVIDENCE THAT MAY BE PRESENTED IN SUPPORT OF IT AS REQUIRED BY THE FIRST AMENDMENT

In his Motion, Payton Gendron moved to strike the racially motivated non-statutory aggravating factor as invalid because Congress deliberately opted not to permit a death sentence for homicides committed under the HCPA, and because 18 U.S.C. § 3593(f) precludes the use of a defendant or victims' race as a basis for imposition of a sentence of death. *See* ECF No. 268 at 30-31. In the alternative, he also moved the Court to require redrafting of the aggravator and to impose strict limits on the evidence that the government may introduce in support of it on the grounds that: it penalizes Payton Gendron for speech that is constitutionally protected under the First Amendment and irrelevant for any legitimate sentencing purpose; the evidence that the government proposes to introduce in support is so extensive and wide-ranging that, with few exceptions, any probative value it has is outweighed by the overwhelming and unfair prejudice that it will cause; and that evidence includes conduct that allegedly occurred prior to Payton Gendron's 18th birthday, in violation of *Roper v. Simmons*, 543 U.S. 551 (2005). *See* ECF No. 268 at 23-30.

Because it struck the aggravating factor based on a finding that it is in irreconcilable conflict with 18 U.S.C. § 3593(f), *see* ECF No. 464 at 11-13, the Court did not reach the First Amendment issue, or the *Roper* claim.[1] *See id.* at 13 n.6. The government appealed the Court's

[1] The Court also did not address the admissibility of the government's proposed evidence in support of this aggravating factor in light of the provision of 18 U.S.C. § 3593(c) requiring exclusion of evidence when "its probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury." This question is the subject of pending Motions in

ruling striking this aggravating factor and the Second Circuit reversed. *See United States v. Gendron*, No. 25-2570, at 16-20 (2d Cir. July 27, 2026). In doing so, however, the court reviewed only the ruling that the aggravator was impermissible under 18 U.S.C. § 3593(f); neither the First Amendment nor the *Roper* issue was before it. *Id.* Payton Gendron now asks the Court to adjudicate those separate questions.

### A. <u>**The First Amendment Requires that the Racially Motivated Aggravating Factor be Redrafted to Limit its Application to Expression that is Directly Probative of Motive**</u>

As set forth in the Motion, *see* ECF No. 268 at 27-28, incorporated by reference as if fully set forth herein, expressions of abstract racist beliefs, no matter how abhorrent to others, are constitutionally protected speech under the First Amendment. A criminal defendant may not be punished for such expressions, and they may not be used as a basis for a death sentence. The First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent," *Wisconsin v. Mitchell*, 508 U.S. 476, 486, 489 (1993), or to prove legitimate aggravating factors at sentencing, s*ee Barclay v. Florida*, 463 U.S. 939, 949 (1983) (plurality opinion) (holding that defendant's writings expressing "racial intolerance and subversive advocacy" properly considered by capital sentencing judge because relevant to several statutory aggravating factors). However, a jury may only consider evidence that is narrowly tailored towards, and directly probative of, the permissible purpose.

As written, the government's proposed racially motivated aggravating factor violates these First Amendment principles. Despite its title, the factor contains no reference to motive. Its first clause, that Payton Gendron "expressed his bias, hatred, and contempt toward Black

Limine, *see* ECF No. 601 at 45-93, 97-100, 106-113, 121-24, 129-136, 167, 176-78, 187, and thus is not included here.

persons," ECF No. 210 at 3, is unequivocally and "explicitly directed at expression," *Mitchell*, 508 U.S. at 487, and directs the jury to consider Payton Gendron's abstract beliefs and expressions thereof irrespective of whether they are probative of his motive for committing the crime. The second clause, that his racial animus "played a role" in the killings, ECF No. 210 at 3, is vague and similarly fails to limit the jury's consideration of his protected speech for the only permissible purpose of assessing his motive.

The government should be required to redraft this aggravating factor to ensure that it permits consideration of only that otherwise protected speech that is directly probative of motive. Specifically, the aggravator should allege no more than that Payton Gendron killed the 10 deceased victims because of their race.

**B. <u>The Government Should be Precluded From Introducing Evidence of Constitutionally Protected Speech in Support of this Aggravating Factor</u>**

For the same reasons, as also set forth in the Motion, *see* ECF No. 268 at 25-27, incorporated by reference as if fully set forth herein, the government should be precluded from presenting evidence of constitutionally protected expression and limited to presenting only that evidence that is directly probative of Payton Gendron's motive for committing the capital offenses.

**C. <u>The Government Should be Precluded From Introducing Evidence of Alleged Conduct Occurring Before Payton Gendron Turned 18</u>**

As set forth in the Motion, *see* ECF No. 268 at 27-28, incorporated by reference as if fully set forth herein, a defendant may not be sentenced to death based on conduct that he engaged in prior to the age of 18. In *Roper v. Simmons*, 543 U.S. 551, 572 (2005), the Supreme Court held that the Eighth Amendment imposes a categorical ban on capital punishment for a crime committed when the defendant was under the age of 18 years. As the Court found, "[a]n

unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less severe than death." *Id.* at 572-73. For the same reason, a capital jury must also be precluded from considering conduct that a defendant engaged in as a minor as a basis for imposing a death sentence. The Court should therefore preclude the government from presenting any such evidence, including evidence of alleged racially biased internet searches.

## II. THE PROFERRED EVIDENCE OF NON-PHYSICAL INJURY TO SURVIVING VICTIMS IS INADMISSIBLE

In his Motion, Payton Gendron moved to strike the injury to surviving victims aggravating factor on the ground that the FDPA limits the consideration of victim impact evidence to victims of the capital crimes of which a defendant has been convicted, *see* ECF No. 309 at 35-37, and that evidence of non-physical injury to surviving victims is insufficiently probative of death-worthiness to permit consideration by the jury under the Eighth Amendment, *id.* at 37-41. Because it struck the aggravating factor altogether based on a finding that the FDPA did not permit it, the Court did not reach the separate question of the admissibility of evidence of non-physical injury under the Eighth Amendment.

The government appealed the Court's ruling striking this aggravating factor and the Second Circuit reversed. *See United States v. Gendron*, No. 25-2570, at 10-13 (2d Cir. July 27, 2026). In doing so, however, the court reviewed only the ruling that the FDPA limits victim impact evidence to victims of capital counts and reinstated the aggravating factor based upon a finding that it does not. *Id.* The Eighth Amendment question was not before it and its holding made no distinction between the admissibility of physical versus non-physical injury. *Id.* at 11 ("By alleging that Gendron 'caused serious physical and emotional injury, and severe

psychological impact to individuals who survived' the attack, Gov't App'x at 28, the factor 'directs the jury to an important 'individual circumstance''") (quoting *Jones v. United States*, 527 U.S. 373, 377 (1999) (internal alterations omitted)). Recognizing that the Second Circuit's decision means that the government will be permitted to allege the aggravating factor, at least as to the physical injuries sustained by the surviving victims, Payton Gendron asks the Court to address the separate question of the admissibility of evidence of alleged psychological and emotional injury.

### A. **The Proffered Evidence is Insufficiently Related to Death-Worthiness to be Considered Under the Eighth Amendment**

As set forth in the original Motion, ECF No. 309 at 37-41, incorporated by reference as if fully set forth herein, evidence of non-physical injury to surviving victims is insufficiently probative of a defendant's death-worthiness to permit its consideration at capital sentencing consistent with the Eighth Amendment. "Although it is true that the FDPA provides that the Government may introduce any 'other' aggravating factor for which it has given notice, the prosecutor does not enjoy unbridled discretion to choose aggravating factors." *United States v. Frank*, 8 F. Supp. 2d 253, 265 (S.D.N.Y. 1998) (citing *Zant v. Stephens*, 462 U.S. 862, 885 (1983)). *See* ECF No. 268 at 22, 36, incorporated by reference as if fully set forth herein.

"[N]ot every consequence of a defendant's actions will support the imposition of capital punishment." *United States v. Bin Laden*, 126 F. Supp. 2d 290, 302 (S.D.N.Y. 2001). A non-statutory aggravating factor must "provide a principled basis" upon which jurors may "distinguish those who deserve capital punishment from those who do not." *Arave v. Creech*, 507 U.S. 463, 474 (1993). That is, the evidence upon which it is based must have "some bearing on the defendant's 'personal responsibility and moral guilt.'" *Stephens*, 462 U.S. at 879 (quoting *Enmund v. Florida*, 458 U.S. 782, 801 (1982)); *see also United States v. Davis*, 912 F. Supp. 938,

943 (E.D. La. 1996) (non-statutory aggravating factor must be "sufficiently relevant to the question of who should live and who should die"); *United States v. Fell*, 373 F. Supp. 2d 753, 763 (D. Vt. 2005) (noting that aggravating factor "must be particularly relevant to the sentencing decision, not merely relevant, in some generalized sense, to whether the defendant might be considered a bad person") (internal quotations omitted).

Put another way, "[a] predicate to fulfilling the constitutional conditions for an aggravating factor is that the disputed factor be an aggravating factor in the first place." *United States v. Cuff*, 38 F. Supp. 2d 282, 288 (S.D.N.Y. 1999)). If, as the government here asserts, all it takes for an aggravator to be constitutional is that it "'has a core meaning that criminal juries should be capable of understanding' and 'direct[s] the jury to the individual circumstances of the case,'" ECF No. 350 at 36 (quoting *Jones*, 527 U.S. at 400, 402), "then the government might just as properly charge as an aggravating factor that a homicide was committed on a Tuesday." *See Cuff,* 38 F. Supp. 2d at 289. That factor would fulfill both criteria; it would not, of course, "make any sense." *Id.* (referencing constitutional conditions under *Tuilaepa v. California,* 512 U.S. 967, 972 (1994)).

The court in *Cuff* found that the aggravating factor there alleged, that the defendant had committed the capital murders using a firearm, failed this test:

> Use of a firearm in connection with a homicide does not meet that predicate for the simple reason that use of a firearm does not, in any rational sense, make a homicide worse, whether one looks at it from the standpoint of the crime, the victim or the perpetrator. To illustrate, it may be useful to consider use of a firearm in connection with a crime other than a homicide, as well as other aggravating factors in connection with a homicide. Thus, if a firearm is used in connection with another crime, such use makes it more likely that crime will succeed, as well as more likely that a fatality may ensue. However, if the crime is a homicide to start with, likely success and loss of life are moot; to the extent that use of a firearm might endanger additional lives, the factor of grave risk of death to additional persons is covered by statute. *See* 18 U.S.C. § 3592(c)(5). Further, among the proper non-statutory aggravating factors for a homicide is the degree

> of impact on the victim's family. That factor too is plainly an aggravating one because of the additional suffering imposed as a result of the crime. Use of a firearm to commit a homicide, however, does not necessarily add to the victim's suffering, or that of his family or other survivors. Finally, a defendant's future dangerousness or lack of remorse may be relevant in deciding on the appropriateness of the death penalty because of what it discloses about that defendant. Use of a firearm to commit a homicide does not disclose anything relevant about a defendant that would not be disclosed by use of some other instrument to commit a homicide.

*Id.* at 288.

Applying the same principles, the court in *United States v. Ciancia,* No. CR 13-902 PSG, 2015 WL 137986677, at *6-7 (C.D. Cal. Sept 8, 2015), struck an aggravating factor alleging that, in the course of shooting and killing a TSA employee at LAX, the defendant "terrorized those around him by causing them to fear for their lives and experience extreme emotional distress." *Id.* at *6 (internal quotations omitted). The court approved a separate aggravating factor that alleged that the defendant terrorized airport employees "with the intent to dissuade other TSA officers from doing their job," because it focused on his motive for committing the crime. *Id.* at *5. However, it found that the factor "focusing solely on the emotional distress that resulted from the commission of the crime" failed to "highlight behavior that is relevant to whether Defendant receives a death sentence." *Id.* at *7.

While the general likelihood of causing trauma and distress to surviving victims is entirely predictable—and accounted for by other aggravating factors—the additional, specific psychological and emotional impact of a crime upon a particular surviving victim is not foreseeable to a defendant. ECF No. 309 at 38. That impact and the weight of the evidence thereof turn on the individual's preexisting circumstances and the vagaries of his or her capacity to articulate feelings, rather than any factor that legitimately increases the defendant's culpability. *Id.* This aggravated aspect of a defendant's conduct is fully conveyed by the fact that the

individuals were physically injured and thus at grave risk of dying, which is accounted for by the separate grave risk of death aggravating factor. Particularly where, as here, two of the three injured individuals were not the target of the attack, psychological, as opposed to physical, injury tells the jury nothing additional about a defendant's intent or motive. Consideration of such evidence therefore introduces a constitutionally intolerable degree of arbitrariness and capriciousness into the capital sentencing decision. *Id.*

Additionally, as noted in the Motion, ECF No. 309 at 37, the United States Sentencing Guidelines permit the enhancement of a non-capital sentence based upon psychological or emotional impact of the crime on the victim only if it is unusually severe. *See* U.S. Sentencing Guidelines Manual § 5K2.3 (U.S. Sentencing Comm'n 2021) (providing for upward departure for "psychological injury much more serious than that normally resulting from commission of the offense"). Otherwise, sentences set by statute for offenses presume and account for the general likelihood of adverse psychological effects upon victims of crime. When the Court ultimately sentences Payton Gendron for Counts 21-23 of the indictment, charging hate crimes with attempt to kill against the three surviving victims, no departure will be applicable. Given that fact, the use of non-extreme psychological and emotional injury as a basis upon which to sentence him to death is irrational and impossible to square with the Eighth Amendment.

### B. The Probative Value of the Proffered Evidence is Outweighed by the Danger of Unfair Prejudice

Although the rules of evidence do not generally apply at a capital sentencing proceeding, evidence may nevertheless be excluded under the provision of 18 U.S.C. § 3593(c) requiring exclusion of evidence when "its probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury." As explained above, the probative value of evidence of psychological and emotional impact, as distinct from the physical injuries about

which they will testify, as to Payton Gendron's death-worthiness is virtually nil. Nevertheless, testimony on these subjects will undoubtedly be highly emotional, creating a serious risk of unfair prejudice. *See, e.g., United States v. Moses,* 565 F. Supp. 3d 394, 397 (W.D.N.Y. 2021) (noting that "'unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'" (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1986)); *Gardner v. Florida*, 430 U.S. 349, 357-58 (1977) ("It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.").

As set forth in the Motion, *See* ECF No. 309 at 39, the particular testimony proffered by the government in this case illustrates the problem. The details of the witnesses' particular suffering are emotional and impactful. *Id.* However, they shed no additional light on Payton Gendron's death-worthiness, above and beyond that which will be at the front of jurors' minds when they weigh the surviving victims aggravating factor and the evidence of the witnesses' physical injuries.

. *See* 18 U.S.C. § 3593(f). And by including information about the impact of the crime on a *surviving* victim's family members, ECF No. 210 at 20, the testimony goes far beyond anything allowed under the Eighth Amendment according to the Supreme Court in *Payne v. Tennessee*, 501 U.S. 808 (1991). The Court should exclude testimony by surviving victims regarding the psychological and/or emotional impact of the crime.

## III. THE INJURY TO SURVIVING VICTIMS AGGRAVATING FACTOR SHOULD BE CONSOLIDATED WITH THE VICTIM IMPACT AGGRAVATING FACTOR

This Court should consolidate the injury to surviving victims aggravating factor with the victim impact aggravating factor as the former is wholly subsumed by the latter and hence they are impermissibly duplicative. As the Court has previously found, a non-statutory aggravating factor that is "'necessarily subsume[d]'" by another is duplicative and should be stricken. ECF No. 464 at 20 (striking selection of site aggravating factor as necessarily subsumed by substantial planning and premeditation aggravator) (quoting *United States v. Fell*, 531 F.3d 197, 235-36 (2d Cir. 2008)).

As noted by the government in its Response to the original Motion, *see* ECF No. 350 at 41, in *Bin Laden*, 126 F. Supp. 2d at 300-01, the court ordered consolidated into a single aggravating factor the government's allegations regarding the impact of the crimes on the families of the deceased victims and of "serious injury to surviving victims," which, as here, it had listed separately in its notice of intent to seek the death penalty. It did so because "an aggravator that is entirely a subset of another 'has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *Id.* at 299 (quoting *United States v. McCullah*, 76 F.3d 1087, 1111 (1996)); *see also id.* (noting that "a duplicative aggravator of this sort serves no significant sentencing role other than to cloud the issues and put an unwarranted thumb on death's scale").

Because both the impact on the families of the deceased and the serious injury to surviving victims were evidence of the same aggravating circumstance, namely "the widespread human trauma allegedly caused by the accused's criminal conduct," the court found that separating the two was an impermissible "attempt to spin off multiple freestanding aggravators from what should really only be one," and that "the sole motivation for doing so is to ratchet up

the number of aggravating factors." *Id.* at 300. Especially given that the same evidence would be admissible to prove the consolidated aggravator as would have been permitted if they had remained separate, and thus the government would suffer "no cognizable prejudice," the court found that consolidation was appropriate to avoid the risk of "double-counting." *Id.*

The court expressly rejected the argument that the government has raised here, namely that "[a]ny concerns with unfair skewing of the weighing process by the inclusion of multiple aggravating factors can be addressed by a jury instruction directing jurors to qualitatively assess aggravating and mitigating factors, and to not merely keep score," ECF No. 350 at 41 n.17. Rather, it held, "an instruction alone is insufficient to solve the problem that, to a juror, the mere finding of an aggravating factor will imply a certain degree of independent qualitative significance." *Bin Laden*, 126 F. Supp. 2d at 300 n.17. This Court, too, should reject the invitation to ineffectually alleviate the harm in favor of preventing it from occurring in the first place.

Dated: August 17, 2026
Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law

*s/Theresa M. Duncan*
Theresa M. Duncan
Law Office of Theresa M. Duncan LLC