# FEDERAL PUBLIC DEFENDER'S OFFICE
## WESTERN DISTRICT OF NEW YORK

MARIANNE MARIANO
***FEDERAL PUBLIC DEFENDER***
marianne_mariano@fd.org

MARYBETH COVERT
***SENIOR LITIGATOR***
marybeth_covert@fd.org

300 PEARL STREET, SUITE 200
BUFFALO, NEW YORK 14202

716-551-3341
FAX: 716-551-3346

ROCHESTER OFFICE
28 EAST MAIN STREET
FIRST FEDERAL PLAZA, SUITE 400
ROCHESTER, NEW YORK 14614
585-263-6201
585-263-5871-FAX

*REPLY TO: BUFFALO*

October 12, 2026

Hon. Lawrence J. Vilardo
United States District Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

Re: *United States v. Payton Gendron*, 22-CR-109-LJV

Dear Judge Vilardo,

Payton Gendron objects to Questions 8 and 9 that were added to the most recent version of the *Instructions to Daily Panels Prior to Individual Voir Dire* ("*Instructions*") that the Court circulated to the parties yesterday.

The Court has already properly structured voir dire with instructions to encourage candor with appropriate opportunities for individual questioning and follow up questions. Question 9 is crafted using judgment-laden language that clearly telegraphs the socially appropriate and desirable response thereto. It therefore inhibits robust self-reflection and examination on the part of the juror and discourages the candid and honest disclosure of views that is the principal goal of the voir dire process.

Question 9 unequivocally informs prospective jurors that, in order to be considered "fair" and "open mind[ed]" in the eyes of the Court, the juror must "wait until all the evidence has been presented, and until after the Court instructs them about the law" before "mak[ing] up their minds as to any fact or issue in [the] case." It then asks any juror who "will not" or "cannot" agree to wait until after they have heard all the evidence and the Court's instructions before deciding anything, i.e., any juror who "will not" or "cannot" be fair and open-minded, to identify themselves as such in front of the group.

Most people like to think of themselves as fair and open-minded. Given the amount of media coverage this case has attracted since its inception, the Court and the parties have reason to be concerned that there may be prospective jurors in the panel who candidly believe that, based on their exposure to pretrial publicity, they would have a difficult time refraining from reaching any conclusions until the very close of the case. Others may have heard enough about the crime to have concluded already that the death penalty is the appropriate punishment for

Payton Gendron. Labeling such natural and understandable conditions as an inability or refusal to be fair and open-minded before asking about them disincentivizes, and can only decrease the likelihood of receiving honest answers. The Supreme Court has recognized this phenomenon. *See Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (affording jurors' statements of their own impartiality "little weight due to unconscious mental process," noting that "[n]o doubt each juror was sincere when he said that he would be fair and impartial [], but psychological impact requiring such a declaration before one's fellows is often its father").

> [G]enerally, the trial court should steer clear of giving the prospective juror leading suggestions of suitable answers to be given to accomplish that objective. The obvious first danger to avoid is to not tell a prospective juror the legal standard by which impartiality will be judged before the question itself is asked.

*United States v. Haldeman*, 559 F.2d 31, 156 (D.C. Cir. 1976) (MacKinnon, J., dissenting).[1]

The psychological pressure to characterize oneself as fair and open-minded is further increased when a question like Question 9 is posed to prospective jurors by the Court rather than the parties. Research indicates that people are generally less willing to disclose information to those whom they perceive as having higher status than themselves. *See, e.g.,* David Suggs and Bruce D. Sales, *Juror Self Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind. L. J. 245, 254 (1981) ("A large status differential between the interactants will most likely reduce perceived similarity and, in turn, the degree of self-disclosure."). Highly respected figures, such as judges, encourage potential jurors' tendency to offer the "socially desirable" – rather than the most accurate – response. *See* Neil Vidmar, *When All of Us Are Victims: Juror Prejudice and "Terrorist" Trials*, 78 Chi.-Kent L. Rev. 1143, n. 88 (2003) ("Research findings suggest that judge-conducted voir dire is less likely to produce full disclosure in jurors than lawyer-conducted voir dire") (internal citations omitted); Valerie P. Hans & Alayna Jehle, *Avoid Bald Men and People with Green Socks? Other Ways to Improve the Voir Dire Process in Jury Selection*, 78 Chi.-Kent L. Rev. 1179, 1194 (2003) ("The judge's approval is important to a lot of prospective jurors and many will alter their responses or hide certain attitudes in order to be perceived favorably."); Hon. Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010) ([E]mpirical research suggests that potential jurors respond more candidly and are less likely to give socially desirable answers to questions from lawyers than judges. As a district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answer that they think I want, and they almost uniformly answer that they can "be fair").

---

[1] In that case, the trial judge told the venire: "Now, I want to be sure, and counsel on both sides want to be sure, that you can decide this case for yourself based solely from what you hear in this courtroom at the proper time…You must not be influenced, of course, by any events that transpire outside of the courtroom." *Id.* at 156. "Thus, the prospective juror was told how to answer the court's questions if he wanted to serve." *Id. See also Jordan v. Lippman*, 763 F.2d 1265, 1274 (11th Cir. 1985) ("'[t]he juror is poorly placed to make a determination of his own impartiality'") (quoting *United States v. Davis*, 583 F.2d 190, 197 (5th Cir. 1978)).

Question 9 is also in tension with the language at page five of the Court's *Instructions* which encourages jurors to share "their feelings and views on different topics" with the knowledge that "there are no right or wrong answers to any of the questions posed to the [juror] today."

> AND BEFORE WE BEGIN, LET ME REPEAT WHAT I HAVE ALREADY TOLD YOU: THERE ARE NO RIGHT OR WRONG ANSWERS TO ANY OF THE QUESTIONS POSED TO YOU TODAY. CITIZENS IN OUR COMMUNITY HOLD, AND ARE ENTITLED TO HOLD, A WIDE VARIETY OF DIFFERENT VIEWS. AND EVERYONE HAS HAD DIFFERENT LIFE EXPERIENCES THAT INFORM THEIR FEELINGS AND VIEWS ON DIFFERENT TOPICS.

Question 8 – "you will need to follow [the Court's] instructions even if you do not agree with them" – likewise is counterproductive to the goals of the voir dire process as it discourages jurors from being open, honest and candid about views and feelings that they may believe are inconsistent with the law. The Court should explore the depth and strength of any feelings, biases, opinions or prejudices before the jurors are instructed about legal obligations or requirements of the law or told that they will receive instructions on the law and must follow them.

Questions 9 and 8 together will impair the ability of the Court and counsel to learn jurors' true feelings and obtain information upon which counsel can rely to intelligently exercise peremptory challenges, and upon which the Court can rely to make informed and fair rulings on challenges for cause. For these reasons, we request that Questions 8 and 9 be omitted from the *Instructions*.

Respectfully,

*/s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*/s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*/s/Julie Brain*
Julie Brain
Attorney at Law

*/s/Theresa M. Duncan*
Law Office of Theresa M. Duncan